IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| MWK RECRUITING, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | 1:18-CV-444-RP |
| EVAN P. JOWERS, YULIYA VINOKUROVA, | § | |
| LEGIS VENTURES (HK) COMPANY | § | |
| LIMITED, and ALEJANDRO VARGAS, | § | |
| | § | |
| Defendants. | § | |

## ORDER

Before the Court is a motion to dismiss filed by Defendants Evan P. Jowers ("Jowers"),

Yuliya Vinokurova ("Vinokurova"), Legis Ventures (HK) Corporation Limited ("Legis Ventures"),

and Alejandro Vargas ("Vargas"),[1] (Dkt. 84). Having considered the parties' briefs, the evidence, and

the relevant law, the Court finds that the motion should be granted in part.

## I. BACKGROUND

Plaintiff MWK Recruiting, Inc. ("MWK") is a legal recruiting firm with its principal place of

business in Austin, Texas. (2d Am. Compl., Dkt. 80, ¶¶ 1, 46). MWK markets its services worldwide,

and has spent over $1,000,000 investing in the development of its Asian legal recruiting market

based in Hong Kong. (*Id.* ¶¶ 46, 51). In order to succeed in the recruiting space, MWK compiles

information about its law firm clients and attorney candidates. (*Id.* ¶¶ 48–49). For example, MWK

collects and stores information about its candidates' desire to change employers, employer

preferences, compensation expectations, and personal situations. (*Id.* ¶¶ 53, 137). MWK also collects

information about the clients it serves, such as who they want, how they negotiate and hire, what

their finances are, and what vulnerabilities they have. (*Id.*).

---

[1] Jowers, Vinokurova, Legis Ventures, and Vargas are collectively referred to as "Defendants."

MWK believes this information constitutes confidential trade secret information. (*Id.* ¶¶ 49, 53). It prevents unauthorized access to the information it collects by securing electronic information with passwords and hard copy information with locked storage files. (*Id.* ¶ 55). MWK also requires its employees to maintain the confidentiality of its trade secrets under an Associate Recruiter Employment Agreement. (*See, e.g.*, *id.* ¶¶ 56–57). Each employee agrees to return any confidential information to MWK and refrain from disclosing such information upon termination. (*Id.* ¶ 57). And employees agree to neither solicit nor provide services to any candidate or client with whom the employee had contact with during the previous year for one year following termination. (*Id.*).

Between April 2006 and June 2015, Jowers worked for Recruiting Partners GP, Inc. and then its affiliate, Kinney Recruiting, LLC, ("Kinney Recruiting, LLC")[2] as an attorney recruiter. (*Id.* ¶¶ 12–13, 18, 28, 34). Jowers was based exclusively in Miami, Florida. (*Id.* ¶ 67). Vinokurova, Jowers's ex-wife, also worked for Kinney Recruiting, LLC, from 2007 through December 2016. (Jowers Decl., Dkt. 84-1, ¶ 11; Vargas Decl., Dkt. 84-2, ¶¶ 7). According to MWK's complaint, Vinokurova is also a citizen of Florida. (2d Am. Compl., Dkt. 80, ¶ 3). Shortly after they were hired by MWK, Jowers and Vinokurova each signed an Associate Recruiter Employment Agreement. (*Id.* ¶ 18). Jowers and Vinokurova would occasionally travel to Austin for training and meetings held at MWK's headquarters. (*Id.* ¶ 59).

Vargas founded Legis Ventures in 2016, and he serves as its sole director and owner. (Vargas Decl., Dkt. 84-2, ¶ 5). According to the complaint,[3] Vargas is a Colombian citizen with a Colombian residential address, but he has lived in Hong Kong since August 2008. (2d Am. Compl., Dkt. 80, ¶ 4). Legis Ventures is a private limited company organized under the laws of Hong Kong, with its principal place of business in Hong Kong. (*Id.* ¶ 5). Vargas, based in Hong Kong, also recruits

[2] Recruiting Partners GP, Inc. is a Texas corporation and the predecessor entity of MWK. (2d Am. Compl., Dkt. 80, ¶¶ 12, 44). Kinney Recruiting, LLC is a Texas limited liability company that is wholly owned by MWK. (*Id.* ¶ 13).

[3] In his declaration, Vargas states that he is a citizen of Chile and Spain and a permanent resident of Hong Kong. (Vargas Decl., Dkt. 84-2, ¶ 3).

United States-based attorney candidates for placement at law firm offices in Asia on behalf of Legis Ventures. (*Id.* ¶ 66). Legis Ventures's website advertises to Untied States-based associates, counsel, and partners. (*Id.* ¶¶ 116–18). Employees of Legis Ventures regularly attend the annual National Association for Law Placement ("NALP") conference to promote Legis's United-States-based recruiting business. (*Id.* ¶¶ 89, 119). Legis Ventures also employs representatives based in New York and Boston. (*Id.* ¶ 120).

Jowers originally recruited attorneys for placements at large law firms based in the United States and United Kingdom. (*Id.* ¶ 9). Over time, however, Jowers focused his efforts on legal placement in firms' Asian offices. (*Id.* ¶¶ 8–9). Jowers relocated to Hong Kong in 2015, where he worked for Kinney Recruiting Limited, a Hong Kong limited company ("Kinney Recruiting HK"). (Jowers Decl., Dkt. 84-1, ¶¶ 2, 8). In December 2016, Jowers ended his employment with Kinney Recruiting HK and joined Legis Ventures as an attorney recruiter. (*Id.*). Before he left, Jowers submitted six MWK candidates[4] through Vargas while he was still employed with MWK. (2d Am. Compl., Dkt. 80, ¶¶ 61–65). Around that same time, Vinokurova left Kinney Recruiting, LLC and joined Legis Ventures as a recruiter. (*Id.* ¶ 69).

Jowers also obtained two loans related to his employment in 2012. First, Jowers entered into a Forgivable Loan Agreement and Promissory Note (the "Forgivable Loan") with Recruiting Partners GP, Inc. (*Id.* ¶ 31). Second, Jowers and Counsel Unlimited LLC[5] entered into a Loan Agreement and Promissory Note (the "Revolving Loan"). (*Id.* ¶ 37). As of the date of Jowers's resignation, the Forgivable Loan had a balance of $24,552.17; the Revolving Loan had a balance of $61,371.05. (*Id.* ¶¶ 192, 202). MWK was assigned the loans.

---

[4] MWK alleges that Jowers submitted James Chang, Longhao Zhang, Richard Han, Pamela U, Claudia Lau, and Xiao Zhang through Vargas. (2d Am. Compl., Dkt. 80, ¶¶ 61–65). Jowers told MWK that these candidates specifically wanted to work with him instead of MWK. (*Id.*).

[5] Counsel Unlimited LLC is a Texas limited liability company that is wholly owned by MWK. (2d Am. Compl., Dkt. 80, ¶ 14).

MWK sued Jowers, Vinokurova, Vargas, and Legis Ventures in Texas state court on March 27, 2017, but it did not serve any defendant. (Dkt. 1-2). On March 26, 2018, MWK amended its pleading and served Jowers in Florida. (Dks. 1-3, 9-1). Jowers then timely removed to this Court. (Dkt. 1). In its second amended complaint, MWK alleges that Defendants misappropriated trade secrets related to MWK's attorney candidates, (2d Am. Compl., Dkt. 80, ¶¶ 146–54), and conspired to do so by establishing a competing attorney recruiting company in Asia, (*id.* ¶¶ 204–09). MWK also alleges that Jowers and Vinokurova breached their employment agreements by sharing confidential candidate information with Vargas and Legis Ventures. (*Id.* ¶¶ 155–83). Finally, MWK alleges that Jowers breached the Forgivable Loan, (*id.* ¶¶ 194–203), and the Revolving Loan, (*id.* ¶¶ 184–93), by failing to pay the balance on the loans when they were due in full. Defendants now move to dismiss MWK's complaint, arguing that the Court lacks personal jurisdiction and that MWK fails to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6). (Mot., Dkt. 84).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted." When evaluating a motion to dismiss under Rule 12(b)(6), the "district court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff." *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

Similarly, the Federal Rules of Civil Procedure allow a defendant to assert lack of personal jurisdiction as a defense to suit. Fed. R. of Civ. P. 12(b)(2). MWK, as the plaintiff asserting

jurisdiction, bears the burden of proving that the Court has jurisdiction over a nonresident defendant. *Travelers Indem. Co. v. Calvert Fire Ins. Co.*, 798 F.2d 826, 831 (5th Cir. 1986). But when the court considers a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, as here, the plaintiff need only present a prima facie case that personal jurisdiction is proper. *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008).

