## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | |
|---|---|
| **MWK RECRUITING, INC.**<br><br>         **Plaintiff,**<br><br>    **v.**<br><br>**EVAN P. JOWERS, YULIYA VINOKUROVA, ALEJANDRO VARGAS, and LEGIS VENTURES (HK) COMPANY LIMITED (aka Jowers / Vargas),**<br><br>         **Defendants.** | **Civil Action No. 1:18-cv-00444** |
| **EVAN P. JOWERS**<br><br>         **Counterclaimant,**<br><br>    **v.**<br><br>**MWK RECRUITING, INC.**<br><br>         **Counterdefendant.** | |
| **EVAN P. JOWERS**<br><br>         **Third-Party Plaintiff,**<br><br>    **v.**<br><br>**ROBERT E. KINNEY, MICHELLE W. KINNEY, RECRUITING PARTNERS GP, INC., KINNEY RECRUITING LLC, COUNSEL UNLIMITED LLC, KINNEY RECRUITING LIMITED**<br><br>         **Third-Party Defendants.** | |

## ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND THIRD-PARTY COMPLAINT OF DEFENDANT EVAN P. JOWERS TO MWK RECRUITING, INC.'S <u>SECOND AMENDED COMPLAINT</u>

Evan P. Jowers ("**Jowers**" or "**Defendant**") hereby files his Answer, Affirmative Defenses, and Counterclaims in response to the Second Amended Complaint [ECF No. 80] filed by MWK Recruiting Inc., now known as Counsel Holdings Inc. ("**MWK**"),[1] and Third-Party Complaint against Robert E. Kinney ("**Kinney**") and Michelle W. Kinney, individually, and Recruiting Partners GP, Inc., Kinney Recruiting LLC, Counsel Unlimited LLC, and Kinney Recruiting Limited ("**Kinney Recruiting HK**," and collectively, the "**Kinney Entities**").

## THE PARTIES

1.      Defendant is without sufficient information to admit or deny the allegations in paragraph 1 of the Second Amended Complaint and therefore denies the same and any inferences therefrom.

2.      Defendant admits that he is an individual and that he has a residence in the state of Florida. Defendant denies the other allegations set forth in paragraph 2 of the Second Amended Complaint and any inferences therefrom.

3.      The allegations in paragraph 3 of the Second Amended Complaint concern an individual who is no longer a party to this case. Therefore, no response is required. To the extent a response is required, Defendant admits the allegations in paragraph 3 of the Second Amended Complaint and any inferences therefrom.

4.      The allegations in paragraph 4 of the Second Amended Complaint concern an individual who is no longer a party to this case. Therefore, no response is required. To the extent a response is required, Defendant denies the allegations in paragraph 4 of the Second Amended Complaint and any inferences therefrom.

---

[1] The Second Amended Complaint also named Yuliya Vinokurova, Alejandro Vargas, and Legis Ventures (HK) Company Limited as defendants in this action. By order dated July 29, 2019 [ECF No. 87], the Court dismissed all claims against the non-Jowers defendants, leaving Jowers as the only remaining defendant in this action.

5.      The allegations in paragraph 5 of the Second Amended Complaint concern an entity that is no longer a party to this case. Therefore, no response is required. To the extent a response is required, Defendant admits the allegations in paragraph 5 of the Second Amended Complaint.

## JURISDICTION AND VENUE

6.      Paragraph 6 of the Second Amended Complaint does not contain any allegations to which a response is required, and Defendant therefore denies the allegations in paragraph 6 of the Second Amended Complaint and any inferences therefrom. Defendant specifically denies that MWK has asserted valid claims under the Federal Defense of Trade Secrets Act.

7.      Defendant admits that there is complete diversity among the parties. Defendant is without sufficient information to admit or deny the remaining allegations in paragraph 7 of the Second Amended Complaint and therefore denies the same and any inferences therefrom.

8.      Defendant admits that this Court has subject matter jurisdiction over this action. In all other respects, Defendant denies the allegations in paragraph 8 of the Second Amended Complaint and any inferences therefrom.

9.      Defendant admits the allegations in paragraph 9 of the Second Amended Complaint.

## NON-PARTY ENTITIES

10.     Defendant is without sufficient information to admit or deny the allegations in paragraph 10 of the Second Amended Complaint and therefore denies the same and any inferences therefrom.

11.     Defendant is without sufficient information to admit or deny the allegations in paragraph 11 of the Second Amended Complaint and therefore denies the same and any inferences therefrom.

12.     Defendant is without sufficient information to admit or deny the allegations in paragraph 12 of the Second Amended Complaint and therefore denies the same and any inferences therefrom.

13.     Defendant is without sufficient information to admit or deny the allegations in paragraph 13 of the Second Amended Complaint and therefore denies the same and any inferences therefrom.

14.     Defendant is without sufficient information to admit or deny the allegations in paragraph 14 of the Second Amended Complaint and therefore denies the same and any inferences therefrom.

15.     Defendant is without sufficient information to admit or deny the allegations in paragraph 15 of the Second Amended Complaint and therefore denies the same and any inferences therefrom.

16.     Defendant is without sufficient information to admit or deny the allegations in paragraph 16 of the Second Amended Complaint and therefore denies the same and any inferences therefrom.

17.     Defendant is without sufficient information to admit or deny the allegations in paragraph 17 of the Second Amended Complaint and therefore denies the same and any inferences therefrom.

**AGREEMENTS, ASSIGNMENTS, CONVERSIONS, AND MERGERS**

18.     Defendant admits that Defendant and Kinney Recruiting L.P. ("**KR-LP**") each executed an Associate Recruiter Employment Agreement effective May 1, 2016 (the "**Jowers Agreement**"), a copy of which appears to be attached to the Second Amended Complaint as Exhibit 1. Defendant denies the other allegations in paragraph 18 of the Second Amended Complaint and any inferences therefrom.

19.     Defendant states that the terms of the Jowers Agreement speak for themselves and, accordingly, paragraph 19 of the Second Amended Complaint states only legal conclusions to which no response is required. For that reason, Defendant denies the allegations set forth in paragraph 19 of the Second Amended Complaint and any inferences therefrom.

20.     Defendant states that the terms of the Jowers Agreement speak for themselves and, accordingly, paragraph 20 of the Second Amended Complaint states only legal conclusions to which no response is required. For that reason, Defendant denies the allegations set forth in paragraph 20 of the Second Amended Complaint and any inferences therefrom.

21.     Defendant states that the terms of the Jowers Agreement speak for themselves and, accordingly, paragraph 21 of the Second Amended Complaint states only legal conclusions to which no response is required. For that reason, Defendant denies the allegations set forth in paragraph 21 of the Second Amended Complaint and any inferences therefrom.

22.     Paragraph 22 of the Second Amended Complaint states only legal conclusions to which no response is required. For that reason, Defendant denies the allegations set forth in paragraph 22 of the Second Amended Complaint and any inferences therefrom.

23.     The allegations in paragraph 23 of the Second Amended Complaint concern an individual who is no longer a party to this case. Therefore, no response is required. To the extent

a response is required, Defendant denies the allegations in paragraph 23 of the Second Amended Complaint and any inferences therefrom.

24.    The allegations in paragraph 24 of the Second Amended Complaint concern an individual who is no longer a party to this case. Therefore, no response is required. To the extent a response is required, Defendant states that paragraph 24 of the Second Amended Complaint contains only legal conclusions to which no response is required. For that reason, Defendant denies the allegations set forth in paragraph 24 of the Second Amended Complaint and any inferences therefrom.

25.    The allegations in paragraph 25 of the Second Amended Complaint concern an individual who is no longer a party to this case. Therefore, no response is required. To the extent a response is required, Defendant states that paragraph 25 of the Second Amended Complaint contains only legal conclusions to which no response is required. For that reason, Defendant denies the allegations set forth in paragraph 25 of the Second Amended Complaint and any inferences therefrom.

26.    The allegations in paragraph 26 of the Second Amended Complaint concern an individual who is no longer a party to this case. Therefore, no response is required. To the extent a response is required, Defendant states that paragraph 26 of the Second Amended Complaint contains only legal conclusions to which no response is required. For that reason, Defendant denies the allegations set forth in paragraph 26 of the Second Amended Complaint and any inferences therefrom.

27.    The allegations in paragraph 27 of the Second Amended Complaint concern an individual who is no longer a party to this case. Therefore, no response is required. To the extent a response is required, Defendant states that paragraph 27 of the Second Amended Complaint

contains only legal conclusions to which no response is required. For that reason, Defendant denies the allegations set forth in paragraph 27 of the Second Amended Complaint and any inferences therefrom.

28.     Defendant is without sufficient information to admit or deny the allegations in paragraph 28 of the Second Amended Complaint and therefore denies the same and any inferences therefrom.

29.     Defendant admits that his 2008, 2009, 2011, and 2012 W-2s list "Recruiting Partners GP Inc." as his employer. The remainder of the allegations in paragraph 29 of the Second Amended Complaint state only legal conclusions to which no response is required. For that reason, Defendant denies the remaining allegations set forth in paragraph 29 of the Second Amended Complaint and any inferences therefrom.

30.     The allegations in paragraph 30 of the Second Amended Complaint concern an individual who is no longer a party to this case. Therefore, no response is required. To the extent a response is required, Defendant states that he is without sufficient information to admit or deny whether Yuliya Vinokurova ("**Vinokurova**") received W-2s to her address identifying her employer as RP-GP, and therefore denies the same. The remainder of the allegations in paragraph 30 of the Second Amended Complaint state only legal conclusions to which no response is required. For that reason, Defendant denies the remaining allegations set forth in paragraph 30 of the Second Amended Complaint and any inferences therefrom.

31.     Defendant admits that he was forced by Robert Kinney to sign a document styled "Forgivable Loan Agreement." Defendant denies all of the remaining allegations in paragraph 31 of the Second Amended Complaint and any inferences therefrom.

32.     Defendant states that the terms of the Forgivable Loan Agreement speak for themselves and, accordingly, paragraph 32 of the Second Amended Complaint states only legal conclusions to which no response is required. For that reason, Defendant denies the allegations set forth in paragraph 32 of the Second Amended Complaint and any inferences therefrom.

33.     Defendant states that the terms of the Forgivable Loan Agreement speak for themselves and, accordingly, paragraph 33 of the Second Amended Complaint states only legal conclusions to which no response is required. For that reason, Defendant denies the allegations set forth in paragraph 33 of the Second Amended Complaint and any inferences therefrom.

34.     Defendant is without sufficient knowledge to admit or deny the allegations in paragraph 34 of the Second Amended Complaint. Further, the last sentence of paragraph 34 of the Second Amended Complaint states legal conclusions to which no response is required. Therefore, Defendant denies all of the allegations in paragraph 34 of the Second Amended Complaint and any inferences therefrom.

35.      Defendant admits that his W-2s for the years 2012 through 2016 list "Kinney Recruiting LLC" as his employer. The remainder of the allegations in paragraph 35 of the Second Amended Complaint state only legal conclusions to which no response is required. For that reason, Defendant denies the remaining allegations set forth in paragraph 35 of the Second Amended Complaint and any inferences therefrom.

36.     The allegations in paragraph 36 of the Second Amended Complaint concern an individual who is no longer a party to this case. Therefore, no response is required. To the extent a response is required, Defendant states that he is without sufficient information to admit or deny whether Vinokurova received W-2s to her address identifying her employer as KR-LLC, and therefore denies the same. The remainder of the allegations in paragraph 36 of the Second

Amended Complaint state only legal conclusions to which no response is required. For that reason, Defendant denies the remaining allegations set forth in paragraph 36 of the Second Amended Complaint and any inferences therefrom.

37.     Defendant admits that Robert Kinney forced him to sign documents styled "Promissory Note" and "Loan Agreement." Defendant denies the remaining allegations in paragraph 37 of the Second Amended Complaint and any inferences therefrom.

38.     Defendant states that the terms of the Revolving Loan Agreement speak for themselves and, accordingly, paragraph 38 of the Second Amended Complaint states only legal conclusions to which no response is required. For that reason, Defendant denies the allegations set forth in paragraph 38 of the Second Amended Complaint and any inferences therefrom.

39.     Defendant states that the terms of the Revolving Loan Agreement speak for themselves and, accordingly, paragraph 39 of the Second Amended Complaint states only legal conclusions to which no response is required. For that reason, Defendant denies the allegations set forth in paragraph 39 of the Second Amended Complaint and any inferences therefrom.

40.     Defendant is without sufficient knowledge to admit or deny the allegations in the first two sentences of paragraph 40 of the Second Amended Complaint, and therefore denies the same and all inferences therefrom. The remaining allegations in paragraph 40 state legal conclusions to which no response is required. Therefore, Defendant denies the remaining allegations in paragraph 40 of the Second Amended Complaint and any inferences therefrom.

41.     Defendant is without sufficient knowledge to admit or deny the allegations in the first two sentences of paragraph 41 of the Second Amended Complaint, and therefore denies the same and all inferences therefrom. The remaining allegations in paragraph 41 of the Second Amended Complaint state legal conclusions to which no response is required. Therefore,

Defendant denies the remaining allegations in paragraph 41 of the Second Amended Complaint and any inferences therefrom.

42.     Defendant is without sufficient knowledge to admit or deny the allegations in the first two sentences of paragraph 42 of the Second Amended Complaint, and therefore denies the same and all inferences therefrom. The remaining allegations in paragraph 42 of the Second Amended Complaint state legal conclusions to which no response is required. Therefore, Defendant denies the remaining allegations in paragraph 42 of the Second Amended Complaint and any inferences therefrom.

43.     Defendant is without sufficient knowledge to admit or deny the allegations in the first two sentences of paragraph 43 of the Second Amended Complaint, and therefore denies the same and all inferences therefrom. The remaining allegations in paragraph 43 of the Second Amended Complaint state legal conclusions to which no response is required. Therefore, Defendant denies the remaining allegations in paragraph 43 of the Second Amended Complaint and any inferences therefrom.

## **BACKGROUND**

44.     Defendant admits that MWK is a recruiting firm. Defendant denies the remaining allegations in paragraph 44 of the Second Amended Complaint and any inferences therefrom.

45.     Defendant admits that certain segments of the legal professional recruiting industry are competitive. Defendant denies the remaining allegations in paragraph 45 of the Second Amended Complaint and any inferences therefrom.

46.     Defendant denies the allegations in paragraph 46 of the Second Amended Complaint and any inferences therefrom.

47.      Defendant is without sufficient information to admit or deny the allegations in paragraph 47 of the Second Amended Complaint and therefore denies the same and any inferences therefrom.

48.      Defendant denies the allegations in paragraph 48 of the Second Amended Complaint and any inferences therefrom.

49.      Defendant denies the allegations of paragraph 49 of the Second Amended Complaint and any inferences therefrom.

50.      Defendant denies the allegations in paragraph 50 of the Second Amended Complaint and any inferences therefrom.

51.      Defendant denies the allegations in paragraph 51 of the Second Amended Complaint and any inferences therefrom.

52.      Defendant denies the allegations in paragraph 52 of the Second Amended Complaint and any inferences therefrom.

53.      Defendant denies the allegations in paragraph 53 of the Second Amended Complaint and any inferences therefrom.

54.      Defendant denies the allegations in paragraph 54 of the Second Amended Complaint and any inferences therefrom.

55.      Defendant denies the allegations in paragraph 55 of the Second Amended Complaint and any inferences therefrom.

56.      Defendant denies the allegations in paragraph 56 of the Second Amended Complaint and any inferences therefrom.

57.      Defendants states that the terms of the employment agreement speak for themselves and, accordingly, paragraph 57 of the Second Amended Complaint states only legal

conclusions to which no response is required. For that reason, Defendant denies the allegations set forth in paragraph 57 of the Second Amended Complaint and any inferences therefrom.

58.     Defendants states that the terms of the employment agreement speak for themselves. Defendant denies the remaining allegations set forth in paragraph 58 of the Second Amended Complaint and any inferences therefrom.

59.     Defendant denies the allegations in the first sentence of paragraph 59 of the Second Amended Complaint and all inferences therefrom. The last sentence of paragraph 59 of the Second Amended Complaint appears to state a legal conclusion to which no response is required. Accordingly, Defendant denies the last sentence of paragraph 59 of the Second Amended Complaint.

60.     Defendant denies the allegations in paragraph 60 of the Second Amended Complaint and any inferences therefrom.

61.     Defendant denies the allegations in paragraph 61 of the Second Amended Complaint and any inferences therefrom. Specifically, Defendant denies that any knowledge he might have had concerning the MWK Candidates constituted "confidential trade secret information".

62.     Defendant denies the allegations in paragraph 62 of the Second Amended Complaint. Specifically, Defendant denies that the purported MWK Candidates (as Plaintiff uses that defined term) were submitted through Vargas prior to Defendant terminating his employment with any Kinney Entity.

63.     Defendant denies the allegations in paragraph 63 of the Second Amended Complaint and any inferences therefrom. Specifically, Defendant denies using trade secrets to

place any purported MWK Candidates after termination of his employment with any Kinney Entity.

64.     Defendant denies the allegations in paragraph 64 of the Second Amended Complaint and any inferences therefrom. Specifically, Defendant denies that a copy of the purported e-mail is attached to the Second Amended Complaint.

65.     Defendant admits that he is the author of the e-mail excerpted in paragraph 65 of the Second Amended Complaint. The e-mail, read in its full context, speaks for itself. Therefore, Defendant denies the remaining allegations in paragraph 65 of the Second Amended Complaint.

66.     The allegations in paragraph 66 of the Second Amended Complaint concern an individual who is no longer a party to this case. Therefore, no response is required. To the extent a response is required, Defendant states the Vargas Declaration speaks for itself. Therefore, Defendant denies the allegations in paragraph 66 of the Second Amended Complaint.

67.     Defendant admits the allegations in paragraph 67 of the Second Amended Complaint.

68.     The allegations in paragraph 68 of the Second Amended Complaint concern an individual who is no longer a party to this case. Therefore, no response is required. To the extent a response is required, Defendant states that the Vinokurova Declaration speaks for itself. Therefore, Defendant denies the allegations in paragraph 68 of the Second Amended Complaint.

69.     Defendant admits the allegations in paragraph 69 of the Second Amended Complaint.

70.     Defendant admits that evanjowers.com is presently hosted on a server located in the United States but denies the remaining allegations in paragraph 70 of the Second Amended

Complaint. Defendant specifically denies that the ".com" designation identifies a website as US-based.

71.     Defendant admits that the evanjowers.com domain is registered to an address in Louisiana.

72.     Defendant admits that evanjowers.com is written in English. Defendant denies that the use of the evanjowers.com website constitutes the "solicitation" of any individual candidate. Defendant denies the remaining allegations in paragraph 72 of the Second Amended Complaint and any inferences therefrom.

73.     Defendant admits the allegations in paragraph 73 of the Second Amended Complaint.

74.     Defendant admits the allegations in paragraph 74 of the Second Amended Complaint.

75.     Defendant admits to not having a Hong Kong work visa when he drafted the e-mail excerpted in paragraph 75 of the Second Amended Complaint. Defendant denies the remaining allegations in paragraph 75 of the Second Amended Complaint and any inferences therefrom.

76.     Defendant admits the allegations in paragraph 76 of the Second Amended Complaint.

77.     Defendant admits the allegations in paragraph 77 of the Second Amended Complaint.

78.     Defendant admits the allegations in paragraph 78 of the Second Amended Complaint.

79.     Defendant denies the allegations in paragraph 79 of the Second Amended Complaint and any inferences therefrom.

80.     Defendant admits the allegation in paragraph 80 of the Second Amended Complaint that evanjowers.com lists U.S. educational and prior employment credentials for some of its recruiters. In all other respects, Defendant denies the allegations in paragraph 80 of the Second Amended Complaint and any inferences therefrom.

81.     Defendant admits the allegations in paragraph 81 of the Second Amended Complaint.

82.     Defendant admits the allegations contained in the first sentence of paragraph 82. Defendant denies the allegations contained in the second sentence of paragraph 82 of the Second Amended Complaint and any inferences therefrom.

83.     Defendant is without sufficient information to admit or deny the allegations contained in paragraph 83 of the Second Amended Complaint and therefore denies the same and any inferences therefrom.

84.     Defendant admits the allegations in paragraph 84 of the Second Amended Complaint.

85.     Defendant admits the allegations in paragraph 85 of the Second Amended Complaint.

86.     Defendant admits the allegations in paragraph 86 of the Second Amended Complaint.

87.     Defendant admits the allegations in paragraph 87 of the Second Amended Complaint.

88.     Defendant admits the allegations in paragraph 88 of the Second Amended Complaint.

89.     Defendant admits the allegation in paragraph 89 of the Second Amended Complaint that he and others from the Legis Ventures team attended the 2018 National Association for Law Placement (NALP) Annual Education Conference. Defendant denies the allegation that the purpose of attending was "to promote Legis['s] US based recruiting business" and any inferences from that allegation.

90.     Defendant admits the allegation in paragraph 90 of the Second Amended Complaint.

## PERSONAL JURISDICTION

### *Jowers:*

91.     Defendant states that the terms of the Forgivable Loan Agreement speak for themselves and, accordingly, paragraph 91 of the Second Amended Complaint states only legal conclusions to which no response is required. For that reason, Defendant denies the allegations set forth in paragraph 91 of the Second Amended Complaint and any inferences therefrom.

92.     Defendant admits that he removed this action from state court to this Court. The remainder of the allegations in 92 of the Second Amended Complaint state legal conclusions to which no response is required. For that reason, Defendant denies the remaining allegations set forth in paragraph 92 of the Second Amended Complaint and any inferences therefrom.

93.     Defendant states that the terms of the Revolving Loan Agreement speak for themselves. The remainder of the allegations in paragraph 93 of the Second Amended Complaint state only legal conclusions to which no response is required. For those reasons, Defendant

denies the allegations in paragraph 93 of the Second Amended Complaint and any inferences therefrom.

94.     Defendant states that the terms of the Jowers Agreement speak for themselves. The remainder of the allegations in paragraph 94 of the Second Amended Complaint state only legal conclusions to which no response is required. For those reasons, Defendant denies the allegations in paragraph 94 of the Second Amended Complaint and any inferences therefrom.

95.     Defendant denies the allegations in paragraph 95 of the Second Amended Complaint and any inferences therefrom.

*Vinokurova:*

96.     The jurisdictional allegations in paragraph 96 of the Second Amended Complaint concern an individual who is no longer a party to this case. Therefore, no response is required. To the extent a response is required, Defendant denies the allegations in paragraph 96 of the Second Amended Complaint and any inferences therefrom.

97.     The jurisdictional allegations in paragraph 97 of the Second Amended Complaint concern an individual who is no longer a party to this case. Therefore, no response is required. To the extent a response is required, Defendant denies the allegations in paragraph 97 of the Second Amended Complaint and any inferences therefrom.

*Legis:*

98.     The jurisdictional allegations in paragraph 98 of the Second Amended Complaint concern an entity that is no longer a party to this case. Therefore, no response is required. To the extent a response is required, Defendant denies the allegations in paragraph 98 of the Second Amended Complaint and any inferences therefrom.

99.     The jurisdictional allegations in paragraph 99 of the Second Amended Complaint concern an entity that is no longer a party to this case. Therefore, no response is required. To the extent a response is required, Defendant denies the allegations in paragraph 99 of the Second Amended Complaint and any inferences therefrom.

100.    The jurisdictional allegations in paragraph 100 of the Second Amended Complaint concern an entity that is no longer a party to this case. Therefore, no response is required. To the extent a response is required, Defendant denies the allegations in paragraph 100 of the Second Amended Complaint and any inferences therefrom.

101.    The jurisdictional allegations in paragraph 101 of the Second Amended Complaint concern an entity that is no longer a party to this case. Therefore, no response is required. To the extent a response is required, Defendant denies the allegations in paragraph 101 of the Second Amended Complaint and any inferences therefrom.

102.    The jurisdictional allegations in paragraph 102 of the Second Amended Complaint concern an entity that is no longer a party to this case. Therefore, no response is required. To the extent a response is required, Defendant denies the allegations in paragraph 102 of the Second Amended Complaint and any inferences therefrom.

103.    The jurisdictional allegations in paragraph 103 of the Second Amended Complaint concern an entity that is no longer a party to this case. Therefore, no response is required. To the extent a response is required, Defendant admits the allegations in paragraph 103 of the Second Amended Complaint.

104.    The jurisdictional allegations in paragraph 104 of the Second Amended Complaint concern an entity that is no longer a party to this case. Therefore, no response is required. To the extent a response is required, Defendant admits that Legis Ventures is not

subject to jurisdiction in any state's courts of general jurisdiction. The second sentence of paragraph 104 of the Second Amended Complaint states a legal conclusion to which no response is required. Therefore, Defendant denies the allegations in the second sentence of paragraph 104 of the Second Amended Complaint and any inferences therefrom.

105.   The jurisdictional allegations in paragraph 105 of the Second Amended Complaint concern an entity that is no longer a party to this case. Therefore, no response is required. To the extent a response is required, Defendant denies the allegations in paragraph 105 of the Second Amended Complaint and any inferences therefrom.

*Legis Has Extensive and Deliberate Contacts with The United States*

106.   The jurisdictional allegations in paragraph 106 of the Second Amended Complaint concern an entity that is no longer a party to this case. Therefore, no response is required. To the extent a response is required, Defendant denies the allegations in paragraph 106 of the Second Amended Complaint and any inferences therefrom.

107.   The jurisdictional allegations in paragraph 107 of the Second Amended Complaint concern an entity that is no longer a party to this case. Therefore, no response is required. To the extent a response is required, Defendant denies the allegations in paragraph 107 of the Second Amended Complaint and any inferences therefrom.

108.   The jurisdictional allegations in paragraph 108 of the Second Amended Complaint concern an entity that is no longer a party to this case. Therefore, no response is required. To the extent a response is required, Defendant denies the allegations in paragraph 108 of the Second Amended Complaint and any inferences therefrom.

109.   Defendant admits the allegations in paragraph 109 of the Second Amended Complaint.

110.     Defendant denies the allegations in paragraph 110 of the Second Amended Complaint and any inferences therefrom.

111.     Defendant admits that on December 16, 2016, he tendered a formal resignation letter to remove any doubt of his separation from Robert Kinney. Defendant denies the remaining allegations in paragraph 111 of the Second Amended Complaint and any inferences therefrom.

112.     Defendant denies the allegations in paragraph 112 of the Second Amended Complaint and any inferences therefrom. Defendant specifically denies that he brought MWK's trade secrets to Legis Ventures either before or after resigning.

113.     Defendant denies the allegations in paragraph 113 of the Second Amended Complaint and any inferences therefrom.

114.     Defendant admits the allegations in paragraph 114 of the Second Amended Complaint.

115.     Defendant denies the allegations in paragraph 115 of the Second Amended Complaint and any inferences therefrom.

116.     Defendant admits that evanjowers.com is an English-language website but denies the remaining allegations in paragraph 116 of the Second Amended Complaint and any inferences therefrom.

117.     The jurisdictional allegations in paragraph 117 of the Second Amended Complaint concern an entity that is no longer a party to this case. Therefore, no response is required. To the extent a response is required, Defendant denies the allegations in paragraph 117 of the Second Amended Complaint and any inferences therefrom.

118.    The jurisdictional allegations in paragraph 118 of the Second Amended Complaint concern an entity that is no longer a party to this case. Therefore, no response is required. To the extent a response is required, Defendant denies the allegations in paragraph 118 of the Second Amended Complaint and any inferences therefrom.

119.    The jurisdictional allegations in paragraph 119 of the Second Amended Complaint concern an entity that is no longer a party to this case. Therefore, no response is required. To the extent a response is required, Defendant admits that he has a residence in Florida and attended a conference in Florida in April 2018 but denies the remaining allegations in paragraph 119 of the Second Amended Complaint and any inferences therefrom.

120.    Defendant admits that Legis Ventures does not operate any regular and established place of business in the US. The remaining jurisdictional allegations in paragraph 120 of the Second Amended Complaint concern an entity that is no longer a party to this case. Therefore, no response is required. To the extent a response is required, Defendant states that Legis Venture's website speaks for itself and therefore denies the allegations in paragraph 120 of the Second Amended Complaint and any inferences therefrom.

121.    The jurisdictional allegations in paragraph 121 of the Second Amended Complaint concern an entity that is no longer a party to this case. Therefore, no response is required. To the extent a response is required, Defendant states that the website speaks for itself and therefore denies the allegations in 121 of the Second Amended Complaint and any inferences therefrom.

122.    The jurisdictional allegations in paragraph 122 of the Second Amended Complaint concern an entity that is no longer a party to this case. Therefore, no response is

required. For that reason, Defendant denies the allegations in paragraph 122 of the Second Amended Complaint and any inferences therefrom.

123.    The jurisdictional allegations in paragraph 123 of the Second Amended Complaint concern an entity that is no longer a party to this case. Therefore, no response is required. To the extent a response is required, Defendant denies the allegations in paragraph 123 of the Second Amended Complaint and any inferences therefrom.

*Exercise of Jurisdiction Over Legis Comports With Traditional Notions Of Fair Play And Substantial Justice*

124.    The jurisdictional allegations in paragraph 124 of the Second Amended Complaint concern an entity that is no longer a party to this case. Therefore, no response is required. To the extent a response is required, Defendant states that paragraph 124 of the Second Amended Complaint contains only legal conclusions and, accordingly, Defendant denies the allegations in paragraph 124 of the Second Amended Complaint and any inferences therefrom.

125.    The jurisdictional allegations in paragraph 125 of the Second Amended Complaint concern an entity that is no longer a party to this case. Therefore, no response is required. To the extent a response is required, Defendant states that paragraph 125 of the Second Amended Complaint contains only legal conclusions and, accordingly, Defendant denies the allegations in paragraph 125 of the Second Amended Complaint and any inferences therefrom.

126.    The jurisdictional allegations in paragraph 126 of the Second Amended Complaint concern an entity that is no longer a party to this case. Therefore, no response is required. To the extent a response is required, Defendant states that paragraph 126 of the Second Amended Complaint contains only legal conclusions and, accordingly, Defendant denies the allegations in paragraph 126 of the Second Amended Complaint and any inferences therefrom.

127.    The jurisdictional allegations in paragraph 127 of the Second Amended Complaint concern an entity that is no longer a party to this case. Therefore, no response is required. For that reason, Defendant denies the allegations in paragraph 127 of the Second Amended Complaint and any inferences therefrom.

128.    The jurisdictional allegations in paragraph 128 of the Second Amended Complaint concern an entity that is no longer a party to this case. Therefore, no response is required. To the extent a response is required, Defendant states that paragraph 128 of the Second Amended Complaint contains only legal conclusions and, accordingly, Defendant denies the allegations in paragraph 128 of the Second Amended Complaint and any inferences therefrom.

129.    The jurisdictional allegations in paragraph 129 of the Second Amended Complaint concern an entity that is no longer a party to this case. Therefore, no response is required. To the extent a response is required, Defendant states that paragraph 129 of the Second Amended Complaint contains only legal conclusions and, accordingly, Defendant denies the allegations in paragraph 129 of the Second Amended Complaint and any inferences therefrom.

130.    The jurisdictional allegations in paragraph 130 of the Second Amended Complaint concern an entity that is no longer a party to this case. Therefore, no response is required. To the extent a response is required, Defendant states that paragraph 130 of the Second Amended Complaint contains only legal conclusions and, accordingly, Defendant denies the allegations in paragraph 130 of the Second Amended Complaint and any inferences therefrom.

### *Vargas:*

131.    The jurisdictional allegations in paragraph 131 of the Second Amended Complaint concern an individual who is no longer a party to this case. Therefore, no response is required. To the extent a response is required, Defendant states that paragraph 131 of the Second

Amended Complaint contains only legal conclusions and, accordingly, Defendant denies the allegations in paragraph 131 of the Second Amended Complaint and any inferences therefrom.

132.    The jurisdictional allegations in paragraph 132 of the Second Amended Complaint concern an individual who is no longer a party to this case. Therefore, no response is required. To the extent a response is required, Defendant states that paragraph 132 of the Second Amended Complaint contains only legal conclusions and, accordingly, Defendant denies the allegations in paragraph 132 of the Second Amended Complaint and any inferences therefrom.

133.    The jurisdictional allegations in paragraph 133 of the Second Amended Complaint concern an entity and an individual who are no longer parties to this case. Therefore, no response is required. To the extent a response is required, Defendant admits that Alejandro Vargas ("**Vargas**") is the sole officer and owner of Legis Ventures (HK) Limited, which is a Hong Kong private company limited by shares formed on or about November 26, 2016. Defendant denies the remaining allegations in paragraph 133 of the Second Amended Complaint and any inferences therefrom.

134.    The jurisdictional allegations in paragraph 134 of the Second Amended Complaint concern an entity and an individual who are no longer parties to this case. Therefore, no response is required. To the extent a response is required, Defendant admits that he has, from time to time, signed specific contracts on behalf of Legis Ventures that he had been authorized by Legis Ventures to sign on its behalf. Defendant also admits that Legis Ventures uses the trade name "Jowers/Vargas" from time-to-time and that it has registered that trade name in Hong Kong. Defendant denies the remaining allegations in paragraph 134 of the Second Amended Complaint and any inferences therefrom.

135.    The jurisdictional allegations in paragraph 135 of the Second Amended Complaint concern an entity and an individual who are no longer parties to this case. Therefore, no response is required. To the extent a response is required, Defendant states that paragraph 135 of the Second Amended Complaint contains only legal conclusions. For those reasons, Defendant denies the allegations in paragraph 135 of the Second Amended Complaint and any inferences therefrom.

### COUNT I
### FEDERAL TRADE SECRET MISAPPROPRIATION

136.    Defendant hereby incorporates his responses to the allegations set forth in paragraphs 1 through 135 above as if set forth here in full.

137.    Defendant admits that relevant information about MWK's purported clients and candidates is available to any member of the public. Defendant denies the remaining allegations in paragraph 137 of the Second Amended Complaint and any inferences therefrom.

138.    Defendant denies the allegations in paragraph 138 of the Second Amended Complaint and any inferences therefrom.

139.    Defendant denies the allegations in paragraph 139 of the Second Amended Complaint and any inferences therefrom.

140.    Defendant denies the allegations in paragraph 140 of the Second Amended Complaint and any inferences therefrom.

141.    Defendant denies the allegations in paragraph 141 of the Second Amended Complaint and any inferences therefrom.

142.    Defendant denies the allegations in paragraph 142 of the Second Amended Complaint and any inferences therefrom.

143.    Defendant denies the allegations in paragraph 143 of the Second Amended Complaint and any inferences therefrom.

144.    Defendant denies the allegations in paragraph 144 of the Second Amended Complaint and any inferences therefrom.

145.    Defendant denies the allegations in paragraph 145 of the Second Amended Complaint and any inferences therefrom.

## COUNT II
## TEXAS TRADE SECRET MISAPPROPRIATION

146.    Defendant hereby incorporates his responses to the allegations set forth in paragraphs 1 through 145 above as if set forth here in full.

147.    Defendant admits that relevant information about MWK's purported clients and candidates is available to any member of the public. Defendant denies the remaining allegations in paragraph 147 of the Second Amended Complaint and any inferences therefrom.

148.    Defendant denies the allegations in paragraph 148 of the Second Amended Complaint and any inferences therefrom.

149.    Defendant denies the allegations in paragraph 149 of the Second Amended Complaint and any inferences therefrom.

150.    Defendant denies the allegations in paragraph 150 of the Second Amended Complaint and any inferences therefrom.

151.    Defendant denies the allegations in paragraph 151 of the Second Amended Complaint and any inferences therefrom.

152.    Defendant denies the allegations in paragraph 152 of the Second Amended Complaint and any inferences therefrom.

153.    Defendant denies the allegations in paragraph 153 of the Second Amended Complaint and any inferences therefrom.

154.    Defendant denies the allegations in paragraph 154 of the Second Amended Complaint and any inferences therefrom.

## COUNT III
## BREACH OF CONTRACT
## EMPLOYMENT AGREEMENT – JOWERS

155.    Defendant hereby incorporates his responses to the allegations set forth in paragraphs 1 through 154 above as if set forth here in full.

156.    Defendant states that the terms of the Jowers Agreement speak for themselves and, accordingly, paragraph 156 of the Second Amended Complaint states only legal conclusions to which no response is required. For that reason, Defendant denies the allegations set forth in paragraph 156 of the Second Amended Complaint and any inferences therefrom.

157.    Defendant denies the allegations in paragraph 157 of the Second Amended Complaint and any inferences therefrom.

158.    Defendant denies the allegations in paragraph 158 of the Second Amended Complaint and any inferences therefrom.

159.    Defendant denies the allegations in paragraph 159 of the Second Amended Complaint and any inferences therefrom.

160.    Defendant admits that relevant information about MWK's purported clients and candidates is available to any member of the public. Defendant denies the remaining allegations in paragraph 160 of the Second Amended Complaint and any inferences therefrom.

161.    Defendant denies the allegations in paragraph 161 of the Second Amended Complaint and any inferences therefrom.

162.    Defendant denies the allegations in paragraph 162 of the Second Amended Complaint and any inferences therefrom.

163.    Defendant denies the allegations in paragraph 163 of the Second Amended Complaint and any inferences therefrom.

164.    Defendant denies the allegations in paragraph 164 of the Second Amended Complaint and any inferences therefrom.

165.    Defendant denies the allegations in paragraph 165 of the Second Amended Complaint and any inferences therefrom.

166.    Defendant denies the allegations in paragraph 166 of the Second Amended Complaint and any inferences therefrom.

167.    Defendant denies the allegations in paragraph 167 of the Second Amended Complaint and any inferences therefrom.

**COUNT IV**
**BREACH OF CONTRACT**
**EMPLOYMENT AGREEMENT – VINOKUROVA**

168.    Defendant hereby incorporates his responses to the allegations set forth in paragraphs 1 through 167 above as if set forth here in full.

169.    The allegations in paragraph 169 of the Second Amended Complaint concern an individual who is no longer a party to this case. Therefore, no response is required. To the extent a response is required, Defendant denies the allegations in paragraph 169 of the Second Amended Complaint and any inferences therefrom.

170.    The allegations in paragraph 170 of the Second Amended Complaint concern an individual who is no longer a party to this case. Therefore, no response is required. To the extent

a response is required, Defendant denies the allegations in paragraph 170 of the Second Amended Complaint and any inferences therefrom.

171.    The allegations in paragraph 171 of the Second Amended Complaint concern an individual who is no longer a party to this case. Therefore, no response is required. To the extent a response is required, Defendant denies the allegations in paragraph 171 of the Second Amended Complaint and any inferences therefrom.

172.    The allegations in paragraph 172 of the Second Amended Complaint concern an individual who is no longer a party to this case. Therefore, no response is required. To the extent a response is required, Defendant denies the allegations in paragraph 172 of the Second Amended Complaint and any inferences therefrom.

173.    The allegations in paragraph 173 of the Second Amended Complaint concern an individual who is no longer a party to this case. Therefore, no response is required. To the extent a response is required, Defendant denies the allegations in paragraph 173 of the Second Amended Complaint and any inferences therefrom.

174.    The allegations in paragraph 174 of the Second Amended Complaint concern an individual who is no longer a party to this case. Therefore, no response is required. To the extent a response is required, Defendant denies the allegations in paragraph 174 of the Second Amended Complaint and any inferences therefrom.

175.    The allegations in paragraph 175 of the Second Amended Complaint concern an individual who is no longer a party to this case. Therefore, no response is required. To the extent a response is required, Defendant denies the allegations in paragraph 175 of the Second Amended Complaint and any inferences therefrom.

176.    The allegations in paragraph 176 of the Second Amended Complaint concern an individual who is no longer a party to this case. Therefore, no response is required. To the extent a response is required, Defendant denies the allegations in paragraph 176 of the Second Amended Complaint and any inferences therefrom.

177.    The allegations in paragraph 177 of the Second Amended Complaint concern an individual who is no longer a party to this case. Therefore, no response is required. To the extent a response is required, Defendant denies the allegations in paragraph 177 of the Second Amended Complaint and any inferences therefrom.

178.    The allegations in paragraph 178 of the Second Amended Complaint concern an individual who is no longer a party to this case. Therefore, no response is required. To the extent a response is required, Defendant denies the allegations in paragraph 178 of the Second Amended Complaint and any inferences therefrom.

179.    The allegations in paragraph 179 of the Second Amended Complaint concern an individual who is no longer a party to this case. Therefore, no response is required. To the extent a response is required, Defendant denies the allegations in paragraph 179 of the Second Amended Complaint and any inferences therefrom.

180.    The allegations in paragraph 180 of the Second Amended Complaint concern an individual who is no longer a party to this case. Therefore, no response is required. To the extent a response is required, Defendant denies the allegations in paragraph 180 of the Second Amended Complaint and any inferences therefrom.

181.    The allegations in paragraph 181 of the Second Amended Complaint concern an individual who is no longer a party to this case. Therefore, no response is required. To the extent

a response is required, Defendant denies the allegations in paragraph 181 of the Second Amended Complaint and any inferences therefrom.

182.    The allegations in paragraph 182 of the Second Amended Complaint concern an individual who is no longer a party to this case. Therefore, no response is required. To the extent a response is required, Defendant denies the allegations in paragraph 182 of the Second Amended Complaint and any inferences therefrom.

183.    The allegations in paragraph 183 of the Second Amended Complaint concern an individual who is no longer a party to this case. Therefore, no response is required. To the extent a response is required, Defendant denies the allegations in paragraph 183 of the Second Amended Complaint and any inferences therefrom.

**COUNT V**
**BREACH OF CONTRACT**
**LINE OF CREDIT – JOWERS**

184.    Defendant hereby incorporates his responses to the allegations set forth in paragraphs 1 through 183 above as if set forth here in full.

185.    Defendant admits that Robert Kinney forced him to sign documents styled "Promissory Note" and "Loan Agreement." Defendant denies the remaining allegations in paragraph 185 of the Second Amended Complaint and any inferences therefrom.

186.    Defendant denies the allegations in paragraph 186 of the Second Amended Complaint and any inferences therefrom.

187.    Defendant denies the allegations in paragraph 187 of the Second Amended Complaint and any inferences therefrom.

188.    Defendant denies the allegations in paragraph 188 of the Second Amended Complaint and any inferences therefrom.

189.    Defendant denies the allegations in paragraph 189 of the Second Amended Complaint and any inferences therefrom.

190.    Defendant denies the allegations in paragraph 190 of the Second Amended Complaint and any inferences therefrom.

191.    Defendant denies the allegations in paragraph 191 of the Second Amended Complaint and any inferences therefrom.

192.    Defendant denies the allegations in paragraph 192 of the Second Amended Complaint and any inferences therefrom.

193.    Defendant denies the allegations in paragraph 193 of the Second Amended Complaint and any inferences therefrom.

## COUNT VI
## BREACH OF CONTRACT
## LOAN – JOWERS

194.    Defendant hereby incorporates his responses to the allegations set forth in paragraphs 1 through 193 above as if set forth here in full.

195.    Defendant admits that Robert Kinney forced him to sign a document styled "Forgivable Loan Agreement." Defendant denies the remaining allegations in paragraph 195 of the Second Amended Complaint and any inferences therefrom.

196.    Defendant denies the allegations in paragraph 196 of the Second Amended Complaint and any inferences therefrom.

197.    Defendant denies the allegations in paragraph 197 of the Second Amended Complaint and any inferences therefrom.

198.    Defendant denies the allegations in paragraph 198 of the Second Amended Complaint and any inferences therefrom.

199.    Defendant denies the allegations in paragraph 199 of the Second Amended Complaint and any inferences therefrom.

200.    Defendant denies the allegations in paragraph 200 of the Second Amended Complaint and any inferences therefrom.

201.    Defendant denies the allegations in paragraph 201 of the Second Amended Complaint and any inferences therefrom.

202.    Defendant denies the allegations in paragraph 202 of the Second Amended Complaint and any inferences therefrom.

203.    Defendant denies the allegations in paragraph 203 of the Second Amended Complaint and any inferences therefrom.

## CIVIL CONSPIRACY

204.    Defendant hereby incorporates his responses to the allegations set forth in paragraphs 1 through 203 above as if set forth here in full.

205.    The allegations in paragraph 205 of the Second Amended Complaint concern an entity and individuals who are no longer parties to this case. Likewise, the Court has dismissed this cause of action as to all Defendants. Therefore, no response is required. To the extent a response is required, Defendant denies the allegations in paragraph 205 of the Second Amended Complaint and any inferences therefrom.

206.    The allegations in paragraph 206 of the Second Amended Complaint concern an entity and individuals who are no longer parties to this case. Likewise, the Court has dismissed this cause of action as to all Defendants. Therefore, no response is required. To the extent a response is required, Defendant denies the allegations in paragraph 206 of the Second Amended Complaint and any inferences therefrom.

207.    The allegations in paragraph 207 of the Second Amended Complaint concern an entity and individuals who are no longer parties to this case. Likewise, the Court has dismissed this cause of action as to all Defendants. Therefore, no response is required. To the extent a response is required, Defendant denies the allegations in paragraph 207 of the Second Amended Complaint and any inferences therefrom.

208.    The allegations in paragraph 208 of the Second Amended Complaint concern an entity and individuals who are no longer parties to this case. Likewise, the Court has dismissed this cause of action as to all Defendants. Therefore, no response is required. To the extent a response is required, Defendant denies the allegations in paragraph 208 of the Second Amended Complaint and any inferences therefrom.

209.    The allegations in paragraph 209 of the Second Amended Complaint concern an entity and individuals who are no longer parties to this case. Likewise, the Court has dismissed this cause of action as to all Defendants. Therefore, no response is required. To the extent a response is required, Defendant denies the allegations in paragraph 209 of the Second Amended Complaint and any inferences therefrom.

## EXEMPLARY DAMAGES AND ATTORNEYS FEES

210.    Defendant denies the allegations in paragraph 210 of the Second Amended Complaint and any inferences therefrom.

211.    Defendant denies the allegations in paragraph 211 of the Second Amended Complaint and any inferences therefrom.

## PRAYER FOR RELIEF

Defendant opposes and denies the requests for judgment and damages contained in subparagraphs 1–16 beneath the heading "Prayer for Relief" on pages 45 and 46 of the Second Amended Complaint.

## DEFENDANT'S AFFIRMATIVE AND ADDITIONAL DEFENSES

Defendant asserts the following affirmative and additional defenses to the allegations in the Second Amended Complaint:

### First Defense
### (Failure to State a Claim)

The Second Amended Complaint fails to state a claim upon which relief can be granted. Additionally, MWK cannot prove causation or any injury.

### Second Defense
### (Duress)

Defendant was coerced into signing the December 2006 Jowers Agreement because Robert Kinney, the principal of each of the Kinney Entities, including MWK, threatened to not pay Defendant his earned commissions or any of the hundreds of thousands of dollars in commissions Jowers had in the pipeline unless he signed the contract, despite promising Defendant when he started working for Kinney in April 2006 that Defendant would not be subject to any non-solicitation or non-compete agreement. Similarly, Kinney coerced Defendant into signing the 2012 "Forgivable Loan Agreement" and "Revolving Loan Agreement" and "Promissory Note" by threatening to terminate Defendant and withhold all pending commission, which were already legally owed, knowing that Defendant would lack the ability to address those wrongs.

### Third Defense
### (Prior Material Breach)

MWK's claims for breach of the Jowers Agreement, the Forgivable Loan, and the Revolving Loan Agreement are barred because of its prior material breaches of its obligations under each of those contracts.

### Fourth Defense
### (Waiver)

MWK's claims are barred by the equitable doctrine of waiver.

### Fifth Defense
### (Estoppel)

MWK's claims are barred by the equitable doctrine of estoppel.

### Sixth Defense
### (Fraud)

MWK's claims are barred because its own fraud was used to manufacture its alleged damages. Specifically, Kinney allowed Defendant to accrue unpaid bonuses and commissions after expressly stating that Defendant's employment was not subject to a non-solicitation or non-compete agreement, only to break that promise and force Defendant to sign the Jowers Agreement under threat of withholding commissions already earned. Likewise, Kinney knew that Defendant was relying on the promise of a six-figure bonus at the end of 2011 and that Defendant had already allocated the use of such funds. Kinney broke that promise and took advantage of Defendant's detrimental reliance by forcing him to accept a smaller "loan" in lieu of the promised bonus in January 2012, under threat of termination and withholding of commissions already earned.

**Seventh Defense**
**(Overbroad)**

MWK's claims for breach of the restrictive covenants in the Jowers Agreement are barred because the covenants are overbroad as to both scope and geographic area, in that they purport to cover the entire legal industry as well as the entire world.

**Eighth Defense**
**(Overlong)**

MWK's claims for breach of the restrictive covenants in the Jowers Agreement are barred because the covenants are overlong with respect to the period of time for which they purport to remain in effect.

**Ninth Defense**
**(Not Reasonably Necessary)**

MWK's claims for breach of the restrictive covenants in the Jowers Agreement are barred because the covenants are not reasonably necessary to protect any business interest or interests.

**Tenth Defense**
**(Illegality)**

The Revolving Loan Agreement is usurious and is, therefore, illegal and unenforceable.

Additionally, in the alternative to Defendant's Seventh, Eighth, and Ninth Defenses, the Jowers Agreement is governed by Hong Kong law and not Florida law, and the restrictive covenants do not comply with the requirements of Hong Kong law applicable to such restrictions and to employment agreements. Therefore, the restrictive covenants in the Jowers Agreement are illegal and unenforceable.

**Eleventh Defense**
**(Lack of Consideration)**

The restrictive covenants in the Jowers Agreement are unenforceable as they were not supported by independent consideration.

**Twelfth Defense**
**(Failure of Consideration)**

The restrictive covenants in the Jowers Agreement are unenforceable because of a failure of the consideration for those covenants.

**Thirteenth Defense**
**(Rescission)**

As a result of MWK's bad acts, including but not limited to fraud, duress, and material breaches of contract, Defendant had the right to treat the contracts at issue as rescinded.

**Fourteenth Defense**
**(Unclean Hands)**

MWK's claims are barred by the equitable doctrine of unclean hands.

**Fifteenth Defense**
**(Unconscionability)**

The restrictive covenants in the Jowers Agreement are unenforceable because they are unconscionable in scope and duration, and they purport to restrain Defendant's ability to earn a living worldwide for an indefinite period of time.

**Sixteenth Defense**
**(Information Readily Ascertainable by Proper Means)**

Defendant did not misappropriate any purported trade secrets because any information MWK alleges that Defendant misappropriated was readily ascertainable by proper means, such as candidates volunteering their own information.

**Seventeenth Defense**
**(Independent Development)**

Defendant did not misappropriate any MWK trade secrets because Defendant independently developed the information MWK alleges he misappropriated.

**Other Affirmative Defenses Based on Later Discovered Evidence**

Defendant reserves all affirmative defenses under Rule 8(c) of the Federal Rules of Civil Procedure and any other defenses, at law or in equity, that may now exist or in the future be available based on discovery and further factual investigation in this case.

## COUNTERCLAIMS AND THIRD-PARTY COMPLAINT

Counterclaimant/Third-Party Plaintiff Evan P. Jowers ("**Jowers**") asserts the following Counterclaims and Third-Party Claims (collectively, the "**Claims**" or "**Counterclaims**") against Counterdefendant  MWK Recruiting Inc., now known as Counsel Holdings Inc. ("**MWK**") and Third-Party Defendants Robert E. Kinney ("**Kinney**") and Michelle W. Kinney, individually, and Recruiting Partners GP, Inc. ("**RP GP**"), Kinney Recruiting LLC ("**KR LLC**"), Counsel Unlimited LLC ("**CU LLC**"), and Kinney Recruiting Limited ("**Kinney Recruiting HK**", and collectively RP GP, KR LLC, CU LLC, and MWK, the "**Kinney Entities**").

## THE PARTIES

1.      Counterclaimant/Third-Party Plaintiff Jowers is a United States citizen domiciled in the State of Florida.

2.      Counterdefendant MWK is a corporation organized under the laws of the State of Texas. MWK may be served with process by serving its registered agent Michelle W. Kinney at 2406 Harris Boulevard, Austin, Texas 78703. Upon information and belief, MWK is, by way of assignment, a successor-in-interest to the other Kinney Entities as to all of the contracts and assets at issue in this suit, assuming that the assignments attached to the Second Amended Complaint are true and accurate.

3.      Third-Party Defendant Kinney is an individual residing in Austin, Texas, and the principal of each of the Kinney Entities. He may be personally served with process at his residence at 2406 Harris Boulevard, Austin, Texas 78703 or wherever he is found.

4.      Third-Party Defendant Michelle W. Kinney is an individual residing in Austin, Texas, and shares ownership and control over the Kinney Entities with her husband Kinney. She

may be served with process at her residence at 2406 Harris Boulevard, Austin, Texas 78703 or wherever she is found.

5.      Third-Party Defendant Recruiting Partners GP, Inc. is a Texas corporation controlled by Kinney and a predecessor-in-interest of MWK. Recruiting Partners GP may be served with process by serving its registered agent Robert E. Kinney at its place of business at 106 East 6th Street, Suite 800, Austin, Texas 78701.

6.      Third-Party Defendant Kinney Recruiting LLC is a Texas limited liability company controlled by Kinney and wholly owned by MWK. Kinney Recruiting LLC may be served with process by serving its registered agent Michelle W. Kinney at 2406 Harris Boulevard, Austin, Texas 78703.

7.      Third-Party Defendant Counsel Unlimited LLC is a Texas limited liability company controlled by Kinney and wholly owned by MWK. Counsel Unlimited LLC may be served with process by serving its registered agent Michelle W. Kinney at 2406 Harris Boulevard, Austin, Texas 78703.

8.      Third-Party Defendant Kinney Recruiting HK is a private limited company organized under the laws of Hong Kong. Kinney Recruiting HK is controlled by Kinney.

## JURISDICTION AND VENUE

9.      The Court has subject matter jurisdiction over each of Jowers's counterclaims because they are compulsory counterclaims under Fed. R. Civ. P. 13(a).

10.      Jowers alleges third-party claims arising under 18 U.S.C. § 1962. Therefore, this Court has subject-matter jurisdiction over such claims under 28 U.S.C. § 1331.

11.      This Court also has subject matter-jurisdiction over the third-party claims under 28 U.S.C. § 1332(a)(3) because the amount in controversy exceeds $75,000 and there is

complete diversity among the adverse parties who are citizens of U.S. states and because subjects of foreign states are additional parties.

12.     Alternatively, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) because the third-party claims are so related to the claims and counterclaims at issue in this case that they form part of the same case or controversy under Article III of the United States Constitution.

13.     The Court has personal jurisdiction over the each of Kinney and Michelle W. Kinney because they are Texas citizens and residents and over each of MWK, RP GP, KR LLC, and CU LLC because they are Texas entities with their principal places of business in Texas. Accordingly, the Court has general jurisdiction over each of the Kinneys and the Kinney Entities. The Court has personal jurisdiction over Kinney Recruiting HK because its principal place of business is in Texas and it is so at home here that it is subject to general jurisdiction in Texas. Further, the Court also has personal jurisdiction over each of the Kinneys and the Kinney Entities because, as the facts below demonstrate, they have minimum contacts with Texas from which Jowers's claims arose sufficient to demonstrate purposeful availment of Texas law, and because the exercise of jurisdiction over each of them comports with traditional notions of fair play and substantial justice. Specifically, each of the Kinneys carried out the actions described below in Texas, acting on their own behalf and as agents of the Kinney entities. Thus, they are each subject to the specific jurisdiction of the Court.

14.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1).

## FACTUAL BACKGROUND

**A.      From the Beginning of their Relationship, Robert Kinney Set Out to Exploit Evan Jowers, as He Does with Most of His Legal Recruiters.**

15.      At its core, this lawsuit arises from a toxic employment relationship and an employee's desperate struggle to break away from his employer's cycle of deceit. Throughout the Second Amended Complaint, MWK falsely accuses Jowers of a number of purported bad acts, always hiding behind its corporate form. Conspicuously absent from MWK's Second Amended Complaint, however, is any mention of the man who controls MWK, controlled each of its predecessors, and is directly responsible for the following illegal, tortious, and bad faith acts—Robert Kinney.

16.      Jowers began working for Kinney as an attorney recruiter in April 2006. At that time, Jowers and Kinney reached an agreement that Jowers would be paid a certain commission for each attorney candidate he successfully placed. Further, Kinney represented to Jowers that Jowers's employment would not be contingent on any kind of non-solicitation or non-compete agreement.

17.      By December 2006, Jowers had successfully placed several attorney candidates, but Kinney refused to hold up his end of the bargain by paying Jowers his promised commissions. Instead, Kinney told Jowers that Kinney would only pay Jowers his commissions if Jowers executed a backdated employment agreement containing restrictive covenants that contradicted Kinney's previous representations to Jowers. Even though Jowers had only been working for Kinney for approximately 8 months, Jowers already had several hundreds of thousands of dollars of commissions in the pipeline.

18.      In the attorney recruiting industry, it can sometimes take up to half a year from the time of placing a candidate to the time a placement fee is collected. Thus, Jowers had no

prospect of dissociating from Kinney and earning any immediate money elsewhere. As a longtime legal recruiter, Kinney was aware of that fact and purposefully exploited it.

19.     Needing his already-earned commissions to sustain himself, and facing the twin prospects of bankruptcy if Kinney withheld his earned commissions and a frivolous lawsuit from Kinney, Jowers had no choice but to sign the agreement, which he transmitted to Kinney via facsimile on December 16, 2006, as evidenced by the facsimile header printed on Kinney's copy of the employment agreement filed with this Court. *See* Associate Recruiter Employment Agreement effective May 1, 2016 (the "**Jowers Agreement**"), Second Am. Compl. Ex. 1, ECF No. 80-1.

**B.      Kinney Continued His Pattern of Extorting Concessions from Jowers by Holding Earned Commissions Ransom for Many Years.**

20.     Unfortunately, holding Jowers's earned commissions ransom in order to extort money and other concessions from Jowers became a common theme during Jowers's eleven-year association with Kinney and the Kinney Entities.[2] This, despite the fact that Jowers built Kinney's Asia practice from the ground up, and in each and every year from 2007 through 2016, Jowers produced more revenue for Kinney and his entities than any other recruiter in Kinney's employ. Nonetheless, Kinney forced Jowers to pay for most of Kinney's advertising for an approximately nine to twelve month period in 2008 and 2009 out of his own pocket.

21.     Because Jowers was the top revenue earner for Kinney's firm and 2011 was a particularly successful year, Kinney promised Jowers a 2011 year-end bonus as an incentive to retain Jowers's services. Kinney repeated that promise at various times between mid-2011 and January 2012. Kinney represented to Jowers that the bonus would be in the $100,000 to

---

[2] As an example of a non-monetary concession, Kinney once conditioned the payment of Jowers's commission on Jowers signing an affidavit drafted by Kinney for one of Kinney's many lawsuits.

$150,000 range. Kinney knew that Jowers was relying on the promised 2011 bonus and had already allocated the use of those funds.

22.     On the day that Kinney was to pay Jowers his bonus in January 2012, Kinney pulled another bait-and-switch by reducing the amount to $50,000 and converting the "bonus" into a "Forgivable Loan," effectively locking up Jowers's services for nine more years. *See* Forgivable Loan, Second Am. Compl. Ex. 4, ECF No. 80-4. Kinney used the threat of unpaid bonuses and retention of commissions that Jowers had already earned to force Jowers into signing the Forgivable Loan in lieu of a six-figure bonus, despite having made representations and promises to Jowers that the $50,000 would be a bonus. At the time of signing and at several points thereafter, Jowers told Kinney that he considered the $50,000 to be half of the bonus he was promised and not a loan.

23.     Later in 2012, Kinney represented to and expressly promised Jowers that he would receive a year-end bonus—not a loan—for any year in which he met or surpassed his 2011 revenue numbers. Jowers met those numbers several times after 2011, including 2015 and 2016. However, Kinney again repeatedly failed to live up to his side of the bargain. On one occasion, Kinney told Jowers that he had approached his wife, Michelle Kinney, about the prospect of paying Jowers a year-end bonus, and Michelle Kinney "blew a gasket" and instructed Kinney not to pay Jowers his bonus, despite the fact that Jowers had exceeded his 2011 numbers.

**C.      Kinney Devises Another Scheme to Line His Own Pockets with Jowers's Money, this Time by Expropriating Jowers's Success.**

24.     Kinney knew that Jowers, like most recruiters, relied on commission advances as his primary stream of income. Kinney also knew, based on past experience, that he could successfully shakedown Jowers and coerce him into agreeing to sham arrangements in order to extort him for more money under duress.

25.     Because it can take up to half a year from the time a candidate is placed to the time a placement fee is paid, it is standard practice in the attorney recruiting industry for recruiting firms to pay their recruiters interest-free advances based on expected commissions after candidates are successfully placed at law firms.

26.     In accord with this practice, when Jowers joined Kinney Recruiting L.P. in 2006, Kinney had promised Jowers advances on commissions when placements were made. Indeed, at the beginning of the employment relationship, Kinney paid advances to Jowers without interest and without a formalized, written agreement. Because of his modest base salary,[3] Jowers relied on commission advances to sustain himself. Having experience in the legal recruiting industry and having worked with Jowers for years, Kinney was well aware of that fact.

27.     Knowing that Jowers relied on commission advances to sustain himself, and realizing the amount of revenue Jowers was bringing into the firm and the correspondingly high commissions he was earning, Kinney sensed an opportunity to once again extort Jowers to line his own pockets.

28.     By at least as early as January 2012, Kinney decided that, rather than pay Jowers advances on commissions earned (in accordance with past performance and industry custom), Kinney would issue high-interest loans to Jowers based on pending commissions, and then recoup the principal plus 17% per annum in interest when the placement fees were (eventually)

---

[3] Per the Jowers Agreement, $3,000 per month, less applicable withholdings and deductions. *See* Exhibit A to the Jowers Agreement, Second Am. Compl. Ex. 1, ECF No. 80-1. While labeled "salary" in the Jowers Agreement, these payments were actually interest-free advances that had to be repaid. Over time, Jowers's "salary" grew to $30,000 per month, based on the sizeable commission fees Jowers was generating. However, after Jowers began to rely on these monthly advances and planned his financial spending based on them, Kinney decided to unilaterally cut Jowers's "salary" to $10,000 per month and charge 17% interest on any advances beyond that figure.

collected—17%, despite the fact that these "loans" would be fully secured by pending placement fees *already earned*.[4]

29.     The product of this scheme was the execution of the Revolving Loan Agreement in December 2012. *See* ECF No. 80-6, Second Am. Compl. Ex. 6. Once again, Kinney coerced Jowers to sign the agreement by threatening to terminate him, refusing to make any further advances, threatening to keep the commission fees Jowers had already earned, and threatening to sue him if he quit and began working as a recruiter elsewhere.

30.     It was common for Kinney to threaten to sue his employees in order to manipulate them, and Kinney followed through with those threats on several occasions. Jowers knew he could not afford to defend a lawsuit filed by Kinney—even a meritless one—because Kinney, as a licensed attorney, could represent himself for free (as he has done on other occasions) while forcing Jowers to incur hefty legal fees he could not afford to pay.

31.      Jowers had no choice but to accept this Faustian bargain, because if he refused, he would be thrown out on the street without money, a job, or any plausible means of recovery from Kinney, and he would likely become the target of a maliciously motivated lawsuit as well.

32.     Even after Jowers signed the Revolving Loan Agreement, Kinney continued to use his control over the purse strings to manipulate Jowers. On numerous occasions, Kinney refused to pay Jowers his "loans" unless Jowers sent Kinney glowing messages thanking him for his generosity, even though these "loans" were secured by placement fees Jowers had already earned. This is but one example of the psychological manipulation Kinney inflicted on Jowers over the years.

---

[4] *See* Revolving Loan Agreement § 3.1, Second Am. Compl. Ex. 6, ECF No. 80-6 ("The total amount available for borrowing by [Jowers] hereunder on a revolving basis is the lesser of: (1) One Hundred Fifty Thousand and No/100 Dollars ($150,000.00) or (2) 90% of the total amount of regular commission expected to be earned by [Jowers] as a result of his employment at Kinney Recruiting LLC based on candidates whose start dates have been set and confirmed by all parties ('Maximum Amount').").

**D.      Jowers Personally Established a Legal Placement Practice in Hong Kong on Kinney's Behalf, But Kinney Breached His Agreement to Pay for It.**

33.      In June 2015, Jowers ceased working for Kinney Recruiting LLC, moved to Hong Kong, and began working for Kinney Recruiting HK, a private limited company organized under the laws of Hong Kong. Thereafter, Hong Kong employment law applied to Jowers's employment relationship with Kinney.

34.      Before Jowers moved to Hong Kong to begin working for Kinney Recruiting HK, Kinney promised to provide Jowers an office in "Central"—Hong Kong's business district, where most of the top international law firms' Hong Kong offices are located. In particular, Kinney promised to at least subsidize Jowers's housing costs, if an office could not be secured. Kinney began making these promises to Jowers in late 2014, in person and over the phone. Kinney continued to string Jowers along through all of 2015 and even through the end of Jowers's employment in late 2016.

35.      Both before and after Jowers moved to Hong Kong to begin working for Kinney Recruiting HK, Kinney promised to sponsor, obtain, and pay for a Hong Kong work visa for Jowers. Kinney also promised to cover all of Jowers's work-related expenses, such as travel for work and client entertainment.

36.      When Jowers moved to Hong Kong, however, Kinney reneged on his promises yet again. Instead, Kinney made it clear that Jowers would be financially responsible for most of the costs associated with getting his Hong Kong practice off the ground. Although Kinney falsely claimed in a verified state court pleading that he paid for Jowers's housing in Hong Kong, the reality is that Kinney financed Jowers's housing in the form of high-interest, short-term loans that Kinney recouped from Jowers's commissions with interest. *See* Pl.'s Original Verified Pet. and Appl. for Injunctive Relief at 14, ECF No. 1-2.

37.     In addition to housing, Jowers was also forced to take out high-interest loans (17%) from Kinney in order to fund his work travel, client entertainment expenses, and other work-related expenses incident to building Kinney's Asia practice. Although these expenses were necessary in order to establish a profitable enterprise in Asia, Kinney shifted most of the financial risk and burden to Jowers. Much of these expenses were never reimbursed.

38.     Further, Kinney refused to actually sponsor, obtain, and pay for Jowers's Hong Kong work visa and refused to reimburse most of Jowers's legitimate work-related expenses, even though Jowers more than doubled his previous annual revenue within the first twelve months working for Kinney Recruiting HK in Hong Kong.[5] As a result of Kinney's refusal to obtain a work visa while Jowers was working for Kinney Recruiting HK—even though Kinney had specifically represented to Jowers that he would—Jowers's own application for a work visa after going to work for Legis Ventures became needlessly complex and difficult. Jowers's out-of-pocket expenses in eventually obtaining a work visa on his own exceeded $30,000.

39.     The Jowers Agreement was never assigned to Kinney Recruiting HK. To the extent MWK or Kinney contend the Jowers Agreement was in effect and governed Jowers's employment at Kinney Recruiting HK in Hong Kong, Section 2.2 of the Jowers Agreement provides that "[t]he Company will pay all of the usual and ordinary expenses involved in the operation of the Office." "Office" is further defined as "the office of the Company at which the employee is then employed." Jowers Agreement § 1.1.

40.     Although Kinney denies that Jowers worked for Kinney Recruiting HK while Jowers was in Hong Kong, all of the invoices for placements that Jowers made while in Hong Kong came from Kinney Recruiting HK, and law firms paid placement fees to Kinney

---

[5] As previously noted, Jowers's annual revenue for each of the years from 2007 through 2016 was already higher than any other recruiter working for Kinney during that period.

Recruiting HK. Additionally, Kinney acknowledged that Jowers was working for Kinney Recruiting HK by admitting in writing that a work visa sponsored by Kinney Recruiting HK and a new, written employment agreement between Jowers and Kinney Recruiting HK were needed.

41.     Around October 2015, Jowers told Kinney that he planned to move back to the United States due to concerns over working in Hong Kong without a work visa—for which Kinney was solely responsible because of his refusal to sponsor, obtain, and pay for one despite expressly stating that he would do so on numerous occasions, both before and after Jowers moved to Hong Kong. At that point, Kinney again engaged in the same pattern of extortionate, dishonest behavior. Kinney threatened Jowers that if he moved back to the United States, Kinney would (1) terminate his employment, (2) keep the substantial commissions he owed Jowers, (3) hand over Jowers's Asia practice to another recruiter, and (4) sue Jowers if he tried to work as a recruiter anywhere in the world. Consequently, Jowers was forced to remain in Hong Kong, generating significant revenue for Kinney.

### E.      Kinney Repeatedly and Maliciously Stole Jowers's Commissions.

42.     On several occasions during the last few years of Jowers's employment with Kinney, including Jowers's time working for Kinney Recruiting HK in Hong Kong, Kinney unilaterally reduced Jowers's commissions retroactively on commissions already earned but not paid—in direct violation of the parties' written and verbal agreements. The Jowers Agreement, which Kinney contends was still in effect during this period, provides that Jowers's compensation "may be modified from time to time …, provided that no such modification may be applied retroactively." Exhibit A to the Jowers Agreement, Second Am. Compl. Ex. 1, ECF No. 80-1. Otherwise, the Jowers Agreement calls for commission percentages between 45% and

65% of the placement fee, depending on how much revenue Jowers has generated during the calendar year in which the placement fee is earned. *Id.*

43.     In 2009, however, Kinney sought to ease the financial strain of the recession by shifting the burden to his employees. Kinney unilaterally reduced Jowers's commission to a flat fee of 45%. Unlike the parties' written agreement and past performance, Jowers's commission did not increase based on the amount of revenue he generated. Worse, Kinney applied the reduced commission retroactively to fees already earned, which violated the express terms of the Jowers Agreement. Kinney told Jowers that he had ten minutes in which to decide whether to accept the reduced commission. Kinney threatening to fire and sue Jowers if he did not accept the change, and further arbitrarily threatened to fire and sue Yuliya Vinokurova, with whom Kinney knew Jowers had a close relationship.

44.     More recently, in Summer 2016, a candidate Jowers had previously counseled regarding placement in Asia approached Jowers about helping the candidate find a placement at a New York firm. Jowers had planned to hand the candidate off to a specific U.S.-based colleague and split the commission 50/50, as was customary practice for internal referrals. But Kinney rejected this plan, insisting that Kinney himself would work to place the candidate in New York. Instead, Kinney spoke to the candidate on one or two occasions before handing him off to the very same U.S.-based colleague Jowers had originally suggested. After the candidate was successfully placed, Kinney informed Jowers that of his 50% of the commission, Kinney was keeping 40%. Kinney never did pay Jowers the remaining 10%.

45.     Similarly, in 2010, Kinney arbitrarily took for himself 40% of Jowers's commission for a candidate placed in Hong Kong, in violation of the Jowers Agreement and all other understandings between the parties. When Jowers broached the topic with Kinney, Kinney

laughed and told Jowers that it did not matter what Kinney said because it was not in writing. Throughout the course of Jowers's employment, Kinney was careful to avoid putting evidence of his promises in writing.

46.     Further, in 2014, Kinney arbitrarily took for himself 45% ($36,000) of Jowers's commission for a partner placement in Beijing. Because of Kinney's relationship with a decision maker at a particular firm, Kinney and Jowers agreed that if the partner candidate was placed at that firm, the parties would split the commission 50/50. Otherwise, Jowers would receive his full commission if the partner candidate were placed elsewhere. The partner candidate ended up being placed at a different firm, but Kinney refused to honor the deal. Jowers was forced to beg for his commission, and in the end, he only received 55%.

47.     Kinney's commission clawbacks were not isolated incidents. In 2014, Jowers and Kinney agreed to work together to place a candidate and split the commission 50/50. After the candidate was placed, Kinney paid Jowers only 18% of the commission fee, rather than the agreed 50%. Also in 2014, Kinney arbitrarily awarded himself 7.5% of Jowers's commission for placing a candidate in Asia. In 2013 and 2014, Kinney twice clawed back 5% of the commission fee for two other candidate placements. Also in 2015, Kinney arbitrarily awarded himself 20% of Jowers's commission for successfully placing a candidate in Asia. And in 2016, Kinney arbitrarily awarded himself $7,500 of Jowers's commission for yet another candidate placement. This list is not exhaustive.

### F.  Other Factors Necessitating Jowers's Dissociation from Kinney.

48.     In addition to Kinney's repeated lies, threatening behavior, and taking of Jowers's earned commissions, Kinney took other actions that created a toxic, hostile, and unbearable work environment for Jowers.

49.     In particular, during Jowers's employment under Kinney, Kinney created a hostile work environment for female associates and, by extension, Jowers himself. In fact, the work environment Kinney created was a significant factor in Jowers's decision to cease working for Kinney, as Jowers disapproved of and did not want to be associated with that type of behavior. For example, at least one former female recruiting associate told Jowers that she felt Kinney had pressured her to use her physical appearance to obtain business from clients. Similarly, another former female associate told Jowers that Kinney made repeated inappropriate comments about the physical appearance of a female recruiting associate, including in connection with how they interacted with clients.

50.     Another factor in Jowers's decision to cease working with Kinney was Kinney's pressuring of Jowers to obtain a prescription for a stimulant to enable him to work longer hours more efficiently (and thus earn more money for Kinney), which Jowers had absolutely no interest in doing. Kinney unilaterally made an appointment for Jowers to visit a psychiatrist in Hong Kong for that purpose, although Jowers refused to obtain any such prescription.

51.     Kinney's penchant for burning bridges was another major factor in Jowers's decision to cease working for Kinney. Kinney's antics and repeated threats of litigation against various law firms made Jowers concerned about his ability to continue successfully placing candidates while working for Kinney and his ability to earn a livelihood generally.

52.     In late 2016, Kinney informed Jowers that Kinney expected be involved in all of Jowers's Asia-related candidates, in order to extract 20% to 50% of Jowers's commissions on every placement, despite Kinney declining to work Asia-specific hours or travel to Hong Kong regularly, and despite expecting Jowers to do the vast majority or all of the work in placing such candidates. In effect, Kinney sought another windfall at Jowers's expense.

53.     For the foregoing reasons, among others, the working relationship between Jowers and Kinney had greatly deteriorated by the autumn of 2016.

54.     In October 2016, Kinney terminated Jowers by informing him that, effective October 31, 2016, Jowers would no longer be on the payroll of any of the Kinney Entities. Kinney ceased making regular payments of earnings to Jowers on that date.

55.     Before Jowers began formally working for his new firm, Jowers tendered Kinney an official resignation letter on December 16, 2016, to remove any remaining doubts about his dissociation from Kinney.

## CAUSES OF ACTION

### COUNT I
### Breach of Contract—Hong Kong Office Expenses
### (against Kinney, Kinney Recruiting LLC, Kinney Recruiting HK, and MWK)

56.     Counterclaimant/Third-Party Plaintiff re-alleges and incorporates the allegations contained in paragraphs 1 through 53 as if fully set forth herein.

57.     The Jowers Agreement provided that Kinney's company would pay all of the expenses associated with the operation of the office at which Jowers was then employed.

58.     In addition, Kinney promised both verbally and in writing to (a) reimburse Jowers for all of his work-related expenses in Hong Kong, (b) purchase and obtain a Hong Kong work visa, and (c) to either secure a physical office location in which Jowers could work or to pay for Jowers's housing costs in Hong Kong so that he could work from his apartment.

59.     Jowers fully performed all of his obligations under the terms of the contracts with Kinney, Kinney Recruiting LLC, and Kinney Recruiting HK, which contracts were later assigned to MWK.

60.     Kinney, Kinney Recruiting LLC, Kinney Recruiting HK, and MWK materially breached the contracts by, *inter alia*, (a) refusing to reimburse Jowers for most of his legitimate work-related expenses in launching the Hong Kong practice, (b) refusing to provide Jowers with a Hong Kong work visa, and (c) failing to secure a physical office location and refusing to fully subsidize Jowers's housing costs in Hong Kong.

61.     While the damages sustained by Jowers due to Kinney's breaches are now objectively verifiable, they were inherently undiscoverable due to Kinney's repeated promises to keep his end of the bargain, though in actuality he had no intention of doing so.

62.     Kinney fraudulently concealed his breaches by providing false information whenever Jowers would ask if Kinney would honor his side of the bargain.

63.     As a result, Jowers has suffered substantial damages, including his out-of-pocket costs for launching and maintaining Kinney's Hong Kong office, costs and penalties exceeding $30,000 involved with eventually obtaining a Hong Kong work visa, and substantial housing expenses.

64.     Jowers seeks entry of a judgment in his favor against Kinney, Kinney Recruiting LLC, Kinney Recruiting HK, and MWK in an amount to be determined by the Court, plus interest, costs, and attorneys' fees.

## COUNT II
### Breach of Contract—Unpaid Bonuses
### (against Kinney, Recruiting Partners GP, Inc., Kinney Recruiting LLC,
### Kinney Recruiting HK, and MWK)

65.     Counterclaimant/Third-Party Plaintiff re-alleges and incorporates the allegations contained in paragraphs 1 through 62 as if fully set forth herein.

66.     Jowers and Kinney had a binding agreement that, in exchange for Jowers continuing to work for Kinney, Kinney would pay Jowers a bonus for the year 2011 in an

amount between $100,000 and $150,000. At the time, the Jowers Agreement was assigned to Recruiting Partners GP, Inc. In late 2012, it was assigned to Kinney Recruiting LLC. In January 2017, it was purportedly assigned to MWK.

67.    Jowers and Kinney also had a binding agreement that Kinney would pay Jowers the same bonus for any year in which he met or exceeded his 2011 revenue numbers.

68.    Jowers met or exceeded his 2011 revenue numbers multiple times, including in 2015 and 2016. Jowers was working for Kinney Recruiting HK during part of this time period.

69.    Jowers fully performed his obligations under the contracts by continuing to work for Kinney and by reaching the targets required by his bonus agreement with Kinney.

70.    Kinney, Recruiting Partners GP, Inc., Kinney Recruiting LLC, Kinney Recruiting HK, and MWK materially breached the contract by (a) refusing to pay Jowers the agreed upon bonus in 2011 and coercing Jowers to instead sign a sham document for a $50,000 loan, and (b) refusing to pay any bonuses for the years Jowers exceeded his 2011 revenue numbers.

71.    While the damages sustained by Jowers due to Kinney's breaches are now objectively verifiable, they were inherently undiscoverable due to Kinney's repeated promises to keep his end of the bargain, though in actuality he had no intention of doing so.

72.    Kinney fraudulently concealed his breaches by providing false information whenever Jowers would ask if Kinney would honor his side of the bargain.

73.    As a result, Jowers has suffered damages, including several hundreds of thousands of dollars in earned-but-unpaid bonuses.

74.    Jowers seeks entry of a judgment in his favor against Kinney, Recruiting Partners GP, Inc., Kinney Recruiting LLC, Kinney Recruiting HK, and MWK in an amount to be determined by the Court, plus interest, costs, and attorneys' fees.

## COUNT III
### Breach of Contract—Retroactive Reduction of Commissions
### (against Kinney, Recruiting Partners GP, Inc., Kinney Recruiting LLC,
### Kinney Recruiting HK, and MWK)

75.     Counterclaimant/Third-Party Plaintiff re-alleges and incorporates the allegations contained in paragraphs 1 through 72 as if fully set forth herein.

76.     Jowers and Kinney had written and oral agreements that Jowers would be paid a certain commission for each attorney candidate he successfully placed. Specifically, the Jowers Agreement provided that Jowers would receive a 45% commission on placement fees for the first $75,000 of net cash-in he generated in the calendar year, 50% of the next $75,000, 55% of the next $75,000, 60% of the next $75,000, and 65% of the excess over $300,000 of net cash-in generated in the calendar year. The Jowers Agreement also provided that modification of the commission schedule could not be applied retroactively, i.e. after commissions have been earned.

77.     Jowers fully performed his obligations under the agreements by successfully placing attorney candidates at law firms.

78.     Kinney, Recruiting Partners GP, Inc., Kinney Recruiting LLC, Kinney Recruiting HK, and MWK materially breached the agreements on several occasions by unilaterally reducing the commissions paid to Jowers after the commission fees were already earned.

79.     While the damages sustained by Jowers due to Kinney's breach are now objectively verifiable, they were inherently undiscoverable due to Kinney's repeated promises to keep his end of the bargain, though in actuality he had no intention of doing so.

80.     Kinney fraudulently concealed his breaches by providing false information whenever Jowers would ask if Kinney would honor his side of the bargain.

81.     As a result, Jowers has suffered damages, including the difference between the commissions paid and the commissions as promised when earned.

82.     Jowers seeks entry of a judgment in his favor against Kinney, Recruiting Partners GP, Inc., Kinney Recruiting LLC, Kinney Recruiting HK, and MWK in an amount to be determined by the Court, plus interest, costs, and attorneys' fees.

**COUNT IV**
**Promissory Estoppel**
**(against Kinney, Recruiting Partners GP, Inc., Kinney Recruiting LLC,**
**Kinney Recruiting HK, and MWK)**

83.     Counterclaimant/Third-Party Plaintiff re-alleges and incorporates the allegations contained in paragraphs 1 through 80 as if fully set forth herein.

84.     In the alternative, Kinney, Recruiting Partners GP, Inc., Kinney Recruiting LLC, Kinney Recruiting HK, and MWK made specific promises to Jowers, including: (a) that Jowers's employment would not be subject to a non-solicitation or non-compete agreement; (b) that Jowers could take out interest-free advances on pending commissions; (c) that Kinney would pay Jowers a six-figure bonus for calendar year 2011 and subsequent years in which Jowers met or exceeded his 2011 numbers; (d) that Kinney would reimburse Jowers for all of his work-related expenses in Hong Kong; (e) that Kinney would sponsor, obtain, and pay for a Hong Kong work visa for Jowers; (f) that Kinney would secure a physical office location or subsidize Jowers's housing costs in Hong Kong; and (g) that Kinney would pay Jowers a certain percentage of placement fees earned as commission.

85.     Jowers reasonably and substantially relied on these promises to his detriment as set forth above.

86.     Jowers's reliance was not only foreseeable, but also intended. Kinney exploited Jowers's reliance by forcing him to enter into bad-faith agreements under duress and causing him to incur substantial unreimbursed expenses related to the Hong Kong office.

87.     As a result, Jowers has suffered damages, and injustice can be avoided only by enforcing Kinney's promises, whether Jowers was then employed by Recruiting Partners GP, Inc., Kinney Recruiting LLC, or Kinney Recruiting HK.

**COUNT V**
**Fraud**
**(against Kinney)**

88.     Counterclaimant/Third-Party Plaintiff re-alleges and incorporates the allegations contained in paragraphs 1 through 85 as if fully set forth herein.

89.     Kinney made material, false representations to Jowers, including: (a) that Jowers's employment would not be subject to a non-solicitation or non-compete agreement; (b) that Jowers could take out interest-free advances on pending commissions; (c) that Kinney would pay Jowers a six-figure bonus for calendar year 2011 and subsequent years in which Jowers met or exceeded his 2011 numbers; (d) that Kinney would reimburse Jowers for all of his work-related expenses in Hong Kong; (e) that Kinney would sponsor, obtain, and pay for a Hong Kong work visa for Jowers; (f) that Kinney would secure a physical office location or subsidize Jowers's housing costs in Hong Kong; and (g) that Kinney would pay Jowers a certain percentage of placement fees earned as commission.

90.     Kinney's subsequent actions, and his similar treatment of other Kinney employees, prove that Kinney either knew that these representations were false or made them recklessly, as a positive assertion, and without knowledge of their truth.

91.     Kinney intended that Jowers would act on these representations, which Jowers did by, for example: agreeing to work for Kinney and generating substantial revenue for Kinney's firm; relying on commission advances to sustain himself; allocating his promised bonus money; incurring substantial work-related expenses in Hong Kong for the benefit of Kinney's firm;

moving to Hong Kong on the promise of a forthcoming work visa; and generating record revenue for Kinney on the promise of specific commissions in return.

92.     Due to Kinney's repeated false assurances, Jowers was substantially delayed in discovering Kinney's fraud.

93.     These misrepresentations caused Jowers injury in the form of out-of-pocket expenses, bogus loan fees, and unpaid bonuses and commissions.

94.     Jowers seeks entry of a judgment in his favor against Kinney, including actual damages in an amount to be determined by the Court, plus interest, costs, and attorneys' fees. Further, because Kinney's actions were fraudulent as well as intentionally malicious, Jowers is entitled to recover exemplary damages in addition to his actual damages.

### COUNT VI
### Civil RICO: Violations of 18 U.S.C. § 1962(c)
### (against Kinney)

95.     Counterclaimant/Third-Party Plaintiff re-alleges and incorporates the allegations contained in paragraphs 1 through 92 as if fully set forth herein.

96.     Kinney has engaged and likely still is engaged in a pattern of racketeering activity designed to intimidate his victims into agreeing to let Kinney put their money into his own pockets. This pattern of racketeering activity occurred on numerous occasions, as detailed below. Further, Kinney actively participated in the operation and management of the Kinney Entities and/or conducted the affairs of the Kinney Entities through a pattern of racketeering activity.

97.     Extortion, Tex. Penal Code § 31.03: Kinney used threats of termination, withholding of commissions earned, and inability to earn a living as a recruiter to coerce Jowers and other employees to pay to Kinney portions of their earned commissions to which he had no lawful right. With respect to Jowers specifically, Kinney also used these same threats to coerce

Jowers to: (a) agree to change his interest-free commission advances to predatory, high-interest loans; (b) accept a $50,000 loan locking up his services for nine years in lieu of a promised six-figure bonus; (c) agree to sign an employment agreement at odds with the parties prior understanding; and (d) agree to front most of the expense involved in setting up Kinney's Hong Kong office. Jowers and other employees gave in to Kinney's demands because they feared Kinney would carry out his threats and because they faced destitution and an inability to obtain legal help, which Kinney purposefully exploited.

98.     Wire Fraud, 18 U.S.C § 1343: Kinney devised a scheme to defraud Jowers and other employees by demanding money and other concessions under false pretenses. With the intent to defraud his victims, Kinney sent his threats and issued his demands through the use of the public wires, including telephone lines and the internet.

99.     Hobbs Act Extortion, 18 U.S.C. § 1951: Kinney's extortion scheme outlined above obstructed, delayed, and affected commerce.

100.    Kinney is a person within the meaning of 18 U.S.C. § 1961 and is culpable for the above-described pattern of racketeering activity.

101.    Kinney performed his racketeering activities through the operation of the various Kinney Entities, which are enterprises within the meaning of 18 U.S.C. § 1961.

102.    Kinney knowingly and intentionally committed the underlying predicate acts. Kinney's intent can be inferred because, rather than a single incident or isolated incidents, Kinney exhibited a pattern of behavior that reflected a *modus operandi*, the result of which was to cheat his employees out of money they earned in order to line Kinney's own pockets.

103.    Kinney's actions affected and continue to affect interstate commerce. As to Jowers personally, Kinney, a resident of Texas, caused economic harm to Jowers in Florida and

Hong Kong. Kinney made his threats and demands across multiple U.S. state and international boundaries. Additionally, the commissions Kinney misappropriated from Jowers and others originate from placement fees paid in various U.S. states and foreign countries.

104.    Kinney's racketeering activity directly and proximately caused financial injury to Jowers and others by depriving them of their property, namely, money earned by commission.

105.    Pursuant to 18 U.S.C. § 1964(c), Jowers is entitled to recover from Kinney three times his actual damages plus his costs of suit, including his reasonable attorneys' fees for Kinney's violations of 18 U.S.C. § 1962.

## COUNT VII
## Declaration that Restrictive Covenants Are Unenforceable
## (against MWK)

106.    Counterclaimant/Third-Party Plaintiff re-alleges and incorporates the allegations contained in paragraphs 1 through 103 as if fully set forth herein.

107.    Consistent with 28 U.S.C. § 2201, there is a substantial and continuing controversy between parties having adverse legal interests, namely, Defendant/Counterclaimant Jowers, on the one hand, and Plaintiff/Counterdefendant MWK, on the other. The controversy surrounds the legal validity and enforceability of certain restrictive covenants in the Jowers Agreement, covenants commonly described as non-competition, non-solicitation, or confidentiality agreements.

108.    The non-solicitation covenant in the Jowers Agreement is overbroad, overlong, and unreasonable, and therefore unenforceable. Section 8.1 of the Jowers Agreement purports to restrain Jowers from acting as a recruiter for any kind of business anywhere in the world for a period of 1 year. While the overbreadth of the restraint is obvious on its face, given that it purports to bar Jowers from acting as a recruiter at any time anywhere, the duration is also

unreasonable in consideration of the dynamics of the legal recruiting industry, where knowledge of an attorney's information and interests is not relevant for more than a few months on average.

109.     The restraint is also unreasonable due to the lack of a legitimate interest in need of protection. Neither Kinney nor any of the Kinney Entities had exclusive relationships with client firms or attorney candidates. Candidates and firms are free to deal with whomever they wish, including to abandon a recruiter at any time and go to another. Moreover, the candidates MWK specifically complains of each stated that they were not interested in working with Kinney in Jowers's absence due to Kinney's bad reputation in the industry. The ease with which knowledge of particular candidates can be developed by other recruiting professionals using publicly available information or simply picking up the phone and speaking to the attorney candidates further highlights the lack of a legitimate need for protection. These facts demonstrate that the non-solicitation covenant is indeed intended to be punitive and is not reasonably necessary to protect any legitimate business interest.

110.     Further, Jowers ceased working for Kinney Recruiting LLC and began working for Kinney Recruiting HK—a Hong Kong limited company—in June 2015 and continued until he dissociated from Kinney nearly a year and a half later. MWK/Kinney do not allege that at any time the agreement at issue was ever assigned to Kinney Recruiting HK. As a result, none of the actions of which MWK complains occurred during the 1-year period after the end of his employment with Kinney Recruiting LLC—the last employer of Evan Jowers to which the Jowers Agreement was allegedly assigned. In any event, the restrictive covenants at issue are unenforceable under Hong Kong law, which law governs Jowers's employment after his transfer to Hong Kong.

111.    The restrictive covenants are unenforceable as they were not supported by independent consideration. Jowers had already been employed by MWK for approximately eight months before being forced to sign the agreement containing the restrictive covenants. Jowers's signature was coerced through threats of withholding commissions already earned and immediate termination without plausible recourse. Holding Jowers's earned compensation ransom is not the sort of independent consideration that could render a restrictive covenant enforceable.

112.    The restrictive covenant contained in section 4.4 the Jowers Agreement (non-competition while employed) does not apply on the facts of this case because Kinney effectively terminated Jowers in October 2016 by informing him that Kinney was removing Jowers from the payroll, effective October 31, 2016. Thereafter, Jowers continued to work on his active placements under the understanding that any future placement fees collected for those candidates would be split between Jowers and Kinney in accordance with their customary splits.

113.    A justiciable controversy exists between Jowers and MWK concerning the validity of the restrictive covenants contained in the Jowers Agreement. A declaration of the parties' rights and duties under the restrictive covenants is both appropriate and necessary to resolve the dispute between the parties as to whether the restrictive covenants are overbroad, overlong, and unreasonable, and therefore unenforceable.

## COUNT VIII
### Usury—Revolving Loan Agreement
### (against MWK, Kinney, and Counsel Unlimited)

114.    Counterclaimant/Third-Party Plaintiff re-alleges and incorporates the allegations contained in paragraphs 1 through 111 as if fully set forth herein.

115.    For years, and in conformity with industry practice, Kinney (through Recruiting Partners LP, and later Recruiting Partners GP) provided Jowers with interest-free advances of his commissions. Jowers relied on these advances as his primary source of income.

116.    During the term of Jowers's employment by and work for Kinney and his related Entities, Kinney/MWK/Counsel Unlimited pulled a bait-and-switch and forced Jowers to agree to usurious loans as the only prospect for collecting advances on his commissions, despite Jowers having generated record revenue for Kinney, and despite Jowers's advances always having been repaid when placement fees were collected.

117.    In the alternative to Jowers's defense that the Revolving Loan Agreement is invalid and unenforceable, the advances made under the Revolving Loan Agreement were loans of money.

118.    Kinney/MWK/Counsel Unlimited contend that Jowers had an absolute obligation to repay the principal under the Revolving Loan Agreement.

119.    During the term of the Revolving Loan Agreement, Kinney unilaterally and retroactively reduced the amount of commissions creditable to Jowers.

120.    Further, on at least one occasion in 2014, Kinney arbitrarily charged Jowers a substantial loan fee over and above the 17% interest Kinney already charged for his "loans", which fee constituted additional interest.

121.    These unlawful reductions and unauthorized fees, combined with the stated base interest of 17% per annum, resulted in the exaction of a greater compensation than allowed by law for Jowers's use of the "loans."

122.    As a result, Jowers has been injured, and he seeks a judgment against MWK, Kinney, and Counsel Unlimited in an amount equal to that to which Jowers is justly entitled

under applicable Texas law, plus interest, attorneys' fees, costs, and all other relief to which he is justly entitled in law or equity.

## COUNT IX
## Veil-Piercing
### (against Kinney and Michelle W. Kinney)

123.    Counterclaimant/Third-Party Plaintiff re-alleges and incorporates the allegations contained in paragraphs 1 through 120 as if fully set forth herein.

124.    The Court should pierce the corporate veil of the various Kinney Entities to impose liability directly on the Kinneys individually. The Kinney Entities are mere alter egos of the Kinneys individually, who abuse the corporate form in an attempt to escape personal liability for their tortious, illegal, and bad faith actions.

125.    At various times, the Kinneys have transferred assets between various Kinney Entities as part of a fraudulent scheme to avoid potential legal liability. This accounts for the complex web of entities and alleged assignments at issue in this case. Indeed, it is difficult to disentangle the web of entities the Kinneys have used over the years in an attempt to insulate themselves from liability stemming from their unscrupulous business practices.

126.    For example, around 2012, Kinney moved most of his personal assets and the assets of various Kinney Entities into newly created entities ahead of a court decision stemming from a California lawsuit filed against him and Kinney Recruiting for posting an anonymous and defamatory review of a former employer on the internet. In advance of an important decision in the case, Kinney also froze his employees' pay—including Jowers's pay—to preserve assets for himself in case of an unfavorable ruling.

127.   The Kinney Entities were and are being used as a sham to perpetrate actual fraud for the personal benefit of the Kinneys, including the numerous fraudulent acts detailed in this third-party complaint.

128.   Additionally, the Kinneys use the Kinney Entities for illegal purposes, such as extortion, usury, and wire fraud.

129.   Kinney has a pattern of abusing the corporate form by clawing back money that his employees earn to line his own pockets, and then hiding behind limited liability entities and threatening to sue the same employees if they protest.

130.   Michelle Kinney, while not employed by any of the Kinney Entities, nevertheless exercises dominion or control over the Kinney Entities. And, like her husband, Michelle Kinney has used the various Kinney Entities to perpetrate fraudulent, malicious, and other wrongful actions. Specifically, Michelle Kinney has directed her husband not to pay bonuses to Jowers and others on numerous occasions, despite knowing of an agreement to do so and lacking any apparent authority to act for those entities. In fact, the very entity at issue in this lawsuit, MWK, bears her initials, signifying the degree of control that she exercised.

131.   At one point, Kinney informed Jowers that Kinney needed Michelle Kinney's approval whenever Jowers requested a commission advance. On numerous occasions, Michelle Kinney would direct Kinney not to pay Jowers. It was well known among Kinney's employees that Michelle Kinney had at least as much control as Kinney over whether advances would be paid or expenses reimbursed. While Michelle Kinney may be an equity holder in certain Kinney Entities, that does not permit her to directly manage employee affairs.

132.    For these reasons, justice and fairness permit the Court to treat the Kinney Entities as mere alter egos of the Kinneys, pierce the corporate veil as to each of the Kinney Entities, and hold the Kinneys personally liable for the acts and omissions of the Kinney Entities.

**COUNT X**
**Unjust Enrichment**
**(against Kinney, Recruiting Partners GP, Inc., Kinney Recruiting LLC,**
**Kinney Recruiting HK, and MWK)**

133.    Counterclaimant/Third-Party Plaintiff re-alleges and incorporates the allegations contained in paragraphs 1 through 130 as if fully set forth herein.

134.    Kinney and the Kinney Entities were unjustly enriched by obtaining benefits from Jowers by fraud, duress, and the taking of an undue advantage.

135.    Specifically, and in addition to the preceding allegations, which are fully incorporated herein, Kinney and the Kinney Entities were unjustly enriched by Kinney paying to himself portions of Jowers's earned commissions, without justification. Kinney and the Kinney Entities received these benefits unjustly, and they should make restitution to Jowers for same.

136.    Further, Kinney and the Kinney Entities unjustly secured a benefit by virtue of Jowers shouldering most of the expenses incurred in Kinney's Hong Kong expansion. Jowers singlehandedly built Kinney's Asia practice from the ground up, and Jowers was forced to assume most of the financial risk for Kinney's benefit.

137.    Kinney and Recruiting Partners GP were also unjustly by accepting the benefit of Jowers's advertising expenditures in 2008 and 2009.

138.    The circumstances in which Kinney and the Kinney Entities received these benefits is such that their retention of same without restitution is unjust. It would be unconscionable for Kinney and the Kinney Entities to retain these benefits, which were secured by fraud, duress, and the taking of an undue advantage.

139.    Jowers seeks an order requiring Kinney, Recruiting Partners GP, Inc., Kinney
Recruiting LLC, Kinney Recruiting HK, and MWK to pay restitution to Jowers for the benefits
they unjustly received.

## PRAYER FOR RELIEF

Defendant and Counterclaimant/Third-Party Plaintiff Jowers respectfully requests that
this Court enter judgment in his favor as follows:

1.   Ordering that MWK take nothing as to each and every one of its claims against
Jowers in this action;

2.   Awarding Jowers his actual damages on his counterclaims/third-party claims;

3.   Awarding Jowers his statutory treble damages on his Civil RICO claims under 18
U.S.C. § 1962(c);

4.   Awarding Jowers exemplary damages on his fraud claim;

5.   Piercing the corporate veil as to MWK and each of the other Kinney Entities and
imposing personal liability on Robert Kinney and Michelle Kinney for any
damages awarded against the Kinney Entities in this case;

6.   Awarding Jowers his recoverable costs and reasonable and necessary attorney's
fees, including through trial of this matter and through any appeal(s) to both the
U.S. Court of Appeals for the Fifth Circuit and the Supreme Court of the United
States, incurred in bringing and prosecuting his counterclaims/third-party claims
and in defending against MWK's affirmative claims;

7.   Awarding Jowers pre-judgment and post-judgment interest on all amounts
awarded to him in the final judgment in this matter;

8.  Declaring that the restrictive covenants, including but not limited to the non-solicitation and confidentiality covenants, in the Jowers Agreement are invalid and unenforceable; and

9.  Awarding Jowers such other and further relief as the Court deems just and proper. Jowers further requests that the Court enter a judgment that MWK take nothing on all of its causes of action against Jowers and for such other relief as the Court deems just and proper.

## **JURY DEMAND**

Defendant demands jury trial pursuant to Federal Rule of Civil Procedure 38 on all issues so triable.

Dated: August 19, 2019.                    Respectfully submitted,

By:    /s/ Marc D. Katz
       Marc D. Katz
       State Bar No. 00791002
       marc.katz@dlapiper.com
       James C. Bookhout
       State Bar No. 24087187
       james.bookhout@dlapiper.com
       **DLA PIPER LLP (US)**
       1900 North Pearl Street, Suite 2200
       Dallas, TX 75201
       Telephone: (214) 743-4500
       Facsimile:  (214) 743-4545

       **COUNSEL FOR DEFENDANT AND
       COUNTERCLAIMANT/THIRD-PARTY
       PLAINTIFF EVAN P. JOWERS**

## CERTIFICATE OF SERVICE

I hereby certify that, on August 19, 2019, a true and accurate copy of the foregoing document was served via the Court's CM/ECF facilities and via email.

       /s/ James C. Bookhout
       James C. Bookhout