IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| MWK RECRUITING, INC., § § Plaintiff, § § v. § § EVAN P. JOWERS, YULIYA § VINOKUROVA, LEGIS VENTURES (HK) § COMPANY LIMITED, and ALEJANDRO § VARGAS, § § Defendants. § | | 1:18-CV-444-RP |
| EVAN P. JOWERS, § § Counterplaintiff, § § v. § § MWK RECRUITING, INC., ROBERT E. § KINNEY, MICHELLE W. KINNEY, § RECRUITING PARTNERS GP, INC., § KINNEY RECRUITING LLC, § COUNSEL UNLIMITED LLC, and KINNEY § RECRUITING LIMITED, § § Counterdefendants. § | | |

## ORDER

Before the Court is Plaintiff/Counterdefendant MWK Recruiting, Inc. ("MWK") and Counterdefendants Robert E. Kinney ("Kinney"), Michelle W. Kinney, Recruiting Partners GP, Inc., Kinney Recruiting LLC, Counsel Unlimited LLC, and Kinney Recruiting Limited's (collectively, the "MWK entities") Opposed Expedited Motion for Issuance of a Preliminary and a Permanent Injunction, (Dkt. 102), and associated briefing, (Resp., Dkt. 107; Reply, Dkt. 111; Suppl. Decl., Dkt.

1

112). The Court held a hearing on this motion on October 30, 2019.[1] (*See* Dkt. 115). After considering the parties' written and oral arguments, the facts in the record, and the relevant law, the Court grants the MWK entities' motion. (Dkt. 102).

## I. BACKGROUND

This case involves Defendant/Counterplaintiff Evan P. Jowers's ("Jowers") departure from MWK, a legal recruiting firm. (Mot., Dkt. 102, at 6; *see also* 2d Am. Compl., Dkt. 80). Jowers worked for MWK for several years; now, MWK and its component entities accuse Jowers of appropriating MWK's confidential information and breaching contracts. (2d Am. Compl., Dkt. 80, at 31–45).

The injunction at issue here concerns a defamation suit Jowers and his business partner Alejandro Vargas ("Vargas") filed in Hong Kong. (Mot., Dkt. 102, at 7–8). The MWK entities were first served with the papers beginning the Hong Kong suit on May 9, 2019, and June 21, 2019, and filed their request for a preliminary and permanent injunction barring Jowers from continuing the Hong Kong suit on October 9, 2019. (*Id.* at 7).

The MWK entities request that a "preliminary and a permanent injunction be issued against Jowers ordering him to dismiss his new Hong Kong litigation and to take no further action with respect to that litigation or any other litigation against MWK in Hong Kong or any other forum that would undermine or attack this Court's jurisdiction in this matter." (*Id.* at 6). They argue that allowing Jowers to continue his Hong Kong suit would frustrate a forum selection clause already in place, (*id.* at 11), be "vexatious and oppressive," (*id.* at 11–13), and be generally prejudicial to the MWK entities, (*id.* at 13–14). They also stress that concerns of international comity are not at issue in this case. (*Id.* at 14).

---

[1] Prior to the hearing, Defendant/Counterplaintiff Evan P. Jowers filed a motion to strike portions of the MWK entities' reply brief, (Dkt. 111), and the entirety of the brief's supplemental declaration, (Dkt. 112). (Dkt. 113). After considering Jowers's motion and the MWK parties' response, (Dkt. 114), the Court denied Jowers's motion at the hearing. (Dkt. 115). Thus, the Court's analysis here takes into account both the MWK entities' reply brief and its supplemental declaration.

## II. LEGAL STANDARD

Foreign antisuit injunctions, like the one at issue here, are "a particular subspecies of preliminary injunction." *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 364 (5th Cir. 2003). The overarching concern is "whether the foreign proceeding threatens the U.S. proceeding" or "challenges the U.S. court's jurisdiction or fundamental U.S. policies," as opposed to a foreign proceeding that is "merely interposed as a tactic and poses no real threat beyond inefficiency and additional cost." 3 Ved P. Nanda, et al., *Litigation of International Disputes in U.S. Courts* § 16.15 (2d ed. 2008, updated 2019).

Like typical preliminary injunctions, though, foreign antisuit injunctions are "extraordinary remed[ies]," and the party seeking one must "clearly carr[y] the burden of persuasion." *Karaha Bodas*, 335 F.3d at 364 (quoting *Mississippi Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985)). But the decision whether to issue a foreign antisuit injunction "ultimately depends on considerations unique to antisuit injunctions," rather than the traditional four-factor preliminary injunction test: "[t]o the extent the traditional preliminary injunction test is appropriate," the Court "only need address whether [the injunction-seeking party] shows a significant likelihood of success on the merits." *Id.*; *id* at 364 n.19. Specifically, "the merits" of the injunction request in this context "are not about whether [the foreign country] is an appropriate forum . . . but instead whether [the injunction-seeking party] has demonstrated that the factors specific to an antisuit injunction weigh in favor of granting that injunction." *Id.* at 364 n.19.

In the Fifth Circuit, those factors have historically involved whether the foreign suit would "(1) frustrate a policy of the forum issuing the injunction; (2) be vexatious or oppressive; (3) threaten the issuing court's in rem or quasi in rem jurisdiction; or (4) prejudice other equitable considerations." *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 627 n.9 (5th Cir. 1996) (quoting *In re Unterweser Reederei, Gmbh*, 428 F.2d 888, 890 (5th Cir. 1970) (subsequent history omitted)). In their

briefing and oral arguments, the parties dispute whether the factors may be considered disjunctively or whether, instead, the Court must balance each of them in a holistic analysis. (*See, e.g.*, Reply, Dkt. 111, at 5).

The Fifth Circuit has not clearly answered this question. In *Unterweser*, it stated the multifactor test using the word "or." 428 F.3d at 896. The Ninth Circuit characterized this diction as suggesting that "if any of the four elements is present, an anti-suit injunction may be proper." *E. & J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984, 990 (9th Cir. 2006). Thirty-three years after *Unterweser*, in *Karaha Bodas*, the Fifth Circuit reframed the considerations specific to foreign antisuit injunctions: "[i]n assessing whether an injunction is necessary, we weigh the need to 'prevent vexatious or oppressive litigation' and to 'protect the court's jurisdiction' against the need to defer to principles of international comity." 335 F.3d at 366 (quoting *Kaepa*, 76 F.3d at 627; *MacPhail v. Oceaneering Int'l, Inc.*, 302 F.3d 274, 277 (5th Cir. 2002)). In this analysis, the factors are assessed together, not disjunctively.[2] The Court's evaluation of the factors in this case will therefore proceed holistically, weighing the considerations against each other in the manner the Fifth Circuit has most recently specified. *See id.*

"[V]exatious or oppressive litigation" generally involves "(1) 'inequitable hardship' resulting from the foreign suit; (2) the foreign suit's ability to 'frustrate and delay the speedy and efficient determination of the cause'; and (3) the extent to which the foreign suit is duplicitous [sic] of the litigation in the United States." *Karaha Bodas*, 335 F.3d at 364 (quoting *Kaepa*, 76 F.3d at 627) (citing *MacPhail*, 302 F.3d at 277). Traditionally, the Fifth Circuit has often relied "primarily upon considerations of vexatiousness or oppressiveness in a race to judgment in the foreign forum as

---

[2] The Ninth Circuit described the Fifth Circuit's test as disjunctive in 2006, three years after *Karaha Bodas*. *E. & J. Gallo Winery*, 446 F.3d at 990. But its description relied upon a 1981 Ninth Circuit case which analyzed the Fifth Circuit's language in *Unterweser* (itself decided in 1970). *Id.* (citing *Seattle Totems Hockey Club, Inc. v. Nat'l Hockey League*, 652 F.2d 852, 855 (9th Cir. 1981)). Thus, the Ninth Circuit was not analyzing the then-current state of Fifth Circuit law, but rather an outdated paradigm.

4

sufficient grounds for an [antisuit] injunction." *Kaepa*, 76 F.3d at 627 n.9 (quoting *Gau Shan Co. v. Bankers Tr. Co.*, 956 F.2d 1349, 1353 (6th Cir. 1992)). Again, however, the precise weight of this factor in the analysis is indefinite, though *Karaha Bodas* indicates it is crucial to (albeit not dispositive of) the injunction determination. 335 F.3d at 364.

Moreover, there is a circuit split concerning how much weight to give to the value of international comity in this context. The Fifth Circuit has adopted the "liberal approach," which deemphasizes concerns of comity. It often discusses comity when determining whether foreign litigation is vexatious and oppressive—and considers it a "not-insubstantial interest"—but comity is not the crux of the analysis. *Id.* at 371. *Compare id.* at 366 ("[N]otions of comity do not wholly dominate our analysis to the exclusion of these other concerns."), *with Goss Int'l Corp. v. Man Roland Druckmaschinen Aktiengesellschaft*, 491 F.3d 355, 359 (8th Cir. 2007) (explaining the "conservative approach," for which "a foreign antisuit injunction will issue only if the movant demonstrates (1) an action in a foreign jurisdiction would prevent United States jurisdiction or threaten a vital United States policy, and (2) the domestic interests outweigh concerns of international comity.").

### III. ANALYSIS

Evaluating the considerations which the Fifth Circuit delineated in *Karaha Bodas*, the Court finds that the Hong Kong suit is vexatious and oppressive. *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 364, 366 (5th Cir. 2003). Though litigating in Hong Kong would not pose an inequitable hardship to the MWK entities, and the Hong Kong suit would not frustrate and delay this Court's determination in the domestic case, the claims in the Hong Kong suit substantially and logically duplicate those in the domestic case. Furthermore, were the Court to issue an injunction, it would not harm the valid interests in preserving international comity, as the Fifth Circuit has explained them. With these considerations in mind, the Court holds that a foreign antisuit injunction is warranted in this case.

### A. Is the Hong Kong Suit Vexatious or Oppressive, and Does It Threaten this Court's Jurisdiction?

The MWK entities argue that the Hong Kong suit is vexatious and oppressive.[3] First, it would be "complex and expensive to navigate," amounting to inequitable hardship. (Mot., Dkt. 102 at 11). Second, the MWK entities say that there is ample "potential for conflicting rulings" due to the "duplicative nature of the [Hong Kong] suit," including parallel discovery timelines, all of which they maintain "serves no purpose other than to spiral up costs." (*Id.* at 12). Specifically, they contend that because Jowers's claims in the Hong Kong suit were "compulsory counterclaim[s] in the original litigation under Fed. R. Civ. P. 13(a)," they are necessarily duplicative. (*Id.* at 12). Because a "logical relationship" exists between the facts underlying the Hong Kong action and the one before this Court, they argue Jowers had to assert his defamation claim in the latter. (*Id.* at 13).

Jowers, meanwhile, says that nothing about the Hong Kong suit is vexatious and oppressive, pointing to the fact that expenses are recompensable and are thus not truly "inequitable hardships." (Resp., Dkt. 107, at 19–20). Jowers points out that Kinney Recruiting HK is a Hong Kong company and Kinney frequently travels to Hong Kong, discounting the putative difficulty of litigation there for them. (*Id.* at 19). He argues as well that there is no specific evidence the MWK entities muster in support of the proposition that the Hong Kong suit will delay the proceedings in this case. (*Id.* at 21). Jowers puts forth a different timeline for the claims the MWK entities say are duplicative: as he puts it, "Kinney has it backwards . . . the Hong Kong Action is not duplicative of the Kinney Parties' counterclaims; the Kinney Parties' counterclaims are duplicative of the Hong Kong Action." (*Id.*). In his view, the defamation claims in the Hong Kong action are not compulsory counterclaims,

---

[3] Indeed, the MWK entities' characterization of Jowers's entire litigation strategy as vexatious and oppressive is a main theme of their arguments throughout this case. (*See* Mot., Dkt. 102, at 102 ("[Jowers] left MWK, announcing upon his departure his intention to steal valuable and highly confidential trade secrets related to the operations of MWK and to prevent MWK from obtaining any redress for those actions by making the costs of doing so as high as possible.")).

and there is no "compulsory counterclaim rule as to anti-suit injunctions" in the Fifth Circuit. (*Id.* at 22–23).

After analyzing the parties' arguments and the facts in the record, the Court finds that the Hong Kong suit is vexatious and oppressive.

1. Inequitable Hardship

The MWK entities would not suffer an inequitable hardship as a result of having to litigate in Hong Kong. It is true that the MWK entities did not themselves voluntarily invoke a foreign forum, "which would militate against a finding that litigating a foreign action amounts to an inequitable hardship." *Commercializadora Portimex, S.A. de CV v. Zen-Noh Grain Corp.*, 373 F. Supp. 2d 645, 649 (E.D. La. 2005) (citing *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 368 (5th Cir. 2003)); *see also Sindhi v. Raina*, No. 3:15-CV-3229-D, 2018 WL 1964198, at *2 (N.D. Tex. Apr. 26, 2018); *Home Healthcare Affiliates of Ms., Inc. v. N. 2 Indem. N .V.*, No. 1:01CV489-D-A, 2003 WL 22244382, at *2 (N.D. Miss. Aug. 7, 2003). But this Court has not yet issued a final judgment, and so this is not a situation in which a party that has already prevailed is subsequently forced to "defend itself against the same claims" in another country, which would support an injunction. *Id.* at 649–50. As Jowers argued in his response brief and at oral argument, Kinney regularly travels to and conducts business in Hong Kong, and Kinney Recruiting HK is a company based in Hong Kong and organized under Hong Kong law. (Resp., Dkt. 107, at 19). While the MWK entities protest that litigating the Hong Kong suit will be expensive and time-consuming, (*see* Mot., Dkt. 102, at 11), that concern is insufficient to show that "it would definitely be an inequitable hardship . . . to effectively represent their interests in" Hong Kong. *Home Healthcare Affiliates of Ms., Inc.*, 2003 WL 22244382, at *3. This is not exclusively or purely "a case in which a U.S. citizen is being dragged into a foreign court to resolve a matter already being litigated domestically," *see* Part III.A.3, and "[t]here is no evidence that [the MWK entities] lack the resources to effectively

7

represent themselves in the [Hong Kong] suit."[4] *Thermo Fisher Sci. Inc. v. Ducharme*, No. CV M-08-9, 2008 WL 11399557, at *6 (S.D. Tex. Sept. 30, 2008).

### 2. Frustrating and Delaying the Speedy and Efficient Determination of this Case

Likewise, the Hong Kong suit would not have an appreciable deleterious effect on the progress of this case. Here, "a trial date has been set and a scheduling order is in place"; this case "is moving along at a normal pace—despite the ongoing proceedings" in Hong Kong. *Sector Navigation Co. v. M/V CAPTAIN P*, No. CIVA 06-1788, 2007 WL 854311, at *2 (E.D. La. Mar. 15, 2007). Nothing in the record, including the speculative possibility of conflicting discovery orders, indicates that the existence of the Hong Kong suit will affect this Court's determination.

### 3. Duplicating the Claims in this Case

The extent to which the Hong Kong suit duplicates this case is a closer call. Ultimately, however, the Court holds that the Hong Kong suit is intrinsically linked to this case—so much so that it is fair to say the Hong Kong suit effectively duplicates this case and is properly considered vexatious and oppressive as a result.

Generally, the MWK entities ask the Court to find that the parties are sufficiently similar in both actions and that this case will dispose of the Hong Kong action, arguing that this is in effect a threshold inquiry for issuing an antisuit injunction. (Reply, Dkt. 111, at 3–4). In large part, they rely on the argument that Jowers's claims in the Hong Kong suit could (and should) have been asserted as a compulsory counterclaim in this case, rendering them duplicative. (Mot., Dkt. 102, at 12–13). Jowers, meanwhile, contends that the MWK entities "manufactured" any duplication of claims by bringing a defamation counterclaim in our case and then asserting that the preexisting Hong Kong defamation claim is duplicative. (Resp., Dkt. 107, at 21). And he disputes that the claims in the Hong

---

[4] In an email to Vargas, Kinney wrote that "[i]f necessary[,] I expect to be able to pursue the claims directly against you and anyone else who participates, wherever he or she may be." (Suppl. Decl., Dkt. 112, at 7).

Kong suit are indeed compulsory counterclaims in this case and notes that, anyway, "the Fifth Circuit has not adopted a compulsory counterclaim rule as to anti-suit injunctions." (*Id.* at 22–24).

The Court finds a recent case from the Northern District of Texas readily applicable to this situation. In *Sindhi v. Raina*, the plaintiff drew on the same out-of-circuit, nonprecedential authority as the MWK entities do here to argue for a rule mandating an antisuit injunction when the foreign case involves a compulsory counterclaim in the domestic case. 2018 WL 1964198, at *2 (citing *Butte Min. PLC v. Smith*, 24 F.3d 245, 1994 WL 192428, at *2 (9th Cir. 1994)). (*See* Mot., Dkt. 102, at 12). Though the *Sindhi* court recognized that "the Fifth Circuit has not explicitly adopted the compulsory counterclaim rule," it nevertheless found "the compulsory counterclaim standard instructive in defining whether foreign litigation is duplicative and vexatious." 2018 WL 1964198, at *2 (citing *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 n.14 (5th Cir. 1996)). It then proceeded by "assess[ing] whether the claims in the [foreign] suit bear a logical relationship to the claims in the [domestic] suit"—"merely appl[ying] the logical relationship standard" without determining "whether the [foreign] claims are compulsory counterclaims under Rule 13(a)." *Id.* That standard dictates that a counterclaim is compulsory when "the same operative facts[] serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights, otherwise dormant, in the defendant." *Id.* (quoting *United States v. Aronson*, 617 F.2d 119, 121 (5th Cir. 1980)).

Essentially, the *Sindhi* court first extracted the rationale underlying compulsory counterclaims in general, and then imported that rationale's "logical relationship" reasoning to the specific context of foreign antisuit injunctions. The Court agrees that this approach is appropriately "consistent with the purpose of [Federal Rule of Civil Procedure] 13, which is to 'prevent multiplicity of actions and to achieve resolution in a single suit of all disputes arising out of common matters." *Kaepa*, 76 F.3d at 628 n.14 (quoting *Seattle Totems Hockey Club, Inc. v. Nat'l Hockey League*, 652 F.2d 852, 855 (9th Cir. 1981)).

9

In *Sindhi*, the foreign suit involved defamation claims, by the domestic defendant against the domestic plaintiff, "relat[ing] to the same factual allegations underlying" the foreign suit: that the domestic defendant had stolen proprietary and confidential information during his employment to "create a substantially similar competing" product." *Id.*, at *3. On these facts, the court determined a logical relationship existed and issued an antisuit injunction restraining the foreign claims that duplicated their domestic counterparts.[5] *Id.*

Here, the Hong Kong suit (which consists solely of defamation claims at this point) appears to concern statements made by Kinney to Jowers's potential clients and business partners concerning Kinney's view of Jowers's conduct during Jowers's employment by Kinney.[6] (*See* Decl., Dkt. 107-1, at 4; Suppl. Decl., Dkt. 112, at 2–3). In other words, the Hong Kong suit appears to *exclusively* involve claims about Jowers's conduct during his employment—the precise subject of the domestic case. The same operative facts serve as the basis of both sets of claims; a logical relationship exists between them. As a result, the Court finds that the Hong Kong suit duplicates the domestic case and is therefore appropriately deemed vexatious and oppressive.

## B. Would a Foreign Antisuit Injunction Appreciably and/or Unduly Harm International Comity?

Finally, concerns of international comity do not bar, or even counsel much against, the Court's issuing a foreign antisuit injunction. True, this is not a case in which a final judgment has been issued in the domestic court, lessening comity-related concerns of impinging on the foreign court's jurisdiction. *See Karaha Bodas*, 335 F.3d at 371. (*See also* Mot., Dkt. 102, at 14; Resp., Dkt. 107,

---

[5] The Court notes that *Sindhi* differs in meaningful ways from the case at bar, not least in that the court had already issued final judgment in the domestic case. *See* 2018 WL 1964198, at *1. However, the Court nonetheless finds the *Sindhi* court's approach apt.

[6] The exact subject of the Hong Kong suit is not in the record. In Kinney's supplemental declaration and at oral argument, he explained his belief that these emailed statements are the allegedly defamatory statements at issue in the Hong Kong suit, citing the "endorsement of claim" document that Jowers and Vargas filed in the Hong Kong suit. (*See* Suppl. Decl., Dkt. 112, at 2–3). Kinney's explanation comports with the brief description Jowers himself offers. (Decl., Dkt. 107-1, at 4).

at 26.). But here, "no public international party is implicated by the case," which ultimately involves "a private party engaged in a contractual dispute with another private party." *Kaepa*, 76 F.3d at 627. And "the dispute has been long and firmly ensconced within the confines of the United States judicial system": Jowers "appeared in an action brought in Texas, removed that action to a federal court in Texas . . . and only then, with the federal action moving steadily toward trial," brought logically related claims in Hong Kong. *Id.* Like in *Kaepa*, nothing about an injunction "actually threatens relations between the United States and" Hong Kong. *Id.* Especially given the Fifth Circuit's stance highlighting that comity concerns are not paramount, *see Karaha Bodas*, 335 F.3d at 366, comity concerns do not impose an obstacle to a foreign antisuit injunction here.

## IV. CONCLUSION

Accordingly, **IT IS ORDERED** that the MWK entities' motion, (Dkt. 102), is **GRANTED**.

**IT IS FURTHER ORDERED** that Jowers, his agents, servants, employees and attorneys, and all persons in active concert or participation with him who have actual notice of this injunction[7] (collectively, "Jowers") shall dismiss their claims in the Hong Kong litigation against Kinney and Kinney Recruiting HK. Jowers is enjoined from seeking relief in the Hong Kong litigation that would preclude the MWK entities from proceeding in this case or would interfere in any way with this Court's jurisdiction over this matter, pursuing adjudication of any claims or issues in the Hong Kong litigation that are pending for adjudication in this case, participating in any way in the Hong

---

[7] Jowers argues because that the Court has previously ruled that it cannot exercise jurisdiction over Vargas, (*see* Dkt. 87 at 19), it "cannot order Vargas . . . to take any action," and thus cannot grant a foreign antisuit injunction involving the Hong Kong case to which Vargas is a party. (Resp., Dkt. 107, at 15). The sole (and nonbinding) authority Jowers cites for this proposition belies his argument. (*Id.*). In *Alchemist Jet Air, LLC v. Century Jets Aviation, LLC*, the court considered a request for an injunction as to the two plaintiffs in a New York case, over one of whom the court did not have jurisdiction. No. 08 C 5386, 2009 WL 1657570, at *2–3 (N.D. Ill. June 12, 2009). While the court noted that the "flaw" with the injunction-requesting party's argument was that one of the New York plaintiffs was not a party to its case, it nonetheless proceeded to determine whether to issue an injunction as to the other New York plaintiff over whom it had jurisdiction. *Id.* The Court follows similar logic here.

11

Kong litigation, and filing any additional cases that would violate the prohibitions set forth in this Order.

**IT IS FURTHER ORDERED** that Jowers shall immediately provide actual notice of this Order to all parties to the Hong Kong litigation, as well as to the High Court of the Hong Kong Special Administrative Region Court of First Instance. Jowers shall file a status report apprising the Court of his compliance with this Order on or before **November 19, 2019**.

**SIGNED** on November 12, 2019.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE