UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

MKW RECRUITING INC,                    )
                                       )
              Plaintiff,               )
                                       )
         vs.                           )Case No. A:18-CV-444
                                       )
EVAN P. JOWERS, YULIYA VINOKUROVA,     )
LEGIS VENTURES (HK) COMPANY LIMITED    )
AKA JOWERS/VARGAS,                     )
ALEJANDRO VARGAS,                      )
                                       )
              Defendants.              )
_____    )


TRANSCRIPT OF MOTION HEARING PROCEEDINGS
BEFORE THE HONORABLE ROBERT PITMAN
WEDNESDAY, OCTOBER 30, 2019, 9:01 AM




FOR THE PLAINTIFF:   RAYMOND W. MORT , III, ESQ.
                     ROBERT E. KINNEY, ESQ.


FOR THE DEFENDANT:   JAMES C. BOOKHOUT, ESQ.




Proceedings recorded by mechanical stenography, transcript
produced using computer aided transcription.

Pamela J. Andasola, CSR/RMR/FCRR
FEDERAL OFFICIAL COURT REPORTER
355 EAST CESAR E. CHAVEZ BLVD.
SAN ANTONIO, TEXAS 78210

1      MORNING SESSION, WEDNESDAY, OCTOBER 30, 2019

2                          *****

3           (The following proceedings were had in

4            open court with all parties present at

5            the hour of 9:01 a.m.)

6                          *****

7           THE CLERK:  Court calls A:18-CV-444, MKW

8    Recruiting Inc. versus Evan P. Jowers, and others, for

9    preliminary injunction hearing.

10          THE COURT:  Can I have announcements, please.

11          MR. MORT:  Your Honor, Ray Mort and Mr. Kinney on

12   behalf of MWK and other plaintiff and counterdefendants.

13          THE COURT:  Good morning.

14          MR. KINNEY:  Good morning.

15          MR. BOOKHOUT:  Good morning, Your Honor.  James

16   Bookhout and with me is John Lloyd.  He is an attorney.

17   He's not admitted in the Western District but assisting me

18   at the counsel table today, and we are on behalf of

19   defendant and counterclaimant, Evan P. Jowers.

20          THE COURT:  Very good, and welcome.

21          So today we're here for a preliminary injunction

22   hearing on MWK entities' requests concerning the Hong Kong

23   litigation.  I know that as a preliminary matter,

24   Mr. Bookhout, you had asked me to strike the reply and I've

25   taken a look at that and I'm not going to do that.  I'm

 1   going to go ahead and consider the reply that you have made

 2   so --

 3            MR. BOOKHOUT:  Thank you, Your Honor.  We would

 4   also move to strike the late-filed supplemental declaration

 5   of Mr. --

 6            THE COURT:  I'll overrule that as well.

 7            So with that in mind, I think you have the burden

 8   of persuasion so whoever's going to address the issues here,

 9   I think they are pretty well set out in your briefing so

10   I'll just give you the floor and if I have any questions

11   I'll jump in.

12            MR. KINNEY:  Thank you, Your Honor.

13            MR. MORT:  We've already handed the other side but

14   we have a couple of binders for you.

15            THE COURT:  That would be great.

16            MR. MORT:  May we approach?

17            THE COURT:  Yes, please.

18            MR. MORT:  Yes, we have already previously

19   provided.

20            THE COURT:  You can never have too many binders.

21            MR. KINNEY:  Thank you, Your Honor.

22            If you are ready, I'll begin.

23            THE COURT:  Mr. Kinney?

24            MR. KINNEY:  Yes.

25            I'm Robert Kinney.  I'm president of Counsel

4

1    Holdings, is the company that was MWK Recruiting when we

2    filed this case.

3              This case is about a former employee of ours who

4    is named Evans Jowers who was based in Florida but who

5    worked predominantly at our attorney recruiting business in

6    Asia, including Hong Kong, and decided to leave us in

7    December of '16 and did in a way that was unfortunate.

8              He has pursued -- he announced upon his departure

9    that he would pursue a scorched-earth approach to the

10   litigation and seek to make it cost as much as possible,

11   which of course is his right to do.  And he -- he -- he

12   announced upon his departure from our company that he was

13   going to take -- that he had taken certain candidates -- he

14   admitted it in writing, and that was, in fact, part of the

15   Court's order where you -- where the Court exercised

16   jurisdiction over Mr. Jowers.

17             We filed suit against him in March of 2017 in

18   state court.  It took us a long time to find him in order to

19   be able to serve him.

20             It was then removed here in May of 2018 and then

21   we -- you know -- we are on Docket Number 110 or something,

22   so the rest of the history is obvious.

23             So as part of his scorched-earth approach,

24   Mr. Jowers filed suit against us in Hong Kong in May of this

25   year seeking a judgment against us for defamatory statements

1   that we allegedly made there about him.

2          Those statements were, we believe, the ones we

3   submitted in the Supplemental Affidavit.  They were email

4   messages that we sent to our clients, a few of them who we

5   knew who were on his list of people that he had handed over

6   to his partner in Hong Kong, and we simply put them on

7   notice that we had claims against Mr. Jowers and that they,

8   you know, they might not want to be brought into those.

9          Mr. Jowers filed his suit in Hong Kong as what was

10  called an Endorsement of Claim, which is a procedural device

11  that they have which permits one to simply put a very vague

12  description of the claim in.  They're then required within

13  28 days to file a full statement of claim, normally which

14  would include, in this case, specific statements about what

15  was defamatory and what was not.

16         Mr. Jowers has sought several extensions and did

17  not file his Statement of Claim and then sought discovery

18  before the Hong Kong court in order to get us to disgorge a

19  bunch of email messages that would allow him to fish in and

20  around our email to see if we actually did say something.

21         I'm speculating about the purpose but that's kind

22  of obvious.

23         That happened in July of this year.  The hearing

24  for that motion that he's filed in Hong Kong -- which is a

25  complicated process.  Our solicitor there instructs the

1   barrister, the barrister talks to the other barrister, and

2   they have set a date of November 11th, a couple weeks from

3   now, for this discovery motion hearing.

4           We told them we thought it was premature.  It is

5   premature under Hong Kong law to be seeking discovery from

6   us before you've even filed a claim, same as it would be

7   here, especially if you don't have any evidence that we

8   actually made true defamatory remarks.  So, it's -- that's

9   pending.

10          We also have the situation that we are -- we've --

11  we got the Answer and Courterclaim from Mr. Jowers in -- in

12  September.  Those included multiple claims against us --

13  were including claims against Hong Kong, our Hong Kong

14  entity.

15          Our company is organized with a holding company

16  and it has a Hong Kong entity, and that was the entity that

17  was sued in Hong Kong as well as myself personally.

18          So Mr. Jowers made claims against the Hong Kong

19  entity, made claims against me personally, here in Texas,

20  and he also made them in Hong Kong.

21          We felt at that point that the situation was ripe

22  for us to bring this motion for anti-suit injunction before

23  this court and so that's where we are now.

24          And at this point we believe that the facts and

25  the law are such that the Court has clear discretion -- not

1   a duty -- but clear discretion to issue an injunction that

2   would consolidate the claims that are between the parties in

3   this case; between Mr. Jowers to us and us to Mr. Jowers

4   before this Court and that's what we're seeking to have the

5   Court do today.

6           So the question is the test.  What does the Court

7   need to do in order -- would need to have before it in order

8   to issue such an injunction?

9           Well, the 5th Circuit is a part of a group of

10  circuits; the 5th, the 9th, and the 7th use what's called

11  the liberal approach to this process, and the rest of the

12  circuits are either conservative or some sort of hybrid.

13          THE COURT:  It's the only sense in which the

14  Fifth Circuit is liberal.

15          MR. KINNEY:  I think that's about right.

16          THE COURT:  I can't think of another example.

17          MR. KINNEY:  I think that's about right and

18  probably likely to stay that way for a while.

19          So we are in the 5th Circuit, the approach is

20  liberal, and what that means is the courts' secondary or

21  tertiary concern is comity -- our international relations

22  with foreign countries -- but first and foremost the Court

23  is asked to consider the vexatiousness and oppression and

24  duplicity of cases that are brought overseas.

25          In this case, Mr. Jowers' case was brought second.

1   The -- Mr. Jowers has argued that the case is not -- is not

2   duplicative of our case; however, the 5th Circuit, in every

3   pronouncement I've found that it's made, has applied what's

4   called a logical relationship test, whether the issues at

5   hand are logically related in the foreign suit to the ones

6   here.

7           They've done that in the course of looking at

8   whether it's the same -- the initial part of the test is

9   whether it's the same parties that we're dealing with and

10   the same issues.

11           That test is fairly easily passed but then as a

12   second set of, you know, further down the list you look at

13   whether they're actually the same.  But these cases are --

14   under the 5th Circuit's test, there's a clear, logical

15   relationship between what Mr. Jowers is doing over suing us

16   for over there and what we're suing him for here.  And the

17   reason is because his defamation claims are really based

18   upon whether our claims against him here are, in fact, true.

19           We believe Mr. Jowers stole significant and

20   valuable intellectual property from us and violated his

21   contract here and we said that he did that to some clients

22   and he believes that that was defamatory.

23           If, in fact, what he did was wrong, was illegal,

24   and was anti-contractual then his defamation claims would

25   fail.  So those two -- the claims there and here are quite

9

1   logically related.  And, in fact, there's a risk that there

2   could be differing facts found in the case in Hong Kong to

3   the one here.  He obviously would be seeking to litigate or

4   relitigate our claims against him in Hong Kong in order to

5   support his defamation claims there.  Those issues will be

6   decided here and they should be decided here.

7        So, getting back to the test that's set up by the

8   5th Circuit and the other liberal jurisdictions, the

9   question is:  Are they the same parties?  We believe yes.

10  Same issues?  We believe yes, in that sense that they're

11  supposed to be tested.

12        And then the question is a disjunctive test of

13  whether any of four issues are present:  First of all, would

14  this foreign litigation frustrate a policy of the forum?

15  Well, we believe that the -- this foreign litigation

16  frustrates the policy of this forum which favors the

17  enforcement of forum selection clauses.

18        We have in this case a permissive forum selection

19  clause.  That was something that the Court looked at closely

20  in the Motion to Dismiss, but that's the same kind of clause

21  that KAEPA -- that the parties in KAEPA had with each other.

22        KAEPA is the 1996 sort of main case on this

23  subject matter.  That was also a permissive clause.  And

24  they had had a fight about that and then they sought to

25  relitigate it in Japan in that case.

1    So we believe that any -- our forum selection

2  clause calls for application of Florida law, is permissive

3  as to Texas, and it has nothing -- there was never a

4  contemplation that any dispute that we might have with

5  Mr. Jowers, related in any way to his employment with us,

6  would be subject to some Hong Kong litigation.

7    THE COURT:  Let me ask, if I recall correctly,

8  they raised an issue as to the signatories of the agreement,

9  whether they are the same as the parties in these matters.

10  Do you see that as an issue?

11    MR. KINNEY:  I don't see -- I don't see that as an

12  issue for a couple of reasons.  One is that the agreement

13  was assigned down the line to -- because I realized that was

14  going to potentially be an issue; and, secondly, I think if

15  we were in the -- if we are in the discussion, we go back,

16  in order to look at that, to the whole concept of same

17  parties, same -- same issues, which is that sort of

18  threshold test that's pretty easily satisfied and it's a

19  real-parties-in-interest concept that's -- that's really the

20  principal one that's being considered.  And it's clear that

21  the real parties in interest here are the same.

22    Does that answer the Court's question?

23    THE COURT:  Yes, thank you.

24    MR. KINNEY:  So, that's issue one.

25    Just by, again, is a disjunctive test.  If any of

1    these issues -- if any of these -- if you take yes on any of

2    these, then the Court has clear discretion to issue an

3    injunction like this.

4         THE COURT:  The next one is the most important one

5    though, right?

6         MR. KINNEY:  Any of them are important.  You don't

7    have to base it on -- you can stop right there if you

8    believe that forum selection clauses are an important policy

9    of this forum and we have one here that did not contemplate

10   Hong Kong litigation, therefore, we can support it.  That

11   can be enough.

12        THE COURT:  Okay.

13        MR. KINNEY:  The next one that's very important,

14   is the concept of the vexatiousness of this litigation.

15   Mr. Jowers has argued that the cost is not -- shouldn't be a

16   primary factor and that that's the only thing I'm worried

17   about, that the company is worried about.

18        He's argued -- well, I mean, that's really what it

19   comes down to.  He believes that my only concern is that.

20        Well, my answer to that is that courts -- when you

21   go back to Bethell is a 1971 case that was a 5th Circuit

22   case that was -- that cited KAEPA.  It clearly says that if

23   you have -- forcing someone to litigate something,

24   8000 miles -- I forget how far away -- in that case it was

25   in Belgium.  I think the point is that was a hardship and

1    that does create inefficiencies and that's something we seek

2    to avoid as much we can.  The federal rules are set up, when

3    you are dealing with domestic litigations that permit you to

4    consolidate cases, and that is in effect because you want to

5    avoid unfair costs.

6            So, we believe that -- okay, if it's vexatious and

7    oppressive, the test for that is broken down into three sort

8    of separate weighing factors.  One is whether there's an

9    inequitable hardship.  The second is whether the foreign

10   suit can frustrate and delay speedy and efficient

11   determination of the case.  And the third is whether the

12   foreign suit is duplicative of the litigation that we have

13   here.  In that case that's not a disjunctive answer, one, it

14   is a good-enough test, it's sort of a weighing test.

15           We believe that we have all three of those

16   factors.  We have -- this is an inequitable hardship to ask

17   us, who entered into our forum selection clause, we have

18   gotten through this litigation, have finally gotten, you

19   know, as far as we have gotten in this to now, potentially,

20   have to relitigate many of the issues in Hong Kong because

21   we'll be having them ask to look at the facts, again,

22   through a new lens there.

23           THE COURT:  Let me ask you, in terms of this issue

24   whether it's duplicative, it seems as though the pending

25   lawsuit here has to do with actions during the period of

1  employment and the Hong Kong action seems to have to do with

2  things that occurred after employment; is that not, to you,

3  a sufficiently bright line to draw to determine whether or

4  not they are sufficiently distinct?

5          MR. KINNEY:  Well, if -- no.  It's not a bright

6  enough line because I may have to look at what's being

7  charged by them in Hong Kong.

8          What's being charged is that I made statements

9  immediately after his termination of employment.  They've

10  been very vague about what those statements were.  They, in

11  fact, sought to suppress that -- our attempt to put before

12  the Court what we believe are those statements.  I don't

13  know why they would try to suppress those.  We're trying to

14  get on the record what we think is being -- what we're

15  fighting about over there.

16          But if -- if we -- if today, for example, I went

17  to Hong Kong and made statements about Evan Jowers' habits

18  or something that were not related to his employment, that

19  would be a completely different matter, but that's not what

20  I'm being charged with in Hong Kong.

21          And because our forum selection clause very

22  clearly says anything that relates to in any way his

23  employment, we have that concept and then we also have the

24  fact that this does just clearly very well relate to his

25  employment.

1          So, that's -- does that answer?

2          THE COURT:  It does.  Thank you.

3          MR. KINNEY:  So, the second point is whether the

4    foreign suit can frustrate and delay speedy and efficient

5    determination of the case here.  I am not sure if it can

6    delay.  This Court has the timetable.  That's probably, in

7    all fairness, faster than the one that will -- that will go

8    through in Hong Kong; however, it can certainly frustrate

9    speedy and efficient determination of the case here if there

10   are conflicting rulings from that court.

11          I have no way of knowing what those might be at

12   this point, but two courts looking at the same facts, same

13   subject matter certainly have the potential to frustrate

14   each other's rulings, and that's why we seek to consolidate

15   things like this in the United States.

16          And the third factor is whether the foreign

17   litigation is duplicative of the -- and we've kind of gone

18   through that.  We think it clearly, clearly is duplicative.

19          Mr. Jowers argued extensively in his response to

20   us that the only -- the duplication was solely because of

21   our bad faith in bringing counterclaims in the case for

22   seeking a declaratory judgment of nonliability and -- but

23   that's just not case.  We mentioned in our brief that we

24   were talking -- the issues that were going to be at issue in

25   Hong Kong or being litigated before this Court more than a

1  year before the time that they were brought in Hong Kong.

2  So, we believe that the underlying factual determinations

3  that will be made by this Court would gut any -- any

4  defamation claim that Mr. Jowers might want to make.

5         The only legitimate concern I can see on that

6  point is that he might -- they have a six-year statue of

7  limitations in Hong Kong for defamation claims and I don't

8  know whether there would be a time-bar risk for Mr. Jowers

9  in bringing a defamation claim here but I would have no

10 objection to waiving any -- any statue of limitations

11 defense we might otherwise have if the Court were to

12 determine that that's part of a fair result that would

13 permit them to do that.

14         THE COURT:  Okay.

15         MR. KINNEY:  So those are the issues about

16 vexatiousness.  It's a weighing test.  I think it's clear

17 that it's a vexatious and oppressive effort to cause us

18 additional harm for all those reasons.  Once you -- so

19 that's vexatiousness.

20         The Court, then, has -- can look whether -- back

21 to the disjunctive test, whether it will cause prejudice or

22 offend equity to permit Mr. Jowers to pursue this line of

23 defense of these claims that we have against him.

24         Again, that's a disjunctive thing.  You can go

25 back out to that point and decide that it's unequitable to

1   permit this and that will be enough to support our requests

2   for an injunction against Mr. Jowers.

3           We do believe it's inequitable to permit someone,

4   as part of his defense, to seek -- to duplicate issues,

5   raise costs, and just generally cause, you know, havoc in

6   the way that Mr. Jowers appears to be doing.

7           Finally, the Court's to look at comity.  In this

8   circuit that's the last and final decision to be made about

9   whether -- whether the issuance of an injunction would cause

10  some international dispute.

11          The courts that have looked at that and decided

12  that the answer was yes mostly have had in mind that there

13  are -- there are public entities, for example, the Bodas

14  case.  The Karaha Bodas case is a 5th Circuit case that's

15  brought up quite often.

16          They decided against an injunction in -- against

17  this case that was going on in Indonesia because one of the

18  parties was an Indonesian entity that had been subject to an

19  arbitral award and there were a lot of issues going on in

20  that case.  But the court in this case, the Southern

21  District of Texas, had secondary jurisdiction.  They were

22  simply being asked to enforce the arbitral award and they

23  didn't feel like that was enough to justify, you know,

24  shutting down an Indonesian state-owned entity from doing

25  whatever they wanted to do in Indonesia.

1         They also looked at whether that was ultimately

2    going to be a problem, whether any other courts were going

3    to enforce that -- it was a $500,000-a-day fine that the

4    Indonesian court had issued against anyone -- against the

5    parties if they sought to try to force this judgment.

6         They decided that it wasn't an issue because it

7    wasn't going to be enforced anywhere and they didn't want to

8    have a battle with the Indonesia Government.

9         We are talking here about two guys from the United

10   States, one Floridian, one Texan, who have an issue that's

11   subject to their forum selection cause.  There's absolutely

12   no reason to think that Hong Kong cares one iota.  They have

13   much bigger problems over there than dealing with us.  So,

14   those are the issues that I'm on.

15        THE COURT:  Great.  That's very helpful.  Thank

16   you.

17        Mr. Bookhout?

18        MR. BOOKHOUT:  Thank you, Your Honor.

19        Good morning, Your Honor.

20        THE COURT:  Good morning.

21        MR. BOOKHOUT:  I'd really like to briefly address

22   the facts of the case.  That's really not what's at issue

23   here today, the merits of the case.  Certainly Mr. Jowers

24   disputes Mr. Kinney's statements about what he did after he

25   left his employment, and certainly whether there's any

1    enforceable requirements against him.  And also, we

2    certainly dispute any statement about a scorched-earth

3    policy.  That's absolutely not what's going on here and I

4    absolutely would not be part of such an action.

5            What's going on here, I would like to explain why

6    there's two cases pending, one in the United States and one

7    in Hong Kong.  I think that's pretty straightforward.

8            In the United States, Plaintiff MWK Recruiting --

9    now I believe Counsel Holding -- but Plaintiff MWK

10   Recruiting sued Mr. Jowers and three people -- excuse me --

11   two other people associated with him and his new business

12   entity in the United States.

13           In May of this year, Mr. Jowers sued Robert Kinney

14   personally and Kinney Recruiting Limited, which is an entity

15   organized under the laws of Hong Kong.  It was served

16   through his company secretary in Hong Kong, in a court in

17   Hong Kong, for actions that Mr. Kinney physically took while

18   in Hong Kong and that were directed towards persons

19   personally present in Hong Kong.

20           It's not -- that case in Hong Kong is not just

21   about defamatory emails, it's also about Mr. Kinney

22   personally traveling to Hong Kong to take meetings in Hong

23   Kong for the purpose of defaming Mr. Jowers to harm his new

24   business.  That's actually what we believe this case is

25   about, Your Honor, is a heavy-handed former employer trying

19

1   to harm an ex-employee who has gone out on his own.

2           Now, that's why he was sued in Hong Kong.  Those

3   facts.  It was a Hong Kong entity, the principal officer of

4   a Hong Kong entity, based on facts arising out of Hong Kong.

5   At that time neither Kinney Recruiting Limited nor

6   Mr. Kinney personally were parties to this case in America.

7           Subsequent to that the Court issued an order

8   granting in part and denying in part the defendant's Motion

9   to Dismiss in this case.  At that time Mr. Jowers was served

10  compulsory counterclaims against MWK Recruiting.

11          Those claims all relate towards pretermination

12  conduct, some stretching back some period of time, Your

13  Honor.  I think our counterclaims are pretty clear on the

14  timeline.  And Mr. Kinney is -- was -- and Mr. Kinney

15  personally and Kinney Recruiting Limited were added only as

16  to the facts as they related to that pretermination conduct

17  in the United States.

18          They were added because the facts were similar.

19  They didn't have to be added.  That wasn't a requirement.

20  They weren't parties to this case so there was no such thing

21  such as a compulsory counterclaim against them at that time

22  but we added them because this actually makes logical sense.

23          That's what makes the facts on our claims, all

24  this pre-litigation conduct, Mr. Kinney and also his wife

25  taking certain actions with respect to Mr. Jowers through

1    those entities.

2         But the Hong Kong litigation is about defamation

3    that Mr. Kinney committed after Mr. Jowers left his

4    employment, and it's about something that took place in Hong

5    Kong.

6         THE COURT:  What's in the record to establish

7    the -- what you just said, the substance of the Hong Kong

8    action and what exactly -- what are the geographic and

9    temporal statements, where they were made, when they were

10   made.  What's in the record in this case about that?

11        MR. BOOKHOUT:  Sure, Your Honor.  There's two

12   things:  One, there's the endorsement of claims that's been

13   filed.  That's the preliminary pleading in Hong Kong that

14   starts the case; unlike how it's been characterized, that's

15   just how Hong Kong procedure works.

16        But the endorsement of claims is in the record.

17   There's also the Declaration of Mr. Jowers himself that

18   establishes the facts that I've just been discussing.

19   That's in the record of the court.

20        And also, I respectfully point out that it's

21   Mr. Kinney's burden to establish that the case is

22   duplicative, not our burden to establish otherwise.  But I

23   do believe Mr. Jowers' declaration has exactly what you are

24   looking for on the facts that are going to be at issue in

25   the Hong Kong litigation.  That's attached to our response

1    to the Motion for Preliminary Injunction.

2          Mr. Kinney makes a big deal about the liberal

3    versus conservative approach.  The 5th Circuit -- what that

4    means is that the 5th Circuit places slightly less

5    prominence or slightly less weight on international comity.

6    It does not mean that the 5th Circuit is in favor of issuing

7    any certain injunctions that would appear to be somehow

8    expedient or just because somebody feels like it, of course.

9    The 5th Circuit still requires that the four factors that

10   are identified be met.  And those factors aren't really

11   disjunctive.  That's not the case.  That's the balancing

12   test.

13          I think Karaha Bodas makes that clear.  I think

14   that makes it clear when it says, if I may, Your Honor, when

15   it says:  When a preliminary injunction takes the form of a

16   foreign suit injunction, we are required to balance domestic

17   judicial interests against concerns of international comity.

18   In assessing whether --

19               (Whereupon, the court reporter asked the

20               speaker to repeat the last statement.)

21          -- in assessing whether an injunction is

22   necessary, we weigh the need to prevent vexatious or

23   oppressive litigation and to protect the court's

24   jurisdiction against the need to defer to principal of

25   international comity.

1      The court notes, of course, in the 5th Circuit is

2   the, quote, unquote, "liberal approach" that notions of

3   comity don't wholly dominate the analysis but they are,

4   nevertheless, important.

5      The 5th Circuit also says, word for word,

6   generally speaking, that two concurrent cases in courts with

7   concurrent jurisdiction should be allowed to proceed.   In

8   fact in the most -- what I would call the most -- the

9   5th Circuit that's most friendly to the anti-suit

10  injunctions, the 9th Circuit, they say in Seattle Totems, Et

11  Cetera, v. National Hockey League, 652 F.2d 855, that the

12  power should be used sparingly.  And that is the most

13  friendly circuit toward granting an injunction.

14     So this liberal versus conservative approach

15  doesn't mean that these are a favored thing.  They still

16  need to be appropriate under the circumstances and proven

17  based on the factors, which again is a balancing test.  It's

18  not that if you prove one factor the other three just sort

19  of fall away.

20     I do think Your Honor was right, the vexatious,

21  oppressive, duplicative factor is the most important one and

22  the courts do place the most weight on that one, but the

23  factor -- again, it's a balancing test.  It's not just,

24  look, we pointed to a random forum collection clause.

25     And I would like to address -- I do think the

1  Karaha Bodas case is the most relevant.  Certainly it's the

2  most recent prominent case on this issue from the

3  5th Circuit on anti-suit injunctions.

4          They cite a lot to an earlier case, the KAEPA --

5  K-A-E-P-A -- decision.

6          So anti-suit injunctions come about -- and the

7  KAEPA case is a perfect example -- primarily because a

8  plaintiff sues a defendant in America, that defendant hauls

9  off and files a mirror-image lawsuit in a foreign

10 jurisdiction.  KAEPA is a perfect example of that.  A

11 Japanese defendant was sued in the United States.  The

12 Japanese defendant, after several years of litigation,

13 hauled off and filed a mirror-image lawsuit in Japan.

14         That's not even remotely close to what's going on

15 here, Your Honor.  There's different parties pending in

16 different cases.  In fact, as to the two -- I'll call them

17 Kinney parties -- the two Kinney parties, the only two that

18 are in both cases, Plaintiff MWK is not present in both

19 cases.  As to Kinney Recruiting limited and Robert Kinney

20 personally, Mr. Jowers is the plaintiff in both cases.  He's

21 the claimant, so he's certainly the claimant.  He's brought

22 the claims against them.

23         And that's where the factual distinction comes in.

24 He sued Kinney Recruiting Limited, the Hong Kong entity, and

25 Robert Kinney personally here, based upon a long line of

1   pre-employment conduct -- excuse me -- pretermination

2   conduct, and he sued them -- Kinney Recruiting Limited and

3   Kinney personally in Hong Kong based upon particular

4   instances of defamation, mostly taking place in Hong Kong

5   itself.

6          I would just like to point out, frankly, the irony

7   that a Hong Kong company organized under the laws of Hong

8   Kong is coming to the Court asking for an injunction that it

9   not be -- that Mr. Jowers not be permitted to sue that

10  entity in Hong Kong.

11         And as a code -- and I'd like to move on to the

12  four factors.

13         THE COURT:  Let me ask you, if you don't mind.

14         Getting back to misstatements that you allege were

15  made in Hong Kong, what -- what was the subject matter of

16  those statements that are the subject of the Hong Kong

17  litigation?

18         MR. BOOKHOUT:  Sure, Your Honor.

19         Well, one, we believe that Mr. Kinney has accused

20  Mr. Jowers and Mr. Vargas -- I would be remiss if I didn't

21  mention that Alejandro Vargas is also a plaintiff in the

22  Hong Kong action and the court has already found that it

23  doesn't have personal jurisdiction over him.  I can see from

24  the Court's reaction that it's familiar with this argument.

25         About Mr. Vargas, it wouldn't be -- wouldn't be

1   proper to order Mr. Vargas, through an injunction, to stop

2   prosecuting a suit in Hong Kong when the Court has

3   jurisdiction over him.

4          But as to your point, the statements -- one,

5   there's the accusation of theft, that Mr. Jowers stole

6   various things, that he committed fraud and various other

7   unsavory acts that aren't really related to employment.

8   There's some that are employment related.

9          THE COURT:  During the term of his employment?

10          MR. BOOKHOUT:  Sometime -- yes.

11          THE COURT:  Hold on a second.

12          MR. BOOKHOUT:  Saying he did certain things, not

13   necessarily during the term of his employment.

14          THE COURT:  Sorry.

15          (Whereupon, a discussion was then had

16          with the law clerk off the record.)

17          MR. BOOKHOUT:  Sorry.  There would -- I'm so

18   sorry.  I will be perfectly happy to stop.

19          THE COURT:  That's fine.  We just want to give her

20   a minute.

21          Great.

22          MR. BOOKHOUT:  Thank you.

23          THE COURT:  Okay.

24          MR. BOOKHOUT:  Only part way, Your Honor, is the

25   answer to your question.

 1        For the most part, Mr. Kinney flew to Hong Kong

 2  and says Mr. Jowers is doing all these things now, post

 3  employment.  You know, he's stealing things now.  He's

 4  committing fraud against me now.  He's taking all these

 5  things and doing in Hong Kong that he shouldn't be doing in

 6  Hong Kong, and that's all statements about postemployment

 7  conduct.

 8        That's primarily what's at issue there in Hong

 9  Kong.

10        THE COURT:  Postemployment conduct, but were any

11  of those activities that were being alleged, assuming that

12  that's what he was saying in Hong Kong, were those things,

13  even though they took place postemployment, prohibited by

14  any agreement?

15        MR. BOOKHOUT:  I think -- I can't make

16  Mr. Kinney's argument for him on that point.  I think it's

17  possible Mr. Kinney would say that but it's not clear to me

18  that that's why he was saying those things.

19        I think -- and the gravamen, Your Honor, of the

20  suit in Hong Kong is Mr. Kinney flew to Hong Kong, met with

21  people he knew Mr. Jowers would be doing business with; his

22  only purpose in meeting with those people was to defame

23  Mr. Jowers in Hong Kong; say wrongful, improper, defamatory

24  statements about Mr. Jowers so they wouldn't work with him

25  in the future in Hong Kong to place -- for the placement of

1  candidates or to accept candidates from Mr. Jowers in the

2  future.  This is all related to postemployment,

3  posttermination.

4         THE COURT:  Presumably the only thing that

5  Mr. Kinney could be complaining of, legitimately, would be

6  if he is alleging that Mr. Jowers was violating some

7  agreement about what he was doing in Hong Kong.

8         MR. BOOKHOUT:  He could have said that.

9         But the other part of the issue is we don't know

10 fully what he said.  Obviously Mr. Jowers wasn't present at

11 some of the meetings, that's why -- so the way the Hong Kong

12 procedure works, you file your skeletal endorsement of

13 claims and he needs to file a Statement of Claims, which is

14 most analogous to what we would call the claim.

15        The reason for the gap is in Hong Kong you can't

16 just freely amend your pleadings or if you discover new

17 facts in discovery, change it.

18        THE COURT:  Doesn't that admit too much -- isn't

19 what you are saying, doesn't that suggest that there's at

20 least a likelihood -- a possibility if not a likelihood --

21 that the things that are being considered by the Hong Kong

22 court are things that are exactly the kinds of things that

23 this Court is going to be looking at?

24        MR. BOOKHOUT:  I would say -- I would respectfully

25 say:  No, Your Honor.  And the reason is because there's not

1   going to be a jury question submitted in this case on

2   whether what Mr. Kinney said in Hong Kong was true or false.

3   There's not going to be a jury question submitted on whether

4   he was intentionally making those statements to harm

5   Mr. Jowers' future business.  There's not going to be a jury

6   question submitted in this case on those issues.

7            THE COURT:  No, but there may be a jury question

8   submitted that would be relevant to whether or not what he

9   said was true or false.

10           MR. BOOKHOUT:  Sure, Your Honor, and the

11  5th Circuit, I think, has answered that question.  It says

12  when there are two cases pending where there's some small

13  factual overlap, those should be permitted to both proceed

14  in the ordinary course.  And if one of those proceeds to

15  judgment -- this is the Karaha Bodas case.  It actually says

16  this -- I am paraphrasing, more or less, word for word.

17           It says that in that case the two courts with

18  concurrent jurisdiction should be allowed to proceed.  If

19  one reaches final judgment, then whatever facts -- in this

20  case I think it would be collateral estoppel, not res

21  judicata -- but those issues that they claim are being

22  resolved could be pleaded -- res judicata could be pleaded

23  in the second action.

24           THE COURT:  Okay.

25           MR. BOOKHOUT:  And the first factor I would like

1    to address, the Form Selection Clause.  I don't see how we

2    can seriously argue that applies here.  Neither Robert

3    Kinney nor Kinney Recruiting Limited have ever been parties

4    to that employment agreement.  In fact, in their Answer --

5    in their Answer in this case, on Page 16 paragraph 39, the

6    Kinney parties admitted that the Jowers agreement was never

7    assigned to Kinney Recruiting Hong Kong.

8              So Kinney recruiting has never been a party to

9    that agreement.  They claim he was never employed by Kinney

10   Recruiting Hong Kong -- Kinney Recruit Limited.  I'm using

11   the term used in our papers.  But that's not parties to that

12   agreement.

13             The relevant agreement from the forum selection

14   clause says it's exclusive venue in Florida.  So we are

15   certainly not interfering with a public policy of Texas and

16   ignoring a Florida forum selection clause, which is what's

17   basically occurred here.

18             And, moreover, the forum selection clause doesn't

19   apply, by its plain terms, to postendorsement torts.  It's

20   only as related to the Agreement itself.

21             These claims don't arise out of or relate directly

22   to the Jowers' agreement.  There are so many problems, I

23   think, with applying the forum selection clause to the

24   claims at issue in Hong Kong, the postemployment torts

25   claims, I don't see how that factor could ever weigh in

1  favor of an anti-suit injunction here.

2      On the second one, the vexatious, oppressive

3  duplicative, the two cases aren't duplicative of each other.

4  As Your Honor pointed out, there can be some facts --

5  certainly not all by any means -- but some facts that could

6  be resolved in one versus the other.

7      As I stated, the 5th Circuit has said, well,

8  normally, those should be allowed to proceed and you can

9  plead res judicata on those facts in the second proceeding.

10  Certainly I think for the vast majority of facts that will

11  be resolved, there will be different issues in Hong Kong

12  than here.

13      And in terms of vexatiousness or oppressiveness,

14  again, we sued a Hong Kong company in Hong Kong and its

15  principal officer based upon actions that are physically

16  taken in Hong Kong or specifically directed towards people

17  in Hong Kong.  I don't see how you can argue cogently that

18  its vexatious or oppressive to sue someone for Hong Kong

19  conduct in Hong Kong when they physically -- they could

20  physically travel there to defame someone, but it's too much

21  trouble to be sued in Hong Kong, particularly when it's a

22  Hong Kong limited entity.

23      And then I do want to distinguish the Bethell

24  case, Your Honor, Bethell v. Peace.  He talks about --

25  Mr. Kinney talks about that case but that case is a case in

1  which the 5th Circuit was applying Florida law standards

2  related to anti-suit injunctions.

3          Further, in that case, the contract defendant was

4  seeking to enforce, in a foreign jurisdiction, a contract

5  that had already been declared invalid in the Florida

6  action.  It's a typical marish case, and in that case one of

7  the cases had already reached a final decision on an issue

8  so it couldn't be less on point to the facts at issue in

9  this case as of today, Your Honor.

10          And then, finally, again, on the equitable

11  hardship, I don't see -- I don't see how -- again, I don't

12  see how you could seriously argue that it's inequitable to

13  sue someone in Hong Kong for actions they took in Hong Kong,

14  particularly when one of the defendants is a Hong Kong

15  limited company.

16          In fact, one of the plaintiffs, again, obviously

17  in the Hong Kong action, Mr. Vargas, he -- not only has he

18  only been in Hong Kong, the courts determined he couldn't --

19  the court doesn't have personal jurisdiction over him here.

20  The only proper place for Mr. Vargas to bring claims would

21  be Hong Kong.  It's not bringing these defamation claims is

22  in Hong Kong.  It's certainly not somehow more unequitable

23  or suspect for Mr. Jowers to also bring his defamation

24  claims there, particularly when they arise out of Hong Kong

25  conduct.

1          And even if the Court were to, in our view, see

2    the fact -- you know, see the factors do apply for some

3    reason, Mr. Vargas' claims would still be proceeding in the

4    Hong Kong action anyway.

5          THE COURT:  But if that's -- that's irrelevant

6    to -- if I am compelled to grant them the relief, what is

7    the relevance of the fact that there would still be a

8    Vargas --

9          MR. BOOKHOUT:  Well, Your Honor, there's no relief

10   from the -- from the alleged vexatiousness or

11   oppressiveness.  He's still going to have to pay to defend

12   Mr. Vargas' claims in Hong Kong.  I can't see how it's going

13   to change much in that regard.  The primary burden he's

14   identified is the alleged cost, is the alleged expense in

15   having to respond to the Hong Kong litigation.

16         THE COURT:  All right.  Thank you.

17         MR. BOOKHOUT:  Thank you, Your Honor.

18         MR. KINNEY:  May I?

19         THE COURT:  Sure.

20         MR. KINNEY:  Just on that final point, Your Honor.

21         Whether I have to deal with Vargas or not is, I

22   think, is probably no more merit than, you know, whether I

23   paid my bar tab last time I was there.  If they sue me for

24   that, I'll deal with that in Hong Kong the same way.

25         On the Vargas situation, it's -- the things I said

1   about Jowers can't be defamatory of Vargas anyway, so he's

2   going to have to come up with some things of his own.

3           Four points, the disjunctiveness thing, that's in

4   Gallo, the 9th Circuit case, Gallo, interpreting the

5   5th Circuit rule explicitly states it's a disjunctive test

6   and I think they got it right in that situation.

7           As far as what's in the record to show -- they

8   would like to say, you know, something I said while I was in

9   Hong Kong was relevant.  Well, the only thing we know of are

10  those emails that they pointed out.  We've -- you can tell,

11  once we dug them out of our email system, they were sent

12  from Texas, because you can tell from the time difference.

13  At the time it was a thirteen-hour time difference there --

14  or fourteen-hour time difference, and that's reflected.  We

15  had to do the math to figure that out.

16          There's one place on the record I'll point out

17  that Mr. Jowers did say that it was something that I said

18  personally.  It was in his affidavit submitted to support

19  this.  It's tab 4 of our binder on Page 3.  Mr. Jowers says,

20  as what appears to be an afterthought to his point Number 4,

21  "Kinney also traveled to Hong Kong and made defamatory

22  statements in person to a number of individuals."

23          If that were true and he had any evidence of that

24  you would think that it might have shown up in his

25  endorsement of claim or he wouldn't need extensive discovery

1  over there to try to fish out something that I said over

2  there that was bad enough to support a claim.

3        And then as far as the collateral effect of any

4  decision by this Court, we probably -- some of the courts --

5  some of the jury questions may already be relevant, but we

6  would also probably ask for special instructions to the jury

7  to deal with whatever precedent he might be able to seek.

8        And then in Bethell, finally, sure that's a

9  Florida -- it was a Florida issue but it was a 1970s case

10  when 5th Circuit precedent was still applicable there and

11  they were looking at Unterweser factors.  Unterweser was, at

12  the time, 5th Circuit and that's where Florida was.  So I

13  believe that may be why, you know, they would -- you know,

14  dealing with Florida.  So that's --

15        THE COURT:  Thank you very much.

16        Mr. Bookhout, let me ask you again if you could

17  identify in the record, as Mr. Kinney was talking about the

18  activities in Hong Kong that are the basis, because you seem

19  to be making quite a -- place great significance on the fact

20  that the Hong Kong action related to activities that took

21  place in Hong Kong.  So I want to make sure that I have a

22  clear record of that.

23        MR. BOOKHOUT:  Sure, Your Honor.

24        It's Mr. Jowers' declaration that we submitted

25  with our response.  It's ECF Number 107-1 in this case.

1          I believe -- really it's a very short declaration.

2  It's a whole declaration but the particular paragraphs that

3  are most relevant are paragraphs four, five and six, Your

4  Honor, but mostly four and five.

5          THE COURT:  Okay.  Great.  All right.  Thank you.

6          MR. BOOKHOUT:  And, Your Honor, if I could --

7  there's one further thing.  I apologize for interrupting.

8          THE COURT:  Not at all.

9          MR. BOOKHOUT:  Certainly Mr. Jowers is the most

10  reliable source of information on what he says he's alleging

11  and what he intends in the action in Hong Kong.

12          Thank you, Your Honor.

13          THE COURT:  All right, thank you very much.

14          This has been very helpful.  I want to go back and

15  look at a couple of references -- a couple of cases that

16  have been referenced and look at the record more carefully

17  on a couple of issues in the case.

18          Without signaling anything about my intentions,

19  let me ask, am to understand that the next activity in the

20  Hong Kong litigation that would be of concern to you,

21  Mr. Kinney, would be November 11th?

22          MR. KINNEY:  Yes, Your Honor.  That's the date, I

23  believe, has been scheduled for the hearing.

24          THE COURT:  I just want to make sure that there's

25  not going to be any intervening activity about what you are

36

1  concerned.

2          MR. KINNEY:  No, Your Honor.

3          THE COURT:  Great.

4          And, again, I'm not telegraphing anything.  I just

5  want to make sure that I understand sort of the timeline

6  here.

7          Okay, this has been very helpful to me.  I

8  appreciate it very much.  We will take a look at this and

9  get something out in short order.

10         Thank you.

11         MR. KINNEY:  Thank you, Your Honor.

12         (Whereupon, the hearing concluded at

13         9:47 a.m.)

14                  *    *    *    *    *

15

16

17

18

19

20

21

22

23

24

25

37

C E R T I F I C A T E

        I, Pamela J. Andasola, Certified Shorthand
Reporter, Registered Merit Reporter, Federal Certified
Realtime Reporter, in my capacity as Official Reporter do
hereby certify that I was present and recorded the above
proceedings in stenotype and reduced the same to typewritten
form, that the foregoing 36 pages constitute a true and
complete record of the proceedings, to the best of my
ability, had and done on October 30, 2019, before the
Honorable ROBERT PITMAN, Courtroom 4 of the United States
District Court, Western District of Texas, Austin Division.


                    Dated this 12th day of December, 2019.



                    s/Pamela J. Andasola
                    PAMELA J. ANDASOLA, CSR/RMR/FCRR

MR. BOOKHOUT: [21] 2/153/317/18
17/2120/1124/1825/1025/1725/22
25/2426/1527/827/2428/1028/2532/9
32/1734/2335/635/9
MR. KINNEY: [18] 2/143/123/213/247/15
7/1710/1110/2411/611/1313/514/315/15
32/1832/2035/2236/236/11
MR. MORT: [4] 2/113/133/163/18
THE CLERK: [1] 2/7
THE COURT: [40]

**$**

$500,000 [1] 17/3

**'**

'16 [1] 4/7

**1**

110 [1] 4/21
11th [2] 6/235/21
12th [1] 37/15
16 [1] 29/5
1970s [1] 34/9
1971 [1] 11/21
1996 [1] 9/22

**2**

2017 [1] 4/17
2018 [1] 4/20
2019 [4] 1/122/137/1037/15
28 [1] 5/13

**3**

30 [3] 1/122/137/10
355 [1] 1/25
36 [1] 37/8
39 [1] 29/5

**4**

444 [2] 1/52/7

**5**

5th [1] 7/10
5th Circuit [22] 7/97/198/29/811/2116/14
21/321/421/621/922/122/522/923/328/11
30/731/133/534/1034/12
5th Circuit's [1] 8/14

**6**

652 [1] 22/11

**7**

78210 [1] 1/25
7th [1] 7/10

**8**

8000 miles [1] 11/24
855 [1] 22/11

**9**

9:01 [2] 1/122/5
9:47 [1] 36/13
9th [1] 7/10
9th Circuit [2] 22/1033/4

**A**

a.m [2] 2/536/13
A:18 [2] 1/52/7
A:18-CV-444 [2] 1/52/7

ability [1] 37/10
able [2] 4/1934/7
about [35] 4/35/15/145/217/157/179/24
11/1711/1713/1013/1513/1715/1516/8
17/917/2418/218/2118/2118/2520/220/4
20/1021/223/624/2526/626/2427/730/24
30/2533/134/1735/1835/25
above [1] 37/6
absolutely [3] 17/1118/318/4
accept [1] 27/1
accusation [1] 25/5
accused [1] 24/19
action [10] 13/118/420/824/2228/2331/6
31/1732/434/2035/11
actions [5] 12/2518/1719/2530/1531/13
activities [3] 26/1134/1834/20
activity [2] 35/1935/25
acts [1] 25/7
actually [6] 5/206/88/1318/2419/2228/15
added [4] 19/1519/1819/1919/22
additional [1] 15/18
address [4] 3/817/2122/2529/1
admit [1] 27/18
admitted [2] 2/174/1429/6
affidavit [2] 5/333/18
after [5] 13/213/917/2420/323/12
afterthought [1] 33/20
again [11] 10/2512/215/2422/1722/23
30/1431/1031/1131/1634/1636/4
against [23] 4/174/244/255/76/126/13
6/186/198/189/415/2316/216/1616/16
17/417/418/119/1019/2121/1721/24
23/2226/4
agreement [11] 10/810/1226/1427/729/4
29/629/929/1229/1329/2029/22
ahead [1] 3/1
aided [1] 1/22
AKA [1] 1/7
ALEJANDRO [2] 1/824/21
all [16] 2/49/1312/1514/715/1819/11
19/2326/226/426/627/230/532/1635/5
35/835/13
allege [1] 24/14
alleged [4] 26/1132/1032/1432/14
allegedly [1] 5/1
alleging [2] 27/635/10
allow [1] 5/19
allowed [3] 22/728/1830/8
already [6] 3/133/1824/2231/531/734/5
also [16] 3/46/106/209/2313/2317/118/1
18/2119/2420/1720/2022/524/2131/23
33/2134/6
am [5] 1/1214/528/1632/635/19
amend [1] 27/16
America [2] 19/623/8
analogous [1] 27/14
analysis [2] 22/3
Andasola [4] 1/2437/337/1837/18
announced [2] 4/84/12
announcements [1] 2/10
another [1] 7/16
answer [9] 6/1110/2211/2012/1314/1
16/1225/2529/429/5
answered [1] 28/11
anti [7] 6/228/2422/923/323/630/131/2
anti-contractual [1] 8/24
anti-suit [6] 6/2222/923/323/630/131/2
ANTONIO [1] 1/25
any [25] 3/106/79/1310/110/410/510/25
11/111/111/613/2215/315/315/1015/10

16/217/2518/221/726/1026/1430/533/23
34/335/25
anyone [1] 17/4
anything [3] 13/2235/1836/4
anyway [2] 32/433/1
anywhere [1] 17/7
apologize [1] 35/7
appear [1] 21/7
appears [2] 16/633/20
applicable [1] 34/10
application [1] 10/2
applied [1] 8/3
applies [1] 29/2
apply [2] 29/1932/2
applying [2] 29/2331/1
appreciate [1] 36/8
approach [8] 3/164/94/237/117/1921/3
22/222/14
appropriate [1] 22/16
arbitral [2] 16/1916/22
are [58]
aren't [3] 21/1025/730/3
argue [3] 29/230/1731/12
argued [4] 8/111/1511/1814/19
argued -- well [1] 11/18
argument [2] 24/2426/16
arise [2] 29/2131/24
arising [1] 19/4
around [1] 5/20
as [38]
Asia [1] 4/6
ask [8] 10/712/1612/2112/2324/1334/6
34/1635/19
asked [4] 2/247/2316/2221/19
asking [1] 24/8
assessing [2] 21/1821/21
assigned [2] 10/1329/7
assisting [1] 2/17
associated [1] 18/11
assuming [1] 26/11
attached [1] 20/25
attempt [1] 13/11
attorney [2] 2/164/5
AUSTIN [2] 1/237/12
avoid [2] 12/212/5
award [2] 16/1916/22
away [1] 11/2422/19

**B**

back [8] 9/710/1511/2115/2015/2519/12
24/1435/14
bad [2] 14/2134/2
balance [1] 21/16
balancing [3] 21/1122/1722/23
bar [2] 15/832/23
barrister [3] 6/16/16/1
base [1] 11/7
based [7] 4/48/1719/422/1723/2524/3
30/15
basically [1] 29/17
basis [1] 34/18
battle [1] 17/8
be [73]
because [16] 8/1710/1312/412/2013/6
13/2114/2016/1717/619/1819/2221/8
23/727/2533/1234/18
been [13] 13/1016/1820/1220/1420/18
29/329/831/531/1835/1435/1635/2336/7
before [10] 1/115/186/66/227/47/713/11
14/2515/137/10

B

begin [1] 3/22
behalf [2] 2/122/18
being [10] 10/2013/613/813/1413/20
14/2516/2226/1127/2128/21
Belgium [1] 11/25
believe [9] 5/26/248/199/99/109/1510/1
11/812/612/1513/1215/216/318/918/24
20/2324/1934/1335/135/23
believes [2] 8/2211/19
best [1] 37/9
Bethell [4] 11/2130/2330/2434/8
between [3] 7/27/38/15
big [1] 21/2
bigger [1] 17/13
binder [1] 33/19
binders [2] 3/143/20
BLVD [1] 1/25
Bodas [5] 16/1316/1421/1323/128/15
BOOKHOUT [5] 1/172/162/2417/1734/16
both [4] 23/1823/1823/2028/13
brief [1] 14/23
briefing [1] 3/9
briefly [1] 17/21
bright [2] 13/313/5
bring [3] 6/2231/2031/23
bringing [3] 14/2115/931/21
broken [1] 12/7
brought [6] 5/87/247/2515/116/1523/21
bunch [1] 5/19
burden [4] 3/720/2120/2232/13
business [5] 4/518/1118/2426/2128/5

C

call [3] 22/823/1627/14
called [3] 5/107/108/4
calls [2] 2/710/2
can [20] 2/103/2011/711/1011/1112/2
12/1014/414/514/815/515/2015/2424/23
29/230/430/830/1733/1033/12
can't [5] 7/1626/1527/1532/1233/1
candidates [3] 4/1327/127/1
capacity [1] 37/5
cares [1] 17/12
case [61]
cases [13] 7/248/1312/418/622/623/16
23/1823/1923/2028/1230/331/735/15
cause [5] 15/1715/2116/516/917/11
certain [4] 4/1319/2521/725/12
certainly [12] 14/814/1317/2317/2518/2
23/123/2129/1530/530/1031/2235/9
Certified [2] 37/337/4
certify [1] 37/6
CESAR [1] 1/25
Cetera [1] 22/11
change [2] 27/1732/13
characterized [1] 20/14
charged [3] 13/713/813/20
CHAVEZ [1] 1/25
circuit [25] 7/97/147/198/29/811/2116/8
16/1421/321/421/621/922/122/522/9
22/1022/1323/328/1130/731/133/433/5
34/1034/12
Circuit's [1] 8/14
circuits [2] 7/107/12
circumstances [1] 22/16
cite [1] 23/4
cited [1] 11/22
claim [12] 5/105/125/135/176/615/415/9

27/1428/2129/933/2534/2
claimant [2] 23/2125/21
claims [29] 5/76/126/136/186/197/28/17
8/188/248/259/49/515/715/2319/1119/23
20/1220/1623/2227/1327/1329/2229/24
29/2531/2031/2131/2432/332/12
clause [12] 9/199/209/2310/212/1713/21
22/2429/129/1429/1629/1829/23
clauses [2] 9/1711/8
clear [11] 6/257/18/1410/2011/215/16
19/1321/1321/1426/1734/22
clearly [5] 11/2213/2213/2414/1814/18
clerk [1] 25/16
clients [2] 5/48/21
close [1] 23/14
closely [1] 9/19
code [1] 24/11
cogently [1] 30/17
collateral [2] 28/2034/3
collection [1] 22/24
come [2] 23/633/2
comes [2] 11/1923/23
coming [1] 24/8
comity [6] 7/2116/721/521/1721/2522/3
committed [2] 20/325/6
committing [1] 26/4
company [10] 1/74/14/126/156/1511/17
18/1624/730/1431/15
compelled [1] 32/6
complaining [1] 27/5
complete [1] 37/9
completely [1] 13/19
complicated [1] 5/25
compulsory [2] 19/1019/21
computer [1] 1/22
concept [4] 10/1610/1911/1413/23
concern [4] 7/2111/1915/535/20
concerned [1] 36/1
concerning [1] 2/22
concerns [1] 21/17
concluded [1] 36/12
concurrent [3] 22/622/728/18
conduct [9] 19/1219/1619/2424/124/2
26/726/1030/1931/25
conflicting [1] 14/10
conservative [3] 7/1221/322/14
consider [2] 3/17/23
considered [2] 10/2027/21
consolidate [3] 7/212/414/14
constitute [1] 37/8
contemplate [1] 11/9
contemplation [1] 10/4
contract [3] 8/2131/331/4
contractual [1] 8/24
correctly [1] 10/7
cost [3] 4/1011/1532/14
costs [2] 12/516/5
could [11] 9/227/527/828/2228/2229/25
30/530/1931/1234/1635/6
couldn't [2] 31/831/18
counsel [3] 2/183/2518/9
counterclaim [1] 19/21
counterclaimant [1] 2/19
counterclaims [3] 14/2119/1019/13
counterdefendants [1] 2/12
countries [1] 7/22
couple [6] 3/146/210/1235/1535/1535/17
course [5] 4/118/721/822/128/14
court [38]
court's [5] 4/1510/2216/721/2324/24

Counterclaim [1] 6/11
Courtroom [1] 37/11/5
courts [9] 11/2014/1216/1117/222/6
22/2228/1731/1834/4
courts' [1] 7/20
create [1] 12/1
CSR [2] 1/2437/18
CSR/RMR/FCRR [2] 1/2437/18
CV [2] 1/52/7

D

date [2] 6/235/22
Dated [1] 37/15
day [2] 17/337/15
days [1] 5/13
deal [4] 21/232/2132/2434/7
dealing [4] 8/912/317/1334/14
December [2] 4/737/15
decide [1] 15/25
decided [6] 4/69/69/616/1116/1617/6
decision [4] 16/823/531/734/4
declaration [6] 3/420/1720/2334/2435/1
35/2
declaratory [1] 14/22
declared [1] 31/5
defamation [10] 8/178/249/515/415/7
15/920/224/431/2131/23
defamatory [8] 4/255/156/88/2218/21
26/2333/133/21
defame [2] 26/2230/20
defaming [1] 18/23
defend [1] 32/11
defendant [7] 1/172/1923/823/823/11
23/1231/3
defendant's [1] 19/8
defendants [2] 1/931/14
defense [3] 15/1115/2316/4
defer [1] 21/24
delay [3] 12/1014/414/6
denying [1] 19/8
departure [2] 4/84/12
description [1] 5/12
determination [3] 12/1114/514/9
determinations [1] 15/2
determine [2] 13/315/12
determined [1] 31/18
device [1] 5/10
did [9] 4/75/165/208/218/2311/917/24
25/1233/17
didn't [4] 16/2317/719/1924/20
difference [4] 33/1233/1333/14
different [4] 13/1923/1523/1630/11
differing [1] 9/2
directed [2] 18/1830/16
directly [1] 29/21
discover [1] 27/16
discovery [5] 5/176/36/527/1733/25
discretion [3] 6/257/111/2
discussing [1] 20/18
discussion [2] 10/1525/15
disgorge [1] 5/18
disjunctive [7] 9/1210/2512/1315/21
15/2421/1133/5
disjunctiveness [1] 33/3
Dismiss [2] 9/2019/9
dispute [3] 10/416/1018/2
disputes [1] 17/24
distinct [1] 13/4
distinction [1] 23/23
distinguish [1] 30/23

**D**

DISTRICT [6] 1/11/12/1716/2137/12
37/12
DIVISION [2] 1/237/12
do [18] 2/254/117/57/710/1012/2513/1
15/1316/316/2520/2322/2022/2222/25
30/2332/2337/1337/5
Docket [1] 4/21
does [7] 7/610/2212/113/2414/114/221/6
doesn't [6] 22/1524/2327/1827/1929/18
31/19
doing [8] 8/1516/616/2426/226/526/5
26/2127/7
domestic [2] 12/321/16
dominate [1] 22/3
don't [16] 6/710/1110/1111/613/1215/7
22/324/1327/929/129/2129/2530/17
31/1131/1131/11
done [2] 8/737/10
down [5] 8/1210/1311/1912/716/24
draw [1] 13/3
dug [1] 33/11
duplicate [1] 16/4
duplication [1] 14/20
duplicative [9] 8/212/1212/2414/1714/18
20/2222/2130/330/3
duplicity [1] 7/24
during [3] 12/2525/925/13
duty [1] 7/1

**E**

each [3] 9/2114/1430/3
earlier [1] 23/4
earth [3] 4/94/2318/2
easily [2] 8/1110/18
EAST [1] 1/25
ECF [1] 34/25
effect [2] 12/434/3
efficient [3] 12/1014/414/9
effort [1] 15/17
either [1] 7/12
email [4] 5/35/195/2033/11
emails [2] 18/2133/10
employed [1] 29/9
employee [2] 4/319/1
employer [1] 18/25
employment [16] 10/513/113/213/913/18
13/2313/2517/2520/424/125/725/825/9
25/1326/329/4
endorsement [5] 5/1020/1220/1627/12
33/25
enforce [3] 16/2217/331/4
enforceable [1] 18/1
enforced [1] 17/7
enforcement [1] 9/17
enough [6] 11/1112/1413/616/116/23
34/2
entered [1] 12/17
entities [2] 16/1320/1
entities' [1] 2/22
entity [13] 6/146/166/166/1916/1816/24
18/1218/1419/319/423/2424/1030/22
equitable [1] 31/10
equity [1] 15/22
especially [1] 6/7
ESQ [3] 1/151/151/17
establish [3] 20/620/2120/22
establishes [1] 20/18
estoppel [1] 28/20
Et [1] 22/10

**EVAN** [4] 1/62/82/1913/17
Evans [1] 14/4
even [4] 6/623/1426/1332/1
ever [2] 29/329/25
every [1] 8/2
evidence [2] 6/733/23
ex [1] 19/1
ex-employee [1] 19/1
exactly [3] 20/820/2327/22
example [5] 7/1613/1616/1323/723/10
exclusive [1] 29/14
excuse [2] 18/1024/1
exercised [1] 4/15
expedient [1] 21/8
expense [1] 32/14
explain [1] 18/5
explicitly [1] 33/5
extensions [1] 5/16
extensive [1] 33/25
extensively [1] 14/19

**F**

F.2d [1] 22/11
fact [13] 4/148/188/239/113/1113/2422/8
23/1629/431/1632/232/734/19
factor [7] 11/1614/1622/1822/2122/23
28/2529/25
factors [8] 12/812/1621/921/1022/17
24/1232/234/11
facts [19] 6/249/212/2114/1217/2219/3
19/419/1619/1819/2320/1820/2427/17
28/1930/430/530/930/1031/8
factual [3] 15/223/2328/13
fail [1] 8/25
fair [1] 15/12
fairly [1] 8/11
fairness [1] 14/7
faith [1] 14/21
fall [1] 22/19
false [2] 28/228/9
familiar [1] 24/24
far [4] 11/2412/1933/734/3
faster [1] 14/7
favor [2] 21/630/1
favored [1] 22/15
favors [1] 9/16
FCRR [2] 1/2437/18
federal [3] 1/2412/237/4
feel [1] 16/23
feels [1] 21/8
felt [1] 6/21
few [1] 5/4
Fifth [1] 7/14
Fifth Circuit [1] 7/14
fight [1] 9/24
fighting [1] 13/15
figure [1] 33/15
file [4] 5/135/1727/1227/13
filed [9] 3/44/24/174/245/95/246/620/13
23/13
files [1] 23/9
final [4] 16/828/1931/732/20
finally [4] 12/1816/731/1034/8
find [1] 4/18
fine [2] 17/325/19
first [3] 7/229/1328/25
fish [2] 5/1934/1
five [2] 35/335/4
flew [2] 26/126/20
floor [1] 3/10

**Florida** [10] 4/110/229/1429/1631/131/5
34/934/935/1234/14
Floridian [1] 17/10
following [2] 2/3
force [1] 17/5
forcing [1] 11/23
foregoing [1] 37/8
foreign [11] 7/228/59/149/1512/912/12
14/414/1621/1623/931/4
foremost [1] 7/22
forget [1] 11/24
form [1] 21/1529/137/8
former [2] 4/318/25
forum [15] 9/149/169/179/1810/111/8
11/912/1713/2117/1122/2429/1329/16
29/1829/23
found [3] 8/39/224/22
four [6] 9/1321/924/1233/335/335/4
fourteen [1] 33/14
fourteen-hour [1] 33/14
frankly [1] 24/6
fraud [2] 25/626/4
freely [1] 27/16
friendly [2] 22/922/13
frustrate [5] 9/1412/1014/414/813
frustrates [1] 9/16
full [1] 5/13
fully [1] 27/16
further [3] 8/1231/335/7
future [3] 26/2527/228/5

**G**

Gallo [2] 33/433/4
gap [1] 27/15
generally [2] 16/522/6
geographic [1] 20/8
get [3] 5/1813/1436/9
getting [2] 9/724/14
give [2] 3/1025/19
go [6] 3/110/1511/2114/715/2435/14
going [23] 2/253/13/84/1310/1414/24
16/1716/1917/217/217/718/318/520/24
23/1427/2328/128/328/532/1132/1233/2
35/25
gone [2] 14/1719/1
good [7] 2/132/142/152/2012/1417/19
17/20
good-enough [1] 12/14
got [2] 6/1133/6
gotten [3] 12/1812/1812/19
Government [1] 17/8
grant [1] 32/6
granting [2] 19/822/13
gravamen [1] 26/19
great [6] 3/1517/1525/2134/1935/536/3
group [1] 7/9
gut [1] 15/3
guys [1] 17/9

**H**

habits [1] 13/17
had [18] 2/322/244/135/55/79/219/249/24
16/1216/1816/2117/425/1531/531/7
33/1533/2337/10
hand [1] 8/5
handed [3] 3/135/518/25
happened [1] 5/23
happy [1] 25/18
hardship [4] 11/2512/912/1631/11
harm [4] 15/1818/2319/128/4

**H**

has [24] 4/85/166/166/258/18/310/311/2 11/1512/2514/615/2019/120/2324/19 24/2225/228/1129/830/731/1735/14 35/2336/7
hauled [1] 23/13
hauls [1] 23/8
have [51]
having [2] 12/2132/15
havoc [1] 16/5
he [46]
he's [13] 2/175/2411/1823/2023/2123/21 26/326/326/432/1132/1333/135/10
hearing [7] 1/112/92/225/236/335/23 36/12
heavy [1] 18/25
heavy-handed [1] 18/25
helpful [3] 17/1535/1436/7
her [1] 25/19
here [32] 4/213/84/206/76/198/68/168/18 8/218/259/39/69/610/2111/912/1312/25 14/514/915/917/917/2318/318/523/15 23/2529/229/1730/130/1231/1936/6
hereby [1] 37/6
him [16] 4/174/184/195/15/198/168/18 9/415/2318/118/1124/2325/326/1626/24 31/19
himself [1] 20/17
his [34] 4/84/114/124/235/55/65/95/17 8/178/208/249/510/513/913/1813/22 13/2414/1916/417/2518/1118/1618/23 19/119/2420/325/925/1326/2131/2333/2 33/1833/2033/24
history [1] 4/22
HK [1] 1/7
Hockey [1] 22/11
Hold [1] 25/11
holding [2] 6/1518/9
Holdings [1] 4/1
Hong [102]
Honor [31] 2/112/153/33/123/2117/18 17/1918/2519/1320/1121/1422/2023/15 24/1825/2426/1927/2528/1030/430/24 31/932/932/1732/2034/2335/435/635/12 35/2236/236/11
HONORABLE [2] 1/1137/11
hour [3] 2/533/1333/14
how [9] 11/2420/1420/1529/129/2530/17 31/1131/1232/12
however [2] 8/214/8
hybrid [1] 7/12

**I**

I'd [2] 17/2124/11
I'll [7] 3/63/103/113/2223/1632/2433/16
I'm [11] 2/252/253/253/255/2111/1613/20 17/1425/1729/1036/4
I've [3] 2/248/320/18
identified [2] 21/1032/14
identify [1] 34/17
ignoring [1] 29/16
III [1] 1/15
illegal [1] 8/23
image [2] 23/923/13
immediately [1] 13/9
important [6] 11/411/611/811/1322/4 22/21
improper [1] 26/23
INC [2] 1/32/8
include [1] 5/14

included [1] 6/12
including [2] 4/66/13
individuals [1] 33/22
Indonesia [3] 16/1716/2517/8
Indonesian [3] 16/1816/2417/4
inefficiencies [1] 12/1
inequitable [4] 12/912/1616/331/12
information [1] 35/10
initial [1] 8/8
injunction [17] 2/92/216/227/17/811/3 16/216/916/1621/121/1521/1621/21 22/1324/825/130/1
injunctions [5] 21/722/1023/323/631/2
instances [1] 24/4
instructions [1] 34/6
instructs [1] 5/25
intellectual [1] 8/20
intends [1] 35/11
intentionally [1] 28/4
intentions [1] 35/18
interest [2] 10/1910/21
interests [1] 21/17
interfering [1] 29/15
international [5] 7/2116/1021/521/17 21/25
interpreting [1] 33/4
interrupting [1] 35/7
intervening [1] 35/25
invalid [1] 31/5
iota [1] 17/12
irony [1] 24/6
irrelevant [1] 32/5
is [99]
isn't [1] 27/18
issuance [1] 16/9
issue [21] 7/17/810/810/1010/1210/14 10/2411/212/2314/2417/617/1017/22 20/2423/226/827/929/2431/731/834/9
issued [2] 17/419/7
issues [18] 3/88/48/109/59/109/1310/17 11/112/2014/2415/1516/416/1917/14 28/628/2130/1135/17
issuing [1] 21/6
it [50]
it's [44]
its [18] 3/29/1930/1430/18
itself [2] 24/529/20

**J**

JAMES [2] 1/172/15
Japan [2] 9/2523/13
Japanese [2] 23/1123/12
John [1] 2/16
JOWERS [50]
Jowers' [6] 7/2513/1720/2328/529/22 34/24
JOWERS/VARGAS [1] 1/7
judgment [5] 4/2514/2217/528/1528/19
judicata [3] 28/2128/2230/9
judicial [1] 21/17
July [1] 5/23
jump [1] 3/11
jurisdiction [10] 4/1616/2121/2422/7 23/1024/2325/328/1831/431/19
jurisdictions [1] 9/8
jury [6] 28/128/328/528/734/534/6
just [18] 3/1010/2513/2414/2316/518/20 20/720/1520/1821/822/1822/2324/6 25/1927/1632/2035/2436/4
justify [1] 16/23

**K**

K-A-E-P-A [1] 23/5
KAEPA [7] 9/219/219/2211/2223/423/7 23/10
Karaha [4] 16/1421/1323/128/15
kind [3] 5/219/2014/17
kinds [1] 27/22
KINNEY [41]
Kinney's [3] 17/2420/2126/16
knew [2] 5/526/21
know [17] 2/234/215/88/1212/1913/13 15/816/516/2326/327/932/232/2233/8 33/934/1334/13
knowing [1] 14/11
Kong [102]

**L**

last [3] 16/821/2032/23
late [1] 3/4
late-filed [1] 3/4
law [5] 6/56/2510/225/1631/1
laws [2] 18/1524/7
lawsuit [3] 12/2523/923/13
League [1] 22/11
least [1] 27/20
leave [1] 4/6
left [2] 17/2520/3
LEGIS [1] 1/7
legitimate [1] 15/5
legitimately [1] 27/5
lens [1] 11/22
less [4] 21/421/528/1631/8
let [5] 10/712/2324/1334/1635/19
liberal [7] 7/117/147/209/821/222/222/14
like [11] 11/314/1516/2317/2118/521/8 22/2524/624/1128/2533/8
likelihood [2] 27/2027/10
likely [1] 7/18
limitations [2] 15/715/10
limited [11] 1/718/1419/519/1523/19 23/2424/229/329/1030/2231/15
line [5] 10/1313/313/615/2223/25
list [2] 5/58/12
litigate [1] 9/311/23
litigated [1] 14/25
litigation [18] 2/234/109/149/1510/611/10 11/1412/1212/1814/1719/2420/220/25 21/2323/1224/1732/1535/20
litigations [1] 12/3
Lloyd [1] 2/16
logical [3] 8/48/1419/22
logically [2] 8/59/1
long [2] 4/1823/25
look [11] 2/258/1210/1612/2113/615/20 16/722/2435/1535/1636/8
looked [3] 9/1916/1117/1
looking [5] 8/714/1220/2427/2334/11
lot [2] 16/1923/4

**M**

made [15] 3/15/16/86/186/196/208/313/8 13/1715/316/820/920/1024/1533/21
main [1] 9/22
majority [1] 30/10
make [6] 4/1015/426/1534/2135/2436/5
makes [5] 19/2219/2321/221/1321/14
making [2] 28/434/19
many [3] 3/2012/2029/22
March [1] 4/17
marish [1] 31/6

## M

math [1] 33/15
matter [5] 2/239/2313/1914/1324/15
matters [1] 10/9
may [10] 3/164/204/2413/618/1321/14 28/732/1834/534/13
me [15] 2/162/172/246/1910/712/23 18/1024/124/1326/426/1732/2334/16 35/1936/7
mean [3] 11/1821/622/15
means [3] 7/2021/430/5
mechanical [1] 1/22
meeting [1] 26/22
meetings [2] 18/2227/11
mention [1] 24/21
mentioned [1] 14/23
merit [2] 32/2237/4
merits [1] 17/23
messages [2] 5/45/19
met [2] 21/1026/20
might [8] 5/810/414/1115/415/615/11 33/2434/7
miles [1] 11/24
mind [3] 3/716/1224/13
minute [1] 25/20
mirror [2] 23/923/13
mirror-image [2] 23/923/13
misstatements [1] 24/14
MKW [2] 1/32/7
more [5] 14/2528/1631/2232/2235/16
moreover [1] 29/18
morning [6] 2/12/132/142/1517/1917/20
MORT [2] 1/152/11
most [13] 11/422/822/822/922/1222/21 22/2223/123/226/127/1435/335/9
mostly [3] 16/1224/435/4
motion [1] 1/115/246/36/229/2019/821/1
move [2] 3/424/11
Mr [3] 3/518/2331/23
Mr. [77]
Mr. Bookhout [3] 2/2417/1734/16
Mr. Jowers [41]
Mr. Jowers' [4] 7/2520/2328/534/24
Mr. Kinney [19] 2/113/2318/1718/2119/6 19/1419/1419/2420/321/224/1926/1 26/1726/2027/528/230/2534/1735/21
Mr. Kinney's [3] 17/2420/2126/16
Mr. Vargas [5] 24/2024/2525/131/17 31/20
Mr. Vargas' [2] 32/332/12
much [9] 4/1012/217/1327/1830/2032/13 34/1535/1336/8
multiple [1] 6/12
MWK [7] 2/122/224/118/818/919/10 23/18
my [6] 11/1911/2032/2335/1837/537/9
myself [1] 6/17

## N

named [1] 4/4
National [1] 22/11
necessarily [1] 25/13
necessary [1] 21/22
need [6] 7/77/721/2221/2422/1633/25
needs [1] 27/13
neither [2] 19/529/2
never [5] 3/2010/329/629/829/9
nevertheless [1] 22/4
new [4] 12/2218/1118/2327/16
next [3] 11/411/1335/19

## O

no [11] 1/513/514/1115/917/1219/20 27/2528/732/932/2236/2
nonliability [1] 14/22
normally [2] 5/1330/8
not [50]
notes [1] 22/1
nothing [1] 10/3
notice [1] 5/7
notions [1] 22/2
November [2] 6/235/21
November 11th [2] 6/235/21
now [8] 6/36/2312/1918/919/226/226/3 26/4
number [4] 2/133/2033/2234/25
Number 107-1 [1] 34/25
Number 110 [1] 4/21
Number 4 [1] 33/20

## O

objection [1] 15/10
obvious [2] 4/225/22
obviously [3] 9/327/1031/16
occurred [2] 13/229/17
OCTOBER [1] 1/122/137/10
off [3] 23/923/1325/16
offend [1] 15/22
officer [2] 19/330/15
OFFICIAL [2] 1/2437/5
often [1] 16/15
okay [7] 11/1212/615/1425/2328/2435/5 36/7
once [2] 15/1833/11
one [33] 5/119/310/1210/2010/2411/4 11/411/911/1312/812/1314/716/1717/10 17/1017/1218/618/620/1222/1822/21 22/2224/1925/428/1428/1930/230/631/6 31/1431/1633/1635/7
ones [2] 5/28/5
only [15] 7/1311/1611/1914/2015/519/15 23/1725/2426/2227/429/2031/1731/18 31/2033/9
open [1] 2/4
oppression [1] 7/23
oppressive [6] 12/715/1721/2322/2130/2 30/18
oppressiveness [2] 30/1332/11
order [4] 4/154/185/187/77/79/410/16 19/725/136/9
ordinary [1] 28/14
organized [3] 6/1518/1524/7
other [12] 2/123/136/19/89/2117/218/11 22/1825/627/930/330/6
other's [1] 14/14
others [1] 2/8
otherwise [2] 15/1120/22
our [27] 4/54/125/45/205/256/136/157/21 8/28/189/410/112/1713/1113/2114/21 14/2316/119/1319/2320/2220/2529/11 32/133/1133/1934/25
ours [1] 4/3
out [15] 3/915/2519/119/420/2024/6 29/2130/431/2433/1033/1133/1533/16 34/136/9
over [11] 4/165/58/158/1613/1517/13 24/2325/331/1934/134/1
overlap [1] 28/13
overrule [1] 3/6
overseas [1] 7/24
own [2] 19/133/2
owned [1] 16/24

## P

Page [2] 29/533/19
Page 16 [1] 29/5
Page 3 [1] 33/19
pages [1] 37/8
paid [1] 32/23
Pamela [4] 1/2437/337/1837/18
papers [1] 29/11
paragraph [1] 29/5
paragraphs [2] 35/235/3
paraphrasing [1] 28/16
part [12] 4/144/237/98/815/1216/418/4 19/819/825/2426/127/9
particular [2] 24/335/2
particularly [3] 30/2131/1431/24
parties [19] 2/47/28/99/99/2110/910/17 10/1910/2116/1817/519/619/2023/15 23/1723/1729/329/629/11
partner [1] 5/6
party [1] 29/8
passed [1] 8/11
pay [1] 32/11
Peace [1] 30/24
pending [5] 6/912/2418/623/1528/12
people [6] 5/518/1018/1126/2126/22 30/16
perfect [2] 23/723/10
perfectly [1] 25/18
period [2] 12/2519/12
permissive [3] 9/189/2310/2
permit [5] 12/315/1315/2216/116/3
permits [1] 5/11
permitted [2] 24/928/13
person [1] 33/22
personal [2] 24/2331/19
personally [11] 6/176/1918/1418/1918/22 19/619/1523/2023/2524/333/18
persons [1] 18/18
persuasion [1] 3/8
physically [4] 18/1730/1530/1930/20
PITMAN [2] 1/1137/11
place [9] 20/422/2224/426/1326/2531/20 33/1634/1934/21
placement [1] 26/25
places [1] 21/4
plain [1] 29/19
plaintiff [9] 1/41/152/1218/818/923/8 23/1823/2024/21
plaintiffs [1] 31/16
plead [1] 30/9
pleaded [2] 28/2228/22
pleading [1] 20/13
pleadings [1] 27/16
please [2] 2/103/17
point [15] 6/216/2411/2514/314/1215/6 15/2520/2024/625/426/1631/832/20 33/1633/20
pointed [3] 22/2430/433/10
points [1] 33/3
policy [5] 9/149/1611/818/329/15
possibility [1] 27/20
possible [2] 4/1026/17
post [1] 29/19
postemployment [5] 26/626/1026/1327/2 29/24
postendorsement [1] 29/19
posttermination [1] 27/3
potential [1] 14/13
potentially [2] 10/1412/19
power [1] 22/12

## P

pre [2] 19/2424/1
pre-employment [1] 24/1
pre-litigation [1] 19/24
precedent [2] 34/734/10
predominantly [1] 4/5
prejudice [1] 15/21
preliminary [6] 2/92/212/2320/1321/1 21/15
premature [2] 6/46/5
present [6] 2/49/1318/1923/1827/1037/6
president [1] 3/25
Presumably [1] 27/4
pretermination [3] 19/1119/1624/1
pretty [4] 3/910/1818/719/13
prevent [1] 21/22
previously [1] 3/18
primarily [2] 23/726/8
primary [2] 11/1632/13
principal [4] 10/2019/321/2430/15
probably [5] 7/1814/632/2234/434/6
problem [1] 17/2
problems [2] 17/1329/22
procedural [1] 5/10
procedure [2] 20/1527/12
proceed [4] 22/728/1328/1830/8
proceeding [2] 30/932/3
proceedings [5] 1/111/222/337/737/9
proceeds [1] 28/14
process [2] 5/257/11
produced [1] 1/22
prohibited [1] 26/13
prominence [1] 21/5
prominent [1] 23/2
pronouncement [1] 8/3
proper [2] 25/131/20
property [1] 8/20
prosecuting [1] 25/2
protect [1] 21/23
prove [1] 22/18
proven [1] 22/16
provided [1] 3/19
public [2] 16/1329/15
purpose [3] 5/2118/2326/22
pursue [2] 4/915/22
pursued [1] 4/8
put [3] 5/65/1113/11

## Q

question [10] 7/69/99/1210/2225/2528/1 28/328/628/728/11
questions [2] 3/1034/5
quite [3] 8/2516/1534/19
quote [1] 22/2

## R

raise [1] 16/5
raised [1] 10/8
random [1] 22/24
Ray [1] 2/11
RAYMOND [1] 1/15
reached [1] 31/7
reaches [1] 28/19
reaction [1] 24/24
ready [1] 3/22
real [2] 10/1910/21
realized [1] 10/13
really [8] 8/1710/1911/1817/2117/22 21/1025/735/1
Realtime [1] 37/5

reason [5] 8/1717/1227/1527/2532/3
reasons [2] 10/1215/18
recall [1] 10/7
recent [1] 23/2
record [12] 13/1420/620/1020/1620/19 25/1633/733/1634/1734/2235/1637/9
recorded [2] 1/2237/6
Recruit [1] 29/10
recruiting [17] 1/32/84/14/518/818/10 18/1419/519/1019/1523/1923/2424/2 29/329/729/829/10
reduced [1] 37/7
referenced [1] 35/16
references [1] 35/15
reflected [1] 33/14
regard [1] 32/13
Registered [1] 37/4
relate [3] 13/2419/1129/21
related [13] 8/59/110/513/1819/1625/7 25/827/229/2031/234/20
relates [1] 13/22
relations [1] 7/21
relationship [2] 8/48/15
relevance [1] 35/10
relevant [6] 23/128/829/1333/934/535/3
reliable [1] 35/10
relief [2] 32/632/9
relitigate [3] 9/492/2512/20
remarks [1] 6/8
remiss [1] 24/20
remotely [1] 23/14
removed [1] 4/20
repeat [1] 21/20
reply [2] 2/243/1
reporter [6] 1/2421/1937/437/437/537/5
requests [2] 2/2216/1
required [2] 5/1221/16
requirement [1] 19/19
requirements [1] 18/1
requires [1] 21/9
res [3] 28/2028/2230/9
resolved [3] 28/2230/630/11
respect [1] 19/25
respectfully [2] 20/2027/24
respond [1] 32/15
response [3] 14/1920/2534/25
rest [2] 4/227/11
result [1] 15/12
right [10] 4/117/157/1711/511/722/20 32/1633/635/535/13
ripe [1] 6/21
risk [2] 9/115/8
RMR [2] 1/2437/18
ROBERT [8] 1/111/153/2518/1323/19 23/2529/237/11
rule [1] 33/5
rules [1] 12/2
rulings [2] 14/1014/14

## S

s/Pamela [1] 37/18
said [11] 8/2120/727/827/1028/228/930/7 32/2533/833/1734/1
same [17] 6/68/88/98/108/139/99/109/20 10/910/1610/1710/1710/2114/1214/12 32/2437/7
SAN [1] 1/25
satisfied [1] 10/18
say [8] 5/2022/1026/1726/2327/2427/25 33/833/17

saying [4] 25/1226/1226/1827/19
says [12] 11/2213/2221/1421/1522/526/2 28/1128/1528/1729/1433/1935/10
scheduled [1] 35/23
scorched [3] 4/94/2318/2
scorched-earth [3] 4/94/2318/2
Seattle [1] 22/10
second [8] 7/258/1212/914/325/1128/23 30/230/9
secondary [2] 7/2016/21
secondly [1] 10/14
secretary [1] 18/16
see [15] 5/2010/1010/1110/1115/524/23 29/1229/2530/1731/1131/1131/1232/1 32/232/12
seek [5] 4/1012/114/1416/434/7
seeking [4] 4/256/57/49/314/2231/4
seem [1] 34/18
seems [2] 12/2413/1
selection [12] 9/179/1810/111/812/17 13/2117/1129/129/1329/1629/1829/23
sense [3] 7/139/1019/22
sent [2] 5/433/11
separate [1] 12/8
September [1] 6/12
seriously [2] 29/231/12
serve [1] 4/19
served [2] 18/1519/9
SESSION [3] 2/1
set [5] 3/96/28/129/712/2
several [2] 5/1623/12
short [2] 35/136/9
Shorthand [1] 37/3
should [6] 9/622/722/1228/1328/1830/8
shouldn't [2] 11/1526/5
show [1] 33/7
shown [1] 33/24
shutting [1] 16/24
side [1] 3/13
signaling [1] 35/18
signatories [1] 10/8
significance [1] 34/19
significant [1] 8/19
similar [1] 19/18
simply [1] 5/65/1116/22
situation [4] 6/106/2132/2533/6
six [2] 15/635/3
six-year [1] 15/6
skeletal [1] 27/12
slightly [2] 21/421/5
small [1] 28/12
so [38]
solely [1] 14/20
solicitor [1] 5/25
some [16] 7/128/2110/616/1019/1219/12 25/827/627/1128/1230/430/532/233/2 34/434/5
somebody [1] 21/8
somehow [2] 21/731/22
someone [5] 11/2316/330/1830/2031/13
something [11] 4/215/209/1911/2312/1 13/1820/433/833/1734/136/9
Sometime [1] 25/10
sorry [3] 25/1425/1725/18
sort [7] 7/129/2210/1712/712/1422/18 36/5
sought [5] 5/165/179/2413/1117/5
source [1] 35/10
Southern [1] 16/20
sparingly [2] 22/12

**S**

speaker [1] 21/20
speaking [1] 22/6
special [1] 34/6
specific [1] 5/14
specifically [1] 30/16
speculating [1] 5/21
speedy [3] 12/1014/414/9
standards [1] 31/1
starts [1] 20/14
state [2] 4/1816/24
state-owned [1] 16/24
stated [1] 30/7
statement [5] 5/135/1718/221/2027/13
statements [15] 4/255/25/1413/813/10
13/1213/1717/2420/924/1625/426/6
26/2428/433/22
states [10] 1/114/1517/1018/618/818/12
19/1723/1133/537/11
statue [2] 15/615/10
stay [1] 7/18
stealing [1] 26/3
stenography [1] 1/22
stenotype [1] 37/7
still [6] 21/922/1532/332/732/1134/10
stole [2] 8/1925/5
stop [3] 11/725/125/18
straightforward [1] 18/7
stretching [1] 19/12
strike [2] 2/243/4
subject [7] 9/2310/614/1316/1817/11
24/1524/16
submitted [7] 5/328/128/328/628/833/18
34/24
Subsequent [1] 19/7
substance [1] 20/7
such [5] 6/257/818/419/2019/21
sue [4] 24/930/1831/1332/23
sued [9] 6/1718/1018/1319/223/1123/24
24/230/1430/21
sues [1] 23/8
sufficiently [2] 13/313/4
suggest [1] 27/19
suing [2] 8/158/16
suit [16] 4/174/245/96/228/512/1012/12
14/421/1622/923/323/625/226/2030/1
31/2
supplemental [2] 3/45/3
support [5] 9/511/1016/133/1834/2
supposed [1] 9/11
suppress [2] 13/1113/13
sure [10] 14/520/1124/1828/1032/1934/8
34/2134/2335/2436/5
suspect [1] 31/23
system [1] 33/11

**T**

tab [2] 32/2333/19
table [1] 2/18
take [4] 4/1311/118/2236/8
taken [3] 2/254/1330/16
takes [1] 21/15
taking [3] 19/2524/426/4
talking [3] 14/2417/934/17
talks [3] 6/130/2430/25
telegraphing [1] 36/4
tell [2] 33/1033/12
temporal [1] 20/9
term [3] 25/925/1329/11
termination [1] 13/9

terms [3] 12/2329/1930/13
tertiary [1] 7/21
test [18] 7/684/48/88/118/149/79/1210/18
10/2512/712/1412/1415/1615/2121/12
22/1722/2333/5
tested [1] 9/11
Texan [1] 17/10
TEXAS [8] 1/11256/1910/316/2129/15
33/1237/12
than [5] 14/714/2517/1330/1232/22
thank [16] 3/33/123/2110/2314/217/15
17/1825/2232/1632/1734/1535/535/12
35/1336/1036/11
that [255]
that's [61]
theft [3] 25/5
their [3] 17/1129/429/5
them [15] 5/45/66/46/2011/612/2113/7
15/1319/2119/2223/1623/2224/232/6
33/11
then [17] 4/204/205/125/178/128/249/12
9/2411/213/2315/2025/1528/1930/23
31/1034/334/8
there [32] 5/15/258/168/259/19/510/3
11/712/2213/1514/915/816/1216/13
16/1917/1319/2025/1726/826/728/12
29/2230/430/1130/2031/2432/732/23
33/1334/134/234/10
there's [21] 8/149/112/817/1117/2518/6
20/1120/1220/1723/1525/525/827/19
27/2528/328/528/1232/933/1635/735/24
therefore [1] 11/10
these [11] 8/1310/911/111/111/215/23
22/1526/226/429/2131/21
they [51]
they're [3] 5/128/139/10
They've [2] 8/713/9
thing [8] 11/1615/2419/2022/1527/433/3
33/935/7
things [15] 13/214/1520/1225/625/1226/2
26/326/526/1226/1827/2127/2227/22
32/2533/2
think [27] 3/73/97/157/167/1710/1411/25
13/1414/1815/1617/1218/719/1321/13
21/1322/2022/2526/1526/1626/1928/11
28/2029/2330/1032/2233/633/24
third [2] 12/1114/16
thirteen [1] 33/13
thirteen-hour [1] 33/13
this [64]
those [30] 5/25/86/128/259/512/1513/10
13/1213/1314/1115/1515/1817/1419/2
19/1120/121/1024/1626/1126/1226/18
26/2228/428/628/1328/1428/2130/830/9
33/10
though [3] 11/512/2426/13
thought [1] 6/4
three [4] 12/712/1518/1022/18
threshold [1] 10/18
through [7] 12/1812/2214/814/1818/16
19/2525/1
time [13] 4/1815/115/819/519/919/12
19/2132/2333/1233/1333/1333/1434/12
time-bar [1] 15/8
timeline [2] 19/1436/5
timetable [1] 14/6
today [6] 2/182/217/513/1617/2331/9
told [1] 6/4
too [3] 3/2027/1830/20
took [2] 4/1818/1720/426/1331/1334/20

torts [2] 29/1929/24
totems [1] 22/10
toward [1] 22/13
towards [3] 18/1819/1130/16
transcript [2] 1/111/22
transcription [1] 1/22
travel [1] 30/20
traveled [1] 33/21
traveling [1] 18/22
trouble [1] 30/21
true [6] 6/881828/228/933/2337/8
try [3] 13/1317/534/1
trying [2] 13/1318/25
two [13] 8/2514/1217/918/618/1120/11
22/623/1623/1723/1728/1230/1730/3
typewritten [1] 37/7
typical [1] 31/6

**U**

ultimately [1] 17/1
under [6] 6/58/1418/1522/1624/7
underlying [1] 15/2
understand [2] 35/1936/5
unequitable [2] 15/2531/22
unfair [1] 12/5
unfortunate [1] 4/7
UNITED [9] 1/114/1517/918/618/818/12
19/1723/1137/11
unlike [1] 20/14
unquote [1] 22/2
unsavory [1] 25/7
Unterweser [2] 34/1134/11
up [9] 9/712/216/1533/233/24
upon [6] 4/84/128/1823/2524/330/15
us [17] 4/64/184/244/255/186/66/126/22
7/37/38/158/2010/512/1714/2015/17
17/13
use [1] 7/10
used [2] 22/1229/11
using [2] 1/2229/10

**V**

vague [2] 5/1113/10
valuable [1] 8/20
VARGAS [12] 1/71/824/2024/2124/25
25/131/1731/2032/832/2132/2533/1
Vargas' [2] 32/332/12
various [2] 25/625/6
vast [1] 30/10
VENTURES [1] 1/7
venue [1] 29/14
versus [4] 2/821/322/1430/6
very [13] 2/205/1111/1313/1013/2113/24
17/1534/1535/135/1335/1436/736/8
vexatious [6] 12/615/1721/2222/2030/2
30/18
vexatiousness [6] 7/2311/1415/1615/19
30/1332/10
view [1] 32/1
VINOKUROVA [1] 1/6
violated [1] 8/20
violating [1] 27/6
vs [1] 1/5

**W**

waiving [1] 15/10
want [10] 5/812/415/417/725/1930/23
34/2135/1435/2436/5
wanted [1] 16/25
was [70]

# W

wasn't [4] 17/617/719/1927/10
way [9] 4/77/1810/513/2214/1116/625/24 27/1132/24
we [83]
we'll [1] 12/21
we're [6] 2/217/48/98/1613/1313/14
we've [4] 3/136/1014/1733/10
WEDNESDAY [2] 1/122/1
weeks [1] 6/2
weigh [2] 21/2229/25
weighing [3] 12/812/1415/16
weight [2] 21/522/22
welcome [1] 2/20
well [13] 3/63/96/177/99/1511/1811/20 13/513/2424/1930/732/933/9
went [1] 13/16
were [30] 2/35/25/35/56/1310/1513/10 13/1814/2414/2415/115/1116/1916/21 17/218/1819/619/1519/1819/1820/920/9 24/1426/1026/1126/1232/133/1133/23 34/11
weren't [1] 19/20
WESTERN [3] 1/12/1737/12
what [39]
what's [13] 7/108/313/613/817/2218/3 18/520/620/1023/1426/829/1633/7
whatever [3] 16/2528/1934/7
when [14] 4/111/2012/220/921/1421/14 21/1525/228/1230/1930/2131/1431/24 34/10
where [7] 4/154/156/2320/923/2328/12 34/12
Whereupon [3] 21/1925/1536/12
whether [29] 8/48/88/98/138/189/1310/9 12/812/912/1112/2413/314/314/1615/8 15/2015/2116/916/917/117/217/2521/18 21/2128/228/328/832/2132/22
which [13] 4/115/105/115/135/247/13 9/1610/1718/1422/1727/1329/1631/1
while [3] 7/1818/1733/8
who [8] 4/34/44/45/45/512/1717/1019/1
whoever's [1] 3/8
whole [2] 10/1635/2
wholly [1] 22/3
why [7] 13/1314/1418/519/226/1827/11 34/13
wife [1] 19/24
will [10] 9/514/714/715/315/2116/125/18 30/1030/1136/8
within [1] 5/12
Without [1] 35/18
word [4] 22/522/528/1628/16
work [1] 26/24
worked [1] 4/5
works [2] 20/1527/12
worried [2] 11/1611/17
would [45]
wouldn't [4] 24/2524/2526/2433/25
writing [1] 4/14
wrong [1] 8/23
wrongful [1] 26/23

# Y

year [5] 4/255/2315/115/618/13
years [1] 23/12
yes [10] 3/173/183/249/99/1010/2311/1 16/1225/1035/22
you [73]
you've [1] 6/6

your [36] 2/112/153/33/93/133/2117/18 17/1918/2519/1220/1121/1422/2023/15 24/1825/425/2425/2526/1927/1227/16 27/2528/1030/430/2431/932/932/17 32/2034/2335/335/635/1235/2236/2 36/11
YULIYA [1] 1/6