**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **MWK RECRUITING, INC.** | § | |
| | § | |
| **VS.** | § | **NO. 1:18-CV-0444 RP** |
| | § | |
| **EVAN P. JOWERS, et al.** | § | |

**ORDER**

Before the Court are: MWK Recruiting's Motion to Compel Production of Documents (Dkt. No. 143); MWK Recruiting's Motion to Permit Service by Alternative Means of Subpoenas and Related Documents on Legis Ventures Hong Kong Company Limited (Dkt. No. 149); and Non-party Kirkland & Ellis, LLP's Motion to Quash Subpoena and Motion for Protective Order (Dkt. No. 155); and all associated responses and replies to these motions. The District Court referred the motion to the undersigned for disposition pursuant to 28 U.S.C. § 636(b)(1)(A), FED. R. CIV. P. 72, and Rule 1(c) of Appendix C of the Local Rules.

**I. Background**

This is a suit brought by MWK Recruiting, Inc., a legal recruiting firm, against Evan Jowers, a former employee of the firm, alleging that Jowers misappropriated trade secrets and breached the non-compete and non-solicitation provisions of his employment agreement. The motions before the Court all relate to discovery disputes that have arisen in response to MWK's attempts to obtain discovery from Jowers, his new firm, and third party Kirkland & Ellis.

**II. Motion to Compel (Dkt. No. 143)**

In its Motion to Compel, MWK originally requested four forms of relief: (1) an order compelling Jowers to respond to document requests and interrogatories propounded on him in November; (2) an order compelling Jowers to authorize and direct Kirkland & Ellis, LLP, a law firm

client of Legis Ventures (HK) Company Limited d/b/a Jowers/Vargas Legis, to release placement information; (3) an order compelling K&E to respond to a subpoena; and (4) an order authorizing substituted service of a subpoena on Legis.  Since the motion to compel was filed, two other motions have been filed which address many of the same issues, and some of these issues are better addressed in the context of the later filed motions.  Thus, the Court will resolve here MWK's request for an order requiring Jowers to produce documents and respond to interrogatories, but will address the Kirkland & Ellis issues in the context of its motion to quash and for protective order.

MWK served Jowers with interrogatories, requests for production, and requests for admissions in November 2019, Jowers served a response in early January, and actually produced documents on March 11, 2020. MWK complains that the documents produced consist entirely of emails that MWK had already produced to Jowers in its discovery. MWK specifically asserts that Jowers has failed to produce documents in the possession of Legis (on Jowers' theory that those documents are not in *his* possession, custody or control), and information related to placements Jowers made more than a year after he left MWK. MWK also complains that Jowers has not specifically identified the information and documents he is withholding, as required by the Federal Rules of Civil Procedure.

First, MWK requests that the Court order Jowers to produce records responsive to Interrogatories 1 and 2, and the associated requests for production, whether the records are in Jowers' personal custody, or in the custody of Legis.[1]  Further, MWK requests an order that overrules

---

[1] The Interrogatories state as follows:

INTERROGATORY NO. 1
Identify each attorney Placement in which You, Legis, or any employee or agent of Legis have participated that has occurred since December 16, 2016, including an

Jowers' objections to relevance and specifies that any documents possessed by Legis are in fact also in Jowers' possession, custody or control under the applicable standards. Lastly, MWK requests that the Court overrule Jowers' relevance objections based on the scope of his restrictive covenants and compel Jowers to produce documents regardless of the date of the placement to which those documents relate.

Jowers responds that he cannot produce documents in the possession of Legis, because he is merely a Legis employee, and the Court has already dismissed Legis as a defendant for lack of personal jurisdiction. Jowers maintains that he has produced over 1,700 pages of documents so far, and asserts he has produced and will continue to produce any responsive, non-objectionable, Legis related documents "in his possession, custody, or control." Dkt. No. 156 at 4. Jowers argues that employees of non-party companies cannot be required to force their employers to produce documents pursuant to ordinary discovery procedures under the Rules. *See Dotson v. Edmonson*, No. CV 16-15371, 2017 WL 4310676, at *5 (E.D. La. Sept. 28, 2017).

Under Rule 34, an individual need only produce documents that are "in the responding party's possession, custody, or control." However, as a judge in the Northern District of Texas has noted:

---

identification of the attorney and the law firm or company office at which the attorney was placed.

INTERROGATORY NO. 2
Identify each communication with an attorney You, Legis, or an employee or any agent of Legis attempted to place for employment from December 16, 2015 to December 16, 2017. To the extent you or Vinokurova communicated with an attorney directly through your email addresses (evan@kinneyrecruiting.com and yuliya@kinneyrecruiting.com), do not identify those specific communications.

Dkt. 143-3.

> Rule 34 is broadly construed and documents within a party's control are subject to discovery, even if owned by a nonparty. Rule 34's definition of "possession, custody, or control," includes more than actual possession or control of the materials; it also contemplates a party's legal right or practical ability to obtain the materials from a nonparty to the action. The burden, however, is on the party seeking discovery to make a showing that the other party has control over the documents sought.

*Mir v. L-3 Comm'ns Integrated Sys., L.P.*, 319 F.R.D. 220, 230-31 (N.D. Tex. 2016). Typically, what must be shown to establish control over documents in the possession of a non-party is that there is "a relationship, either because of some affiliation, employment or statute, such that a party is able to command release of certain documents by the non-party person or entity in actual possession." *Nvision Biomedical Techs., LLC v. Jalex Med., LLC*, 2015 WL 13049356, at *13 (W.D. Tex. Dec. 23, 2015), *aff'd,* 2016 WL 8285637 (W.D. Tex. Feb. 1, 2016).

In this case, MWK presents substantial evidence that Jowers has control over Legis' documents. In a recruiting services contract Legis entered into with Latham & Watkins LLP, Jowers signed the contract on behalf of Legis, and identified himself as its "Founder" under his signature. Dkt. No. 143-1 at 55.  Further, Jowers himself has sent invoices on behalf of Legis to a number of law firms. *Id.* at 60-63, 68-70. Also, in emails to clients, Jowers indicates that he communicates with Legis' bank directly.  *Id.* at 64; Ex. 7 (stating "unfortunately, for some client payments we [receive] from clients to our HSBC HK account, the bank does not reveal the source of the payment (even if we ask)"). Alejandro Vargas, who Jowers claims is the sole owner of Legis, is copied on these emails, along with Juliya Vinokurova, Jowers' former wife, who is also employed at Legis. *Id.* They are the only Legis-affiliated individuals copied on the emails. Tellingly, Legis' URL and domain name *is* Jowers' name:  www.evanjowers.com. *Id.* at 94, 99 ; Ex. 10 (Alejandro Vargas' email is listed as alejandro@evanjowers.com).  Further, when Jowers has created brand names for the

4

business, he has always put his name first: Jowers/Vargas; Jowers/Langer. *Id.* at 99; 128-32. On the www.evanjowers.com website, Vargas (who Jowers claims is the owner) describes himself as having joined "***Evan's*** team." *Id.* at 94; Ex. 10. Despite all of this evidence, Jowers contends he is "merely" an employee of Legis. Tellingly, though he makes a lot of conclusory claims in his response trying to support this contention, he fails to offer any actual *evidence* to do so.

As is plain, the evidence strongly supports MWK's position that Jowers is more than a "mere employee" of Legis. It demonstrates that Jowers has the ability to enter into contracts on behalf of Legis, has access to its bank accounts, and intimate knowledge of its ongoing business dealings. This is more than sufficient to show that Jowers not only has the practical ability to obtain documents from Legis, but as a self-identified "founder," he has the ability to cause Legis to provide documents to him, or MWK. The Court finds that MWK has carried its burden and Jowers has sufficient "control" over Legis for its documents to be within Jowers' "possession, custody or control" for Rule 34 purposes. Accordingly, in responding to MWK's discovery requests, Jowers must produce not only his personal documents that are responsive to the requests, but also must produce Legis documents that are responsive.

As to the appropriate time frame for production, MWK complains that Jowers has improperly refused to produce responsive documents dated more than one year after his resignation from MWK (December 16, 2016), based on the argument that the restrictive covenants in his Employment Agreement were limited to one year. This argument applies only to Interrogatory No. 1, and the associated RFP No. 2 (as Interrogatory No. 2 and its associated RFP are explicitly confined to the dates December 16, 2015 to December 16, 2017). MWK relies on § 9.4 of the Employment Agreement to argue that it is entitled to receive placement data past the one year period ending on

5

December 16, 2017. Section 9.4 states that "[t]he one year [non-competition and non-solicitation] time period referred to in § 8 shall be extended to include any period of time during which the Employee engages in activities constituting a violation of that Section." Dkt. 143-1 at 50.[2] Jowers responds that MWK has not pled any such claim in its live pleadings, and it cannot do so now, as the deadline to amend the complaint has passed. Thus, Jowers argues, any attempt to compel discovery past the one year limit is an overly broad "fishing expedition," and an inappropriate attempt to gather information about the activities of a competitor.

Jowers is correct that in determining the scope of discovery in a particular action, courts are anchored by the parties' pleadings. *See* FED. R. CIV. P. 26; Advisory Committee Notes to 2000 Amendments (in analyzing relevance, the parties should "focus on the actual claims and defenses involved in the action," but "a variety of types of information not directly pertinent to the incident in suit could be relevant to the claims or defenses raised in a given action"). Thus, "[t]o implement the rule that discovery must be relevant to the claim or defense of any party, district courts have examined the relationship of the requested discovery and the facts it is intended to uncover to the specific claims and defenses raised by the parties." *Thibault v. BellSouth Telecommunications, Inc.*, 2008 WL 4808893, at *2 (E.D. La. Oct. 30, 2008). However, Jowers has failed to show that any placement activity beyond the one year date of his separation from MWK that violated the non-compete or non-solicitation provisions of § 8 would not be within the scope of the breach of contract

---

[2]The Court reads this section to provide that if Jowers started breaching his non-solicitation or non-competition obligations within the one year period, and continued to do so after the one year term ended, then the one year period was extended until such time as he ceased the violations.

claim that clearly *is* contained within the pleadings.[3] To obtain the discovery it seeks, MWK was not required to specifically plead that § 9.4 of that Agreement extended the noncompete period beyond one year, as the reference to the Employment Agreement in the pleadings as the source of the breach claim is sufficient.

This does not end the analysis, however. The relevant requests seek the identity of any attorneys Jowers or Legis have placed at any law firm from December 16, 2016, to (presumably) the present. On the record before the Court, this is overbroad. For a placement to breach the Employment Agreement, the placed attorney would have to have been a Kinney Recruiting (or its relevant successors) "candidate . . . with whom [Jowers] had contact with, knowledge of, or access to, within twelve months immediately preceding the effective date of termination." Dkt. No. 143-1 at 50 (§ 8.1).[4] For the year that is indisputably within the scope of the contract, the request is reasonable. But for dates past that one year time frame, the likelihood that a placement relates to a prohibited candidate begins to diminish, and thus a request for all candidates Jowers or Legis have placed is overly broad. Accordingly, the Court will **ORDER** that Jowers respond to Interrogatory No. 1 and the related RFP in full for the period December 16, 2016, to December 16, 2017. If MWK wishes to inquire into placements after the December 16, 2017 date, it must tailor its request more narrowly.

---

[3]The live pleading alleges a breach of contract claim based on the Employment Agreement, which is the very agreement containing the clause MWK bases its time frame argument on. MWK's Second Amended Complaint, Dkt. No. 80,

[4]It is not clear that MWK is raising any claim based on § 8.2, but the result would the same to the extent MWK is relying on that section to support the request, as it too has a one-year term.

In light of the foregoing, the Court **GRANTS IN PART** and **DENIES IN PART** MWK Recruiting's Motion to Compel Production of Documents (Dkt. No. 143) as set forth above, and Jowers is **ORDERED** to respond no later than May 25, 2020.

### III.  Motion for Substituted Service (Dkt. No. 149)

MWK also moves for an order permitting alternate service of a subpoena on Legis pursuant to Federal Rule of Civil Procedure 4(f)(3). Since the Court has held that Jowers has possession, custody and control over Legis documents this issue is moot.  The Court therefore **DENIES AS MOOT** MWK's Motion to Permit Service by Alternative (Dkt. No. 149).

### IV.  Motion to Quash (Dkt. No. 155)

Lastly, non-party Kirkland & Ellis, LLP, responds to MWK's motion to compel, moves to quash the subpoena served on it by MWK and requests a protective order to prohibit MWK from seeking documents from K&E, pursuant to FED. R. CIV. P.45(d)(3)(a) and 26(c). Dkt. No. 155. MWK served a subpoena by mail on K&E on November 25, 2019, at its Chicago location.  The subpoena requested communications between K&E and Jowers or anyone with an @evanjowers.com email address, as well as documents regarding attorneys placed at K&E by Jowers, and monies K&E paid to Jowers for these placements. When first served, K&E objected by letter, stating that the service of the subpoena was improper. Dkt. No. 155-2 at 2-4. In December 2019, MWK served the subpoena again, this time by process server, on K&E's registered agent in Texas. *Id.* K&E again objected, asserting that it was given insufficient time to respond, and arguing that the information MWK was seeking had to be gathered from Jowers, not non-party K&E. Dkt. No. 155-2 at 5.  No objection was raised regarding any insufficiency in the service method.

Discussions via email ensued between Robert Kinney and one of K&E's partners, Will Pruitt. The emails demonstrate that Kinney made several attempts to obtain the records by agreement. For example, in one of his early emails to Pruitt he states:

> Still, we do not mean to place any undue burden on Kirkland & Ellis in this. My hope was that you would treat this as routine and just work with me like some other firms have to get me what we need. I've worked with some firms to focus on exactly what we need with reference to what is relatively simple to obtain from the ESI the firms have in the format they keep it in.
>
> Would you rather discuss this first to try to simplify responding to it or should we just serve another version of the subpoena narrowed as much as we can and conference it afterward? If you can accept service of a revised subpoena by email I would appreciate the gesture. Please let us know.

Dkt. No. 155-2 at 7. Pruitt did not accept this offer, however, and instead continued to insist that, as a third party, K&E was not required to produce "records that are available from a party to the suit." *Id.* at 9. Kinney responded by explaining—something he repeated several times thereafter—that Jowers was not only not producing records himself, but he was also taking the position that the responsive records were not his, but instead were Legis' documents. Further, acknowledging Pruitt's argument, Kinney stated that "until we have made more progress or hit a real wall with getting [Jowers] to produce them, I agree we will not burden you with the broader document request," and unilaterally narrowed the subpoena to only request records to show placement fees K&E paid to Jowers or companies he was associated with for 2016-2019, identifying the amount of the fee, the name of any attorneys whose placement led to the fees, and the date and manner by which the fee was paid. *Id.* at 12.

After a full month with no response, Kinney emailed Pruitt, and restated the offer. This time Pruitt responded promptly, if again uncooperatively. He repeated yet again his view that MWK was

9

required to get the records from Jowers, pointed to case law he had earlier cited, incorrectly stated that Kinney had "not made any attempt to distinguish those cases or cite contrary authority," and threatened that "if you institute proceedings to enforce the subpoena, we will ask the court for all fees and costs we incur in defeating that motion." *Id.* at 14.  Kinney, for his part, though clearly frustrated, still tried to resolve the issues without the Court's help, stating that he "would like to agree with you to something that gets us where we need to be and I have been trying to do so with you for almost three months," but also noting that he had "yet to receive anything even appearing to be cooperative back from you." *Id.* at 15.  Just under three weeks later, having received no response from Pruitt, MWK filed the instant motion to compel, and emailed a copy to Pruitt.

In an email the next day Pruitt stated that K&E had actually started to gather responsive documents.  Of course, having failed to even respond to Kinney's March 7, 2020 email, he had not communicated that to Kinney.  Pruitt stated that K&E would produce records, though without including the names of lateral hires (an important part of what MWK was seeking), and only on the condition that MWK withdraw the motion to compel.  *Id.* at 17.  Kinney responded:

> Since you did not reply to my March 7 email, I was not aware you had done anything to help gather information in the three months this has been pending. If you cooperate, we will withdraw the motion. But you need to stop trying to dictate to us what we can have. I fully understand the obligation not to overburden a disinterested non-party, but we are not coming close to that with you. As I have told you previously, you can produce whatever you produce subject to the Court's protective order, for attorney's eyes only if you like. I'm attaching another copy here.

*Id.* at 18. Pruitt then agreed that K&E would produce the records without redacting attorney names, and again asked Kinney to withdraw the motion to compel, *id.* at 19, to which Kinney said he wanted to see the documents first, and requested K&E to "stipulate to an order as in the draft, which says that you will cooperate in good faith going forward on further subpoenas." *Id.* at 20.  Pruitt rejected

this proposal, stating that there was no need for K&E to agree to any sort of order. K&E then hired outside counsel to respond to the motion to compel. Ultimately, that counsel filed a response, along with the motion to quash and for a protective order.

Before doing so, though, K&E's counsel commenced a whole new "meet and confer" session. Kinney repeated his prior offer "to withdraw the motion to compel if Kirkland will sign a stipulation that they have done a diligent search and produced the responsive documents," attached a copy of the stipulation, and stated a willingness to "consider any suggested changes" to it. Dkt. No. 160-1 at 13. After two more emails, K&E's counsel stated that it would produce the records "with a letter indicating the documents were located after a diligent search," but counsel did "not see any reason for [K&E] to sign the stipulation you've proposed." *Id.* at 15.

That same day, K&E filed its response and motions to quash and for a protective order. K&E's primary argument is that all of these issues are moot since it had voluntarily produced all documents responsive to the modified subpoena.[5] As is clear from the recitation above, this is far from the full story. MWK correctly characterizes the situation:

> Kirkland gave no indication it was willing to provide a substantive response to ANY revised subpoena sent by MWK, no matter how far MWK walked back its initial requests, until after MWK had filed its Motion to Compel. Then, with the Motion pending, Kirkland admitted that it had already gathered responsive documents and had them in its possession, but the firm refused to turn them over to MWK unless MWK agreed to withdraw the Motion. MWK offered to do so if Kirkland would

---

[5]Oddly, after arguing that this entire dispute was made moot by its production of documents, K&E also requests that the Court quash the subpoena, raising the same technical objections Pruitt raised repeatedly from December to March. Because the Court agrees the issues raised by the subpoena are moot, it declines to reach the additional arguments. Similarly, the Court declines to opine about the reasonableness, or need, for the stipulation MWK asked that K&E sign. Given that the issues are moot, the Court will not offer any opinion regarding how K&E should respond to any future subpoena MWK might serve on it, though it trusts K&E will take the Court's statements below to heart.

certify that it had done a diligent search and had produced the responsive documents via a stipulation. MWK even offered to negotiate the terms of the stipulation, but Kirkland just refused, hiring counsel to fight rather than be even the least bit cooperative.

Dkt. No. 160-1 at 12.

The Court could not be more disappointed with the manner in which K&E has handled this subpoena. Pruitt's petty, technical, overly-argumentative emails are a study in what is wrong with civil discovery in our court system today. The subpoena at issue sought a very small amount of uncontroversial information. None of it was privileged or confidential. MWK had served similar subpoenas on other "BigLaw" firms, all of which produced documents without objection. K&E's approach, however, was to evade, complain, and refuse. The fact that these actions were taken by a law firm makes it all the more frustrating. If anyone should know better than to act this way one would think it would be a law firm that touts itself as having "lawyers [who] employ innovative pragmatic strategies."[6] There was not a single thing that K&E did to respond to this subpoena that was "pragmatic." Despite the countless hours Pruitt spent writing emails, K&E eventually produced the requested documents—but it forced MWK to file a motion to compel before it did so. Pruitt could have saved K&E, as well as MWK, thousands of dollars in attorney time by being cooperative up front. Instead, he chose to fight, forcing all parties, the Court included, to expend resources unnecessarily.

But this is not the end of things. Having chosen the stubborn route, K&E also audaciously requests that the Court award *it* the attorney's fees it incurred in picking this fight. Recall that in the first week of February, Kinney offered to accept as sufficient exactly what K&E finally produced

---

[6] *See* https://www.kirkland.com/services.

two months later. K&E refused, and instead forced Kinney to wait two months, write a dozen more emails, and then file a motion to compel. Kinney even repeated that same offer multiple times before he filed the motion. Yet K&E somehow thinks that *it* should be awarded attorney's fees. Apparently it believes obstinance is something worth rewarding. Far from it. If anything, K&E should count itself lucky that MWK did not request fees from K&E, as the Court would have been inclined to grant them. Because MWK did not, the Court will express its disapproval of K&E's actions only in words and not dollars. Either way, K&E should be embarrassed.

For the reasons stated, MWK Recruiting's Motion to Compel as to K&E (Dkt. No. 143), and Kirkland & Ellis, LLP's Motion to Quash and for Protective Order (Dkt. No. 155) are **DENIED AS MOOT**.

SIGNED this 27th day of April, 2020.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE