IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| MWK RECRUITING, INC.<br><br>　　　　Plaintiff,<br><br>　v.<br><br>EVAN P. JOWERS, YULIYA VINOKUROVA, ALEJANDRO VARGAS, and LEGIS VENTURES (HK) COMPANY LIMITED (aka Jowers / Vargas),<br><br>　　　　Defendants. | Civil Action No. 1:18-cv-00444 |
| EVAN P. JOWERS<br><br>　　　　Counterclaimant,<br><br>　v.<br><br>MWK RECRUITING, INC., ROBERT E. KINNEY, MICHELLE W. KINNEY, RECRUITING PARTNERS GP, INC., KINNEY RECRUITING LLC, COUNSEL UNLIMITED LLC, and KINNEY RECRUITING LIMITED<br><br>　　　　Counter-defendants. | |

**DEFENDANT EVAN P. JOWERS'S MOTION FOR PARTIAL JUDGMENT ON THE
PLEADINGS PURSUANT TO FRCP 12(C)**

## <u>CONTENTS</u>

AUTHORITIES CITED ...................................................................................................... ii

I.      INTRODUCTION .................................................................................................1

II.     FACTS ALLEGED IN THE SECOND AMENDED COMPLAINT .............................2

III.    ARGUMENT ......................................................................................................5

        A.      Count III Fails to Allege Facts Showing that MWK Recruiting Inc. Has Any
                Standing under Florida Law to Enforce the Employment Agreement
                Between Jowers and Kinney Recruiting, L.P. ........................................6

        B.      Count I Fails to Plausibly Allege that MWK Recruiting Inc. Actually Owns
                any Trade Secrets that Jowers Could Have Misappropriated, under the
                Federal Defend Trade Secrets Act. .........................................................9

        C.      Additionally, Count II Also Fails to Allege that MWK Recruiting
                Inc. Has Lawful Possession of any Trade Secrets that Jowers Could Have
                Misappropriated, under Florida Law. ..................................................13

        D.      A Final Judgment Is Warranted. .........................................................15

IV.     CONCLUSION..................................................................................................15

CERTIFICATE OF SERVICE ...........................................................................................17

## AUTHORITIES CITED

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................................. 3, 5, 9

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................... 5, 9

*Curtiss-Wright Corp. v. G.E. Co.*, 446 U.S. 1 (1980) .................................................. 15

*DTM Research, L.L.C. v. AT & T Corp.*, 245 F.3d 327 (4th Cir. 2001) ........................ 13

*Incomco v. Southern Bell Tel. & Tel. Co.*, 558 F.2d 751 (5th Cir. 1977) ...................... 9

*Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*,
 507 U.S. 163 (1993) ................................................................................................. 6

*Papasan v. Allain*, 478 U.S. 265 (1986) ..................................................................... 6

*Sargent Fletcher, Inc. v. Able Corp.*, 110 Cal. App. 4th 1658, 3 Cal. Rptr. 3d 279
 (Cal. Ct. App. 2008) ............................................................................................... 13

*Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061 (5th Cir. 1994) ............................... 6

*Waller v. Hanlon*, 922 F.3d 590 (5th Cir. 2019) ......................................................... 5

**Statutes**

18 U.S.C. § 1836(b)(1) ....................................................................................... 9, 11, 13

18 U.S.C. § 1839(4) ............................................................................................. 2, 9, 11

18 U.S.C. § 1839(5)(B)(ii)(II) ..................................................................................... 10

18 U.S.C. § 1839(6)(A) ............................................................................................... 10

Fla. Stat. Ann. § 688.002(2)(b) ................................................................................... 13

Fla. Stat. Ann. § 865.09(9)(a) ....................................................................................... 8

Tex. Civ. Prac. & Rem. Code § 134A.002(2) .............................................................. 10

**Rules**

Fed. R. Civ. P. 10(c) .......................................................................................................... 5

Fed. R. Civ. P. 12(b)(6).......................................................................................................... 5

Fed. R. Civ. P. 12(c) .................................................................................................... 1, 5

Fed. R. Civ. P. 25(c) .......................................................................................................... 4

Fed. R. Civ. P. 54(b) .................................................................................................... 1, 15

Defendant Evan Jowers respectfully moves for judgment on the pleadings and dismissal of Counts I, II and III of the Second Amended Complaint (the "SAC," Dkt. 80). *See* Fed. R. Civ. P. 12(c). Those counts should be dismissed, and a final judgment should be entered on those counts pursuant to Rule 54(b), as well as the claims that the Court has previously decided to dismiss. *See* Order (Dkt. 87) at 14-19, 23, 28 and 30.

## I.    INTRODUCTION

In its Order on Defendants' Motion to Dismiss the SAC, the Court determined that Florida law governs Plaintiff's breach of contract and trade secrets claims. As such, Kinney's trade secret claims under Texas law, the Texas Uniform Trade Secrets Act (Count II) should be dismissed outright.

Specifically, the Court explained Florida law governs disputes "arising out of or relating to" the Associate Recruiter Employment Agreement (the "Employment Agreement") between Jowers and Kinney Recruiting, L.P. (*See* Order (Dkt. 87) at 10 n.7). The Court further determined that "[a]lthough MWK asserts both breach-of-contract and tort actions for misappropriation of trade secrets and civil conspiracy, the tort actions are related to the employment agreement" and that the tort claims are based on the "same operative facts." (*See* Order (Dkt. 87) at 13). Put simply, since the Employment Agreement is the source of Plaintiff's trade secret claim, and since the Employment Agreement is governed by Florida law, Plaintiff's claim under Texas trade secret law should be dismissed.[1]

The SAC also presents for the first time a long chain of contractual assignments, corporate mergers and entity conversions, that, when examined closely, demonstrate that

---

[1] Other factors detailed herein indicate that Plaintiff's election to pursue claims under TUTSA, as opposed to Florida law, demonstrate that Plaintiff has acted in bad faith in selecting state claims that were most favorable him without regard to the law as it existed at the time of the alleged wrongdoing. The timing of the pleadings lead to the inexorable conclusion that Plaintiff pursued claims under TUTSA for the sole reason that his trade secret claims are not valid under Florida law, and has continued to pursue them despite successfully arguing that Florida law should govern in his SAC and in his opposition to Defendant's Motion to Dismiss the SAC.

Plaintiff does not possess any of the contractual rights of Kinney Recruiting, L.P., the only signatory of the Employment Agreement, or the trade secrets that the Court determined emanate exclusively from the Employment Agreement.

Specifically, Kinney Recruiting, L.P -- the only party who is alleged to have entered into the Employment Agreement[2] -- never assigned *any* rights to the Employment Agreement which Counts I, II and III are all predicated upon. Yet, the SAC also does not (and cannot at this stage)[3] allege facts showing that Kinney Recruiting, L.P. has ever assigned the agreement (or anything) to anyone. Instead, MWK Recruiting Inc.'s entire chain of title in support of Counts I, II and III depends upon the alleged "First Assignment" of December 31, 2007 (*see* SAC ¶ 28) – which Kinney Recruiting, L.P. never signed at all. This is clear on the face of the pleading, because Exhibit 3 to the SAC is a copy of the purported assignment, and because it clearly was not signed by Kinney Recruiting, L.P. *See* Dkt. 80-3. Instead, the assignment document was only signed on behalf of two other firms, called Recruiting Partners GP, Inc. and Recruiting Partners, L.P. *Ibid.*

Accordingly, MWK Recruiting Inc. has no standing to enforce the non-compete clause in ¶ 4.4 of the Associate Recruiter Employment Agreement signed by Jowers, the confidentiality clause in ¶ 7.2 of the agreement, or the non-solicitation clause in ¶ 8.2. Count III of the SAC (which is based on those clauses of that contract) should therefore be dismissed.

For the same reason, MWK Recruiting Inc. also has no plausible claims for misappropriation of any trade secrets that Jowers allegedly was obliged to keep confidential under ¶ 7.2 of the agreement. Under that agreement, Jowers only owed a duty of confidentiality to Kinney Recruiting, L.P. or its assignees and successors. Thus, Counts I and II of the SAC (which assert the trade secret misappropriation claims) should be dismissed for that reason, too.

---

[2] Kinney Recruiting, L.P. is the "Company" that hired Jowers, when he signed the "Associate Recruiter Employment Agreement" (*see* Dkt. 80-1) in 2006.

[3] On February 21, 2019, the Court directed Plaintiff MWK Recruiting Inc. to "produce any and all evidence it has supporting its allegation that it is a successor in interest, or that it was validly assigned the rights to the contracts at issue in this case." *See* Dkt. 65 at 4.

## II.     FACTS ALLEGED IN THE SECOND AMENDED COMPLAINT

"Jower's original employer" was "Kinney Recruiting L.P."  SAC ¶ 158. According to the SAC, "Kinney Recruiting L.P. ('KR-LP') was a Texas limited partnership that has ceased operation."  SAC ¶ 11.   Under his Associate Recruiter Employment Agreement with Kinney Recruiting, L.P., dated May 1, 2006, Jowers promised not to use or disclose any of the "Company's" proprietary information:

> 7.2     At all times during and after Employee's employment, the Employee shall not use or disclose to any person the Company's Proprietary Information, except as such disclosure or use may be required in connection with the Employee's employment, or unless the [*sic*] Robert Kinney expressly authorizes such in writing.

Dkt. 80-1 at pages 4-5 of 11.  Again, the "Company" under the agreement is Kinney Recruiting, L.P.  *Id.* at page 1 of 11.

Tellingly, the SAC does not attempt to allege that Jowers ever misappropriated any trade secrets of Kinney Recruiting, L.P.  Instead, MWK Recruiting Inc.'s pleading repeatedly refers to "its trade secrets," "its confidential trade secret information" and "its rights."  SAC ¶¶ 51, 53, 134.  The SAC even alleges that "MWK [*sic*] is the owner of trade secret information"; "Jowers … acquired MWK trade secret information …"; and that "MWK has been harmed and damaged by the misappropriation of its trade secret information by Jowers …."  *Id.,* ¶¶ 137, 143, 145.  Contrary to those conclusory allegations, the SAC does not establish that MWK Recruiting Inc. was ever the owner of any trade secrets that Jowers could have misappropriated, by using or disclosing them (allegedly) in breach of the ¶ 7.2 confidentiality clause in his agreement with

Kinney Recruiting, L.P.  This is so, because the SAC also does not allege that Kinney Recruiting, L.P. ever assigned the Jowers employment agreement to anyone.

Instead, the SAC alleges series of other purported assignments – ***none of them executed by Kinney Recruiting, L.P.***  *See* SAC ¶¶ 28, 34, 40 and 41.  Those alleged assignments purported first to benefit a firm called Recruiting Partners GP, Inc. (*see* Exhibit 3 to the SAC, Dkt. 80-3); next, Kinney Recruiting LLC (*see* Exhibit 5 to the SAC, Dkt. 80-5); and eventually MWK Recruiting LLC (*see* Exhibit 7 to the SAC, Dkt. 80-7), which (in turn) allegedly converted itself into MWK Recruiting Inc. (the Plaintiff in this action) on March 12, 2018 (*see* SAC ¶ 42). Allegedly, MWK Recruiting Inc. has now merged into yet another firm, called Counsel Holdings Inc.  *See* SAC at 1 n.1.[4]  But, contrary to the inferences that the SAC's conclusory allegations seek to promote, the "Company" itself (namely, Kinney Recruiting, L.P.) was never a party to any of those assignments or transactions.  And, the Jowers Employment Agreement itself mentions neither Recruiting Partners GP, Inc. nor Recruiting Partners, L.P.  Thus, there simply are no alleged transactions by which MWK Recruiting Inc. could plausibly have become an assignee and/or a successor of Kinney Recruiting, L.P.

Furthermore – and no less critically – the eventual assignment to MWK Recruiting LLC (the alleged "Third Assignment," dated January 31, 2017) also did not make MWK Recruiting LLC the owner of any trade secrets.  *See* SAC ¶ 40.  That assignment document said nothing about ownership of any information whatsoever (secret, or not).  *See* Exhibit 7 to the SAC (Dkt. 80-7).  Instead, it only purported to assign the employment agreement "between Jowers and

---

[4] Despite the alleged merger into Counsel Holdings Inc., there has been no motion or order for substitution of parties.  *See* Fed. R. Civ. P. 25(c).  Under Rule 25(c), "the action may be continued by or against the original party" if no substitution is ordered.  Therefore, this Motion continues referring to the Plaintiff as MWK Recruiting Inc.  *See* SAC ¶ 1 (alleging that "MWK [Recruiting Inc.] is a corporation organized under the law of the state of Texas …").

Recruiting Partners, L.P. [*sic*]" together with any "claims or causes of action" that Kinney Recruiting LLC might have against Jowers.  *Id.*, ¶ 1.b & 1.d.  Of course, there **was** no agreement "between Jowers and Recruiting Partners, L.P." that could have been assigned to MWK Recruiting LLC.  This is because Jowers had only agreed to be employed by Kinney Recruiting, L.P., *i.e.*, the "Company" that is also mentioned in ¶ 7.2 of his Associate Recruiter Employment Agreement of May 1, 2006.  *See* Dkt. 80-1; *see also* SAC ¶ 158 (conceding that "Jower's original employer" was "Kinney Recruiting L.P.").  For that matter, there were (and are) no claims or causes of action against Jowers for misappropriation of any trade secrets that Kinney Recruiting LLC itself **could** have assigned to MWK Recruiting LLC on January 31, 2017.  This is because the SAC does not (and cannot) allege that Jowers ever entered into any confidentiality agreement with Kinney Recruiting LLC.  Jowers only signed the Employment Agreement with Kinney Recruiting, L.P.

## III.     ARGUMENT

"The standard for Rule 12(c) motions for judgment on the pleadings is identical to the standard for Rule 12(b)(6) motions to dismiss for failure to state a claim."  *Waller v. Hanlon*, 922 F.3d 590, 599 (5th Cir. 2019).  To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]'

devoid of 'further factual enhancement.' " *Id*. (quoting *Bell Atl. v. Twombly*. 550 U.S. at 555, 557).

Under Rule 10(c) of the Fed. R. Civ. P., "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." In deciding a motion to dismiss under Rule 12(b)(6) (and thus, a motion under Rule 12(c)), a court generally accepts as true all factual allegations contained within the complaint. *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993). However, a court is not bound to accept legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Although all reasonable inferences should be resolved in favor of the plaintiff, the plaintiff must plead "specific facts, not mere conclusory allegations." *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994).

**A.     Count III Fails to Allege Facts Showing that MWK Recruiting Inc. Has Any Standing under Florida Law to Enforce the Employment Agreement Between Jowers and Kinney Recruiting, L.P.**

"Jower's original employer" was "Kinney Recruiting L.P." SAC ¶ 158. Only Kinney Recruiting, L.P. is named as the "Company" in the Associate Recruiter Employment Agreement of May 1, 2006. *See* Dkt. 80-1 at page 1 (defining "Company"); *id.* at 11 (the signature page of the agreement, where Mr. Kinney signed on behalf of "COMPANY"). Under ¶ 12.1 of the agreement, "[t]his Agreement, and any controversies, claims, disputes or matters in question arising out of or related to this Agreement shall be construed, governed, and enforced in accordance with the laws of Florida." *See* Dkt. 80-1 at page 6 of 11. "Under Florida law, a third party may enforce an agreement between others only if [the third party] is an intended beneficiary, not an incidental beneficiary, of that agreement." *Maccaferri Gabions, Inc. v.*

*Dynateria Inc.*, 91 F.3d 1431, 1441 (11th Cir. 1996).  To be an intended beneficiary, the parties,

or the contract itself, must express "an intent to primarily and directly benefit the third party."

*Id*. (citation omitted).  To qualify under that standard, the third party need not be explicitly

named.  *Technicable Video Sys., Inc. v. Americable of Greater Miami, Ltd.*, 479 So. 2d 810, 812

(Fla. Dist. Ct. App. 1985).  However, the third party must be part of a "limited class" of

identified, intended beneficiaries.  *Id*.  Here, the agreement does not mention any third party

whatsoever.  This omission is clear on the face of it.  And the only potential class of third-party

beneficiaries alleged in the SAC is "the Company's assignees and/or successors," under ¶ 15.1.

*See* SAC ¶ 19.  But there was never any assignment of the agreement itself, nor any assignment

of its non-compete clause (¶ 4.4), the confidentiality clause (¶ 7.2) or the non-solicitation clause

(¶ 8.2) – nor any assignment of anything – by Kinney Recruiting, L.P., which was the

"Company" under the agreement.  The SAC contains no such allegation, anywhere in its 211

numbered paragraphs.  Nowhere.  None.  In short, Kinney Recruiting, L.P. never assigned

anything, to anyone.

In conclusory fashion, however, the SAC alleges that "KR-LP" was a "predecessor

entity" of MWK.  *See* SAC ¶ 44.  The term "KR-LP" means "Kinney Recruiting L.P.," allegedly

"a Texas limited partnership that has ceased operation."  SAC ¶ 11.  But the specific factual

allegations of the SAC and its exhibits only show that the predecessors of MWK Recruiting Inc.

were MWK Recruiting LLC (prior to the alleged conversion on March 12, 2018) and Kinney

Recruiting LLC (which had made the "Third Assignment" on January 31, 2017 to MWK

Recruiting LLC).  Earlier, both MWK Recruiting LLC and Kinney Recruiting LLC had received

the "Second Assignment" on October 25, 2012 from "Recruiting Partners GP, Inc. (d/b/a Kinney

Recruiting, Inc.)."  *See* Dkt. 80-5.  Earlier still, there had been the "First Assignment" of

December 31, 2007 (*see* SAC ¶ 28), documented in a paper that was signed only by Recruiting Partners GP, Inc. and Recruiting Partners, L.P. (*see* Dkt. 80-3).  ***None*** of those were signed by Kinney Recruiting, L.P.  Furthermore, through all of the alleged transactions, MWK Recruiting Inc. could only have succeeded (at most) to a purported agreement "between Jowers and Recruiting Partners, L.P." mentioned in the assignment document of January 31, 2017.  *See* Dkt. 80-7, ¶ 1.b.  No such agreement had ever existed; rather, the only agreement was between Jowers and Kinney Recruiting, L.P.  *See* Dkt. 80-1.  Therefore, MWK Recruiting Inc. is not an assignee or a successor of Kinney Recruiting L.P.'s rights under the Associate Recruiter Employment Agreement with Jowers.

Count III seems to rely – ultimately – upon the implied assertion that Recruiting Partners, L.P. somehow managed to assign the Jowers employment agreement to the firm of Recruiting Partners GP, Inc. when the "First Assignment" document was signed on December 31, 2007.  According to this document (Dkt. 80-3), Recruiting Partners, L.P. purported to assign "[t]he employment agreement between Evan Jowers and Assignor."  *Id.* at ¶ A.1.  In turn, the term "Assignor" ostensibly meant "Recruiting Partners, L.P. (d/b/a Kinney Recruiting, L.P.)."  *Ibid.*  But, nothing in the SAC or its exhibits purports to allege plausibly – or at all – that Kinney Recruiting, L.P. itself (the alleged Texas limited partnership, *see* SAC ¶ 11) had ever assigned anything to Recruiting Partners, L.P.  Plaintiff cannot point to any specific facts in the SAC that would support such inferences.  There are no such facts.

Furthermore, even if Recruiting Partners, L.P. really was doing business as "Kinney Recruiting, L.P." back when the Employment Agreement of May 1, 2006 was originally signed (the SAC does not allege any such facts), that still would not allow MWK Recruiting Inc. to sue now as a successor to Recruiting Partners, L.P.  The Florida Fictitious Name Act provides that

"[a]n action, suit, or proceeding may not be maintained in any court of this state by any successor or assignee of such business on any right, claim, or demand arising out of the transaction of business by such business in this state until this section has been complied with." Fla. Stat. Ann. § 865.09(9)(a).   The same incapacity to sue in Florida state courts under § 865.09(9)(a) would also apply here in federal district court.  *See Incomco v. Southern Bell Tel. & Tel. Co.*, 558 F.2d 751, 753 & n.1 (5th Cir. 1977).   Obviously, the "Company" transacted business in Florida, when it hired Jowers to work for the company in Sunny Isles, Florida.  *See* Dkt. 80-1 at page 8 of 11 (listing Jowers's address in Florida).  That fact is obvious, regardless of whether the "Company" was really Kinney Recruiting, L.P. (as conceded in ¶¶ 11 and 158 of the SAC, and shown on the face of the agreement), or whether some other firm was the "Company" and merely used a fictitious name of "Kinney Recruiting, L.P."  And, even assuming (really, just speculating, which *Twombly* and *Iqbal* forbid doing) that Recruiting Partners, L.P. utilized the name of "Kinney Recruiting, L.P." when the agreement was signed, nevertheless, the SAC still does not allege that § 865.09 has ever been "complied with."  Evidently, no such allegation is possible.

**B.      Count I Fails to Plausibly Allege that MWK Recruiting Inc. Actually Owns any Trade Secrets that Jowers Could Have Misappropriated, under the Federal Defend Trade Secrets Act.**

Ownership is an element of a claim for trade secret misappropriation under the Defend Trade Secrets Act of 2016.  See 18 U.S.C. § 1836(b)(1) (affording relief only to "[a]n owner of a trade secret that is misappropriated."). As defined, "the term 'owner' … means the person or entity in whom or in which rightful legal or equitable title to, or license in, the trade secret is reposed."  18 U.S.C. § 1839(4).  Here, Count I of the SAC pleads no facts showing that MWK

Recruiting Inc. ever had title or a license to any of the purported trade secrets that Jowers allegedly misappropriated – allegedly, by using them in breach of ¶ 7.2 of his Associate Recruiter Employment Agreement with Kinney Recruiting, L.P. dated May 1, 2006.  Based on the facts alleged, MWK Recruiting Inc. never could have had title or a license to any such trade secrets – because, Jowers never actually worked for MWK Recruiting LLC itself (which is alleged to be the immediate predecessor of MWK Recruiting Inc.),[5] and also because the SAC does not allege that any trade secrets owned by Kinney Recruiting, L.P. (the "Company" under the Jowers employment agreement) were ever assigned or licensed.  In fact (as just shown, *see* III.A, *supra*), the SAC does not allege that Kinney Recruiting, L.P. ever assigned anything, to anyone: not the agreement of May 1, 2006 containing the confidentiality clause in ¶ 7.2, nor any trade secrets that ¶ 7.2 could have protected from use or disclosure by Jowers.

This Court has already observed that the ¶ 7.2 confidentiality clause in the Associate Recruiter Employment Agreement between Jowers and Kinney Recruiting, L.P. is the genesis of the claims that Jowers allegedly committed a "misappropriation" of trade secrets.  That claim depends upon whether Jowers allegedly used the purported secrets in breach of a duty under ¶ 7.2 to refrain from using them without permission, except on behalf of the "Company."  *See* Order (Dkt. 87) at 22-23.  "To show misappropriation, MWK must show that Defendants acquired its trade secrets through improper means, such as through 'breach or inducement of a

---

[5] It bears noting that the SAC alleges that "[o]n December 16, 2016, Jowers terminated his employment with MWK."  See SAC ¶ 111 (emphasis added).  This allegation could be construed to imply that MWK Recruiting Inc. was Jowers's employer, prior to December 16, 2016.  However, "when an allegation is contradicted by the contents of an exhibit attached to the pleading, then indeed the exhibit and not the allegation controls."  *Smit v. SXSW Holdings, Inc.*, 903 F.3d 522, 528 (5th Cir. 2018) (citation and quotation marks omitted).  MWK Recruiting, Inc. did not even exist until March 12, 2018, when MWK Recruiting LLC filed its "Certification of Conversion" (Dkt. 80-9).  See SAC ¶ 42.  Itself, MWK Recruiting LLC did not actually receive its assignment of any purported employment agreement involving Jowers until the alleged "Third Assignment" of January 31, 2017 (see SAC ¶ 40) – which was after Jowers (concededly) had already terminated his employment, no later than December 16, 2016.  Furthermore, nothing in the text of the post-termination assignment document on January 31, 2017 purports to transfer title in any trade secrets, nor to license any trade secrets.  See Dkt. 80-7 (not mentioning any transfer or license of trade secrets).

breach of a duty to maintain secrecy.'"  *Id.* at 22 (citing Tex. Civ. Prac. & Rem. Code § 134A.002(2); 18 U.S.C. § 1839(6)(A)).[6]  Under the DTSA, "the term 'misappropriation' means … disclosure or use of a trade secret of another without express or implied consent by a person who …  at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was … acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret …."  18 U.S.C. § 1839(5)(B)(ii)(II).  Apart from the alleged breach of the confidentiality clause in ¶ 7.2 of the employment agreement, no such "improper means" are plausibly alleged.

"Such is the case here," the Court concluded, when it denied Jowers's initial motion to dismiss the SAC under Rule 12(b)(6) based upon the confidentiality clause in ¶ 7.2 of Jowers's agreement with Kinney Recruiting, L.P.  *See* Dkt. 87 at 23 (citing the agreement in Dkt. 80-1). Such is not the case, however, unless MWK Recruiting Inc. actually succeeded to the agreement. This is so, because the SAC does not allege any other basis giving rise to a trade secrets claim – other than ¶ 7.2 of that agreement.  As just shown (*see* III.A, *supra*), Kinney Recruiting, L.P. never assigned that agreement to anyone.  Instead, through all of the alleged transactions, MWK Recruiting Inc. could only have succeeded (at most) to a purported agreement "between Jowers and Recruiting Partners, L.P." that was identified in the "Third Assignment" of January 31, 2017.  *See* Dkt. 80-7, ¶ 1.b.  No such agreement ever existed; and, even if it did exist (it did not), nothing in the "Third Assignment" on January 31, 2017 of that (non-existent) agreement purported to convey title, or to grant a license, concerning any secret information.  Such

---

[6] Improper means are defined as "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage" § 1839(6)(A).

ownership is required by 18 U.S.C. §§ 1836(b)(1) and 1839(4).  The SAC does not plead any facts supporting an inference of such ownership.

It bears mentioning that the SAC alleges that "KR-LP" was a "predecessor entity" of MWK.  See SAC ¶ 44. Contrary to this allegation, the factual allegations and the exhibits to the SAC demonstrate[7] that the actual predecessors of MWK Recruiting Inc. were MWK Recruiting LLC (prior to the conversion of that entity on March 12, 2018) and Kinney Recruiting LLC (which had made the "Third Assignment" on January 31, 2017 to MWK Recruiting LLC). Earlier, both MWK Recruiting LLC and Kinney Recruiting LLC allegedly had received assets under an assignment on October 25, 2012 (which ¶ 34 of the SAC calls the "Second Assignment") from "Recruiting Partners GP, Inc. (d/b/a Kinney Recruiting, Inc.)."  See Dkt. 80-5.  Earlier still, Recruiting Partners GP, Inc. had received its purported "First Assignment" on December 31, 2007 from "Recruiting Partners, L.P. (d/b/a Kinney Recruiting, L.P."  See Dkt. 80-3.  But, there was never any assignment from Kinney Recruiting, L.P. itself, which, again, never assigned anything, to anyone.

Without title or a license to a trade secret that could have been misappropriated, MWK Recruiting Inc. cannot state a claim under the federal Defend Trade Secrets Act.  Therefore, Count I should be dismissed.

**C.      Additionally, Count II Also Fails to Allege that MWK Recruiting Inc. Has Lawful Possession of any Trade Secrets that Jowers Could Have Misappropriated.**

Count II purports to state a claim under Texas law for Texas Trade Secret Misappropriation.  However, as the Court has ruled, Florida law, not Texas law, governs trade

---

[7] When an allegation is contradicted by the contents of an exhibit attached to the pleading, then indeed the exhibit and not the allegation controls.  *Smit v. SXSW Holdings, Inc.*, *supra* at 528.

secret claims "related to the employment agreement." *See* Order (Dkt. 87) at 13.  The Court has also concluded that Florida law governs disputes "arising out of or relating to" the employment agreement between Jowers and his former employer (which was Kinney Recruiting, L.P.).  *See id.* at 10 n.7.[8]

However, Count II does not even purport to state a claim for relief under Florida law; instead, Count II is styled "Texas Trade Secret Misappropriation," and it only seeks relief under the "Texas Uniform Trade Secrets Act."  *See* ¶¶ 3-4 of the SAC's "Prayer for Relief" section. Yet, Count II is "related to the employment agreement" – as this Court has already concluded. *See* Order (Dkt. 87) at 13.  Pursuant to ¶ 12.1 of the contract, the Court has also concluded that Florida law governs tort claims "arising out of or relating to" the employment agreement: to wit, the Employment Agreement between Jowers and Kinney Recruiting, L.P.  *See id.* at 10 n.7. Indeed, the tort claim in Count II expressly incorporates the SAC's earlier recitation of the confidentiality clause in ¶ 7.2 of the Jowers employment agreement with Kinney Recruiting L.P. *See* SAC ¶ 57 (quoting ¶ 7.2 of the agreement); SAC ¶ 146 ("Plaintiff re-alleges each allegation contained in the above Paragraphs, as if fully set forth herein").  Therefore, Texas law does not apply – and Count II of the SAC ought to be dismissed for that reason alone.

Leaving aside this conclusion, there are important differences between the Florida Uniform Trade Secrets Act ("FUTSA") and the Texas Uniform Trade Secrets Act ("TUTSA") that bear on Plaintiff's decision to proceed with the latter and warrant outright dismissal.

---

[8] Under ¶ 12.1 of the agreement, which is a part of the SAC (for all purposes, under Rule 10(c)), "[t]his Agreement, and any controversies, claims, disputes or matters in question arising out of or related to this Agreement shall be construed, governed, and enforced in accordance with the laws of Florida."  *See* Dkt. 80-1 at page 6 of 11.  Indeed, Count II expressly incorporates the SAC's earlier recitation of the confidentiality clause in ¶ 7.2 of the Jowers employment agreement with Kinney Recruiting L.P.  *See* SAC ¶ 57 (quoting ¶ 7.2 of the agreement); SAC ¶ 146 ("Plaintiff re-alleges each allegation contained in the above Paragraphs, as if fully set forth herein").

Specifically, the 2017 Amendments to TUTSA were enacted " to update provisions of the act to eliminate forum shopping between state and federal courts and ensure uniformity and clarity between state and federal laws."  Committee notes, 2017 Texas House Bill No. 1995, Texas Eighty-Fifth Legislature.

The 2017 Amendments were made effective on September 1, 2017, therefore, they were not in effect during the time period Plaintiff alleges its trade secrets were misappropriated. *Committee Notes to Section 7 of 2017 Texas House Bill No. 1995*, Texas Eighty-Fifth Legislature. In this regard, the 2017 Amendments specifically state that their application are "prospective" as opposed to retroactive. *Committee Notes to Section 6 of 2017 Texas House Bill No. 1995*, Texas Eighty-Fifth Legislature.

The 2017 Amendments changed the Texas statute by expanding standing to "someone holding legal or equitable title or someone holding rights of enforcement."  (emphasis added) Thus, before September 1, 2017, neither TUTSA nor FUTSA allowed for an assignee of a trade secrets claim, such as Plaintiff, to bring a claim even though they did not actually own or use the trade secrets in dispute.   Accordingly, MWK Recruiting Inc. cannot plausibly allege that it ever owned *or* possessed any trade secrets that Jowers could have misappropriated from the Company under Texas or Florida law as it existed when the claim arose.

Indeed, Florida law is the same as the federal Defend Trade Secrets Act, in that "[m]isappropriation" likewise means "[d]isclosure or use of a trade secret of another without express or implied consent by a person who … [a]t the time of disclosure or use, knew or had reason to know that her or his knowledge of the trade secret was … [a]cquired under circumstances giving rise to a duty to maintain its secrecy or limit its use." Fla. Stat. Ann. § 688.002(2)(b).  As just shown (*see* III.B, *supra*), Jowers never owed any such duty to MWK

Recruiting Inc. – nor to any of its actual predecessors (namely, MWK Recruiting LLC, Kinney Recruiting LLC, Recruiting Partners GP Inc. and Recruiting Partners L.P.). Consequently, there is no plausible claim by MWK Recruiting Inc. against Jowers under the Florida Uniform Trade Secrets Act.

Jowers respectfully submits that Florida law requires ownership of a trade secret, not mere possession. *Accord Sargent Fletcher*, 110 Cal. App. 4th at 1665-66. By expressly affording relief only to an "owner" of a trade secret, *see* 18 U.S.C. § 1836(b)(1), Congress expressly repudiated the line of cases (such as *DTM Research* under Marlyand law, *see* 245 F.3d at 332-33) holding that some state enactments of the Uniform Trade Secrets Act did not require ownership, but only required that a plaintiff must have lawful possession of the allegedly secret information. For this additional reason, Count II fails to state a claim, just like Count I. *See* III.A, *supra*.

Florida law is also like federal law in another way, too, because the Florida Uniform Trade Secrets Act also requires a plaintiff to plead and prove ownership of a trade secret. *Accord Sargent Fletcher, Inc. v. Able Corp.*, 110 Cal. App. 4th 1658, 1665-66, 3 Cal. Rptr. 3d 279 (Cal. Ct. App. 2008) (holding that a California misappropriation claim under the Uniform Trade Secrets Act is defective unless "the plaintiff owned a trade secret," citing cases from Nevada and Delaware). By expressly affording relief only to an "owner" of a trade secret, *see* 18 U.S.C. § 1836(b)(1), Congress expressly repudiated a line of cases holding that some state enactments of the Uniform Trade Secrets Act merely required that a plaintiff must have "lawful possession" of the allegedly secret information. *See DTM Research, L.L.C. v. AT & T Corp.*, 245 F.3d 327, 332-33 (4th Cir. 2001) (predicting that Maryland law only requires possession, not ownership of a trade secret). To date, no Florida courts have confronted the ownership-versus-possession

question.  Jowers respectfully submits that Florida's highest court would follow federal law in requiring ownership.  Regardless, the SAC also pleads no specific facts showing that MWK Recruiting Inc. has possession of any purported trade secrets that Jowers allegedly misappropriated.  Nothing in the "Third Assignment" of January 31, 2017 or any other transaction purported to transfer possession of any information to MWK Recruiting Inc.  At most, therefore, MWK Recruiting Inc. only alleges that it has possession of new trade secret information, newly developed or acquired in the course of its own business (the business now allegedly called Counsel Holdings Inc.).  And, Jowers could not plausibly have misappropriated any of MWK Recruiting Inc.'s new trade secrets.  As just shown (*see* III.A, *supra*), Jowers never worked for MWK Recruiting Inc., and he also never owed a duty of confidentiality that MWK Recruiting Inc. could enforce as a successor and/or assignee of Kinney Recruiting, L.P.'s rights under ¶ 7.2 of its agreement with Jowers.

## D.    A Final Judgment Is Warranted.

There is no just reason for delaying the entry of a final judgment against MWK Recruiting Inc. as to Counts I, II and III of the SAC, pursuant to Rule 54(b) of the Fed. R. Civ. P.  No just reason for delay exists, because those claims are factually and legally distinct from the other claims in this action.  *See Curtiss-Wright Corp. v. G.E. Co.*, 446 U.S. 1, 8 (1980) (holding that Rule 54(b) certification was warranted, because "the claims under review were separable from the others remaining to be adjudicated").  As a result, any potential appellate review of a Rule 54(b) judgment dismissing Counts I, II and III would not affect (nor be affected by) the disposition of other, remaining claims.

Notably, the Court has already decided to dismiss the SAC's claims against all of Jowers's co-defendants, as well as dismissing the claim for civil conspiracy.  The Court decided

to dismiss the claims against Alejandro Vargas and Legis Ventures (HK) Company Limited for lack of personal jurisdiction. *See* Order (Dkt. 87) at 14-19. The Court decided to dismiss the claims against Yulia Vinokurova because the SAC fails to plead specific facts showing she breached her employment contract (allegedly by breaching the confidentiality and non-solicitation clauses) or that she misappropriated any trade secrets by doing so. *See* Order (Dkt. 87) at 23, 28. Largely for the same reasons, the Court decided to dismiss the unnumbered count in ¶¶ 204-209 for civil conspiracy. *See* Order (Dkt. 87) at 30. Insofar as those claims overlap with Counts I, II or III against Jowers, there is also no just reason to delay the entry of judgment against MWK Recruiting Inc. on those claims too.

## IV.    CONCLUSION

Counts I, II and III of the SAC should be dismissed, and final judgment should be entered on those counts, as well as the claims that the Court has previously decided to dismiss.

Respectfully submitted,

By:    */s/ Robert Tauler*
Robert Tauler, Esq.
State Bar No. 241964 (California)
rtauler@taulersmith.com
**Tauler Smith LLP**
626 Wilshire Blvd., Suite 510
Los Angeles, CA 90017
Telephone: (213) 927-9270
Facsimile: (310) 943-1455

**COUNSEL FOR DEFENDANT
AND COUNTERCLAIMANT
EVAN P. JOWERS**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on June 16, 2020, a true and accurate copy of the foregoing document was served on all counsel of record via email.


<u>*/s/ Robert Tauler*</u>

Robert Tauler