IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| MWK RECRUITING, INC., | § | |
| Plaintiff, | § | |
| v. | § | 1:18-CV-444-RP |
| EVAN P. JOWERS, YULIYA VINOKUROVA, LEGIS VENTURES (HK) COMPANY LIMITED, and ALEJANDRO VARGAS, | § | |
| Defendants. | § | |
| EVAN P. JOWERS, | § | |
| Counterclaimant/Third-Party Claimant, | § | |
| v. | § | |
| MWK RECRUITING, INC., | § | |
| Counterdefendant, | § | |
| ROBERT E. KINNEY, MICHELLE W. KINNEY, RECRUITING PARTNERS GP, INC., KINNEY RECRUITING LLC, COUNSEL UNLIMITED LLC, and KINNEY RECRUITING LIMITED, | § | |
| Third-Party Defendants. | § | |

**<u>ORDER</u>**

Before the Court is Plaintiff/Counterdefendant MWK Recruiting, Inc.'s ("MWK") and Counterdefendants Robert E. Kinney ("Kinney"), Michelle W. Kinney, Recruiting Partners GP, Inc., Kinney Recruiting LLC, Counsel Unlimited LLC, and Kinney Recruiting Limited's[1] motion to withdraw their jury demand and strike Defendant/Counterclaimant Evan P. Jowers's ("Jowers") jury

---

[1] The Court refers to these parties collectively as the "MWK Entities."

1

demand, (Mot. Strike, Dkt. 131), and accompanying briefing, (Resp., Dkt. 138; Reply, Dkt. 140).[2] After considering the parties' arguments, the record, and the relevant law, the Court grants the motion.

## I.  BACKGROUND

The Court presumes the parties' familiarity with this "complex and unusually contentious case." *Bear Ranch, LLC v. Heartbrand Beef, Inc.*, No. 6:12-CV-14, 2016 WL 1588312, at *1 (S.D. Tex. Apr. 20, 2016) (Costa, Circuit J.). Suffice it to say that the case involves Defendant/Counterplaintiff Evan P. Jowers's ("Jowers") departure from MWK, a legal recruiting firm. (*See* 2d Am. Compl., Dkt. 80). Jowers worked for the MWK Entities for several years; now, the MWK Entities accuse Jowers of appropriating their confidential information and breaching contracts. (*Id.* at 31–45). Jowers in turn accuses the MWK Entities of a number of "illegal, tortious, and bad faith acts." (2d Am. Ans. & Countercls, Dkt. 135, at 43–71).

In their motion now before the Court, the MWK Entities ask the Court to allow them to withdraw the jury demand in their second amended complaint, (Dkt. 80 at 47), and strike Jowers's own jury demand, (2d Am. Ans. & Countercls., Dkt. 135, at 72). (Mot. Strike, Dkt. 131, at 7).[3] They maintain that Jowers waived his right to a jury trial in his employment agreement with Kinney Recruiting Limited and in his loan agreement from Counsel Unlimited LLC. (*Id.* at 7–8; *see* Employment Agreement, Dkt. 131-2, at 6; Loan Agreement, Dkt. 131-3, at 22–23). Each agreement is governed by Florida law. (*See* Order, Dkt. 87, at 11). Jowers responds that the MWK entities abandoned the jury waivers by previously insisting on a jury trial, that only MWK itself has standing to enforce the waivers, and that the waivers are not enforceable at all. (Resp. Mot. Strike, Dkt. 138, at 2–3). The Court agrees with the MWK entities, finding that the jury waivers are valid

---

[2] MWK's motion for partial judgment on the pleadings, (Dkt. 152), and Jowers's motion for partial judgment on the pleadings, (Dkt. 177), are also pending.
[3] Throughout this Order, the Court uses documents' CM/ECF-assigned page numbers.

and that the MWK entities may invoke and enforce them. Jowers is not entitled to a trial by jury on any claim in this case.

## II.  ANALYSIS

### A.  Are the Jury Waiver Provisions Valid?

First, the Court must determine if the jury waiver provisions can be invoked and enforced in the first place—in other words, whether they are valid. After reviewing the provisions and the applicable law, the Court concludes that they are.

Federal law determines the right to a jury trial in federal-court diversity cases. *Simler v. Connor*, 372 U.S. 221, 222 (1963). "Although the right of trial by jury in civil actions is protected by the Seventh Amendment to the Constitution, that right, like other constitutional rights, may be waived by prior written agreement of the parties." *RDO Fin. Servs. Co. v. Powell*, 191 F. Supp. 2d 811, 813 (N.D. Tex. 2002). Even so, courts should "indulge every reasonable presumption against waiver." *Aetna Ins. Co. v. Kennedy ex rel. Bogash*, 301 U.S. 389, 393 (1937). Drawing on persuasive precedent from across the country, Fifth Circuit courts generally require jury waivers to have been knowing and voluntary to be enforceable. *See Crescent Res. Litig. Tr. ex rel. Bensimon v. Duke Energy Corp.*, No. A-12-CA-009-SS, 2013 WL 1865450, at *6 (W.D. Tex. May 2, 2013) (collecting cases); *RDO*, 191 F. Supp. 2d at 813 & n.8 (same); *see also K.M.C. Co. v. Irving Trust Co.*, 757 F.2d 752, 756 (6th Cir. 1985) ("Those cases in which the validity of a contractual waiver of jury trial has been in issue have overwhelmingly applied the knowing and voluntary standard."). "The Fifth Circuit has not specifically spoken on the standard for contractual jury waivers, but has endorsed the voluntary and knowing standard for jury waivers generally." *Bensimon*, 2013 WL 1865450, at *6 (citing *Jennings v. McCormick*, 154 F.3d 542, 545 (5th Cir. 1998)). Following the lead of its fellow courts, this Court applies the knowing and voluntary standard.

Similarly, though the Fifth Circuit has not specifically opined on the issue of which party bears the burden of proof, the Court will follow other Fifth Circuit district courts in concluding that the party seeking to enforce the waiver bears that burden. *Id.*; *RDO*, 191 F. Supp. 2d at 813. And, like those courts, to evaluate whether a waiver was made knowingly and voluntarily, the Court will consider factors including "(1) whether there was gross disparity in bargaining power between the parties; (2) the business or professional experience of the party opposing the waiver; (3) whether the opposing party had an opportunity to negotiate contract terms; and (4) whether the clause containing the waiver was inconspicuous." *RDO*, 191 F. Supp. 2d at 813–14.

So, the MWK Entities bear the burden of proof in showing that Jowers signed the jury waiver provisions in the employment agreement and loan agreement knowingly and voluntarily. The Court finds that they have carried this burden.

### 1. Gross Disparity in Bargaining Power

First, there was no gross disparity in bargaining power between any of the MWK Entities and Jowers. "To invalidate a waiver provision . . . the bargaining differential must be the kind of extreme bargaining disadvantage or gross disparity in bargaining position that occurs in certain exceptional situations." *Westside-Marrero Jeep Eagle, Inc. v. Chrysler Corp.*, 56 F. Supp. 2d 694, 709 (E.D. La. 1999); *accord, e.g.*, *Servicios Comerciales Lamosa, S.A. de C.V. v. De la Rosa*, 328 F. Supp. 3d 598, 622 (N.D. Tex. 2018); *BMC Software, Inc. v. Int'l Bus. Machines Corp.*, No. CV H-17-2254, 2018 WL 7291425, at *3 (S.D. Tex. Aug. 30, 2018); *Zavala v. Aaron's, Inc.*, No. 4:15-CV-123, 2015 WL 5604766, at *3 (E.D. Tex. Sept. 23, 2015). However, "the inherent disparity in bargaining relationships that is the consequence of normal employer-employee relations does not automatically render a waiver involuntary." *Jones v. Tubal-Cain Hydraulic Sols., Inc.*, No. 4:16-CV-01282, 2017 WL 3887235, at *3 (S.D. Tex. Sept. 5, 2017). And "[e]ven in the context of employment, a 'take it or leave it' situation alone does not make the waiver unenforceable or unconscionable." *Zavala*, 2015

4

WL 5604766, at *3. Fifth Circuit courts have often found, though, that a unilateral jury waiver suggests a sufficient disparity of bargaining power. *See, e.g.*, *id.* at *3–4.

Though Jowers argues that "Kinney knew that [he] was in a precarious personal condition" at the time the employment agreement was signed and "purposefully took advantage of it," and that Kinney threatened him with unlawful refusal to pay what he was owed and the possibility of a "frivolous lawsuit," (Resp., Dkt. 138, at 10–11), Jowers was free to go elsewhere for employment if he disliked the terms of the contract or the process of its negotiation. *See Westside-Marrero*, 56 F. Supp. 2d at 709 ("[P]laintiffs clearly felt considerable pressure to obtain financing for the Laplace dealership. But they have produced no evidence that they could not have gone elsewhere for financing had they found CFC's terms oppressive."). Notably, Jowers does not assert any disparity in bargaining power related to the jury waiver provision in the loan agreement. (*See* Resp., Dkt. 138, at 10–11). And both jury waiver provisions were bilateral. Ultimately, Kinney, Kinney Recruiting Limited, and Counsel Unlimited LLC "in no way deprived [Jowers] of his freedom in presenting him with the . . . agreements." *Westside-Marrero*, 56 F. Supp. 2d at 709. To the extent that Jowers colorably asserts he was under duress when signing either or both the employment agreement and the loan agreement because of Kinney's threats, under Florida law, "threatened action cannot constitute duress, when there are adequate legal remedies available with which to challenge it."[4] *Peralta v. Peralta Food Corp.*, 506 F. Supp. 2d 1274, 1282 (S.D. Fla. 2007) (quoting *City of Miami v. Kory*, 394 So. 2d 494, 499 (Fla. Dist. Ct. App. 1981)).

2. <u>Business or Professional Experience</u>

Second, Jowers had ample business and professional experience at the time he decided to sign the employment and loans agreements. Jowers is a lawyer. (Resp., Dkt. 11, at 11). Despite

---

[4] While state law applies to the issue of duress, federal law applies to the issue of jury waiver more generally. *See Simler*, 372 U.S. at 222.

having had no "relevant experience reviewing employment contracts" at the time he signed his own," (*id.*), a lawyer of any kind can safely be assumed to have some level of general knowledge of contracts. The fact that Jowers "was not an active attorney at the time," (*id.*), does not mean that he did not have the benefit of his prior legal training and experience. Furthermore, Jowers is a professional legal recruiter—by his own account, an accomplished one to boot. (Am. Answer, Dkt. 96, at 45). Perhaps that has little bearing on the employment agreement he signed at the beginning of his legal recruiting career. But it can also be safely assumed that years later, when he signed the loan agreement, he had the business and professional experience necessary to evaluate it. Jowers's own arguments over the course of this case contradict any possible argument now that he did not possess such experience.

### 3. Opportunity to Negotiate

Third, Jowers had sufficient opportunity to negotiate the jury waiver provisions. "In determining the negotiability of a contract, courts consider whether there was actual negotiation over the terms of the contract." *Zavala*, 2015 WL 5604766, at *3. Jowers flatly states that he "was not given any opportunity to negotiate the Employment Agreement," (Resp., Dkt. 138, at 10)— again, making no such assertion concerning the loan agreement. "However, just because the terms of an agreement were not negotiated does not mean that the agreement is not negotiable," *Zavala*, 2015 WL 5604766, at *3, just as "[t]he fact that negotiation might have been unwieldy or inconvenient . . . does not mean that the contract was non-negotiable," *Westside-Marrero*, 56 F. Supp. 2d at 707. Here, the jury waiver provisions are bilateral, implying their negotiability. (Employment Agreement, Dkt. 131-2, at 6 (referring to "[e]ach party"); Loan Agreement, Dkt. 131-3, at 22–23 (same)); *see RDO*, 191 F. Supp. 2d at 814. Consequently, the Court finds that the MWK Entities have sufficiently proved that the jury waiver provisions were negotiable for the purposes of their motion.

4. <u>Conspicuousness of the Jury Waiver Provisions</u>

Fourth, both jury waiver provisions are appropriately conspicuous, though the provision in the employment agreement is less conspicuous than the one in the loan agreement. "Courts determine the conspicuousness of jury waiver clauses on a case-by-case basis, and consider factors such as the typeface, the length of the document, and the location of the waiver clause." *Zavala*, 2015 WL 5604766, at *2. "Unambiguous language also suggests that a jury waiver is sufficiently conspicuous." *Id.*

Here, the provision in the employment provision is written in the same regular font as the surrounding text, in sentence case, and separately indented like the other provisions. (Employment Agreement, Dkt. 131-2, at 6). Kinney (for Kinney Recruiting Limited) and Jowers signed their initials directly below it (as they did at the bottom of each page). (*Id.*). By contrast, the provision in the loan agreement is printed in regular font, in capital letters, and includes a specific initial signature line, which Kinney (for Counsel Unlimited LLC) and Jowers signed, that "further indicate[s] their awareness and acceptance" of the provision. (Loan Agreement, Dkt. 131-3, at 22–23).

Thus, the Court concludes that both provisions were conspicuous. Their language is unambiguous. They were not "printed in a very small font size making it difficult, if not impossible, for the average person to read it." *RDO*, 191 F. Supp. 2d at 814. Courts considering provisions formatted similarly to the one in the employment agreement have found them to be sufficient. *See Westside-Marrero*, 56 F. Supp. 2d at 708 (citing *National Westminster Bank, U.S.A. v. Ross,* 130 B.R. 656, 667 (S.D.N.Y. 1991); *In re Reggie Packing Co.,* 671 F. Supp. 571, 573 (N.D. Ill. 1987)). So too with provisions formatted similarly to the one in the loan agreement. *See, e.g., id.* Though each provision could have been more conspicuous, each provision is conspicuous enough for this purpose.

## B. Can the MWK Entities Withdraw Their Own Jury Demands?

The Court also holds that the MWK Entities may withdraw their own jury demands. Because they waived their rights to a jury trial in the first place through the provisions in the employment agreement and loan agreement, their jury demands were not "proper" within the meaning of Federal Rule of Civil Procedure 38(d), and thus Jowers's consent to the withdrawal is not required. In general, the Federal Rules of Civil Procedure "should not be interpreted to expand the right to jury trial beyond constitutional or statutory grants." *Rachal v. Ingram Corp.*, 795 F.2d 1210, 1214 (5th Cir. 1986). "The right to trial by jury is determined by the issues, not by the pleadings." *Armco, Inc. v. Armco Burglar Alarm Co.*, 693 F.2d 1155, 1158 (5th Cir. 1982). So, "[w]hen no right to a jury trial exists and where no prejudice will result, a party may unilaterally withdraw its consent to a jury trial." *FN Herstal SA v. Clyde Armory Inc.*, 838 F.3d 1071, 1089 (11th Cir. 2016).

Here, the MWK Entities (via Kinney) and Jowers waived their right to a jury trial by signing the employment agreement and the loan agreement. No right to a jury trial existed, and the Court cannot read one into Rule 38 or 39. The MWK Entities' conduct in this litigation (i.e., demanding a jury trial) cannot be considered to have relinquished their right to invoke a valid provision of a binding contract. In addition, Jowers is not appreciably prejudiced by the MWK Entities' withdrawal of their jury trial demand. Though ordinarily, he may be entitled to rely on the MWK Entities' jury demands, *see Allstate Ins. Co. v. Cmty. Health Ctr., Inc.*, 605 F. App'x 269, 271 (5th Cir. 2015), the fact that he assented to a scheduling order containing a date by which the parties could amend their pleadings strongly suggests that his reliance interest was only relevant after that date. (*See* Am. Scheduling Order, Dkt. 157, at 2; Jowers's Mot. Am. Scheduling Order, Dkt. 154, at 4 (asking the Court to change certain deadlines, but not the one for amended pleadings)).

## C. Can the MWK Entities Invoke the Jury Waiver Provisions to Strike Jowers's Jury Demand?

The Court finds that each of the MWK Entities, even though only Kinney Recruiting Limited and Counsel Unlimited LLC were direct signatories to the employment agreement and loan agreement, respectively, may invoke the jury waiver provisions despite Jowers's arguments to the contrary. (*See* Resp., Dkt. 138, at 7–9). Additionally, the Court finds that the jury waiver provisions cover all claims in this case.

The plain language of each agreement contemplates that they will be enforceable by any parties to which they are assigned. (Employment Agreement, Dkt. 131-2, at 7; Loan Agreement, Dkt. 131-3, at 19). Recruiting Partners GP, Inc. assigned the employment agreement to Kinney Recruiting Limited, which then assigned it to Kinney Recruiting LLC, which in turn assigned it to MWK. (1st Employment Agreement Assignment, Dkt. 80-5, at 1; 2017 Assignments, Dkt. 80-7, at 1). Similarly, Recruiting Partners GP, Inc. assigned the loan agreement to Counsel Unlimited LLC, which then assigned it to MWK. (1st Loan Agreement Assignment, Dkt. 80-6, at 7; 2017 Assignments, Dkt. 80-7, at 1). Thus, MWK is entitled to invoke both the provision in the employment agreement and the provision in the loan agreement. Because each provision covers all claims arising from this agreement, MWK's invocation is sufficient to bar a jury trial; the basis of Jowers's argument that all of the MWK entities need to be able to invoke the provisions directly for the provisions to be effective is unclear.[5] And even if the situation before the Court featured only nonsignatories attempting to invoke the provision, that would likely be permissible under controlling

---

[5] Moreover, Jowers has argued that all of the MWK entities are essentially synonymous. (*See, e.g.*, 2d Am. Ans, Dkt. 135, at 50).

Florida law. *See In re Quality Lease & Rental Holdings, LLC*, No. 6:16-0006, 2020 WL 2065842 (S.D. Tex. Apr. 29, 2020).[6]

Jowers further argues that the jury waivers only cover some of the claims in this case. (Resp., Dkt. 138, at 8–9). The Court disagrees. The employment agreement provides that "[e]ach party hereto expressly waives the right to trial by jury in any lawsuit or proceeding relating to or arising *in any way* from this agreement *or [Jowers's] Employment with [MWK]*." (Employment Agreement, Dkt. 131-2, at 6 (emphasis added). The loan agreement is similarly capacious. (Loan Agreement, Dkt. 131-3, at 22).[7] The Court agrees with the MWK entities that Jowers's "point that a valid assignment would have required an additional, explicit amendment of the defined term, 'Company,' in order to be valid" fails. (Reply, Dkt. 140, at 6). Ultimately, the jury waiver provisions were validly invoked and cover all claims in this case because they arise out of Jowers's employment with and loan from the MWK Entities.

---

[6] In *Quality Lease*, the court analyzed the issue of whether, under Florida law, a nonsignatory to a contract containing a jury waiver provision could enforce it when the nonsignatory was an officer or agent of the corporation. 2020 WL 2065842, at *1–2. Martin, who was CEO of Quality Lease & Rental Holdings, signed the contract for the company. *Id.* at *1. Later, Martin, acting for himself, invoked the jury waiver provision. *Id.* The party opposing jury waiver enforcement argued that because Martin was not himself a party to the contract, he could not lawfully invoke the provision. *Id.* The court held that even though the contract also contained a section excluding "third-party beneficiaries," controlling Florida law allowed Martin to invoke the provision as an agent of the signatory itself. *Id.* at *2 (citing *Hamilton v. Sheridan Healthcorp, Inc.*, 2014 WL 537343, at *3 (S.D. Fla. Feb. 11, 2014) (applying Florida law); *Tracinda Corp. v. DaimlerChrylser AG*, 502 F.3d 212 (3d Cir. 2007)). Ultimately, the court concluded that the general Florida-law rule that "[c]ontractual waivers of a person's right to a jury trial are routinely deemed enforceable, provided that they are knowing and voluntary" applied to this kind of nonsignatory as well. *Id.* (quoting *Alonso Cano v. 245 C & C, LLC*, 2020 WL 1304910, *2 (S.D. Fla. Mar. 19, 2020) (applying Florida law)).

[7] "EACH PARTY TO THIS AGREEMENT HEREBY EXPRESSLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT TO TRIAL BY JURY OF ANY CLAIM, DEMAND, ACTION OR CAUSE OF ACTION (1) ARISING UNDER THIS AGREEMENT OR ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION THEREWITH, OR (2) IN ANYWAY CONNECTED WITH OR RELATED OR INCIDENTAL TO THE DEALINGS OF THE PARTIES HERETO OR ANY OF THEM WITH RESPECT TO THIS AGREEMENT OR ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH, OR THE TRANSACTIONS RELATED HERETO OR THERETO, IN EACH CASE WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE."

## III.  CONCLUSION

For the reasons discussed above, **IT IS ORDERED** that the MWK Entities' motion to withdraw and strike jury demands, (Dkt. 131), is **GRANTED**. The MWK Entities' jury demands are **WITHDRAWN**. Jowers's jury demand is **STRICKEN**.

**IT IS FURTHER ORDERED** that the current scheduling order in this case, (Dkt. 157),[8] is **MODIFIED** to replace the word "[j]ury" on page 3 with "bench."

**SIGNED** on July 30, 2020.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

---

[8] The MWK entities' motion to extend this scheduling order's deadlines, (Dkt. 189), is also pending. Should the Court grant it and continue the trial date, this case will still be set for a bench rather than jury trial.