IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| MWK RECRUITING, INC., | § | |
| | § | |
| Plaintiff/Counterdefendant, | § | |
| | § | |
| v. | § | |
| | § | |
| EVAN P. JOWERS, | § | |
| | § | |
| | § | |
| Defendant/Counterclaimant, | § | |
| | § | 1:18-CV-444-RP |
| v. | § | |
| | § | |
| COUNSEL UNLIMITED LLC, MICHELLE | § | |
| W. KINNEY, ROBERT E. KINNEY, | § | |
| KINNEY RECRUITING LLC, KINNEY | § | |
| RECRUITING LIMITED, and RECRUITING | § | |
| PARTNERS GP, INC., | § | |
| | § | |
| Counterdefendants. | § | |

## ORDER

Before the Court are cross-motions for judgment on the pleadings by Plaintiff MWK

Recruiting, Inc. ("MWK"), (Dkt. 152), and Defendant Evan Jowers ("Jowers"), (Dkt. 177). Having

considered the parties' submissions, the record, and the applicable law, the Court will grant in part

and deny in part MWK's motion, and deny Jowers's motion.

## I. BACKGROUND

MWK is a legal recruiting firm with its principal place of business in Austin, Texas. (2d Am.

Compl., Dkt. 80, at 1, 9).  Between April 2006 and June 2015, Jowers worked for Recruiting Partners

GP, Inc. and then its affiliate, Kinney Recruiting, LLC, ("Kinney Recruiting, LLC")[1] as an attorney

---

[1] Recruiting Partners GP, Inc. is a Texas corporation and the alleged predecessor entity of MWK. (2d Am.
Compl., Dkt. 80, at 2, 9). Kinney Recruiting, LLC is a Texas limited liability company that is wholly owned by
MWK. (*Id.* at 2).

recruiter. (*Id.* at 2–6). Jowers was based exclusively in Miami, Florida. (*Id.* at 15). In 2006, shortly after he was hired, Jowers signed an Associate Recruiter Employment Agreement ("Jowers Agreement"). (*Id.* at 3). The Jowers Agreement states that any "controversies, claims, disputes or matters in questions arising out of or relating to this Agreement shall be construed, governed, and enforced in accordance with the laws of Florida." (Jowers Emp't Agreement, Dkt. 80-1, ¶ 12.1). The Jowers Agreement was between Jowers and Kinney Recruiting, L.P. MWK asserts that it was subsequently assigned the Jowers Agreement, which Jowers disputes. (Mot., Dkt. 177, at 11; Resp., Dkt. 187, at 7–9).

Jowers originally recruited attorneys for placements at large law firms based in the United States and United Kingdom. (2d. Am. Compl., Dkt. 80, at 2). Over time, however, Jowers focused his efforts on legal placement in firms' Asian offices. (*Id.*). Jowers relocated to Hong Kong in 2015, where he worked for Kinney Recruiting Limited, a Hong Kong limited company ("Kinney Recruiting HK"). (Jowers Decl., Dkt. 84-1, ¶¶ 2, 8). In December 2016, Jowers ended his employment with Kinney Recruiting HK and joined Legis Ventures as an attorney recruiter. (*Id.*). Before he left, Jowers submitted six MWK candidates[2] through Alejandro Vargas ("Vargas"), the founder of Legis Venture, while he was still employed with MWK. (2d Am. Compl., Dkt. 80, at 14).

Jowers also obtained two loans related to his employment in 2012. First, Jowers entered into a Forgivable Loan Agreement and Promissory Note (the "Forgivable Loan") with Recruiting Partners GP, Inc. (*Id.* at 6). Second, Jowers and Counsel Unlimited LLC[3] entered into a Loan Agreement and Promissory Note (the "Revolving Loan"). (*Id.* at 8). As of the date of Jowers's

___

[2] MWK alleges that Jowers submitted James Chang, Longhao Zhang, Richard Han, Pamela U, Claudia Lau, and Xiao Zhang through Vargas. (2d Am. Compl., Dkt. 80, ¶¶ 61–65). Jowers told MWK that these candidates specifically wanted to work with him instead of MWK. (*Id.*).

[3] Counsel Unlimited LLC is a Texas limited liability company that is wholly owned by MWK. (2d Am. Compl., Dkt. 80, ¶ 14).

resignation, the Forgivable Loan had a balance of $24,552.17; the Revolving Loan had a balance of $61,371.05. (*Id.* at 43, 44).

MWK sued Jowers in Texas state court on March 27, 2017. (Dkt. 1-2). Jowers timely removed to this Court. (Dkt. 1). In its second amended complaint, MWK alleges that Jowers misappropriated trade secrets related to MWK's attorney candidates, (2d Am. Compl., Dkt. 80, at 34–36). MWK also alleges that Jowers breached his employment agreements by sharing confidential candidate information with Alejandro Vargas and Legis Ventures. (*Id.* at 36–43). Finally, MWK alleges that Jowers breached the Forgivable Loan, (*id.* at 43–44), and the Revolving Loan, (*id.*), by failing to pay the balance on the loans when they were due in full.

In his answer, Jowers asserts ten counterclaims against MWK and third-party defendants Robert E. Kinney ("Kinney"), Michelle W. Kinney, Recruiting Partners GP, Inc., Kinney Recruiting LLC, Counsel Unlimited LLC, and Kinney Recruiting Limited. (2d Am. Answers, Dkt. 135, at 54–70). Jowers asserts the following additional facts.

While employed by MWK, Jowers worked for Kinney. (*Id.* at 43). Jowers asserts that when he began working for MWK, Kinney represented that Jowers would be paid certain commission for each attorney candidate he placed, and he would receive interest-free advances on these commissions. (*Id.*) Jowers asserts that these commissions were often reduced and that around 2012, Kinney ceased offering advances, instead offering the Revolving Loan. (*Id.* at 47, 50–51).

Jowers further alleges that Kinney promised his employment would not include a non-solicitation or non-compete agreement. (*Id.* at 43). The December 2006 Jowers agreement did include a non-compete provision, which Jowers alleges he was required to sign in order to receive previously promised commissions and bonuses. (*Id.* at 43–44).

Jowers also alleges that Kinney promised him a 2011 year-end bonus, that Kinney later reneged and instead offered Jowers the Forgivable Loan. (*Id.* at 45). Jowers alleges that Kinney

subsequently promised year end bonuses for any year in which Jowers's sales numbers were similar to his 2011 revenue numbers, but never paid these bonuses. (*Id.*).

Jowers further alleges that when he moved to Hong Kong to begin working for Kinney Recruiting HK, Kinney falsely represented that he would subsidize housing costs, obtain a work visa for Jowers, and cover work-related expenses. (*Id.* at 48–49).

MWK filed a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) seeking to dismiss five of Jowers's counterclaims: Claim V (fraud), Claim VI and VII (Civil RICO), Count VIII (seeking declaration that restrictive covenants are unenforceable), and Count X (veil piercing). (Mot., Dkt. 152, at 23). MWK also seeks judgment on the pleadings regarding Jowers's Sixth Defense (fraud), also under Rule 12(c). (*Id.*).

Jowers also filed a motion for judgment on the pleadings under Rule 12(c) regarding MWK's Counts I (federal trade secret misappropriation), II (Texas Uniform Trade Secrets Act), and III (breach of the Jowers Agreement), (2d. Am. Compl., Dkt.  and requests final judgment on these claims, as well as claims previously dismissed by the Court. (Mot., Dkt. 171, at 21; *see also* Order Mot. Dismiss, Dkt. 87).

## II. LEGAL STANDARD

### A.   Federal Rule of Civil Procedure 12(c)

"After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "A motion brought pursuant to Rule 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002). A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) "is subject to the

same standards as a motion to dismiss under Rule 12(b)(6)." *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 209–10 (5th Cir. 2010).

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). A court may also consider documents that a defendant attaches to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). But because the court reviews only the well-pleaded facts in the complaint, it may not

consider new factual allegations made outside the complaint. *Dorsey,* 540 F.3d at 338. "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5ᵗʰ Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

## B.  Federal Rule of Civil Procedure 9(b)

Federal Rule of Civil Procedure 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). As such, "allegations of fraud must meet a higher, or more strict, standard than the basic notice pleading required by Rule 8." *Shushany v. Allwaste, Inc.*, 992 F.2d 517, 521 (5th Cir. 1993). "This standard 'stems from the obvious concerns that general, unsubstantiated charges of fraud can do damage to a defendant's reputation.'" *Id.* (quoting *Guidry v. Bank of La Place*, 954 F.2d 278, 288 (5th Cir. 1992)). The rule is also "designed 'to preclude litigants from filing baseless complaints and then attempting to discover unknown wrongs.'" *Id.*

"In order to avoid dismissal under Rule 9(b) for lack of particularity, the Fifth Circuit has held a plaintiff must: (1) specify each statement alleged to have been misleading, i.e., contended to be fraudulent; (2) identify the speaker; (3) state where and when the statement was made; (4) plead with particularity the contents of the false representations; (5) plead with particularity what the person making the misrepresentation obtained thereby; and (6) explain the reason or reasons why the statement is misleading, i.e., why the statement is fraudulent." *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 866 (5th Cir. 2003).

## III. DISCUSSION

MWK filed a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) regarding five of Jowers's counterclaims and one of Jowers's affirmative defenses. Jowers also filed a motion for judgment on the pleadings under Rule 12(c) regarding three of MWK's claims,

requesting final judgment on these claims, as well as claims previously dismissed by the Court. The Court will first address MWK's motion, then Jowers's motion.

## A. MWK's Motion

### 1. Count V (Fraud) and Sixth Defense (Fraud)

MWK argues that Jowers's fraud-based claim and affirmative fraud defense, (2d Am. Answer, Dkt. 135, at 36, 59–60), should be dismissed for lack of specificity under Federal Rule of Civil Procedure 9(b) and as time barred. (Mot., Dkt. 152, at 11).

Jowers's fraud claim, Count V, against Kinney, Recruiting Partners GP, Inc., Kinney Recruiting LLC, Kinney Recruiting HK, and MWK, asserts that Kinney made a series of false representations to Jowers during his employment. (2d Am. Answer, Dkt. 135, at 59). The alleged false representations are (a) that Jowers's employment would not be subject to a non-solicitation or non-compete agreement; (b) that Jowers could take out interest-free advances on pending commissions; (c) that Kinney would pay Jowers a six-figure bonus for calendar year 2011 and subsequent years in which Jowers met his bonus target; (d) that Kinney would reimburse Jowers for all of his work-related expenses in Hong Kong; (e) that Kinney would sponsor, obtain, and pay for a Hong Kong work visa for Jowers; and (f) that Kinney would secure a physical office location or subsidize Jowers's housing in Hong Kong. (*Id.* at 59–60).

Jowers's affirmative fraud defense is based on similar allegations of fraud. Specifically, Jowers argues that MWK's own fraud contributed to MWK's damages because Jowers's has already accrued unpaid bonuses and commissions before he was presented with the 2006 Jowers Agreement, which allegedly violated the promise that there would not be a non-compete agreement. (*Id.* at 36). Similarly, Jowers's affirmative defense states that Kinney did not provide the promised 2011 bonus and instead only offered a loan. (*Id.* at 36).

a.  Time Barred

As an initial matter, MWK argues that both the fraud-based claim and affirmative defense are time barred. (Mot., Dkt. 152, at 15). The statute of limitations for fraud is four years. TEX. CIV. PRAC. & REM. CODE § 16.004(a)(4); FLA. STAT. § 95.11.

Jowers counters that MWK's filing of this lawsuit in March 2017 tolled the statute of limitations for any compulsory counterclaims. (Resp., Dkt. 160, at 14). *See Songcharoen v. Plastic & Hand Surgery Assocs., P.L.L.C.*, 561 Fed. App'x 327, 340 (5th Cir. 2014) (recognizing compulsory counterclaims relate back to filing of the complaint); Fed. R. Civ. P. 13(a) (stating that a counterclaim is compulsory if it "arises out of the same transaction or occurrence that is the subject matter of the opposing party's claim"). Applying the 4-year statute of limitations, this permits any compulsory counterclaims made after February 2013. Jowers asserts that all of the bases for his fraud claim are compulsory counterclaims. (Resp., Dkt. 160, at 14).

Jowers further argues that any earlier claims are not time-barred because of the discovery rule, which "defers accrual of the cause of action if (1) the nature of the injury is inherently undiscoverable and (2) the evidence of injury is objectively verifiable." *Beavers v. Metro. Life Ins. Co.*, 566 F.3d 436, 439 (5th Cir. 2009); *see also Hearndon v. Graham*, 767 So.2d 1179, 1184 (Fla. 2000) (stating the "delayed discovery" exception operates to postpone accrual "until the plaintiff either knows or reasonably should know of the tortious act giving rise to the cause of action"). Jowers argues that discovery of Kinney's alleged fraud was delayed because of "Kinney's repeated promises to keep his end of the bargain" and that "it did not become clear to Jowers that Kinney was, in truth, defrauding him until much later—around 2014 or 2015, when Kinney began exhibiting a pattern of stealing Jowers's commissions." (Resp., Dkt. 162, at 15–16; 2d. Am. Compl., Dkt. 135, at 58). In contrast, MWK argues that the alleged fraud was discoverable once each promise from Kinney was broken. (*See* Reply, Dkt. 169, at 7). The Court agrees with MWK that each instance of

alleged fraud was discoverable when that promise was broken. The Court is unpersuaded by Jowers's argument that he did not realize any of the alleged fraud had occurred until 2014 or 2015.

i.    *Are the bases for the fraud-based claim time barred*

Because Jowers pleads seven bases for fraud, the Court considers whether each one is time barred. First, Jowers asserts that when his employment began in April 2006, Kinney represented that Jowers's employment would not be subject to a non-solicitation or non-compete agreement, but the December 2006 Jowers Agreement nonetheless included a non-compete provision. (2d. Am. Answer, Dkt. 135, at 35, 44, 59). This alleged fraud was discoverable in December 2006, when Kinney presented the Jowers Agreement with a non-compete provision. As a result, even if this a compulsory counterclaim, over four years had passed since the injury was discoverable and the filing of this lawsuit in March 2017. As a result, this first basis for fraud is time barred.

Second, Jowers asserts that Kinney represented that Jowers could take out interest-free advances on pending commissions. (2d. Am. Answer, Dkt. 135, at 59). This representation began in 2006. (*Id.* at 43). "As early as January 2012," Kinney allegedly began offering high-interest loans instead, which culminated in the Revolving Loan Agreement in December 2012. (*Id.* at 47). At the latest, the injury from this alleged fraud was discoverable in December 2012, when the transition from interest-free advances to a loan was complete. Even if this is a compulsory counterclaim, over four years had passed from when the injury was discoverable in December 2012 to the filing of this lawsuit in March 2017. Thus, this second basis for fraud is time barred.

Third, Kinney allegedly represented that he would pay Jowers a six-figure bonus for calendar year 2011 and subsequent years. (2d. Am. Answer, Dkt. 135, at 59). Jowers alleges the bonus he was supposed to receive at the end of 2011 was converted to the Forgivable Loan in January 2012. (*Id.* at 45). Fraud related to the 2011 bonus is a compulsory counterclaim because it relates to MWK's breach of contract claim regarding payment of the Forgivable Loan. (*See* 2d. Am. Compl., Dkt. 80, at

43–44). However, the injury was discoverable in January 2012, when Jowers was allegedly forced to accept the Forgivable Loan instead, (Dkt. 135, at 45), which is more than four years before the filing of this lawsuit in March 2017. As a result, any fraud claim related to the 2011 bonus is time barred.

In 2012, Kinney allegedly represented that Jowers would receive a bonus in any twelve-month period where his revenue numbers were similar to his numbers in 2011. (*Id*.). Jowers asserts that his revenue numbers were high enough to receive a bonus several times, including 2015 and 2016. (*Id*.). The injury from each unpaid loan was discoverable shortly after the bonus was not paid at the end of each year. These fraud claims relating to bonuses after 2011 are not compulsory counterclaims within this lawsuit, as they do not involve the same facts as MWK's claims. As a result, the filing of this lawsuit did not toll the statute of limitations for those loans. However, assuming that payments of the 2015 and 2016 bonuses were due within 4-years of the filing of Jowers's initial answer in August 2019, (Dkt. 90), those claims are not time barred.

The fourth, fifth, and six bases for fraud are each related to Jowers's employment in Hong Kong. (Dkt. 135, at 58–59). Jowers moved to Hong Kong to work for Kinney Recruiting HK in June 2015. (*Id*. at 48). Jowers alleges that Kinney maintained fraudulent promises about the Hong Kong employment to Jowers beginning in 2014 and through the end of Jowers's employment in 2016. (*Id*.). Taking these allegations as true, the injury from the false promises was not discoverable until late 2016, which is within four years of the filing of Jowers's answer in August 2019. The fraud claims related to employment in Hong Kong are not time barred.

The seventh basis for fraud is Kinney's alleged promise to pay Jowers a percentage of placement fees earned as commission. (*Id*. at 59). Jowers asserts that Kinney unilaterally reduced Jowers's commission to a flat fee of 45% in 2009. (*Id*. at 51). Jowers additionally alleges that at various times between 2010 and 2016, Kinney denied Jowers part of his commission related to specific clients. (*Id*. at 51–52). These allegations of fraud related to commissions are not compulsory counterclaims in

this lawsuit. Additionally, each incident of alleged fraud was discoverable shortly after it should have been paid. As a result, the only claims that are not time barred are allegations occurring during or after August 2015, within four years of Jowers's answer in August 2019. Although the timing of these unpaid commissions is less than clear from the pleadings, the only claims that are potentially not time barred are an allegation from 2016, (*id.* at 51), and incidents in 2015 and 2016 briefly described, (*id.* at 52–53).[4] Any allegations of commissions that should have been paid before August 2015 are time barred.

ii.     *Is the affirmative defense time barred*

Jowers also pleads an affirmative defense that MWK's claims are barred because MWK's own fraud was used to manufacture its alleged damages. (2d Am. Answer, Dkt. 135, at 36). Although unclear within the Fifth Circuit, it is generally the case that "affirmative defenses are not ordinarily subject to the statute of limitations so long as they are properly pled and arise from the same transaction as the claims in the original complaint." *U.S. Philips Corp. v. Samsung Elecs. Co., Ltd.*, No. CV 09-692 GMS, 2011 WL 13142645, at *2 (D. Del. Mar. 25, 2011) (denying motion to dismiss fraud affirmative defense). However, MWK counters that some courts have acknowledged an exception to this rule when "affirmative defenses 'are simply time-barred claims masquerading as defenses and are likewise subject to the statute of limitations bar.'" *Davis v. 24 Hour Fitness Worldwide, Inc.*, 75 F. Supp. 3d 635, 639 (D. Del. 2014) (citing *City of Saint Paul, Alaska v. Evans*, 344 F.3d 1029, 1033 (9th Cir. 2003)). Courts have applied this exception when affirmative defenses are "mirror images of . . . time-barred claims" and when the party asserting the affirmative defense is the "true aggressor." *Davis*, 75 F. Supp. 3d at 638–39 (citing *Evans*, 344 F.3d at 1035–36).

---

[4] "Also in 2015, Kinney arbitrarily awarded himself 20% of Jowers's commission for successfully placing a candidate in Asia. And in 2016, Kinney arbitrarily awarded himself $7,500 of Jowers's commission for yet another candidate placement." (Dkt. 135, at 52–53).

The first assertion in the affirmative defense is that "Kinney allowed [Jowers] to accrue unpaid bonuses and commissions" in advance of the 2006 Jowers Agreement. (2d. Am. Answer, Dkt. 135, at 36). Jowers pleads that in 2006, "Jowers and Kinney reached an agreement that Jowers would be paid a certain commission for each attorney candidate he successfully placed," which Kinney then threatened to not honor if Jowers did not sign the Jowers Agreement. (*Id.* at 43–44). In this case, the affirmative defense is not a mirror image of the fraud-based claims asserted by Jowers. *See Davis*, 75 F. Supp. 3d at 638–39 (citing *Evans*, 344 F.3d at 1035–36). Instead the affirmative defense relates to the withholding of payment from commissions and bonuses leading up to the 2006 Jowers Agreement, whereas the most similar claims related to bonuses and commissions were related to unpaid commissions from 2009 to 2016 and unpaid bonuses from 2011 to 2016. (*See* 2d. Am. Answer, Dkt. 135, at 45, 51–53). Additionally, the Court does not consider Jowers to be the true aggressor in this case. *See Davis*, 75 F. Supp. 3d at 639 (interpreting the defendant as the true aggressor because it "invite[d] a lawsuit from [the plaintiff]").

The second allegation in the affirmative defense is related to the allegedly promised 2011 bonus that resulted in the Forgivable Loan. Although this more clearly mirrors the 2011 bonus claim dismissed as time barred above, (Dkt. 135, at 58), because the Court once again does not view Jowers as the true aggressor in this case, it declines to extend the *Davis* and *Evans* exception to exclude this affirmative defense. As a result, the affirmative defense is not time barred.

b.   Specificity of the fraud claim and affirmative defense

In addition to being time barred, MWK asserts that Jowers's fraud claim should be dismissed for not meeting the heightened pleading standard for fraud claims under Federal Rule of Civil Procedure 9(b). (Mot., Dkt. 152, at 11). "At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Benchmark Elecs. v. J.M. Huber*

*Corp.*, 343 F.3d 719, 723–24 (5th Cir. 2003) (quoting *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992)). That is, "Rule 9(b) requires 'the who, what, when, where, and how' to be laid out." *Id.* (quoting *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 179 (5th Cir. 1997)).

MWK argues that the fraud allegations do not describe that "a specific statement (the 'what'), was made at a specific time (the 'when') in a specific place (the 'where') and why that statement was misleading." (Mot., Dkt. 152, at 13). MWK's critique of the specificity of Jowers's fraud claims center on the vague time frames given for each claim and lack of any location. (Reply, Dkt. 169, at 3).

Jowers counters that MWK's motion "fail[s] to identify the specific misrepresentations that . . . do not constitute fraud" out of the seven alleged false representations. (Resp., Dkt. 160, at 9). In his response, Jowers states that each of the alleged misrepresentations, ("what"), were made by Kinney, ("who"), to induce Jowers to act on the misrepresentations, ("why"). (*Id.* at 9–10). However, Kinney is correct that Jowers's pleadings do not state where these alleged misrepresentations occurred, and Jowers does not address this in his response. (*See id.*). Additionally, Jowers offers only vague time frames, sometimes specifying a specific month, but often as vague as only specifying a season or a year. (*See, e.g.,* 2d. Am. Answer, Dkt. 135, at 51 (discussing a commission in "Summer 2016")). This is insufficient to meet the requirements of Rule 9(b). *Afshar v. Norwood*, No. 3:05-CV-1625-G, 2005 WL 8153980, at *2 (N.D. Tex. Dec. 14, 2005) (dismissing claims under Rule 9(b) that included only "vague time periods" such as "[f]rom April through June" and failed to alleged locations of statements). Jowers has failed to plead his fraud claims with the required level of specificity under Rule 9(b). Therefore, any bases of the fraud claim that were not time barred must be dismissed for lack of specificity.

Additionally, MWK argues that the affirmative defense should be dismissed for lack of specificty. Federal Rule of Civil Procedure 8(c) requires a defendant to "plead an affirmative defense

with enough specificity or factual particularity to give the plaintiff 'fair notice' of the defense that is being advanced." *Rogers v. McDorman*, 521 F.3d 381, 385 (5th Cir. 2008) (quoting *Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir. 1999)). The relevant focus is whether the pleading is sufficient to identify and provide fair notice of the basis for the affirmative defense in question. *Woodfield*, 193 F.3d. at 362. "[F]air notice" is satisfied if the defense is "sufficiently articulated . . . so that the plaintiff [is] not a victim of unfair surprise." *Id.*; *see also Rogers*, 521 F.3d at 385 ("The concern is that a defendant should not be permitted to 'lie behind a log' and ambush a plaintiff with an unexpected defense."). In some cases, "merely pleading the name of the affirmative defense . . . may be sufficient." *Woodfield*, 193 F.3d at 362.

Parties agree that this standard is applied to fraud based affirmative defense claims and is less rigorous than the Rule 9(b) standard for affirmative claims of fraud. (Mot., Dkt. 152, at 8; Resp., Dkt. 162, at 12). Applying Rule 8(c), Jowers has adequately pled his affirmative defense of fraud to provide fair notice to MWK. Jowers pleads in sufficient detail that Kinney threatened to withhold promised bonuses and commissions to convince Jowers to sign the 2006 Jowers Agreement and that Kinney reneged on promised bonuses leading up to the 2012 Revolving Loan Agreement. (*See* 2d. Am. Answer, Dkt. 135, at 36, 43–45).

Accordingly, Jowers's fraud-based claim is dismissed in its entirety because each of its bases is either time barred or not pled with adequate specificity. However, Jowers's affirmative defense of based on fraud is not dismissed.

### 2.   Counts VI and VII (civil RICO)

MWK next asserts that Jowers's Racketeer Influenced and Corrupt Organizations (RICO) Act claims, which are based on the same facts and claims as his fraud claim, should be dismissed. (Mot., Dkt. 135, at 16). Claim VI alleges a violation of 18 U.S.C. § 1962(c) and Claim VII alleges a violation of 18 U.S.C. § 1962(d). (2d. Am. Answer, Dkt. 135, at 61–64).

The Fifth Circuit applies the "separate accrual" rule in civil RICO actions where a pattern of RICO activity causes a series of injuries, allowing a civil RICO claim to accrue for each injury when the plaintiff discovers, or should have discovered, that injury. *Love v. Nat'l Med. Enterprises*, 230 F.3d 765, 773 (5th Cir. 2000). The statute of limitations for a civil RICO action is four years. *Agency Holding Corp. v. Malley-Duff Assocs., Inc.*, 483 U.S. 143, 156 (1987). Parties repeat the same arguments about tolling and the discovery rule here as they did regarding the fraud claims above,[5] and the Court comes to the same conclusions.

Under 18 U.S.C. § 1962(c), Jowers asserts that Kinney engaged in a pattern of racketeering activity through wire fraud and extortion. (2d. Am. Answer, Dkt. 135, at 63–64). Because these predicate acts are based on the same facts as his fraud claim, the same claims are time barred under his civil RICO claims as were regarding his fraud claim. As a result, the only potential predicate acts that are not time barred are those based on unpaid bonuses and commissions after 2015 and claims related to employment in Hong Kong.

First, Jowers asserts that Kinney engaged in wire fraud, in violation of 18 U.S.C § 1343. (*Id.*). Jowers asserts that Kinney defrauded Jowers and other employees by "demanding money and other concessions under false pretenses" through "public wires, including telephone lines and the internet." (*Id.* at 61–62). As with the fraud claims discussed above, wire fraud claims must be pled with particularity under Rule 9(b). *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992) ("This particularity requirement applies to the pleading of fraud as a predicate act in a RICO claim as well."). Jowers is vague in exactly what outlined facts are the basis for the wire fraud claim, but to the extent that they can be assumed to be the same as the fraud based claim, Jowers does not

---

[5] Jowers additionally argues that fraudulent concealment tolls the limitations period for civil RICO claims. (Resp., Dkt. 162, at 17 (citing *Boulmay v. Rampart*, 124 F. App'x 889, 891 (5th Cir. 2005)). However, application of this rule still leads the Court to the same conclusion, as Jowers should have realized that he was injured when promises to him were broken, whether or not there was fraudulent concealment.

adequately describe the time or location of these fraudulent occurrences. As a result, this wire fraud claim is not pled with sufficient specificity to serve as a predicate act for his RICO claim.

Jowers additionally asserts that Kinney engaged in extortion, violating TEX. PENAL CODE § 31.03 and the Hobbs Act, 18 U.S.C. § 1951. Jowers asserts that Kinney used threats to convince Jowers to: "(a) agree to change his interest-free commission advances to predatory, high-interest loans; (b) accept a $50,000 loan locking up his services for nine years in lieu of a promised six figure bonus; (c) agree to sign an employment agreement at odds with the parties prior understanding; and (d) agree to front most of the expense involved in setting up Kinney's Hong Kong office" and also "withholding of commissions earned." (2d Am. Answer, Dkt. 135, at 61). As discussed above, all of these assertions are time barred except for claims related to employment in Hong Kong and withheld commissions after 2015.

The Court does not reach the issue of whether these claims qualify as extortion under the Hobbs Act or under TEX. PENAL CODE § 31.03, because these remaining possible claims are not enough to demonstrate the pattern of racketeering required for a RICO claim. "To prove a pattern of racketeering activity, a plaintiff must show at least two predicate acts of racketeering that are related and amount to or pose a threat of continued criminal activity." *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139–40 (5th Cir. 1992) (internal quotation marks and citations omitted); *see also Malvino v. Delluniversita*, 840 F.3d 223, 231 (5th Cir. 2016) ("These requirements keep civil RICO focused on the long-term criminal conduct Congress intended it to address, and 'prevent RICO from becoming a surrogate for garden-variety fraud actions properly brought under state law.'").

Additionally, because Jowers's claim fails under §1962(c), his claim under §1962(d) must also fail. *Allstate Ins. Co. v. Benhamou*, 190 F. Supp. 3d 631, 663 (S.D. Tex. 2016) ("[W]hen a plaintiff fails properly to allege a violation of § 1962(c), his § 1962(d) claim is without basis."). As a result, the Court dismisses Jowers's civil RICO claims with prejudice.

### 3. Count VIII (declaratory relief)

MWK also moves to dismiss Jowers's request for a declaration that the restrictive covenants within the Jowers Agreement are unenforceable, (2d. Am. Answer, Dkt. 135, at 64). (Mot., Dkt. 152, at 22). Claims for declaratory judgment in federal court are considered under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201. *Camacho v. Tex. Workforce Comm'n*, 445 F.3d 407, 409 (5th Cir. 2006). Courts in the Fifth Circuit reject declaratory judgment claims seeking resolution of issues that are redundant or will be resolved as part of other claims in a suit. *See Env't Tex. Citizen Lobby, Inc. v. ExxonMobil Corp.*, 824 F.3d 507, 523 (5th Cir. 2016). In that case, the appropriate remedy is to dismiss the declaratory judgment claim because 28 U.S.C. § 2201 "serves no useful purpose." *Cotton v. Tex. Express Pipeline, LLC*, No. 6:16-CV-453-RP, 2017 WL 3709093, at *11 (W.D. Tex. July 19, 2017); *see also Sky Toxicology Ltd v. UnitedHealthcare Ins. Co.*, No. 5-16-CV-1094-FB, 2018 WL 4211741, at *6 n.6 (W.D. Tex. Sept. 4, 2018) (citing cases).

MWK's complaint raises the issue of whether the restrictive covenant in the Jowers Agreement is valid and whether Jowers breached that provision. (2d. Am. Compl., Dkt. 80, at 36–39). Jowers's request for declaratory judgment seeks resolution of essentially the same claim and, as a result, serves no useful purpose under 28 U.S.C. § 2201. The Court dismisses this claim with prejudice.

### 4. Count X (veil-piercing)

Jowers brings a claim that the "Court should pierce the corporate veil of the various Kinney Entities to impose liability directly on [Kinney and Michelle Kinney] individually." (2d. Am. Answer, Dkt. 135, at 68). "Piercing the corporate veil is not a separate cause of action, but a method to impose personal liability on shareholders and corporate officers who would otherwise be shielded from liability for corporate debts." *Yinguang Chem. Ind. v. Potter*, 607 F.3d 1029, 1035 (5th Cir. 2010). A court may pierce the corporate veil "only if (1) actual fraud is shown and (2) it was perpetrated primarily for the direct personal benefit of the corporation's holder." *Sparling v. Doyle*, EP-13-CV-

00323-DCG, at *10-11 (W.D. Tex. Oct. 23, 2014) (citing TEX. BUS. ORGS. CODE ANN. §
21.223(a)(2)). Jowers asserts that he has brought claims of actual fraud against the Robert Kinney
and Michelle Kinney. (Resp., Dkt. 162, at 23). However, as discussed above, Jowers has failed to
plead any fraud claims that are not time barred and meet the pleading standards of Rule 9(b). For the
same reasons that the Court dismissed Jowers's fraud claims, the Court will dismiss Count X seeking
to pierce the corporate veil. *See Potter*, 607 F.3d at 1035 ("As discussed above, [plaintiff] fails to allege
an actual fraud, and therefore fails to sustain a basis for holding [defendant] personally liable.").

Further, this is the only claim against Michelle Kinney. Jowers attempts to argue that Michelle
Kinney should not be dismissed from this case because "while not employed by any of the Kinney
Entities, [she] nevertheless exercises dominion or control over the Kinney Entities." The Court
finds this argument unavailing. Because the only claim of personal liability against Michelle Kinney is
dismissed, she is also dismissed as a party from this case.

### B.  Jowers's Motion

Jowers filed a motion for judgment on the pleadings under 12(c), seeking dismissal of Counts I,
II and III of MWK's second amended complaint, (Dkt. 80). (Dkt. 177). Jowers also seeks final
judgment on these and previously dismissed claims, (*see* Order Mot. Dismiss, Dkt. 87). (*Id.*).

#### 1.   Count III (Breach of Jowers Employment Agreement)

Count III of MWK's complaint alleges that Jowers breached the Jowers Agreement. (2d. Am.
Compl., Dkt. 80, at 36–39). Jowers moves for dismissal, arguing that Count III fails to demonstrate
that MWK has standing to enforce the Jowers Agreement under Florida law. (Mot., Dkt. 177, at 10).
Jowers bases this on the assertion that his original employer, as reflected in the 2006 Jowers
Agreement, was Kinney Recruiting L.P. (*Id.*). While the Agreement allows "the Company's assignees
and successors" to be beneficiaries of the Agreement, Jowers argues that the Agreement was never
assigned by Kinney Recruiting L.P. to MWK. (*Id.* at 11).

18

MWK argues that it was an assignee and/or successor to the rights of Jowers's original employer, Kinney Recruiting LP. (Resp., Dkt. 187, at 7). MWK argues that the pleadings plausibly allege that the Jowers Agreement was assigned to MWK through a string of corporate identities. (*Id.* at 8–9). MWK's pleadings state that "[Recruiting Partners, L.P.] and [Recruiting Partners GP, Inc.] executed an Assignment of Employment and Other Agreements by Kinney Recruiting, L.P. to Recruiting Partners GP, Inc. (the 'First Assignment')." (*Id.* at 8–9 (quoting Dkt. 80, at ¶28)). MWK further points the Court to an attachment to its complaint, (Dkt. 80-3), titled "Assignment of Employment and Other Agreements By Kinney Recruiting, L.P. to Recruiting Partners GP, Inc." and "Recruiting Partners, L.P. (d/b/a Kinney Recruiting, L.P.)." (Resp., Dkt. 187, at 9). In 2012, Recruiting Partners GP, Inc. and Kinney Recruiting LLC executed an assignment to Kinney Recruiting, Inc. (the "Second Assignment"). (2d. Am. Compl., Dkt. 80, at 6). In 2017, Kinney Recruiting LLC executed an assignment to MWK LLC (the "Third Assignment"). (*Id.* at 8–9). Through these various assignments, the Court finds that MWK has plausibly plead that the Jowers Agreement was assigned to MWK.

Jowers next asserts that noncompliance with the Florida Fictitious Names Act (the "Florida Act") prevents MWK from suing as a successor to the Jowers Agreement because Kinney Recruiting LP was not a registered fictitious name for Recruiting Partners, L.P. in Florida. (Mot., Dkt. 177, at 12–13 (citing FLA. STAT. ANN. § 865.09 ("A person may not engage in business under a fictitious name unless the person first registers the name with the division by filing a registration listing))).

However, Jowers has not adequately demonstrated that the Florida Act applies to MWK or Recruiting Partners, L.P. All relevant corporate entities are or were Texas entities. (Resp., Dkt. 187, at 12 ("[T]hese were assignments that occurred between Texas entities, executed in Texas, by a Texas resident on behalf of businesses he controls.")). Florida law only governs this dispute because

parties agreed in the Jowers Agreement that Florida law would apply to any disputes under the agreement. (Order Mot. Dismiss, Dkt. 87, at 10 n.7).

It is unlikely that the Florida Act was intended to apply to this situation. The Florida Act defines "fictitious name" as "any name under which a person *transacts business* in [Florida]" and prohibits claims "rising out of the *transaction of business* by such business in [Florida]" when the Florida Act has not been complied with. §§ 865.09(2)(c), 865.09(9)(a) (emphasis added). As other courts have explained, "[o]ut-of-state corporations do not fall within Florida's statutory definition of 'transacting business in Florida' so as to prevent the Florida statute from violating the Constitution's Commerce Clause." *Stream, Inc. v. Habsa Enter., Inc.*, No. 16-81662-CIV, 2018 WL 1463655, at *2 (S.D. Fla. Jan. 31, 2018) (citing *Davis Tune, Inc. v. Precision Franchising, LLC.*, No. 3:05CV97/RV, 2005 WL 1204618, at *1 (N.D. Fla. May 20, 2005)). Jowers's assertion that Kinney Recruiting, L.P. and/or Recruiting Partners L.P. "[o]bviously . . . transacted business in Florida, when it hired Jowers to work for the company in Sunny Isles, Florida" is insufficient to demonstrate that the Florida Act is applicable to the Texas entities at hand. Accordingly, the Court denies Jowers's motion to dismiss Count III.[6]

### 2.   Count I (Federal Trade Secret Misappropriation)

MWK alleges in Count I that Jowers misappropriated its trade secrets. (2d. Am. Compl., Dkt. 80, at 33–34). Jowers moves to dismiss this claim, arguing that MWK has failed to plausibly allege that MWK owns any trade secrets that Jowers could have misappropriated under the Federal Defend Trade Secrets Act. (Dkt. 177, at 13 (citing 18 U.S.C. § 1836(b)(1) (affording relief only to "[a]n owner of a trade secret that is misappropriated"))).

---

[6] Parties also dispute whether violation of the Florida Act prohibits MWK from bringing its breach of contract claim, citing dueling provisions of the Act. (Resp., Dkt. 187 at 11 (citing § 865.09(9)(b)); Reply, Dkt. 192, at 8 (citing § 865.09(9)(a))). Because it is not clear that Florida law applies, the Court does not reach this issue.

Jowers's argument again centers on the assertion that MWK was never assigned the Jowers Agreement or any of Kinney Recruiting L.P.'s trade secrets. (*Id.* at 13–14). However, as discussed above, the Court finds that MWK has plausibly plead that the Jowers Agreement was assigned to MWK. Similarly, because MWK has plausibly plead that Kinney Recruiting L.P. was its predecessor entity, MWK has plausibly plead that its trade secrets are at issue. (*See also* Order, Dkt. 87, at 23 ("And MWK has included sufficient allegations that Jowers used its trade secrets by submitting six candidates to Vargas instead of MWK.")).

### 3.  Count II - Texas Uniform Trade Secrets Act

Jowers argues that because Florida law governs Plaintiff's breach of contract and trade secrets claims, (Dkt. 87, at 10 n.7), MWK's claim under the Texas Uniform Trade Secrets Act ("TUTSA") should be dismissed. (Mot., Dkt. 177 at 5). Both parties appear to suggest that, if Florida law applies, this claim would more appropriately evaluated under the Florida Uniform Trade Secrets Act ("FUTSA"). (*Id.* at 17–20 (discussing FUTSA); Resp., Dkt. 187, at 13 – 14 (asserting that MWK has plausibly plead a claim under FUTSA)). Even if FUTSA is the more appropriate state law to be applied, this does not warrant dismissal of the claim even though it has been pled under TUTSA. "The reference to a statute as being the basic ground upon which an action is brought, even if completely incorrect, is no ground for the dismissal of an action where there is a statute in existence which would warrant a valid cause of action for which relief could be granted upon the facts as pleaded." *Bigelow v. United Healthcare of Mississippi, Inc.*, 220 F.3d 339, 344 n.11 (5th Cir. 2000). Instead, the Court may evaluate the claim under the correct statute, in this case likely to be FUTSA. *See id.* ("[A] court . . . may take judicial notice of the existence of the applicable statute and treat the case as though it had been litigated pursuant to that statute from the outset.").

Jowers also argues that even if the claim was under FUTSA, MWK cannot have a claim because, once again, Jowers asserts that Kinney Recruiting L.P. was not MWK's predecessor entity and

MWK was never assigned the Jowers Agreement. However, once again, the Court rejects this assertion because MWK has plausibly plead that it was assigned the Jowers Agreement and that its trade secrets are at issue.[7]

### 4.   Request for Partial Final Judgment

Jowers additionally requests partial final judgment pursuant to Federal Rule of Civil Procedure 54(b) against MWK as to Counts I, II, and III. (Mot., Dkt. 177, at 20–21). Because the Court is denying Jowers's motion for judgment on the pleadings as to Counts I, II, and III, as discussed above, the Court also denies Jowers's request for partial final judgment on these claims.

Jowers also requests partial final judgment on claims previously dismissed by the Court. (*see* Order Mot. Dismiss, Dkt. 87). (Mot., Dkt. 177, at 20–21). A district court may certify an order pursuant to Rule 54(b) only if the Court determines there is no just reason for delay. *See, e.g.*, *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 8 (1980). The determination of whether no just reason for delay exists is "left to the sound judicial discretion of the district court." *Id.* The Court previously dismissed claims against Alejandros Vargas, Legis Ventures, and Yulia Vinokurova, and dismissed claims for civil conspiracy. (Order Mot. Dismiss, Dkt. 87, at 30–31). Once certified by the district court, "a Rule 54(b) judgment is a final decision capable of immediate appellate review." *Tolan v. Cotton*, 713 F.3d 299, 303 (5th Cir. 2013), cert granted, judgment vacated, 134 S.Ct. 1861 (2014). However, "[i]t is uneconomical for an appellate court to review facts on appeal following a Rule 54(b) certification that it is likely to be required to consider again when another appeal is brought after the district court renders its decision on the remaining claims or as to the remaining parties." 10 Charles Alan Wright, Arthur Miller & Mary Kay Kane, Federal Practice & Procedure § 2659 (3d ed. 1998). Having taken into account judicial administrative interests as well as the equities involved,

---

[7] Because MWK has plausibly alleged ownership of the trade secrets at issue, the Court does not reach Jowers's argument about the difference between ownership and possession of trade secrets under Florida law. (Mot., Dkt. 177, at 19–20).

including the lack of any danger of hardship or injustice to Jowers or the dismissed parties that would be caused by delay, the Court denies Jowers's request for a partial final judgment as to the previously dismissed claims.

## IV. CONCLUSION

Accordingly, **IT IS ORDERED** that MWK's motion for judgment on the pleadings, (Dkt. 152), is **GRANTED IN PART and DENIED IN PART**. Jowers's Claim V (fraud), Claim VI (civil RICO), Claim VII (civil RICO), Count VIII (declaratory relief), and Count X (veil piercing) are **DISMISSED** with prejudice. Michelle Kinney is **DISMISSED** as a party from this case. MWK's motion is **DENIED** as to Jowers's affirmative defense of fraud. For clarity, the Court **ORDERS** Jowers to file an amended answer that omits the dismissed claims on or before **December 21, 2020**; no other substantive changes are allowed.

**IT IS FURTHER ORDERED** that Jowers's motion for judgment on the pleadings, (Dkt. 177), is **DENIED**.

**SIGNED** on December 8, 2020.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE