**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **MWK RECRUITING, INC.** | § | |
| | § | |
| **VS.** | § | **No. 1:18-cv-0444-RP** |
| | § | |
| **EVAN P. JOWERS** | § | |

## <u>ORDER</u>

Before the Court are the following eight discovery motions filed by Evan Jowers:

•      Motion for Entry of Confidentiality and Protective Order (to enforce Dkt. 70) (Dkt. 180);

•      Motion to Resolve Disputed Confidentiality Designations (Dkt. 181);

•      Motion to Compel (Dkt. 184);

•      Motion to Compel Production of Documents by MWK Recruiting, Inc. (Dkt. 199);

•      Motion to Compel Answers by MWK Recruiting, Inc., et al. to Interrogatories 23-24, and to Compel Production of Documents and Inspection of Tangible Things Responsive to Requests 151-160 (Dkt. 207);

•      Motion to Compel Production of Documents Responsive to Request 161 and Subpoena to Renee Sommers (Dkt. 208);

•      Motion for Sanctions Resulting from Recruiting Partners GP, Inc.'s Failure to Appear at its Deposition (Dkt. 214); and

•      Motion for Sanctions Resulting from Recruiting Partners GP, Inc.'s [sic] Failure to Appear at its Deposition (Dkt. 226).

Also before the Court is MWK's Motion to Quash Subpoenas and for Protective Order (Dkt. 217) and its Expedited Motion for Protective Order (Dkt. 225). All of these motions have been referred to the undersigned for resolution, pursuant to 28 U.S.C. § 636(b)(1)(A), FED. R. CIV. P. 72, and Rule 1(c) of Appendix C of the Local Rules.

## I. Introduction

*"It's like deja vu all over again."*[1]

To say that this case is trouble is like saying 2020 has been "difficult."  The undersigned had hoped his comments at the May 1, 2020 hearing had served notice to the parties, and particularly to Mr. Jowers, that the Court would not tolerate the scorched earth discovery tactics that had been deployed up to that point.  Indeed, most lawyers and counsel would have tread very lightly after hearing statements such as:

> I'm disappointed by the fact that this case seems to be much more about the parties . . . spending more time fighting about process as opposed to what the actual facts of this dispute are about, wasting a lot of time and money.  And, you know, if you want to waste your client's time and money that's fine, but I'm not going to let you waste the court's time on this case.

> This a shot across both sides' bows—make sure you understand that.  My intention is to, as I said, let's focus on what the actual facts are, and let's not spend all of this time fighting about procedural games.

> . . . I don't know how the Northern District Rule or the Eastern District, but the Western District Rule says that you are to confer before a motion, not about whether it's opposed or not, but to try to actually have a good faith conference to see if you can work these things out by agreement. . . .  I take that to heart as you can hear and tell, and I want you all to do the same as well in the case.

Audio transcript of Status Conference; May 1, 2020.

A prudent party hearing all of this would, as recommended, take these comments to heart, and ensure their attorney followed these admonitions.  That is not what Evan Jowers did.  Instead, shortly after this status conference, his lead counsel—DLA Piper—filed a motion to withdraw, stating that the firm "and Mr. Jowers are unable to reach agreement with respect to the continued

---

[1] This quotation is most commonly attributed to Yogi Berra, though there is considerable doubt regarding that attribution. *See, e.g.,* https://quoteinvestigator.com/2013/10/08/deja-vu-again/ (last visited December 10, 2020).

development of this matter." Dkt. 175 at 2.  Taking over as lead counsel after this withdrawal was Robert Tauler.[2]  Within three weeks of taking the lead, Mr. Tauler filed the first of his eight discovery motions.  In the next two weeks, he filed his second and third motions.  This pattern has continued, with the filing of five additional motions over the ensuing two months.  And there is a singularly common feature among the motions—each and every one of them would have been unnecessary if Mr. Tauler had made a reasonable, good faith effort to address the issues with opposing counsel, and if he had acted professionally, as he is obligated to do by this Court's rules, as well as by the rules of the Bars of the States of California and Texas.  One such motion is enough to raise a judge's ire; eight of them pretty much guarantees there will be consequences.

## II.  Background

Jowers' motions fall broadly into three categories.  Two of them deal with whether Robert Kinney, who is both a party and counsel, may have access to documents that Jowers has designated as "attorney's eyes only" under the protective order in this case, and relatedly, whether Jowers' designation of several thousand pages of documents as "AEO" was appropriate.  Two of them deal with whether counter-defendants Recruiting Partners, GP, Inc. and affiliates, as well as MWK, should be sanctioned for not appearing at depositions.  The remaining four motions are all motions to compel and address a host of  issues.

## III.  AEO Documents

After being compelled by the Court to do so, in late May 2020 Jowers produced 2,013 documents (containing 16,089 pages), and designated 651 of them (containing 5,915 pages) as AEO.

---

[2] Mr. Tauler appeared in the case on April 24, 2020, and was granted leave to proceed in this district *pro hac vice* on May 8, 2020. He became lead counsel on June 4, 2020, when DLA Piper withdrew.

Prior to the production, and while DLA Piper was still lead counsel, the parties had several discussions regarding whether Kinney should have access to AEO documents.  In a May 14, 2020 email, Jowers's counsel suggested that the parties create an additional designation category that would apply to a limited "subset" of AEO documents that would not be viewable by Kinney, leaving a larger portion of the AEO documents not so restricted. Dkt. 182-1 at 23-24.  The email included a proposed draft of the revised protective order.  *Id.* at 26-37.  MWK responded on May 20, 2020, with an alternative proposal, which it made "[e]ven though we do not think it is necessary," but because "we would like to avoid the burden on the Court of a motion about this issue because we should be able to work out a mutually satisfactory agreement that gets Jowers a fair result and is not unduly prejudicial to MWK." Dkt. 182-1 at 41.  MWK added that it had "worked hard to think this through, so please give it due thought and, if you believe this generally works, provide us a new draft of the amended protective order accomplishing these objectives and we will review. Otherwise, please let us know what concerns you have that this proposal does not appear to you to address." *Id.*  Mr. Tauler was copied on all of these emails.  There was no response from Jowers, but between May 27 and June 1, 2020, Jowers produced the 2,013 documents (with 651 of them designated AEO), and then on June 3, 2020, DLA Piper withdrew as counsel.

Shortly thereafter, Kinney emailed Jowers' new lead counsel to ask about documents that appeared to be missing from the production, and Mr. Tauler responded that "I think some of the gaps you describe result from the fact that some documents were marked 'Attorney's Eyes Only' meaning that you are unable to view them as a party to the lawsuit and a direct competitor of Defendant. I am happy to set up a meet and confer with Ray or your other counsel to discuss this further, but obviously we can't share these documents with you." *Id.* at 46.  No mention was made of the prior

4

discussions about Kinney's access to AEO documents, or of the proposal MWK had made on May 20, 2020.  After an exchange of additional emails arguing about whether Kinney was already entitled to review the documents under the existing protective order as a "retained attorney" (his starting position when MWK and DLA Piper discussed the issue), Mr. Tauler indicated that he would send a "meet and confer" letter and the parties could discuss matters further thereafter.  Far from being a "meet and confer" letter, it instead accused Kinney of violating the protective order by viewing AEO documents and demanded that MWK's non-party attorneys catalog every AEO document Kinney had seen, and stipulate that no additional AEO materials would be shared with Kinney.  *Id.* at 48-49.  He further threatened that "depending on the number and importance of the designated 'Attorney's Eyes Only' documents that we may learn Robert Kinney has already have [sic] seen, further relief may be necessary. This could include monetary or other sanctions for contempt of the Order."  *Id.* at 49.

It being apparent that Mr. Tauler was unwilling to discuss an out-of-court resolution of the issue, MWK took two actions.  First, it challenged all of the AEO designations as inappropriate, noting that they involved dated material, including public records, that could not possibly be competitively sensitive.  *Id.* at 50.  Second, it designated Robert Kinney as a "Qualified Person" to receive AEO documents under the protective order.  *Id.* at 51.[3]  This then led to Jowers filing the two motions at issue in this section.  It seems likely that, but for the second dispute, the first issue would not have been raised.  That is, if Jowers had not insisted that Kinney was categorically prohibited from reviewing *any* AEO documents, MWK would not have felt the need to contest the validity of

---

[3] Because it need not do so, the Court makes no finding regarding whether this was a permitted means by which Kinney could gain access to the AEO materials.

all of Jowers' AEO designations.  Instead, if Mr. Tauler had picked up with the negotiations on this issue where DLA Piper left them off, it is likely the matter would have been resolved.  In short, Mr. Tauler's repudiation of DLA Piper's position resulted in these two motions, when there was a reasonable middle ground the parties could have, and should have, reached.

If this were a patent suit, and Kinney and Jowers were the principals of rival chip manufacturers, these would be serious issues, deserving of a careful review and analysis. But this *isn't* a patent suit, and Kinney and Jowers are *not* the principals of competing chip manufacturers—they're the principals of *attorney recruiting firms* and the material at issue is, at best, marginally sensitive and is three years old.  Given all of this, there is simply no good reason any court should have to delve into precisely how much of the material Kinney should be permitted to see.  Instead, this is the very sort of issue attorneys working in good faith should work out.

This is even more so the case given that Jowers has wholly failed to provide any colorable argument to support the claim that his designation of records as AEO is appropriate.  The Protective Order provides that once a party challenges in writing the designation of documents as classified under the order, the designating party has 14 days to make a motion to preserve the designated status. Dkt. 70 at 7.  As noted, MWK challenged all of Jowers' AEO designations, which led to Jowers filing the second of the two motions at issue here.  Dkt. 181. Jowers' motion, however, offers no evidence to support his designation of records as AEO.  Instead, it complains that MWK's blanket challenge of the designations was improper, and states that the motion was filed "[s]olely to avoid forfeiting the protections afforded by the" Protective Order.  The closest it comes to offering support for the designations is to "request[ ] permission to lodge copies of them for review *in camera*."  *Id.* at 2.  While an *in camera* review of documents might be theoretically proper when a dispute over

6

confidentially designations exists, the situation here is far from having reached the point at which that significant an imposition on the Court's limited time is justified.[4]

Jowers' lack of evidence is particularly problematic given that the sole premise of the motion challenging Kinney's right to see AEO material is because Jowers is in competition with MWK and allowing Kinney to have access to those materials will cause Jowers competitive harm. But as Kinney has repeatedly pointed out to Jowers out of court, and as he repeats in his pleadings, it is a mystery how Kinney could use information related to Jowers' clients from 2016-17—the period at issue for all of these documents—to harm Jowers competitively. In all of the briefing on this topic, Jowers offers only two potential justifications for the AEO designations. First, he asserts that attorney placement candidates wish to keep their identities private. Dkt. 188 at 4. And second, he contends that emails sent between Jowers and law firms he placed candidates with amount to "'non-public financial information, pricing information, [and] customer identification data' – that is believed to be unknown to" MWK and thus falls within the definition of "Attorney's Eyes Only" records under ¶ 3(c) of the Protective Order. *Id.* at 4-5. Neither of these justifications has merit. Placement candidates' identities can be protected with a simple "confidential" designation. And Jowers' conclusory claim that the contents of emails between Jowers and law firms constitute "non-public financial information" or "pricing information" does not amount to evidence. More to the point, even if the Court assumes that the information was sensitive at the time of the communications, Jowers completely fails to explain why that information continues to be competitively sensitive three years later.

---

[4] According to the briefing, the documents Jowers claims to be AEO total just under 6,000 pages.

Thus, having reviewed the materials before it, the Court **DENIES** the Motion for Entry of Confidentiality and Protective Order (to enforce Dkt. 70) (Dkt. 180) and the Motion to Resolve Disputed Confidentiality Designations (Dkt. 181).  Further, the Court **ORDERS** the following:

- No later than **January 5, 2021,** the parties shall submit an agreed motion to modify the Protective Order to add a third designation category (in addition to "confidential" and "AEO") entitled Non-Party Counsel Only, applicable to records which **presently** would cause Jowers competitive injury if known to MWK or its affiliates;

- Jowers shall review and re-classify all documents currently designated as "AEO" as either "Confidential," "AEO," or "Non-Party Counsel Only," consistent with the direction provided in this order;

- Kinney may have access to records designated as "Confidential" or "AEO;" and

- Any failure by Jowers to make classifications in good faith, consistent with the admonitions of this order, shall result in sanctions.

### IV.  Motions to Compel

Mr. Tauler has filed four motions to compel as well.  None of them have merit.

In the first motion (Dkt. 184), Jowers seeks supplemental answers to Interrogatories 1-5, 7-9, 11, 14, and 18-22.  MWK informed Jowers that it would supplement the responses within 30 days, but Jowers insisted that the supplementation take place within 7 days, and as soon as those 7 days passed, he filed the motion.  In his reply, Jowers also complains that the supplemental responses are not verified.  He further requests the award of fees, arguing that MWK only supplemented the responses because he filed the motion.[5]  This is the very sort of petty dispute the Court was referring to at the May 1, 2020 status conference, and certainly was not worthy of a motion to compel, much less a request for fees.  Indeed, the contention that MWK only supplemented its responses because

---

[5] The motion also contended that MWK had failed to produce financial records requested by Interrogatories 2, 18, and 22, related to Jowers' RICO and fraud counterclaims.  On December 8, 2020, Judge Pitman dismissed these counterclaims (Dkt. 229), rendering this dispute moot.

Jowers filed the motion to compel is wrong.  Before he ever filed the motion, MWK told Jowers it would supplement the responses, but that it would do so in 30 days, not 7.  The only thing the motion accomplished was to accelerate slightly MWK's responses. And Jowers fails to explain why there was such urgency in the supplements that it justified the filing of a motion to compel.[6]

Jowers' second motion to compel (Dkt. 199) addresses nearly 70 separate discovery requests and complains that MWK's responses to the requests are insufficient.  Though the motion identifies the 69 requests and seeks an order compelling further responses to them, very little of Jowers' briefing actually discusses in any detail specifically what the problems are.  The motion contains headings such as "Production Should Be Compelled, Despite the Promise of a Voluntary Future 'Rolling' Production," and "Production Should Be Compelled, Despite the Statement of Counsel that 'We are unaware of any relevant, responsive documents that have not been produced.'"  Dkt. 214 at 10-11.  In fact, both a promise of future voluntary rolling production and counsel's statement that he is unaware of responsive documents that have not been produced are very good reasons why production need *not* be compelled.

The only issue raised in the second motion that may actually need addressing relates to MWK's privilege log.  It is far from clear what the status of that log is.  From what has been filed, it appears that MWK has served a log on Jowers, but the log is blank.  *See* Dkt. 205-1 at 5.  The document accompanying the log states:

---

[6] This motion, as well as some of the others, complain that certain responses or supplemental responses were not properly verified.  It is not clear from the mountain of briefing on the four motions to compel whether this remains a live issue. To the extent it does, the Court directs MWK to correct this, and no later than **January 5, 2021**, submit proper verifications of all discovery responses it has served.

> This privilege log includes privileged documents created prior to the date that the lawsuit was originally filed, March 27, 2017, which have been withheld based on privilege. This privilege log does not include any communications between counsel or between the MWK Entities and counsel since the time the lawsuit was filed. Failure to include any such communications is not intended to waive any applicable privilege related to such documents.

*Id.* at 4. Because the log itself is blank, it appears that this means that MWK is not withholding any responsive documents that pre-date the lawsuit on the basis of privilege. It further appears from the explanatory statement that there may be "communications between counsel or between MWK Entities and counsel" after March 27, 2017, that are potentially responsive to an RFP but that are being withheld on the basis of privilege. The Court speculates that this latter group has not been logged because communications between counsel and MWK Entities that took place after the lawsuit was filed are almost certainly work product and may also be attorney client privileged, and likely also are not within the scope of production, all of which would make logging such documents unwarranted. Accordingly, the Court **ORDERS** MWK to clarify this issue in a communication to Jowers no later than January 5, 2021. If a dispute remains thereafter that the parties are unable to resolve after good faith discussions, they can bring it to the Court for resolution.

Jowers' third motion to compel (Dkt. 207), broadly speaking, covers two topics—the factual support for MWK's damage claims, and documents relating to the various assignments MWK and affiliates have executed assigning Jowers' employment contract from the original employer (Kinney Recruiting, LP) to MWK. On the issue of damages, Jowers complains that MWK has failed to "provide straight answers to interrogatories concerning its various claims for damages." *Id.* at 4. The Court disagrees. As MWK notes:

> the MWK Entities have responded to Jowers's demand with the material information in their possession and have continued to supplement their responses. With regard

> to the loans, as Jowers admits in the present Motion, the MWK Entities produced "305 documents marked MWK-164369 to MWK-164673, spanning 719 pages of .PDF documentation plus three Excel spreadsheets in their native .XLS and .XLSX file formats." Motion, at 11. . . . Creating the Accounting required a painstaking review of documents and information that had already been produced to Jowers, as well as entry of that information in summary form into a spreadsheet.

Dkt. 209 at 4-5.  Concerning the damages alleged to have flowed from Jowers' breach of his employment agreement and theft of trade secrets, MWK's response to the relevant interrogatory stated:

> the MWK Entities will provide damages calculations based on information currently available. Based on a review of evidence available as of this date from Jowers, third parties and the MKW Entities' own files, the MWK Entities have compiled a spreadsheet reflecting placement candidates and fees related to those candidates' placements, which fees constitute a portion of the damages sought by MWK Recruiting, Inc. The spreadsheet will require revision as discovery proceeds.

Dkt. 207-5 at 8.  The spreadsheet was attached.  And as MWK's response brief notes, it continues to learn information relevant to this component of its damages, since "Jowers still controls what information is known to the MWK entities regarding his misdeeds."  Dkt. 209 at 6.  MWK's responses on the issue of damages have been adequate.

Concerning the assignment of Jowers' employment agreement, Jowers has sent a number of discovery requests aimed at trying to challenge the validity or timing of the alleged assignments. Based on what appears to be little more than speculation, Jowers surmises that the assignments may have been executed solely for purposes of litigation.  Thus, despite already having received electronic copies of the assignment agreements, he now seeks to compel MWK to produce the paper originals for inspection, and also requests MWK to produce "all electronic media that contain digital copies" of the agreements, for forensic examination. Finally, he has lodged a number of requests

regarding document retention—characterized by MWK as "discovery on discovery"—and complains that MWK's responses are inadequate.

With regard to originals of the assignment agreements, MWK's responses state that "[t]o the extent that Jowers seeks physically signed (wet ink) versions of documents which the MWK Entities scanned for their records and produced as scanned, the Request seeks irrelevant information." *See, e.g.,* Dkt. 207-10 at 8.  Jowers complains that this response is inadequate, as it fails to make the originals available for review and inspection.  It is not at all clear that there is any basis for an inspection of the originals of the assignments, as Jowers presents no evidence that the scanned copies already produced are not authentic copies of the originals.  But MWK's response does not make clear whether the paper originals of the documents still exist, and what burden, if any, it would incur to produce those.  Because there is a marginal relevance to the request, the Court **ORDERS** that no later than January 5, 2021, MWK shall supplement its response to the various RFPs seeking originals of the assignments to state whether those originals still exist.  If they do, then MWK shall either make the originals available for inspection at its primary business location in Austin, Texas, or seek a protective order if it contends that searching for and locating the originals would present an undue burden.

Jowers' request for electronic media containing digital copies of the assignments goes too far.  Jowers offers absolutely no evidence that anything would be gained from a forensic examination of media containing PDF copies of the assignments and he offers no factual support to show that it would.  MWK's response to this issue when raised by Mr. Tauler was more than sufficient:

> There are no electronic copies of the assignments other than scans we made of the documents in order to prepare exhibits and pleadings in this case. . . . We have already produced these electronic copies to James Bookhout (Jowers' prior

counsel). . . . Because there are no other electronic copies of the document, there is nothing to produce or inspect with respect to these RFPs.

Dkt. 207-13 at 3.  The same is the case with regard to the discovery requests aimed at seeking "all facts" regarding MWK's search for relevant documents.[7]  MWK's response was:

The MWK Entities . . . respond that they searched and retained all email that was present on their email accounts and also searched and retained electronically stored documents, including PDF's, excel files, photos, etc., that might be relevant to this lawsuit. No information that was relevant to this lawsuit was discarded or destroyed.

Dkt. 207-11 at 5.  There being a wholesale lack of any evidence that would justify requiring any further answer than this, Jowers' motion to compel on this point is baseless.

Jowers' fourth motion to compel (Dkt. 208) is focused on a subpoena he served on MWK's bookkeeper, Renee Sommers, and on a single request for production seeking MWK's "complete employment files, all personnel records and any human resources Documents that Concern Evan Jowers."  The motion and reply are a prime example of how far beyond the pale Mr. Tauler has gone in his abuse of discovery in this case.  Jowers served a subpoena on Sommers seeking 23 categories of records that duplicate records he has already requested and received from MWK.  Sommers, represented by Kinney, responded to the subpoena with objections, and by stating that she does not have personal possession of any of the requested documents.  Jowers contests this, and argues that, as the MWK bookkeeper she has access to some or all of the records, and should therefore be compelled to produce them.  He completely fails to explain, however, what point would be served by Sommers re-producing the very same records MWK has already produced in this case, or why

---

[7] The interrogatory asked MWK to "State All Facts Concerning any steps taken by You to identify and preserve evidence (or to discard or destroy evidence) that may be relevant to this action, including (but not limited to) electronically stored information."  Dkt. 207 at 8.  A parallel request for production sought "all Documents that Concern" the same topic.  *Id.*

he should be permitted to duplicate discovery already provided by MWK by subpoenaing the same documents from one its employees or contractors.  Jowers' reply goes on for pages with pure speculation and conspiracy-theorizing to argue that he should be permitted to essentially "audit" MWK's production by subpoenaing Sommers and requiring her to produce the same categories of documents he requested from MWK, so he can see if MWK produced all responsive records. This is abusive, and unwarranted.

With regard to the request for production of all of Jowers' employment records, the sole basis for the motion to compel is Jowers' complaint that MWK's email statements that it has already produced all of those records in response to prior RFPs is not a proper response under the Federal Rules.  MWK has stated clearly, in several emails, that all documents responsive to RFP 161 were produced in response to a number of previously-served RFPs.  Dkt. 208-6.  Jowers does not dispute this, but instead complains only that this response does not comply with Rule 34, as it is not a "formal" response that is verified.  On this minor point, Jowers is correct, though it surely did not warrant a motion to compel.  Regardless, MWK shall serve a formal, sworn response to RFP 161 no later than **January 5, 2021.**

In sum, all four of the motions to compel (Dkts. 184, 199, 207 & 208) are **DENIED**, except as to the minor points set out above.

## V.  Sanctions Motions

Jowers' final two discovery motions seek sanctions as a result of witnesses' failure to appear for the 30(b)(6) depositions of Recruiting Partners, GP, Inc. and Counsel Unlimited, LLC, respectively.  Dkts. 214, 226.  In both instances, the depositions were scheduled by Jowers unilaterally, after being told that the proposed dates were unavailable or that a witness would not be

there.  At bottom, the dispute revolves around the fact that there are five MWK entities that are parties to the case—MWK (the plaintiff), as well as Counsel Unlimited LLC,  Kinney Recruiting LLC, Kinney Recruiting Limited, and Recruiting Partners GP, Inc. (all of whom Jowers sued in his counterclaim).  Tauler has informed MWK that, in addition to deposing Kinney individually, he also intends to take a deposition of each entity, for which Kinney will be the corporate representative. Based on this, Tauler has unabashedly insisted that he is entitled to take six depositions, each seven hours in length.  With no hint of shame, Tauler recounts that when the topic of the depositions was discussed, Kinney "requested an agreement by Jowers to limit the number of those depositions—by combining and consolidating them—so that, Kinney would not need to be deposed for a separate, seven-hourslong day for each of the five named entities. Jowers's counsel told him . . . that no such agreement would be acceptable."  Dkt. 214 at 5.

Despite MWK's pointing out the absurdity of Tauler's position that he should be permitted to take 42 hours of testimony from Kinney, he refused to reach any agreement on the issue, and instead unilaterally began scheduling and noticing the depositions.  When MWK made it clear that it would not agree to appear until some limit on the total deposition times was agreed to, Jowers set the deposition of Recruiting Partners GP, and Tauler stated that if no one appeared he would seek sanctions.  This led to the first Motion for Sanctions  (Dkt. 214).  He then repeated the same process with the deposition of Counsel Unlimited, this time threatening to seek "case terminating" sanctions if a witness was not made available.  MWK then filed a motion for protective order, asking the Court to resolve the issue.  Shortly thereafter Jowers filed the second Motion for Sanctions (Dkt. 226).

This District's Local Rules contain an appendix that governs the conduct of attorneys practicing before it.  Local Rule AT-4 and AT-5.  The very first of these rules states that "[b]efore

noticing or scheduling a deposition . . . a lawyer should consult and work with opposing counsel to accommodate the needs and reasonable requests of all witnesses and participating lawyers." Local Rule AT-4(a). Setting a deposition that counsel knows will not be attended, and then seeking sanctions for the lack of attendance is the definition of harassing one's opponent through discovery. Had MWK simply refused to appear for no reason, there might have been some purpose in setting a deposition. But when there was an articulated—and reasonable—basis for the refusal, it was incumbent on Tauler to seek a resolution of that issue through agreement or motion before moving forward. Needless to say, requesting sanctions of any kind in these circumstances is baseless; seeking case terminating sanctions, is absurd. Both Motions for Sanctions (Dkts. 214 & 226) are **DENIED**.

### VI. Motions for Protective Order

MWK has filed two motions for protective order. Dkts. 217 & 225. The first addresses two issues: (1) Jowers' subpoenaing of the providers of MWK's cloud-based document storage, seeking to have them produce to Jowers emails and other documents from MWK's storage accounts; and (2) Jowers' unilateral setting of the Counsel Unlimited deposition, already discussed above. Despite MWK advising Jowers' counsel that the subpoenas are prohibited by statute, he refused to withdraw them. His only response to the motion seeking to quash the subpoenas is the laughable claim that the Court should not consider it because MWK failed to properly confer before filing the motion. The subpoenas are improper. The Court will **GRANT** the motion to quash, the subpoenas addressed to Bluehost, Inc., Google North America, Inc., Dropbox, Inc., and The Endurance International Group, Inc. are **QUASHED,** and the providers to whom they were directed shall not produce any documents in response. Further, given that the date noticed for the deposition of Counsel Unlimited has passed,

16

the motion for protective order on this issue is **MOOT.** Thus, MWK's Motion to Quash Subpoenas and for Protective Order (Dkt. 217) is **GRANTED IN PART** and **DENIED IN PART AS MOOT**.

The second motion for protective order (Dkt. 225) was filed as a result of Jowers noticing yet another corporate deposition, this time of Kinney Recruiting LLC, without consultation, and on the very same date as a deposition of a third party was scheduled. Once again, the date for that deposition has passed, and it would appear that the issue is now moot. There is, however, the unresolved issue presented by Jowers' insistence that he is entitled to take 42 hours of depositions related to Kinney and the five MWK Entities. Based on the material before it, and Court **ORDERS** that the deposition of Robert Kinney individually shall be limited to seven hours as provided by Rule 30(d)(1), and the combined deposition of Kinney as the corporate representative of the five MWK entities shall be limited to a total of seven hours as provided by Rule 30(d)(1), and must otherwise be in full compliance with Rule 30(b)(6). Further, no deposition may be set without an agreement by all parties on the date, and all parties must cooperate in good faith in setting dates for depositions, including providing a reasonable number of date options, and doing so reasonably promptly, and in the reasonably near future. Failure to do so will result in sanctions. In sum, the Expedited Motion for Protective Order (Dkt. 225) is **GRANTED** as set forth above.

## VII. Tauler's Pro Hac Vice Status

It is apparent that both Mr. Jowers and his attorney have adopted an approach to this case intended to cause as much expense and burden on the MWK parties as possible, despite the Court warning them that such an approach will not be permitted, and will come at a cost. Mr. Tauler is not licensed to practice in the Western District of Texas, and was permitted to appear in this matter *pro hac vice* based on the fact that his co-counsel at the time (attorneys from DLA Piper) were licensed

17

in the Western District.  As noted, DLA Piper has since withdrawn as a result of a disagreement with Jowers "with respect to the continued development of this matter."  Dkt. 175.  Given Tauler's demonstrated lack of respect for this District's local rules, and Jowers' apparent complicity in the cynical, unprofessional approach to this litigation, the Court **ORDERS** that, for Tauler to maintain his ability to appear in this case, no later than **January 5, 2020**, an attorney licensed to practice in this District and resident in the Austin Division of the Court must appear as counsel for Jowers.

### VIII.  Prohibition on Discovery Motions

Given the abuses detailed above, the parties are **PROHIBITED** from filing any discovery motion, including motions to compel, for protective order, or for sanctions for discovery conduct, without leave of court.  In the event the parties have a dispute they must first attempt to resolve the dispute through ***good faith*** negotiations.  In the event they are unable to do so, the aggrieved party shall contact the Court's staff by email to Ka_Kin_Cheng@txwd.uscourts.gov, with a copy to all counsel, notifying the Court of the dispute, and providing a brief, non-argumentative description of the dispute.  The Court will thereafter schedule a status conference to discuss the issue, and, if it is warranted, the Court will permit the filing of motions on the issue thereafter.

### IX.  Order to Show Cause

The conduct by Mr. Jowers and Mr. Tauler evidenced in the ten motions addressed here is deplorable.  It is the essence of what makes the public have low regard for lawyers.  It is petty, and unprofessional.  And, most importantly, it has diverted the scarce judicial resources of this Court from disputes far more deserving of the Court's time.  In May, Jowers and Tauler were warned that there would be consequences for continuing the conduct the Court was already seeing at that point. Rather than correcting things, they both doubled down and increased their abusive approach to this

case.  Accordingly, no later than **January 5, 2021**, both Jowers and Tauler shall file a written brief showing cause why they should not both be sanctioned for the costs they have caused the Plaintiff and Counter-Defendants to incur to respond to the baseless motions disposed of here.  Such sanctions are arguably appropriate under Rule 37(a)(5) and under the Court's inherent power.

SIGNED this 18th day of December, 2020.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE