IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| *MWK RECRUITING, INC.*<br>          **Plaintiff,**<br>      v.<br>**EVAN P. JOWERS, YULIYA**<br>**VINOKUROVA, ALEJANDRO VARGAS,**<br>**and LEGIS VENTURES (HK) COMPANY**<br>**LIMITED (aka Jowers / Vargas),**<br>          **Defendants.** | **Civil Action No. 1:18-cv-00444** |
| **EVAN P. JOWERS**<br><br>          **Counterclaimant,**<br><br>      v.<br><br>**MWK RECRUITING, INC., ROBERT E.**<br>**KINNEY, MICHELLE W. KINNEY,**<br>**RECRUITING PARTNERS GP, INC.,**<br>**KINNEY RECRUITING LLC, COUNSEL**<br>**UNLIMITED LLC, and KINNEY**<br>**RECRUITING LIMITED**<br><br>          **Counter-defendants.** | |

**BRIEF OF ROBERT TAULER SHOWING CAUSE WHY SANCTIONS SHOULD NOT
ISSUE UNDER FRCP 37(A)(5) AND THE COURT'S INHERENT POWER
<u>IN RESPONSE TO COURT ORDER (DKT #236)</u>**

This brief is submitted by counsel for Evan Jowers pursuant to the Court's Order to Show Cause (Dkt. 236) stating: "Both Jowers and Tauler shall file a written brief showing cause why they should not both be sanctioned for the costs they have caused the Plaintiff and Counter-Defendants to incur to respond to the baseless motions disposed of here. Such sanctions are arguably appropriate under Rule 37(a)(5) and under the Court's inherent power."

## **INTRODUCTION**

At the outset, I would like to emphasize that I take the Court's rules and procedures with the utmost respect and gravity.  The following will detail why I do not believe that sanctions should be issued pursuant to the Order to Show Cause, primarily by providing important factual details concerning my association with this case, and steps I have undertaken to rectify the Court's perception that Jowers and his counsel are not treating the Court's rules and the Court's limited resources with the respect they deserve.

## **RELEVANT FACTUAL BACKGROUND**

The Court bases part of its December 18, 2020 discovery order on comments the Court made at a May 1, 2020 hearing that took place before I was counsel of record. I did not attend the hearing since my *pro hac vice* application was not granted until a week after the May 1 hearing, on May 8, 2020. (Dkt. 176.) The only thing I knew about the Court's warnings to predecessor counsel is what was reported in the media. In this regard, I was copied on an email exchange between Mr. Jowers and his prior counsel, DLA Piper, about the status of the hearing and requesting a transcript of the proceedings.  In the email exchange, (attached as Exhibit A with the clients' permission), DLA Piper informed Jowers and myself that there was no transcript available of the hearing. (Tauler Dec., Ex. A.)  As such, I have never seen any transcript of this hearing.

The proceedings on May 1, 2020 were in relation to a Motion for Protective Order filed by predecessor counsel on April 24, 2020 (Dkt. 165) regarding subpoenas the Kinney Entities[1] served on Legis Ventures.  The Court states in its Order that during the May 1, 2020 hearing it viewed Mr. Jowers' predecessor counsel as engaging in "scorched-earth tactics."  (Dkt. 236-2.)

I began my involvement in this case in an advisory capacity on or around March 2020. I explicitly urged predecessor counsel DLA Piper not to bring the discovery dispute that drew the Court's disdain at the May 1, 2020 hearing. On April 10, 2020 (two weeks before the motion for protective order was filed), I expressly urged predecessor counsel that "I don't think this subpoena is worth a discovery fight" and "I feel like time and energy should be laser focused on getting what we need from Kinney affiliates to win on MSJ, rather that obstructing his discovery efforts."  (Attached with the client's permission as Exhibit B.)

The Court also notes that, at the May 1, 2020 hearing, the Court implored counsel for both parties to "try to have a good faith conference to see if you can work things out by agreement." (Dkt. 236-2.) I was informed by DLA in the May 16, 2020 email (Exhibit A) that this should not be a concern as to discovery disputes that existed at that time. In fact, DLA informed me that "[i]f a motion to compel is needed, we will be in a much better position with the Court to file it given the back and forth with Kinney and having a written refusal to produce certain documents." (*Id.*) Thus, I was unaware that Mr. Jowers was inhibited from seeking Court intervention regarding discovery disputes in this action outside of the requirements of the local rules.

---

[1] The term Kinney Entities includes all parties in this case that are affiliated with Robert Kinney, including Counsel Holdings, Inc., MWK Recruiting, Inc., Recruiting Partners GP, Inc., Counsel Unlimited, LLC, Kinney Recruiting LLC, and Kinney Recruiting Limited.

While I provided some strategic input in the case as early as April, my office had no involvement in any of the document review, designations of documents under the protective order, or production of documents related until May 24, 2020, when I was informed by DLA Piper that it would be withdrawing from the case, and that I would (as a result of DLA Piper's decision) be taking over the responsibilities of finalizing the document production the day before production was due.

Thus, after the Court granted DLA Piper's request to withdraw on June 4, 2020 (Dkt. 176), I understood that the majority of discovery had to be completed in the remaining four months of discovery, including conducting all depositions before the discovery cut-off (which was then October 13, 2020).(Dkt. 157.)

Aside from the foregoing, I believe that I earnestly made every effort to follow the local rules of this Court, and I had no intention of abusing the discovery process, and certainly had no intention in "doubling down" on the conduct that led to the Court's criticism of DLA Piper at the May 1, 2020 hearing. At all times during this litigation, I carried out my role as a lawyer for my client, Evan Jowers, by zealously advancing the legitimate interests of Mr. Jowers. Each motion served the purpose to elicit relevant facts and evidence necessary for Mr. Jowers to defend against Plaintiffs' claims. Additionally, I did not file any of the motions at issue until after all reasonable efforts to resolve the dispute with opposing counsel were exhausted.

## LEGAL STANDARD

FRCP 37(a)(5)(A) states: If The Motion Is Granted (or Disclosure or Discovery Is Provided After Filing). If the motion is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney

advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:

(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;

(ii) the opposing party's nondisclosure, response, or objection was substantially justified; or

(iii) other circumstances make an award of expenses unjust.

(B) If the Motion Is Denied. If the motion is denied, the court may issue any protective order authorized under Rule 26(c) and must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees. But the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust.

(C) If the Motion Is Granted in Part and Denied in Part. If the motion is granted in part and denied in part, the court may issue any protective order authorized under Rule 26(c) and may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion. FRCP 37(a)(5).

Courts have recognized that "the threshold for the use of inherent power sanctions is high." *Chaves v. M/V Medina Star,* 47 F.3d 153, 156 (5th Cir. 1995). The Supreme Court has cautioned that "because of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers v. NASCO, Inc.,* 501 U.S. 32 at 44, 111 S. Ct. at 2132 (1991*); see also Natural Gas Pipeline Co. v. Energy Gathering, Inc.,* 2 F.3d 1397, 1406-07 (5th Cir.1993) (inherent powers must be exercised with restraint and discretion and only sparingly so). In order

to impose sanctions against an attorney under its inherent power, a court must make a specific finding that the attorney acted in "bad faith." *Chaves v. M/V Medina Star*, 47 F.3d 153, 156 (5th Cir. 1995); *In re Thalheim,* 853 F.2d 383, 389 (5th Cir.1988).

### I.        Jowers' Motion to Enforce Confidentiality and Protective Order (Dkt. 180)

Jowers filed a Motion to Enforce Confidentiality and Protective Order seeking limit Mr. Kinney's ability to view documents based on his prior conduct and his status as a competitor, party, and attorney. (Dkt. 180.) The Court denied the Motion and held that "Jowers has wholly failed to provide any colorable argument to support the claim that his designation of records as AEO is appropriate." (Dkt. 236, Order at 6.) The Court, however, ordered the parties to make efforts to modify the Protective Order to include a new category for documents designated as "Non-Party Counsel Only." (Dkt. 236, Order at 8.)

Additionally, an award of sanctions would be unjust because of the circumstances surrounding the relevant factual background concerning Jowers' Motion. Specifically, the fact that I was not counsel at the time the Court restricted discovery motions, and the fact that the numerous designations were not made by myself or my firm (predecessor counsel DLA Piper had made the designations prior to turning over the production).

Importantly, I was only informed that DLA Piper was seeking to withdraw as counsel the day before the Court ordered document production was due, leaving no choice but to produce documents as they were previously designated by DLA Piper. When DLA Piper handed over their designated documents to be produced in compliance with the Court order, the documents did not have a nonparty counsel designation, and my firm could not review for a second time and redesignate the 6,000 documents they marked as AEO. Given the circumstances, I do not believe that sanctions should be ordered for the designation of AEO materials.

In regards to the proposed Addendum to the Protective Order, the Court stated in its December 18 ruling "if Mr. Tauler had picked up with the negotiations on this issue where DLA Piper left them off, it is likely the matter would have been resolved." (Dkt. 236, Order at 6.)

In addition to the logistical issues discussed above, I memorialized why I believed that an Addendum would not adequately protect the clients' interests in an email to DLA on May 13, 2020 (reproduced here and attached as Exhibit C with the clients' permission):

> "I disagree completely with this approach.   I would tell him that Kinney (a competitor of Evan) should not be able to see any documents related to Jowers business.   Kinney will harass everybody on every email we give to them, which will damage Evan even more. …This issue is clear as day to me -- we should at least try it given the stakes."  (Tauler Decl., Exhibit C)

Thus, the argument I tried to advance is that materials related to Mr. Jowers' business should be shielded from Mr. Kinney because there is an extensive record of Mr. Kinney using materials obtained in this case to disparage Mr. Jowers to his clients by "attempting to embarrass Jowers and humiliate him." (Dkt. 180 at pg. 17)  As the Court is aware, there is a defamation case pending case against Mr. Kinney in Hong Kong that relates to Mr. Kinney's statements. (See, Dkt. 222). I believe that Mr. Jowers' business should be shielded from Mr. Kinney not because Mr. Jowers has trade secrets, but because there is an extensive record of Mr. Kinney using materials obtained in this case to disparage Mr. Jowers to law firms in order to disincentivize them to work with Jowers.  In this regard, the Hong Kong court has already found that Jowers has made a "prima facie" evidentiary showing that Mr. Kinney's prior comments were defamatory under Hong Kong law. (Dkt. 124-1 at ¶ 10 ("there is a strong prima facie case that [Jowers] has indeed been defamed by [Kinney and Kinney Recruiting HK].".).  As such, I believe that Mr. Kinney should not be able to access materials regarding Jowers ongoing business, since he is a plaintiff, counterclaim-defendant, lawyer, direct competitor, and counsel

of record, providing Mr. Kinney a unique platform to harm Mr. Jowers' business in various ways.

In this regard, the Kinney Entities have served seventeen subpoenas and thirteen deposition notices in this case, none of which the undersigned has attempted to quash or otherwise seek a protective order for – chiefly because of the protection already afforded by the Protective Order (Dkt. 70) and the then-pending motion regarding the designation of materials. This is significant for this Response to the Court's Order to Show Cause because it demonstrates that Jowers' has acted only in a manner that I deemed was strictly necessary and not to engage in cumulative motion practice.

Based on the foregoing, I believe that Jowers' motion regarding designation was not baseless, and was justified. Further, sanctions are not warranted given the factual circumstances aforementioned, and given the absence of acting in bad faith in filing this motion.

## II. Jowers' Motion to Resolve Disputed Confidentiality Designations (Dkt. 181)

Jowers filed this motion due to the fourteen-day time limit contained in the Protective Order in order for Jowers' to preserve his rights.[2] The motion was filed "[s]olely to avoid forfeiting the protections afforded by the Confidentiality and Protective Order." I filed the motion "[f]ollowing a telephone call with Kinney on June 18, 2020," and an email from Robert Kinney where he was inflexible as to the timing of the motion ("Under the Protective Order, you now have 14 days to move the court for an order preserving the designated status of these documents."). I made good faith efforts to resolve this issue outside of Court intervention, including speaking on the phone with opposing counsel. Based on Kinney's statement, however, I believe this Motion was necessary in order to protect my client Jowers' interests under the

---

[2] The Protective Order provides that "[f]ailure to move for an order shall constitute a termination of the status of such item as Classified Information." (See Dkt. 70, ¶ 11(a).)

Protective Order.  Accordingly, I believe that, this motion was substantially justified, and thus sanctions are not warranted.

### III.    Jowers' Motion to Compel Interrogatory Responses (Dkt. 184)

On July 9, 2020, Jowers' filed a Motion to Compel further responses to Interrogatories. (Dkt. 184.) The motion sought to compel interrogatory responses propounded on Kinney Entities by predecessor counsel on December 20, 2019, which were eight months overdue. Specifically, the Interrogatories requested Kinney to "specifically identify" the trade secrets at issue in this case. (Dkt. 184-6.) I filed this motion because Kinney Entities' responses remained unresolved. I was copied on meet-and confer efforts spanning from March 27, 2020 which continued after DLA Piper withdrew, continuing these efforts through July 2, 2020 (a total of over three months) before filing the motion.

The Court's Order does not address Jowers' arguments in support of its motion to compel supplemental responses to Interrogatories Nos. 3, 4, and 5, concerning Kinney Entities' failure to respond to requests concerning Kinney's claims against Jowers for misappropriation of trade secrets, including that the trade secrets allegedly at issue be specified.

I made the decision to file this motion because after eight months, and three months of meet and confer efforts, and only after my belief calcified that a motion was warranted. Further, I believed that the information sought was necessary for my client to properly defend against Kinney's claims for misappropriation of trade secrets claims. As such, sanctions should not be imposed because I did not act in bad faith in filing this motion.

Additionally, the Kinney Entities produced certain responsive discovery requested *after* Jowers filed this motion, which further demonstrates that this motion was not baseless, and thus does not warrant imposition of sanctions.

IV.     **Jowers' Motion to Compel Production of Documents (Dkt. 199)**

On September 1, 2020, Jowers filed a Motion to Compel Production of Documents. This motion sought to compel discovery demands served by predecessor counsel in December of 2019 (ten months prior). (Dkt. 199.) The motion also requested an order compelling Kinney Entities to provide a privilege log for documents they claimed were being withheld on that basis. Additionally, the motion sought a calculation of Kinney Entities' claimed damages.

The Court found that Kinney Entities' promise of future voluntary rolling production and statement that counsel is unaware of responsive documents are good reasons why production need not be compelled. (Dkt. 236 at 9.) However, given how much time had lapsed and the need for documents before depositions were to commence, I believe the motion was necessary.

Despite denying Jowers' motion, the Court ordered Kinney Entities to clarify the issue concerning Kinney Entities' production of a blank privilege log. (Dkt. 236 at 10.) Because the Court ordered Kinney Entities to take actions pursuant to Jowers' requests, this motion was not baseless. Additionally, the Kinney Entities produced certain responsive discovery requested *after* Jowers filed this motion, which further demonstrates that this motion was not baseless, and thus does not warrant imposition of sanctions. Based on the foregoing, I do not believe that sanctions are appropriate because the motion was substantially justified, and because I acted in good faith in filing the motion.

V.     **Jowers' Motion to Compel Answers to Interrogatories 23-24 and RFPs 151-160 (Dkt. 207)**

On October 8, 2020, Jowers filed a Motion to Compel Answers by MWK Recruiting, Inc., *et al.* to Interrogatories 23-24, and to Compel Production of Documents and Inspection of

Tangible Things Responsive to Requests 151-160. (Dkt. 207.) Despite denying the motion, the Court ordered Kinney Entities to perform certain requested relief sought in the motion.

Specifically, the Court ordered Kinney Entities to supplement RFPs regarding Kinney Entities' numerous assignments holding: "Because there is a marginal relevance to the request, the Court ORDERS that no later than January 5, 2021, MWK shall supplement its response to the various RFPs seeking originals of the assignments to state whether those originals still exist. If they do, then MWK shall either make the originals available for inspection at its primary business location in Austin, Texas, or seek a protective order if it contends that searching for and locating the originals would present an undue burden." (Dkt. 236 at 12.)

Additionally, the Kinney Entities produced certain responsive discovery requested *after* Jowers filed this motion, which further demonstrates that this motion was not baseless, and does not warrant imposition of sanctions.

Based on the foregoing, the motion was not baseless, and it was substantially justified. Further, sanctions should not be imposed because I did not act in bad faith in filing this motion.

## VI.    Jowers' Motion to Compel Documents Responsive to Subpoena of Renee Sommers (Dkt. 208)

On October 8, 2020, Jowers filed a Motion to Compel Production of Documents Responsive to Request No. 161 and Subpoena to Renee Sommers. (Dkt. 208.) The Court ordered the Kinney Entities to serve a formal response to RFP 161, (Dkt. 236 at 14.) The Court held, "[o]n this minor point, Jowers is correct, though it surely did not warrant a motion to compel. Regardless, MWK shall serve a formal, sworn response to RFP 161 no later than January 5, 2021." (Dkt. 236 at 14.) Since the Kinney never served formal responses to the Request for Production of Documents Responsive to Request No. 161, and since Jowers is entitled to this

relief, and because this relief was given, I do not believe that the motion was baseless, and I do not believe that sanctions are warranted. Additionally, I did not act in bad faith in filing this portion of the motion because I was following the Federal Rules of Civil Procedure, which require formal, sworn responses that are verified.

The latter part of this motion was in regards to a document subpoena to Renee Sommers. The Court states that this motion was "unwarranted" because the Court believed that Ms. Sommers, a third party and CPA, did not have any independent documents regarding the Kinney Entities that were not already produced. (Dkt. 236, Order at 13-14.)  There was, and is, reason to believe that Ms. Sommers' possesses non-duplicative documents – exclusively in her possession -- needed by Mr. Jowers to defend himself regarding Kinney's claims regarding unpaid loans.

At Ms. Sommers' deposition she testified that he has in her possession income statements, balance sheets and other QuickBooks records for the various Kinney Entities:

> Q.· · So aren't there documents that in case there were an audit that you were required to keep by law?
> A.· · I have access to everything that I would need through the DropBox.
> Q.· · Other than the DropBox there is no way you can find the documents to back up an audit of any of the Kinney entities?
> A.· · I just said I have a tax file.
> Q.· · So the tax files, you said it has tax returns; now you're saying that it has something else?
> MR. KINNEY:· Objection; form. Mischaracterizes her statement.
> Q.· · What else is in the tax file?
> A.· · Income statement, balance sheet.
> Q.· · And did you use -- you created those documents using QuickBooks, correct?
> A.· · Correct.
> Q.· · And that software is also on your home computer, correct?
> A.· · Yes.
> (Tauler Dec., Ex. D , Renee Sommers Deposition, 143:1-145:24.)

These records have never been produced by counsel. These records would contain information Jowers needs to determine the amount he allegedly owes (or does not owe) on the

loan claims brought by the Kinney Entities and in particular Counsel Unlimited (the entity that administered the 17% payday loan).

Ms. Sommers' testimony is contrary to the responses and objections which formed the basis of the motion, all of which contained the same form objections and iterating that as to all documents sought that she had no documents of her own ("THERE ARE NONE")(See, Dkt. 210-1.) Instead, Sommers' deposition confirmed that Sommers' did not even try to comply with the subpoena:

> Q.· · Is it true that you did not look through the QuickBooks file on your home
> computer in response to the deposition subpoena served on you?
> MR. KINNEY:· That mischaracterizes her prior testimony.
> MR. TAULER:· It's a question, Mr. Kinney. Please stop with the coaching.
> Q.· · You can answer.
> A.· · No, I did not look.
> (Tauler Dec., Ex. D, Renee Sommers Deposition, 20:9-17.)

As counsel for Jowers, I believed in good faith that filing a motion to compel Renee Sommers subpoenaed documents was necessary and justified because she was the only person in possession of certain financial information (according to Kinney's Amended Initial Disclosures, Dkt. 105-1 at 2-3), and because the missing financial information would evidence that there is no debt Jowers allegedly owes to the Kinney Entities under Counts V and VI of Kinney's Second Amended Complaint.

I did not seek duplicative documents that Kinney already produced, only relevant documents that had not been produced in discovery, including the very same balance sheets, income sheets and QuickBooks records that would establish a complete defense to Claims V & VI in Kinney's Second Amended Complaint.

As such, sanctions are not warranted for this portion of Jowers' motion because this part of the motion was substantially justified. Further, sanctions should not be imposed because I did

not act in bad faith in filing this motion.

**VII.   Jowers' Motion for Sanctions Regarding the Deposition of Recruiting Partners GP, Inc. (Dkt. 214)**

On October 27, 2020, Jowers filed a motion for sanctions resulting from Recruiting Partners GP, Inc.'s ("RPGP Inc.") failure to appear at its noticed deposition in September. (Dkt. 214.)

The Court denied this motion on the basis that "Tauler has unabashedly insisted that he is entitled to take six depositions, each seven hours in length." (Dkt. 236 at 15.)  This is not the case. At <u>no point</u> did the undersigned insist or demand or even request "six depositions, each seven hours in length." No such statements were ever made.  To the contrary, I insisted upon "efficient and effective" depositions consistent with the FRCP. (See Dkt. 214-3 at 2 ("As has always been our position, we intend to conduct depositions that are both efficient and effective in obtaining relevant discovery, within the limitations and under the standards of Rule 30(a).").) In doing so, I felt compelled to take the position that a general limitation would be improper until the depositions actually commenced, because I had no way of knowing how much time the depositions would take considering the number of claims, counterclaims, and affirmative defenses are at issue. I believed that departing from the default rules in the FRCP would be unwise without some indication as to whether the depositions would in fact move efficiently (none have occurred). As such, I acted in good faith because I acted in compliance and consistent with FRCP 30(b)(b).

Furthermore, I made good faith efforts to meet and confer regarding seeking the deposition of Recruiting Partners, GP, Inc. (See Jowers' attempts to meet and confer at Dkt. 214 at 12, Tauler Declaration ISO Motion for Sanctions re RPGP, ¶ 9, Ex. H.) The deposition of

Recruiting Partners, GP, Inc. was first noticed in August 2020.  At that time, Kinney refused to provide alternative dates or speak about the matter. Rather, Kinney insisted on his position starting in September 1, 2020. (See, e.g. Dkt. 214-3 at  2.) Kinney subsequently refused to agree to any deposition date, or even speak on the phone regarding a resolution. (Dkt. 214 at 11, Tauler Decl. ISO Motion for Sanctions re RPGP, ¶ 4, Ex. C.)

As such, I had no other option but to seek Court intervention which I had a good faith belief was permitted under Fed. R. Civ. P. 37(d)(2) which states that "[a] failure [to attend one's own deposition] is not excused on the ground that the discovery sought was objectionable, unless the party failing to act has a pending motion for a protective order under Rule 26(c)."). The Fifth Circuit has held that sanctions under Rule 37(d) are available where a designated Rule 30(b)(6) representative "is not knowledgeable about relevant facts, and the principal has failed to designate an available, knowledgeable, and readily identifiable witness," because under such circumstances, "the appearance is, for all practical purposes, no appearance at all." *Resolution Trust Corp. v. Southern Union Co.*, 985 F.2d 196, 197 (5th Cir. 1993). Similarly, the law of the 5th Circuit states that to excuse compliance, "a motion to quash must be not only made but granted before the scheduled deposition." *King v. Fidelity Nat'l Bank*, 712 F.2d 188, 191 (5th Cir. 1983). I followed the Federal Rules of Civil Procedure and 5th Circuit precedent in seeking to depose Kinney. As such, sanctions should not be ordered for filing this motion because it is not baseless. Further, sanctions should not be imposed because I did not act in bad faith in filing this motion (again, no deposition of any Kinney Entity has occurred).

### VIII.   Jowers' Motion to Compel Deposition of Counsel Unlimited LLC (Dkt. 226)

Counsel Unlimited LLC is a party in this case and is alleged by Kinney in his Second Amended Complaint to have provided payday loans to Jowers from 2012 until 2016. (Dkt. 80-5.)

I engaged in a good faith effort to meet and confer with Plaintiffs concerning the scheduling of Counsel Unlimited LLC's deposition. I began the meet and confer process months prior, but the Kinney Entities refused to agree to any date prior to November 2020. (Dkt. 226 at 2.) When November came, the Kinney Entities gave dates in December. I noticed a date that Kinney said he was available, however, Kinney did not appear for his deposition. Kinney did not file a protective order under FRCP 26(c) prior to the noticed deposition as required by FRCP 37(d)(2). (Dkt. 226 at 11-12.)

Because Kinney did not follow the Federal Rules of Civil Procedure, and because I engaged in several months of meet and confer correspondence with Plaintiffs to no avail, I made the decision to file this motion, based on 5th Circuit precedent, which provides that such relief is available when multiple duly noticed 30(b)(6) depositions do not go forward without cause. As such, sanctions should not be imposed because I did not act in bad faith in filing this motion.

Additionally, sanctions are not warranted since the Court ultimately ordered Kinney's depositions holding, "Court ORDERS that the deposition of Robert Kinney individually shall be limited to seven hours as provided by Rule 30(d)(1), and the combined deposition of Kinney as the corporate representative of the five MWK entities shall be limited to a total of seven hours as provided by Rule 30(d)(1), and must otherwise be in full compliance with Rule 30(b)(6)." (Dkt. 236 at 17.) Given the fact that the Court ruled on Jowers' motion and ordered Robert Kinney to appear at two seven-hour depositions (more than he sought), Jowers' position was not baseless.

**CONCLUSION**

For the foregoing reasons, I respectfully request the Court not impose sanctions upon myself, or my client, Evan Jowers.

Although not directly related to the Order to Show Cause, counsel would also like to inform the Court that since the Court's ruling, the undersigned has become a member of the Texas State Bar. I have provided Notice to the Court of the Status Change (Dkt. 244). Since my admission, I personally travelled to Austin, Texas to have the oath administered to me, and have also personally delivered copies of my Certificate of Good Standing from the Texas State Bar and Texas Supreme Court to the Western District of Texas so that they may update my pending admission to practice in this district.

I understand that these acts do not explicitly resolve the Court's directive that Mr. Jowers obtain counsel residing in this district already admitted to practice in the Western District of Texas, however, I ask that the Court take my admission to the Texas State Bar into consideration before depriving Mr. Jowers of his chosen counsel, for as Mr. Kinney himself successfully argued "[t]he right of the Kinney entities to be represented by their counsel of choice is paramount." (Dkt 105 at pg. 2). I believe that the same principles should be observed or both parties to this dispute.

DATED: January 5, 2021                              Respectfully submitted,


                                                   By:    /s/ Robert Tauler
                                                          Robert Tauler, Esq.
                                                          State Bar No. 241964 (California)
                                                          rtauler@taulersmith.com
                                                          **Tauler Smith LLP**
                                                          626 Wilshire Blvd., Suite 510
                                                          Los Angeles, CA 90017
                                                          Telephone: (213) 927-9270
                                                          Facsimile:  (310) 943-1455


                                                   **COUNSEL FOR DEFENDANT**
                                                   **AND COUNTERCLAIMANT**
                                                   **EVAN P. JOWERS**

## DECLARATION OF ROBERT TAULER

I, Robert Tauler, hereby declare as follows:

1.      I am counsel of record for Evan P. Jowers in this action.  I have personal knowledge of the facts stated in this declaration, and if called as a witness, could and would testify competently to the truth of the facts as stated herein.

2.      Attached hereto as Exhibit A is a true and correct copy of an email from James Bookhout to Evan P. Jowers, dated May 16, 2020, filed with the permission of Evan P. Jowers and without the waiver of attorney-client privilege.

3.      Attached hereto as Exhibit B is a true and correct copy of an email from myself to James Bookhout, dated April 10, 2020, filed with the permission of Evan P. Jowers and without the waiver of attorney-client privilege.

4.      Attached hereto as Exhibit C is a true and correct copy of emails between James Bookhout, Evan P. Jowers, and myself, dated May 13, 2020, filed with the permission of Evan P. Jowers and without the waiver of attorney-client privilege.

5.      Attached hereto as Exhibit D is a true and correct copy of pages 1-3, 20, 143-145 and 190 of the transcript of the deposition of Renee Sommers, dated November 9, 2020.


I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed at Los Angeles, California on January 5, 2021.

*/s/ Robert Tauler*
Robert Tauler

## **CERTIFICATE OF SERVICE**

I hereby certify that, on January 5, 2021, a true and accurate copy of the foregoing document was served on all counsel of record via the Court's CM/ECF system.


*/s/ Robert Tauler*
Robert Tauler