In resolving the jurisdictional issue, the Court may receive "any combination of the recognized methods of discovery." *Id.* But "on a motion to dismiss for lack of jurisdiction, uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a prima facie case for personal jurisdiction exists." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (citation and quotation marks omitted). Even so, a court need not credit conclusory allegations, even if uncontroverted. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001) (per curiam).

### III. DISCUSSION

Defendants move to dismiss MWK's claims. Defendants Jowers, Legis Ventures, and Vargas argue that the Court lacks personal jurisdiction over them. (Mot., Dkt. 84, at 5–25). Defendants also argue that MWK fails to state any claim against any defendant in this case. (*Id.* at 25–36). The Court will first address Defendants' jurisdictional arguments before deciding whether MWK has stated a claim.

### A. Personal Jurisdiction

Because the Court has not held a hearing "confined to the jurisdictional issue," MWK need only establish a prima facie case for personal jurisdiction to proceed with their claims against Defendants Jowers, Legis Ventures, and Vargas at the pleading stage. *Walk Haydel*, 517 F.3d at 241. Plaintiff must show two requirements are met. Federal courts have personal jurisdiction over a

defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A). Personal jurisdiction must also be consistent with constitutional due process requirements. *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 698 F.3d 214, 220 (5th Cir. 2012). Because the long-arm statute of Texas has been interpreted to extend as far as due process permits, *Electrosource, Inc. v. Horizon Battery Techs., Ltd.*, 176 F.3d 867, 871 (5th Cir. 1999) (citing *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990)), the Court need only consider the due process inquiry.

The due-process requirements for personal jurisdiction are also twofold. First, the defendant must have "purposefully availed" itself of the "benefits and protections of the forum state by establishing 'minimum contacts' with the forum state." *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Second, exercising personal jurisdiction over the defendant must "not offend traditional notions of 'fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe Co.*, 326 U.S. at 316).

Minimum contacts can support one of two flavors of personal jurisdiction: general jurisdiction or specific jurisdiction. Both are relevant here. General jurisdiction exists where "a defendant has continuous and systematic general business contacts with the forum state." *Choice Healthcare, Inc. v. Kaiser Found. Health Plan of Colo.*, 615 F.3d 364, 368 (5th Cir. 2010) (quotation marks omitted). In fact, contacts must be "so 'continuous and systematic' as to render [a non-resident defendant] essentially at home in the forum State." *Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 101–02 (5th Cir. 2018) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Establishing general jurisdiction is difficult and requires extensive contacts between a defendant and a forum. *Id.* (quoting *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008)).

On the other hand, specific jurisdiction is less extensive, focusing "on the relationship among the defendant, the forum, and the litigation." *Id.* at 103 (quoting *Monkton Ins. Servs. v. Ritter*, 768 F.3d 429, 432–33 (5th Cir. 2014)). Specific jurisdiction exists where "(1) the nonresident defendant purposefully avails itself of the privileges of conducting activities in the forum state; and (2) the controversy arises out of or is related to the defendant's contacts with the forum state." *Choice Healthcare, Inc.*, 615 F.3d at 369 (citing *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 343 (5th Cir. 2004)). In the Fifth Circuit, the specific-jurisdiction analysis is a claim-specific inquiry; a plaintiff bringing multiple claims that arise out of different forum contacts must establish specific jurisdiction for each claim. *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009). The Court will analyze whether personal jurisdiction exists as to Jowers, Legis Ventures, and Vargas.

1.   Jowers

MWK does not contend that Jowers is subject to this Court's general personal jurisdiction or that Jowers's forum contacts support specific jurisdiction. (*See* 2d Am. Compl., Dkt. 80, ¶¶ 103–04). Rather, MWK asserts personal jurisdiction over Jowers is proper because he either waived any jurisdictional defense or consented to jurisdiction in Texas. (Resp., Dkt. 85, at 10–16; 2d Am. Compl., Dkt. 80, ¶¶ 92–95).

a.   *Waiver Under the Loan Agreements*

First, MWK argues that Jowers submitted to personal jurisdiction and venue in executing the Forgivable Loan and Revolving Loan. (2d Am. Compl., Dkt. 80, ¶ 95). Personal jurisdiction is a waivable right, and if a party signs a contract with a forum selection clause, that party has either consented to personal jurisdiction or waived the personal jurisdiction requirements for the designated forum. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n.14 (1985). Both the Forgivable Loan and the Revolving Loan each contain a forum selection clause. The Forgivable Loan provides that "[v]enue for any disputes arising from or related to [the Forgivable Loan] shall lie

solely, and is convenient, in Travis County, Texas." (2d Am. Compl., Dkt. 80, ¶ 91 (quoting Forgivable Loan, Dkt. 80-4, ¶ 12(a))). Similarly, the Revolving Loan provides that "all legal actions related to [the Revolving Loan] shall be brought in the appropriate court of law located in Travis County, Texas." (2d Am. Compl., Dkt. 80, ¶ 93 (quoting Revolving Loan, Dkt. 80-6, ¶ 7.13)).

Jowers concedes that, based on the venue clauses in the loans, the Court may exercise personal jurisdiction over him related to MWK's breach of contract claim based on the Forgivable Loan and the Revolving Loan.[6] (*See* Mot., Dkt. 84, at 13). What is disputed, however, is the scope of Jowers's consent to jurisdiction. Jowers says that the venue clauses cannot support jurisdiction on MWK's remaining claims for misappropriation of trade secrets under the FDTSA and TUTSA, for breach of the Employment Agreement, and for breach of contract based on the line of credit. (*Id.*). MWK responds only that these mandatory forum selection clauses mean that Jowers waived challenges to personal jurisdiction in this Court—it does not address the scope of the waiver. (*See* Resp., Dkt. 85, at 11–12).

The Court finds that Jowers's waiver is limited to disputes related to the loans. The plain language of the forum selection clauses provides that the parties agreed to the exclusive jurisdiction of a court sitting in Travis County to hear claims *related to those agreements*. But Jowers did not waive jurisdictional challenge to unrelated claims—such as MWK's misappropriation of trade secrets and beach of the Employment Agreement claims. Thus, if MWK's claims are "sufficiently distinct from the contract, then they fall outside the scope of the forum selection clause." *Allegiance Capital Corp. v. Great Canadian Gaming Corp.*, No. Civ.A.3-03-CV-751-R, 2004 WL 2203256, at *3 (N.D. Tex. Sept.

---

[6] Although Jowers concedes that the Revolving Loan supports jurisdiction for a breach of contract claim related to that agreement, he still argues that the venue clause in the Revolving Loan cannot support jurisdiction for MWK's "line of credit" claim. (Mot., Dkt. 84, at 13). The Court disagrees. MWK asserts two breach of contract claims: one based on the Forgivable Loan and another based on the Revolving Loan. (*See* 2d Am. Compl., Dkt. 80, ¶¶ 37, 184–203). MWK refers to the former as the "Loan" claim and the latter as the "Line of Credit" claim. (*Id.*). The line of credit claim is based on a loan with Counsel Unlimited LLC executed on November 1, 2012. (*Id.* ¶ 185; Revolving Loan, Dkt. 80-6). MWK refers to this as the "Revolving Loan." (*See* 2d Am. Compl., Dkt. 80, ¶ 37). Thus, MWK's "line of credit" claim alleges a breach of the Revolving Loan, and Jowers consented to jurisdiction for that claim.

30, 2004). The claims alleging breaches of the loans are based on overdue balances when Jowers terminated his employment. MWK's remaining claims, however, are based on Jowers's contacts with his clients and disclosure of confidential proprietary information. MWK fails to explain any connection between its other claims and the loans or cite any authority that would support construing these limited forum selection clauses to claims unrelated to the agreements. Thus, Jowers consented to personal jurisdiction for MWK's claims alleging a breach of the Forgivable Loan and Revolving Loan, but such consent cannot support personal jurisdiction for MWK's other claims. MWK's remaining claims against Jowers—breach of the Employment Agreement, misappropriation of trade secrets, and civil conspiracy—must find jurisdictional support elsewhere.

*b. Waiver under the Employment Agreement*

MWK next contends that personal jurisdiction over Jowers is proper in this Court by invoking a forum selection clause found in Jowers's Employment Agreement. (2d Am. Compl., Dkt. 80, ¶¶ 94–95 (quoting Jowers Emp't Agreement, Dkt. 80-1, ¶ 13); Resp., Dkt. 85, at 12–16). That clause states:

> The Employee irrevocably agrees that the exclusive forum for any suit, action, or other proceeding arising out of or in any way related to this Agreement shall be in the state or federal courts in Florida, and the Employee agrees to the exclusive personal jurisdiction and venue of any court in Travis County, Texas and waives any defense thereto.

(Jowers Emp't Agreement, Dkt. 80-1, ¶ 13.1). Because Jowers "agrees to the exclusive personal jurisdiction and venue of any court in Travis County, Texas and waives any defense" to personal jurisdiction, MWK contends that Jowers waived his right to challenge personal jurisdiction in this Court. (2d Am. Compl., Dkt. 80, ¶ 94). Jowers, on the other hand, argues that the forum selection clause designates *Florida* as the exclusive forum, so this Court may not exercise personal jurisdiction over him. (*See* Mot., Dkt. 84, at 14–15).

A party may consent to personal jurisdiction or waive the personal jurisdiction requirements in a forum by signing a contract with a forum selection clause. *Burger King*, 471 U.S. at 473 n.14. Under both Florida[7] and federal law, a forum selection clause is prima facie valid and should generally be enforced. *See M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 15 (1972); *Haynsworth v. The Corp.*, 121 F.3d 956, 962 (5th Cir. 1997); *Manrique v. Fabbri*, 493 So. 2d 437, 439–40 (Fla. 1986). "The correct approach [is] to enforce the forum clause specifically unless [the opposing party] could clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid."[8] *M/S Bremen*, 407 U.S. at 15. When enforcing a forum selection clause, Florida courts distinguish between mandatory clauses, which require a suit be filed only in the specified forum, and permissive clauses, which essentially consent to jurisdiction of venue in a named forum and do not exclude jurisdiction elsewhere. *See Quinones v. Swiss Bank Corp. (Overseas), S.A.*, 509 So. 2d 273, 274–75 (Fla. 1987); *accord Caldas & Sons, Inc. v. Willingham*, 17 F.3d 123, 127 (5th Cir. 1994). Use of the term "exclusive" can indicate that the clause is mandatory rather than permissive. *See Agile Assur. Grp., Ltd. v. Palmer*, 147 So. 3d 1017, 1018 (Fla. 2d Dist. Ct. App. 2014); *Travel Express Inv. Inc. v. AT & T Corp.*, 14 So. 3d 1224, 1227 (Fla. 5th Dist. Ct. App. 2009).

The Court finds that Jowers consented to the personal jurisdiction of courts in Travis County. The forum selection clause provides that Jowers "irrevocably agrees" that Florida is the "exclusive forum," but it also expressly states that Jowers "agrees to the exclusive personal

---

[7] This Court has subject-matter jurisdiction over MWK's suit based on diversity. (*See* 2d Am. Compl., Dkt. 80, ¶¶ 1–8). Typically, a Court sitting in diversity applies the substantive law of the state in which it sits. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). But Texas law allows parties to select the law that governs the parties' rights and duties under an agreement. *See* Tex. Bus. & Comm. Code § 1.301(a); *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 677 (Tex. 1990) ("When parties to a contract reside or expect to perform their respective obligations in multiple jurisdictions, they may be uncertain as to what jurisdiction's law will govern construction and enforcement of the contract. To avoid this uncertainty, they may express in their agreement their own choice that the law of a specified jurisdiction will apply to their agreement."). Here, MWK—a Texas entity—and Jowers—a Florida citizen—agreed that any "controversies, claims, disputes or matters in questions arising out of or relating to this Agreement shall be construed, governed, and enforced in accordance with the laws of Florida." (Jowers Emp't Agreement, Dkt. 80-1, ¶ 12.1). Accordingly, the Court looks to Florida law to interpret and apply the Jowers Employment Agreement.

[8] Neither party contends that the clause is unreasonable, unjust, or invalid. Rather, the dispute concerns what the parties intended and the scope of the clause.

jurisdiction and venue" of any court in Travis County, Texas. (Jowers Emp't Agreement, Dkt. 80-1, ¶ 13.1). Jowers's argument that this is the wrong *forum* ignores the fact that courts distinguish between challenges to personal jurisdiction and challenges to venue or forum.[9] Even if Travis County is not the exclusive or proper forum, or that a more appropriate forum exists elsewhere, that is not to say that this Court lacks personal jurisdiction. *See Keaty v. Freeport Indonesia Inc.*, 503 F.2d 955, 957 (5th Cir. 1974) (holding that a forum selection clause demonstrated consent to jurisdiction by courts in New York but did not render that jurisdiction exclusive). By the contract's plain language, Jowers expressly agreed to jurisdiction in Travis County and waived any defense to personal jurisdiction by courts located there.

Nonetheless, Jowers argues that the forum selection clause does not provide a basis for jurisdiction. First, Jowers argues that the consent-to-jurisdiction provision follows an express forum selection clause, so the forum selection clause controls. (Mot., Dkt. 84, at 14). Next, Jowers contends that the "slight discrepancy" between the forum selection and venue provisions is because Robert Kinney—the drafter of the agreement—forgot to change the venue clause to specify Florida rather than Texas. (*Id.*). Jowers further contends that if the inconsistency in the forum selection clause results in an ambiguity, such ambiguity is construed against the drafter and in favor of Jowers. (*Id.*). Finally, Jowers says that the forum selection clause unambiguously specifies Florida as the intended forum for all litigation because the agreement provides that it is governed by Florida law. (*Id.*).

The Court is not convinced. First, Florida courts "endeavor to give every term meaning and effect." *Agile Assur. Grp.*, 147 So. 3d at 1018. Disregarding Jowers's express consent to jurisdiction in Travis County would render that clause superfluous. And Jowers offers no evidence, aside from the

---

[9] *See City of New Orleans v. Municipal Admin. Servs., Inc.*, 376 F.3d 501, 504 (5th Cir. 2004) (distinguishing between jurisdiction and venue); *D–Two Comm'ns v. Comtel*, MO-09-CV-031, 2009 WL 10670036, at *2 (W.D. Tex. Nov. 30, 2009); *Cantex Energy Corp. v. World Stock Exch., LLC*, No. SA-09-CA-0218-XR, 2009 WL 2407959, at *3 (W.D. Tex. Aug. 4, 2009).

contract's choice of law, supporting his argument that Robert Kinney intended to replace "Travis County, Texas" with "Florida." Accordingly, the Court will look only to the text to determine the parties' intent. And the text unambiguously provides that Jowers consents to the jurisdiction of courts in Travis County and waives his personal jurisdiction defenses.

Finally, the Court notes that the apparent inconsistency can be reconciled. The jurisdictional, venue, and forum analyses are distinct. When a forum selection clause is used defensively as a basis for a motion to dismiss, it is viewed under Rule 12(b)(3) as an objection to venue. *Sucampo Pharm., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 549–50 (4th Cir. 2006); *see also Migdal Ins. Co., Ltd. v. Schenker Int'l Inc.*, No. 07-21011-CIV-GOLD/MCALILEY, 2009 WL 10669110, at *2 n.3 (S.D. Fla. Mar. 25, 2009) (recognizing that motions to dismiss based on a forum selection clause are cognizable as motions to dismiss for improper venue under Rule 12(b)(3) and an improper venue defense is waived if not raised in a Rule 12 motion). On the other hand, where a forum selection clause is invoked by a plaintiff, it can serve as consent to personal jurisdiction or a waiver of any objection to personal jurisdiction. *See Burger King*, 471 U.S. at 473 n.14; *Alexander Proudfoot Co. World Headquarters v. Thayer*, 877 F.2d 912 (11th Cir. 1989); *Travelocity.com L.P v. Pier 35 Events, Inc.*, No. 13-81240-CIV, 2014 WL 2999208, at *9–10 (S.D. Fla. July 3, 2014). Here, Jowers is not seeking to enforce the forum selection clause by transferring this case to Florida. And Jowers does not argue that MWK's claims against him are subject to dismissal for improper venue under Rule 12(b)(3). Rather, it is *MWK* who is seeking to enforce the consent-to-jurisdiction provision in the forum selection clause.

Ultimately, the Court is only looking to whether Jowers consented to or waived personal jurisdiction. Jowers has not moved to transfer venue under 28 U.S.C. § 1404(a), nor has he moved to dismiss MWK's suit for improper venue or *forum non conveniens. See* Fed. R. Civ. P. 12(b)(3); *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 766–67 (5th Cir. 2016). Jowers only refutes MWK's reliance on the forum selection clause as a basis for personal jurisdiction. The question is thus not whether

another forum is more appropriate in light of the forum selection clause, but whether Jowers consented to the exercise of jurisdiction by courts located in Travis County, Texas. Given the plain language in the forum selection clause, Jowers has done so here.

### c.   Scope of Jowers's Consent to Jurisdiction

Having concluded that Jowers consented to the jurisdiction of this Court, the Court must next determine the scope of that waiver. MWK argues that Jowers's waiver extends to all claims MWK asserts against him. (Resp., Dkt. 85, at 12). Jowers, however, argues that MWK must establish specific jurisdiction for each of its claims, suggesting that the forum selection clause in the employment agreement only governs claims based on the agreement. (*See* Reply, Dkt. 86, at 3 (quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274 (5th Cir. 2006))).

The Fifth Circuit does not strictly distinguish between suits based in contract or suits based in tort when applying a forum selection clause to claims. *See Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte*, 536 F.3d 439, 444–45 (5th Cir. 2008). Instead, the Fifth Circuit looks to "the language of the forum-selection clause with a common-sense view of the causes of action to determine whether the clause was broad enough to cover the torts." *Id.* Here, the forum selection clause applies to "any suit, action, or other proceeding arising out of or in any way related to this Agreement." (Jowers Emp't Agreement, Dkt. 80-1, ¶ 13.1). The clause does not distinguish between breach-of-contract and tort actions, but broadly includes actions that are "in any way related" to the agreement.

Although MWK asserts both breach-of-contract and tort actions for misappropriation of trade secrets and civil conspiracy, the tort actions are related to the employment agreement. MWK alleges that Jowers breached the confidentiality and non-solicitation provisions in his employment agreement by submitting candidates to a competitor rather than through MWK. (2d Am. Compl., Dkt. 80, ¶ 157). The tort claims are based on the "same operative facts": submitting those candidates through a competitor disclosed trade secrets. *D–Two Commc'ns*, 2009 WL 10670036, at *3. Indeed,

the misappropriation claim relies in part on the confidentiality and non-solicitation provisions of Jowers's employment agreement. (*See* 2d Am. Compl., Dkt. 80, ¶¶ 139, 158–60). And the civil conspiracy claim is based on the misappropriation claims and the breach of the employment agreement's non-compete provisions. (*Id.* ¶¶ 204–09). Accordingly, MWK's remaining claims against Jowers—the misappropriation of trade secrets and civil conspiracy claims—arise out of Jowers's contractual relationship with MWK. The Court thus has personal jurisdiction over Jowers for these claims.

## 2.  Legis Ventures

MWK concedes that Legis Ventures is not subject to personal jurisdiction by courts in Texas. (*See* Resp., Dkt. 85, at 17–18 ("Legis does not have 'continuous and systematic general business contacts' with Texas or any other state, such that it would be generally subject to jurisdiction of the courts of any state."); 2d Am. Compl., Dkt. 80, ¶¶ 103–04). For a corporate entity, the paradigm bases for general jurisdiction are the entity's place of incorporation and principal place of business. *Daimler*, 134 S. Ct. at 760. Legis Ventures is a foreign limited company organized under the laws of Hong Kong, with its principal place of business in Hong Kong. (2d Am. Compl., Dkt. 80, at ¶¶ 5, 106). And while MWK notes that Legis has representatives in New York, Los Angeles, and Boston, MWK's complaint also observes that "Legis does not operate any regular and established place of business in the United States" (2d Am. Compl., Dkt. 80, ¶¶ 73, 76, 120; *see also* Jowers Decl., Dkt. 84-1, ¶¶ 4, 6). MWK similarly does not argue that Legis Ventures has contacts with Texas that would support specific jurisdiction.

Instead, MWK argues that federal courts may exercise personal jurisdiction over Legis Ventures pursuant to Federal Rule of Civil Procedure 4(k)(2). Rule 4(k)(2) provides an alternative basis for personal jurisdiction by federal courts, approximating a "federal longarm statute" to enable federal courts to exercise personal jurisdiction where no state otherwise could. *See Freescale*

*Semiconductor, Inc. v. Amtran Tech. Co., Ltd.*, No. A-12-CV-644-LY, 2014 WL 1603665, at *3 (W.D. Tex. Mar. 19, 2014). Under Rule 4(k)(2), a federal court may exercise personal jurisdiction over a foreign defendant if three requirements are met: "(1) the plaintiff's claim arises under federal law, (2) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction, and (3) the exercise of jurisdiction comports with due process." *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1410 (Fed. Cir. 2009); *see also World Tanker Carriers Corp. v. M/V Ya Mawlaya*, 99 F.3d 717, 720 (5th Cir. 1996). It is the plaintiff's burden to "establish that Rule 4(k)(2) creates personal jurisdiction if it wants to avail itself of that rule in establishing personal jurisdiction." *Grynberg v. BP P.L.C.*, 855 F. Supp. 2d 625, 638 n.31 (S.D. Tex. 2012), *aff'd* 527 F. App'x 278 (5th Cir. 2013).

Here, the first two requirements for Rule 4(k)(2) are satisfied. MWK asserts a claim against Legis Ventures that arises under federal law: the misappropriation of trade secrets in violation of the Federal Defend Trade Secrets Act. (*See* 2d. Am. Compl., Dkt. 80, ¶¶ 136–45). And both parties agree that Legis Ventures is not subject to jurisdiction in any state's courts of general jurisdiction. (*See id.*, ¶¶ 103–04; Mot., Dkt. 84, at 19; Resp., Dkt. 85, at 17). The only dispute is whether the exercise of jurisdiction under Rule 4(k)(2) comports with due process.

"The due process required in federal cases governed by Rule 4(k)(2) is measured with reference to the Fifth Amendment, rather than the Fourteenth Amendment." *Submersible Sys., Inc. v. Perforadora Cent., S.A. de C.V.*, 249 F.3d 413, 420 (5th Cir. 2001). To satisfy due process, Rule 4(k)(2) requires the "familiar minimum contacts" analysis, but considers a defendant's contacts with the United States as a whole rather than with a particular forum state. *Id.*; *World Tanker Carriers*, 99 F.3d at 723. "Thus, to assert general personal jurisdiction under Rule 4(k)(2), [Legis Ventures's] contacts with the United States must be so continuous and systematic as to render it essentially at home in the United States." *Patterson v. Aker Sol's Inc.*, 826 F.3d 231, 234 (5th Cir. 2016). To assert specific personal jurisdiction, MWK's claims must arise out of Legis Ventures's contacts with the United

States. *Submersible Sys.*, 249 F.3d at 420. The burden is on MWK, as the plaintiff, to make a prima

facie showing of Legis Ventures's nationwide minimum contacts. *World Tanker Carriers*, 99 F.3d at

723–24.

MWK has not shown that Legis Ventures has sufficient contacts with the United States to

support general personal jurisdiction. MWK alleges only sparse contacts with the United States. For

example, MWK alleges that Legis created the domain "evanjowers.com" as a portal to advertise

placement of United States-based attorneys in Asia. (2d Am. Compl., Dkt. 80, ¶¶113–17). For that

website, MWK alleges that Legis has a contact address in Louisiana, hosts its domain in California,

and includes contact information using a Massachusetts area code. (*Id.* ¶¶ 115, 118). MWK also

alleges that Jowers and other Legis employees travel to Florida for conferences in order to market

their services, and that Legis has representatives in New York and Boston. (*Id.* ¶¶ 119–20). But

presence of employees in a forum is insufficient for general personal jurisdiction. *Patterson*, 826 F.3d

at 235 (citing *Bowles v. Ranger Land Sys., Inc.*, 527 F. App'x 319, 321–22 (5th Cir. 2013)). And MWK

concedes that Legis does not operate any regular or established place of business in the United

States. (*Id.* ¶ 120). The Court finds that Legis's contacts cannot be fairly said to make it "essentially at

home" in the United States.

Without general personal jurisdiction, MWK must show that its federal claim arises from or

is directly related to Legis Ventures's contacts with the United States. *See Fintech Fund, FLP v. Horne*,

327 F. Supp. 3d 1007, 1018–19 (S.D. Tex. 2018) (citing *Helicopteros*, 104 S. Ct. at 1872 n.8) (analyzing

specific jurisdiction under Rule 4(k)(2)). Defendants argue that none of MWK's claims arise out of

Legis Ventures's purposeful contacts with the United States. (Mot., Dkt. 84, at 20–21). Legis

Ventures is based in Hong Kong, and its alleged activity in the United States, through its website

and presence of a few employees, does not give rise to MWK's claims. (*Id.* at 20). MWK does not

argue otherwise, and it does not even attempt to show that its claims arise out of Legis Ventures's

contacts with the United States as a whole. (*See generally* Resp., Dkt. 85). In fact, rather than argue that its complaint alleges sufficient conduct to support specific personal jurisdiction, MWK argues that it is not required to do so. According to MWK, "[n]othing in Rule 4(k)(2) requires specific contacts with a particular forum to be the basis of the cause of action. . . . [F]ederal jurisdiction . . . can be established under Rule 4(k)(2) when a non-resident defendant transacts business in the United States by specifically targeting United States customers." (*Id.* at 21).

MWK is correct in some sense—it would not be required to show specific jurisdiction if the requirements for general jurisdiction were met. But MWK misses the bigger picture. The minimum contacts inquiry under Rule 4(k)(2) mirrors the due process inquiry under Rule 4(k)(1), except that the relevant contacts are with the United States as a whole rather than a forum state. *See Submersible Sys.*, 249 F.3d at 420. Conducting business in the United States alone is insufficient, *Patterson*, 826 F.3d at 235, and none of the authority cited by MWK convinces the Court otherwise. In fact, in each case cited by MWK, the federal claim asserted arose from or was directly related to a defendant's contacts with the United States.[10] A plaintiff still must allege minimum contacts with the United States to support either general or specific jurisdiction. Here, MWK has not shown that Legis Ventures's contacts with the United States are "continuous and systematic," so it must show that its federal claim arises from or is directly related to Legis's contacts with the United States.

Legis Ventures's contacts with the United States are neither continuous nor systematic— they are isolated and sporadic. For example, MWK says that Legis Ventures hosts a website that advertises its business to potential customers in the United States, (2d Am. Compl., Dkt. 80, ¶¶ 70–

---

[10] *See Peterson v. Islamic Republic of Iran*, No. 10 Civ. 4518(KBF), 2013 WL 1155576, at *16–19 (S.D.N.Y. Mar. 13, 2013) (finding specific jurisdiction for securities claims against foreign banks that engaged in financial transactions for New York-based bonds); *Bluestone Innovations Tex., L.L.C. v. Formosa Epitaxy Inc.*, 822 F. Supp. 2d 657, 660, 664 (E.D. Tex. 2011) (patent infringement claims based on selling infringing products in the United States); *Silver Ring Splint Co. v. Digisplint, Inc.*, 508 F. Supp. 2d 508, 515 (W.D. Va. 2007) (finding that plaintiff's claims involving the marketing or sale of products infringing plaintiff's rights arose out of defendant's activities directed at the United States); *Graduate Mgmt. Admission Council v. Raju*, 241 F. Supp. 2d 589, 590, 597 (E.D. Va. 2003) (trademark and copyright infringement claims based on an internet website with an infringing domain name used to sell copyrighted materials in the United States).

72), its employees periodically travel to the United States for conferences, (*id.* ¶¶ 89–90), and six Legis representatives are based in the United States, (*id.* ¶¶ 73 (Vinokurova in New York), 76–78 (Jason Cunningham in Boston, New York, and Los Angeles), 85 (Joshua Carr in New York and Florida), 86 (Jade Sealey in Los Angeles), 87 (Adam Langer in New York), 88 (Alexis Lamb in New York and Florida)). These contacts might support specific jurisdiction, but MWK has not shown how they are related to its claims. The Court thus finds that MWK has not stated a prima facie case that Legis Ventures is subject to this Court's personal jurisdiction under Rule 4(k)(2).

### 3.   <u>Vargas</u>

Like Jowers, MWK does not contend that Vargas is subject to this Court's general personal jurisdiction.[11] (*See* 2d Am. Compl., Dkt. 80, ¶¶ 131–35). But unlike Jowers, MWK does not argue that Vargas is subject to this Court's specific personal jurisdiction. (*Id.*). MWK only argues that jurisdiction is proper by attributing Legis Ventures's contacts to him. (*See id.*; Resp., Dkt. 85, at 22–23). Specifically, MWK alleges that the Court has jurisdiction over Vargas because "Legis is the alter ego of Vargas," Legis was formed and used for illegal purposes in violation of 18 U.S.C. § 1831, and Legis has been used as a sham to perpetuate fraud. (2d Am. Compl., Dkt. 80, ¶ 131). MWK also argues, briefly and without explanation, that it is suing Vargas for his own conduct when he formed and used Legis Ventures for "illegal purposes" and when he assisted with the theft of MWK's property. (2d Am. Compl., Dkt. 80, ¶ 135; Resp., Dkt. 85, at 23). As already stated, MWK has not shown that Legis Ventures has sufficient minimum contacts with the United States to support personal jurisdiction. Therefore, even assuming Legis Ventures is Vargas's alter ego, there would be insufficient contacts to support personal jurisdiction.

---

[11] The complaint alleges that Vargas is a citizen and resident of Colombia. (2d Am. Compl., Dkt. 80, ¶ 4). In his declaration, Vargas states that he is a citizen of Chile and Spain and a permanent resident of Hong Kong. (Vargas Decl., Dkt. 84-2, ¶ 3). Regardless, it is undisputed that Vargas is neither a citizen nor a resident of the United States, and he does not regularly travel to the United States. (*See id.* ¶ 4; 2d Am. Compl., Dkt. 80, ¶ 4).

Additionally, MWK's conclusory allegation that it is suing Vargas for his "own conduct," stated without explanation, is woefully insufficient. There are no sufficiently detailed allegations that would allow the Court to plausibly infer that Vargas leveraged Legis to deprive MWK of its trade secrets, that Vargas knew Jowers stole MWK's trade secrets, or that Vargas participated in any conduct directed at the forum. Vargas's only involvement here appears to be that his company, Legis Ventures, employed Jowers and Vinokurova after they left Kinney Recruiting, LLC. Vargas denies having recruited either of them. (Vargas Decl., Dkt. 84-2, ¶ 7). MWK's complaint does not make specific factual allegations that Vargas engaged in any of the alleged wrongdoing giving rise to MWK's claims. Accordingly, the Court lacks personal jurisdiction over Vargas.

### B.  Failure to State a Claim

Defendants move to dismiss MWK's claims against them for misappropriation of trade secrets, breach of contract, and civil conspiracy for failure to state a claim. They also argue that MWK is not entitled to exemplary damages or attorney fees.

### 1.  Misappropriation of Trade Secrets

MWK alleges that Jowers and Vinokurova misappropriated its trade secrets in violation of the Federal Defend Trade Secrets Act and the Texas Uniform Trade Secrets Act. (2d Am. Compl., Dkt. 80, ¶¶ 136–54). Misappropriation under both statutes includes (1) "disclosure or use of a trade secret of another without express or implied consent by a person who . . . used improper means to acquire knowledge of the trade secret" and (2) "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means." Tex. Civ. Prac. & Rem. Code § 134A.002(3); 18 U.S.C. § 1839(5). "Improper means" include the "breach or inducement of a breach of a duty to maintain secrecy." Tex. Civ. Prac. & Rem. Code § 134A.002(2); 18 U.S.C. § 1839(6)(A). Defendants argue that MWK has not alleged that

it had any actual trade secrets, that any trade secrets were misappropriated, or it suffered any damages. (Mot., Dkt. 84, at 25–26).

*a.   Trade Secrets*

MWK claims the following information as its trade secrets:

> [I]nformation about MWK candidates' desires to change employer, their preferences regarding any possible change of employer, such as their compensation expectations, their personal situations, etc. [and] information about clients of MWK, such as the types of candidate they want to hire, their proclivities related to negotiations, hiring, "secret" financial information, vulnerabilities, etc.

(Resp., Dkt. 85, at 24 (quoting 2d Am. Compl., Dkt. 80, ¶¶ 137, 147, 160, 171)). MWK argues that this information is not readily ascertainable because "only through MWK's reputation of maintaining confidences with its candidates and clients are the candidates and clients willing to share this protected information with MWK." (*Id.* (quoting 2d Am. Compl., Dkt. 80, ¶¶ 137, 147)).

Defendants argue that the names and information of MWK's clients and customers are publicly available or readily accessible, and thus cannot constitute a trade secret. (Mot., Dkt. 84, at 26). They say that MWK has admitted that "relevant information about MWK's clients and candidates is available to any member of the public who cares to look at publicly available information." (*Id.* (quoting 2d Am. Compl., Dkt. 80, ¶¶ 137, 147)). Accordingly, Defendants argue that this information is "readily ascertainable" and thus cannot constitute a trade secret. (Mot., Dkt. 84, at 26–27 (citing *Interox Am.*, 736 F.2d 194, 201 (5th Cir. 1984))). MWK responds that it only obtained this information from its customers and clients through its reputation for confidentiality. (Resp., Dkt. 85, at 24–25).

Under both the DTSA and TUTSA, a trade secret is defined as information the owner has taken reasonable measures to keep secret and which derives independent economic value from not being generally known or readily ascertainable through proper means. Tex. Civ. Prac. & Rem. Code

§ 134A.002(6); 18 U.S.C. § 1839(3). To determine whether a trade secret exists, courts examine several factors:

> (1) the extent to which the information is known outside of his business; (2) the extent to which it is known by employees and others involved in his business; (3) the extent of the measures taken by him to guard the secrecy of the information; (4) the value of the information to him and to his competitors; (5) the amount of effort or money expended by him in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*In re Bass*, 113 S.W.3d 735, 739 (Tex. 2003). A trade secret must actually be a secret: the owner must take "reasonable measures under the circumstances to keep the information secret" and the information must derive economic value from not being generally known or readily ascertainable through proper means. Tex. Civ. Prac. & Rem. Code § 134A.002(6). "Consistent with this concept of secrecy, a former employee may use the general knowledge, skills, and experience acquired during employment to compete with a former employer." *Trilogy Software, Inc. v. Callidus Software, Inc.*, 143 S.W.3d 452, 467 (Tex. App.—Austin 2004, pet. denied). In considering whether information is readily ascertainable, courts have considered the expense of compiling it and the method used to acquire customer information. *See Alliantgroup, L.P. v. Feingold*, 803 F. Supp. 2d 610, 625–26 (S.D. Tex. 2011). "Even if the information is readily available in the industry, it will be protected if the competitor obtained it working for the former employer." *Id.* (citing *Brummerhop*, 840 S.W.2d at 633).

MWK has plausibly alleged that its client information was confidential and a trade secret. Texas courts have recognized customer lists, client information, customer preferences, and buyer contacts as examples of trade secrets to the extent they are not "readily ascertainable." *See Nova Consulting Grp., Inc. v. Eng'g Consulting Servs., Ltd.*, 290 F. App'x 727, 734 (5th Cir. 2008); *Guy Carpenter & Co. v. Provenzale*, 334 F.3d 459, 467 (5th Cir. 2003). MWK has specifically detailed the measures it took to keep its information secret such as password-protecting its databases in Austin, using security technology, and requiring each employee and contractor to sign a confidentiality agreement. (2d Am. Compl., Dkt. 80, ¶¶ 52, 54–57, 138, 148; *see* Jowers Emp't Agreement, Dkt. 80-1, ¶ 7.1).

Under the employee agreement, the information identified by MWK is considered its "proprietary information." (2d Am. Compl., Dkt. 80, ¶ 57–58; *see, e.g.,* Jowers Emp't Agreement, Dkt. 80-1, ¶ 1.6). MWK further alleges that it was only able to obtain this information after developing a reputation for confidentiality and years of effort, and that its business model, market position, and profit depend on preserving secrecy. (2d Am. Compl., Dkt. 80, ¶¶ 139–41, 149–51). Finally, although Defendants argue that they could discover MWK's information by independent development, MWK alleges that Defendants had access to the information at issue through employment with MWK— MWK alleges that Jowers obtained information regarding six clients during his employment and shared that information with Vargas. (*See id.* ¶¶ 50, 52, 60–61). Indeed, according to the complaint, Jowers passed along the information of six candidates to a direct competitor rather than through his employer while he was still employed. MWK has thus plausibly alleged that the information at issue was a protected trade secret.

### b.   *Misappropriation*

Defendants next argue that MWK has not plausibly alleged that they misappropriated any of MWK's trade secrets because MWK has not shown that the information was acquired through improper means or that the information was used or disclosed. (Mot., Dkt. 84, at 27–28). Defendants say that MWK only includes vague allegations that Jowers and Vinokurova had access to MWK's trade secrets during their employment, but they fail to allege that they acquired them through improper means or used the trade secrets. (*Id.*). With respect to the six candidates Jowers submitted to Vargas, Defendants contend that the candidates themselves pursued Jowers to have him represent them. (*Id.* at 27 (citing 2d Am. Compl., Dkt. 80, ¶¶ 62–65)).

To show misappropriation, MWK must show that Defendants acquired its trade secrets through improper means, such as through "breach or inducement of a breach of a duty to maintain secrecy." Tex. Civ. Prac. & Rem. Code § 134A.002(2); 18 U.S.C. § 1839(6)(A). A defendant can be

liable for misappropriation of trade secrets if, at the time of the unauthorized use or disclosure of the information, the defendant knew he obtained the information under circumstances giving rise to a duty to maintain its secrecy. Tex. Civ. Prac. & Rem. Code § 134A.002(3)(B)(ii)(b).

Such is the case here. Both Jowers and Vinokurova obtained information from MWK regarding its clients during their employment. And both signed employment agreements where they acknowledged receipt of confidential proprietary information and agreed to maintain its confidentiality. (Jowers Emp't Agreement, Dkt. 80-1; Vinokurova Emp't Agreement, Dkt. 80-2). As a result, MWK has plausibly alleged that Defendants acquired trade secrets under a duty to maintain their secrecy. *See Lifesize, Inc. v. Chimene*, No. 1:16-CV-1109-RP, 2017 WL 1532609, at *9 (W.D. Tex. Apr. 26, 2017). The allegations that Jowers and Vinokurova signed confidentiality agreements are sufficient to show that they knew of their duty to maintain confidentiality. And MWK has included sufficient allegations that Jowers used its trade secrets by submitting six candidates to Vargas instead of MWK. (2d Am. Compl., Dkt. 80, ¶¶ 61–63). Jowers's explanation that he did so at the candidates' request might explain his actions if true, but it does not negate the plausibility of MWK's allegations at the pleading stage.

Although MWK includes sufficient allegations that Jowers used MWK's trade secrets, MWK's allegations that Vinokurova did so are conclusory at best. (*See id.* ¶¶ 59–62). The complaint alleges that Jowers obtained MWK's confidential trade secret information concerning six MWK candidates and shared that information with Vargas. (*Id.*). By contrast, the complaint only alleges that Vinokurova "obtained trade secrets from MWK," that Vinokurova now works for Legis Ventures, and that she "disclosed or used trade secret information" to match candidates with law firms. (*See id.* ¶¶ 60, 69, 144). There is no indication of what confidential information she obtained, how she obtained it, or how she used it. This pleading is insufficient to allege that Vinokurova misappropriated any trade secrets.

*c. Damages*

Finally, Defendants say that MWK has not sufficiently alleged it was injured. (Mot., Dkt. 84, at 29). Specifically, Defendants question the causal connection between any alleged misappropriation and the harm; Defendants contend that MWK cannot allege that it would have actually placed any of the six named candidates, and those candidates "chose to work with [Jowers]" and "did not want [MWK] involved in their search." (*Id.* (quoting 2d Am. Compl., Dkt. 80, ¶ 64). MWK responds that its injuries include: the value obtained by defendants from placements made using MWK's trade secrets, MWK's lost profits from the improper use and disclosure of trade secrets, and the costs MWK incurred in developing its trade secrets. (Resp., Dkt. 85, at 26).

"Damages in misappropriation cases can take several forms: the value of plaintiff's lost profits; the defendant's actual profits from the use of the secret[;] the value that a reasonably prudent investor would have paid for the trade secret; the development costs the defendant avoided incurring through misappropriation; and a 'reasonable royalty.'" *Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 879 (5th Cir. 2013) (quoting *Bohnsack v. Varco, L.P.*, 668 F.3d 262, 280 (5th Cir. 2012)). Defendants concede that at least two of the six candidates identified by MWK were placed at law offices in Asia. (Mot., Dkt. 84, at 17). Accordingly, MWK has plausibly alleged that it was damaged by Jowers's conduct either through its lost profits or through Jowers's actual profits.

2. <u>Breach of Contract: Employment Agreements</u>

MWK also alleges that Jowers and Vinokurova breached obligations of confidentiality and non-solicitation provisions in their respective employment agreements (2d Am. Compl., Dkt. 80, ¶¶ 157–58, 179–80). Defendants argue that those restrictive covenants are unenforceable because (1) MWK does not have a protectable business interest in preventing disclosure of purported trade secrets; (2) MWK does not have a protectable business interest in preventing Jowers or Vinokurova from maintaining client relationships they developed during employment; (3) the confidentiality and

non-solicitation provisions are overbroad, unreasonable, and greater than necessary to protect its business interests; and (4) MWK has not alleged any act that allegedly breached the restrictive covenants. (Mot., Dkt. 84, at 30–33).

Under both Florida and Texas law,[12] "a contract providing restrictions on competition must involve a legitimate business interest as defined by statute to be enforceable." *White v. Mederi Caretenders Visiting Servs. of Se. Fla., LLC*, 226 So.3d 774, 779 (Fla. 2017); *see also* Fla. Stat. § 542.335(1)(b); *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 681 (Tex. 1990) ("An agreement not to compete is in restraint of trade and therefore unenforceable . . . unless it is reasonable."). Restrictive covenants are enforceable if (1) they are reasonable in time, area, and line of business; set forth in a writing signed by the party against whom enforcement is sought; and are reasonably necessary to protect that interest; and (2) the contractually specified restraint is supported by at least one legitimate business interest justifying the restraint. *See* Fla. Stat. § 542.335(1); *Env'l Servs., Inc. v. Carter*, 9 So. 3d 1258, 1263 (Fla. 5th Dist. Ct. App. 2009); *TFC Partners, Inc. v. Stratton Amenities, LLC*, No. 1:19-CV-58-RP, 2019 WL 369152, at *5 (W.D. Tex. Jan. 30, 2019) (quoting Tex. Bus. & Com. Code § 15.50(a)).

Under Florida law, legitimate business interests include: (1) trade secrets, (2) valuable confidential business or professional information that otherwise does not qualify as trade secrets; (3) substantial relationships with specific prospective or existing customers, patients, or clients business; (4) customer, patient, or client goodwill; or (5) extraordinary or specialized training. Fla. Stat. § 542.335(1)(b). A person seeking enforcement of a restrictive covenant bears the initial burden to establish a prima facie case that the restraint is reasonably necessary. *Id.* § 542.335(1)(c). The burden then shifts to the person opposing enforcement to show that the restraint is overbroad or not reasonably necessary. *Id.* The court must then "modify the restraint and grant only the relief

---

[12] Jowers's employment agreement is governed by Florida law; Vinokurova's employment agreement is governed by Texas law. (*See* Jowers Emp't Agreement, Dkt. 80-1, ¶ 12; Vinokurova Emp't Agreement, Dkt. 80-2, ¶ 12).

reasonably necessary to protect such interest or interests." *Id.* In Texas, the court may "dispense[ ] with one or more" of these limitations "when the totality of circumstances indicate[ ] that the covenant not to compete [is] reasonably narrow to protect a company's business interest or goodwill." *M-I LLC v. Stelly*, 733 F. Supp. 2d 759, 799 (S.D. Tex. 2010).

Under the employment agreements, Jowers and Vinokurova agreed to maintain confidentiality of MWK's proprietary information. First, they agreed to "not engage in any other business activities in competition" with MWK. (Jowers Emp't Agreement, Dkt. 80-1, ¶ 4.4; Vinokurova Emp't Agreement, Dkt. 80-2, ¶ 4.4). They also agreed to the non-disclosure of MWK's proprietary information[13] upon termination:

> Upon termination of employee's employment, the Employee will not retain any copies of the Company's Proprietary Information. When the Employee's service with tile Company is completed, Employee will immediately deliver to the Company all Proprietary Information, together with all copies thereof, and any other material containing or disclosing any Proprietary Information.

(*Id.* ¶ 7.1). Jowers and Vinokurova also acknowledged that they would have access to MWK's proprietary information during their employment and agreed to "hold in strictest confidence and will not disclose, discuss, transmit, use, lecture upon, or publish any Proprietary information, except as . . . may be required in connection with employment." The agreements further provide that "[a]t all times during and after the Employee's employment, the Employee shall not use or disclose to any

---

[13] The agreement defines "Proprietary Information" as:

> the Company's confidential information, including but not limited to client and candidate lists, interim employees, personal information supplied by candidates and interim employees, information concerning the identity of clients and their personnel, the personnel and partnership needs and requirements of clients, terms and conditions under which the Company deals with clients, billing rates, profit margins, financial data, applications, resumes, candidate and employee data sheets, job orders, search assignments, planners, invoices, manuals, computer programs and data, Company personnel information, audio and video cassettes, records, and any information received from a client or candidate under an expectation of confidentiality. The terms "customer list" and "candidate list" are not limited to physical writings or compilations. "Customer lists" and 'candidate lists' include information contained in or reproduced from the memory of an employee. The Company's Proprietary Information includes all such information developed by its employees, whether or not during working hours, that is related to Company's business. The Company's Proprietary Information may also be trade secrets.

(Jowers Emp't Agreement, Dkt. 80-1, ¶ 1.6; Vinokurova Emp't Agreement, Dkt. 80-2, ¶ 1.6).

person the Company's Proprietary Information, except as such disclosure or use may be required in connection with the Employee's employment." (*Id.* ¶ 7.2). Jowers and Vinokurova are also prohibited from "solicit[ing] or provid[ing] services to any candidate or client with whom [he or she] had contact with, knowledge of, or access to during the twelve months immediately preceding" their date of termination, or from assisting any company in doing so, for one year following termination. (*Id.* ¶ 8.1).

Defendants argue that MWK has not pleaded any protectable business interest in preventing disclosure of its information because the purported trade secrets MWK identifies are related to third-party personal information and are publicly available. (Mot., Dkt. 84, at 30–31). And they argue that MWK has not alleged any protectable business interest in its client relationships. MWK argues that the confidential information provides MWK with a competitive business advantage in the placement of its candidates with employers. (Resp., Dkt. 85, at 29). Defendants argue that the non-solicitation provision cannot be enforced because MWK has no protectable interest in preventing Jowers or Vinokurova from maintaining client and candidate relationships that they personally developed. (Mot., Dkt. 84, at 32). As the Court already determined, however, MWK has properly alleged that it has a protectable interest in the client information it gathers, particularly where an employee accesses that information within the scope of his employment. This is not an instance of an employee applying skills learned on the job to a new employment venture; this case concerns disclosure of valuable *information* obtained during employment to a direct competitor.

Next, Defendants argue that the confidentiality and non-solicitation covenants are overbroad, unreasonable, and greater than necessary to protect MWK's purported business interests. (*Id.*). Here, Defendants contend that because the confidentiality provision has no time limitation, it is in itself manifestly unreasonable. (*Id.*). And they say the non-solicitation provision "imposes a greater burden than necessary on employees whose livelihood depends on recruiting individuals

through widespread communications to attorneys and law offices." (*Id.* at 33). MWK alleges that Jowers submitted six of its candidates to a direct competitor while he was still employed with MWK. (*See* 2d Am. Compl., Dkt. 80, ¶¶ 60–65). Even if the confidentiality and non-solicitation provisions were overbroad, the Court finds that MWK's complaint sufficiently alleges a violation of a reasonably reformed agreement.

Finally, Defendants argue that MWK has not pointed to any act that allegedly breached the covenants in Jowers's or Vinokurova's employment agreements. (Mot., Dkt. 84, at 33). As already stated, MWK is highly specific in alleging acts by Jowers that purportedly violated his employment agreement. (*See* 2d Am. Compl., Dkt. 80, ¶¶ 60–65). With respect to Vinokurova, however, the Court agrees that there are no sufficiently detailed allegations that Vinokurova breached the restrictive covenants. As with its misappropriation claim, MWK has not explained what information Vinokurova allegedly disclosed, what attorney candidates she placed, what contact she had with candidates, or whether her conduct occurred during the non-compete period in her agreement. As a result, MWK has not plausibly stated a claim against Vinokurova.

### 3.   Breach of Contract: Forgivable and Revolving Loans

MWK alleges that Jowers breached two additional agreements: the Forgivable and Revolving Loans.[14] (2d Am. Compl., Dkt. 80, ¶¶ 184–203). Jowers argues that MWK's breach of contract claims against him based on the loans fail because they do not include any allegations supporting the elements of a breach of contract claim. (Mot., Dkt. 84, at 33). In order to state a claim for breach of contract under Texas law,[15] a plaintiff must show: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of contract by the defendant;

---

[14] As already stated *supra* Section III.A.1.a., MWK refers to the alleged breach of the "Revolving Loan Agreement" as the "line of credit" breach of contract claim and the alleged breach of the "Forgivable Loan Agreement" as the "loan" breach of contract claim. (*See* Revolving Loan, Dkt. 80-6; Forgivable Loan, Dkt. 80-4).

[15] Unlike Jowers's employment agreement, the loans are governed by Texas law. (*See* Forgivable Loan, Dkt. 80-4, ¶ 12(a); Revolving Loan, Dkt. 80-6, at 4).

and (4) damages to the plaintiff resulting from that breach. *Williams v. Wells Fargo Bank, N.A.*, 884 F.3d 239, 244 (5th Cir. 2018) (quoting *Caprock Inv. Corp. v. Montgomery*, 321 S.W.3d 91, 99 (Tex. App.—Eastland 2010, pet. denied)).

Jowers argues that MWK's allegations based on the loans are conclusory and that MWK does not allege a specific balance owed, what Jowers did to breach those agreements, or explain an apparent discrepancy between the "balance outstanding" or the amount "owed" and the amount requested by MWK. (*See* 2d Am. Compl., Dkt. 80, ¶¶ 190, 192, 200, 202). The Court disagrees and finds that MWK has plausibly stated a claim to relief.

Jowers does not contest that a valid contract exists or that MWK performed under the loans. In essence, Jowers argues that MWK's allegations are insufficient to show that he breached either loan agreement or that MWK suffered damages resulting from his breach. (*See* Mot., Dkt. 84, at 33–34). In both cases, however, MWK has plausibly alleged breach. The Forgivable Loan specifies that upon either Jowers's transfer or termination of employment for any reason, "any outstanding Principal Amount will be immediately due and payable." (Forgivable Loan, Dkt. 80-4, ¶ 6(a), (b)). The Revolving Loan specified that the unpaid principal balance plus accrued interest was due in full on December 31, 2013. (Revolving Loan, Dkt. 80-6, at 2). For both loans, MWK alleges that Jowers breached the terms of the notes by failing to repay them when they were due to be paid in full. (2d. Am. Compl., Dkt. 80, ¶¶ 190–91, 200–01). And MWK alleges that it was damaged as a result of Jowers's failure to pay the amount due: $61,371.05 under the Revolving Loan and $ 24,603.47 under the Forgivable Loan. (2d. Am. Compl., Dkt. 80, ¶¶ 193, 203).

Jowers disputes MWK's accounting of the amount owed under either agreement, but MWK is not required to prove its case, or the exact amount of its damages, at the pleading stage. It is enough to support a plausible inference that MWK was damaged as a result of the alleged breach. Accordingly, MWK has plausibly alleged a breach of contract claim based on the loans.

4.   Civil Conspiracy

In order to establish a claim for civil conspiracy, a plaintiff must show: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result. *Apani Sw., Inc. v. Coca-Cola Enters., Inc.*, 300 F.3d 620, 635 (5th Cir. 2002). MWK's complaint does not contain sufficient detail that would permit the court to plausibly infer a cause of action for civil conspiracy. For example, MWK asserts in a conclusory fashion that Defendants "established a meeting of the minds," but does not allege basic details of that meeting or the purported aim of any conspiracy. (*See* 2d Am. Compl., Dkt. 80, ¶¶ 205–09). Additionally, MWK has failed to allege that Vinokurova or Vargas committed any unlawful act, leaving only its allegations against Jowers. Thus, the Court finds that MWK's civil conspiracy claim should be dismissed.

5.   Exemplary Damages and Attorney Fees

Defendants finally argue that MWK fails to allege a viable tort claim to support its claim for exemplary damages or attorney fees. (Mot., Dkt. 84, at 36). For a misappropriation of trade secrets claim, exemplary damages and attorney fees are available only for "willful and malicious" conduct. 18 U.S.C. § 1836(b)(3)(C); Tex. Civ. Prac. & Rem. Code § 134A.004(b). As stated above, the Court concludes that MWK has plausibly alleged a claim for misappropriation of trade secrets. MWK contends that such conduct was willful. (2d Am. Compl., Dkt. 80, ¶¶ 210–11). Whether or not Defendants' conduct was willful will be determined on the merits.

**IV. CONCLUSION**

For the reasons given above, **IT IS ORDERED** that Defendants' Motion to Dismiss, (Dkt. 84), is **GRANTED IN PART**. Plaintiff MWK's claims against Defendants Legis Ventures and Vargas for misappropriation of trade secrets under the Federal Defend Trade Secrets Act and the Texas Uniform Trade Secrets Act and civil conspiracy are **DISMISSED** for lack of personal

jurisdiction. Plaintiff MWK's claims against Vinokurova for misappropriation of trade secrets under the Federal Defend Trade Secrets Act and the Texas Uniform Trade Secrets Act and breach of contract are **DISMISSED** for failure to state a claim upon which relief could be granted. Plaintiff MWK's civil conspiracy claim is **DISMISSED** for failure to state a claim upon which relief could be granted. Defendants' motion is **DENIED** with respect to the claims against Jowers in all other respects.

      **SIGNED** on July 29, 2019.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE