## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | |
|---|---|
| **MWK RECRUITING, INC.**<br>**Plaintiff,**<br><br>v.<br><br>**EVAN P. JOWERS, YULIYA**<br>**VINOKUROVA, ALEJANDRO VARGAS,**<br>**and LEGIS VENTURES (HK) COMPANY**<br>**LIMITED (aka Jowers / Vargas),**<br>**Defendants.** | **Civil Action No. 1:18-cv-00444** |
| **EVAN P. JOWERS**<br><br>**Counterclaimant,**<br><br>v.<br><br>**MWK RECRUITING, INC., ROBERT E.**<br>**KINNEY, MICHELLE W. KINNEY,**<br>**RECRUITING PARTNERS GP, INC.,**<br>**KINNEY RECRUITING LLC, COUNSEL**<br>**UNLIMITED LLC, and KINNEY**<br>**RECRUITING LIMITED**<br><br>**Counter-defendants.** | |

## BRIEF OF EVAN P. JOWERS SHOWING CAUSE WHY SANCTIONS SHOULD NOT ISSUE UNDER FRCP 37(A)(5) AND THE COURT'S INHERENT POWER IN RESPONSE TO COURT ORDER (DKT #236)

The undersigned has advised Mr. Jowers to obtain independent counsel for the purposes of preparing a response to the Court's Order to Show Cause, and has not reviewed Mr. Jowers' response prior to its submission.  However, counsel is submitting Mr. Jowers' brief at his request due to Mr. Jowers' unfamiliarity with filing procedures in this district.

DATED: January 5, 2021

Respectfully submitted,

By:    /s/ Robert Tauler
      Robert Tauler, Esq.
      State Bar No. 241964 (California)
      rtauler@taulersmith.com
      **Tauler Smith LLP**
      626 Wilshire Blvd., Suite 510
      Los Angeles, CA 90017
      Telephone: (213) 927-9270
      Facsimile:  (310) 943-1455

**COUNSEL FOR DEFENDANT**
**AND COUNTERCLAIMANT**
**EVAN P. JOWERS**

I.      INTRODUCTION

        Judge Austin, I will always only speak honestly to this court, and I will only speak when ordered or asked to by the court, whether that be in writing or verbally. It's only because of your memo order that I speak out at all. I have never been a party to a litigation before but in the rare cases I have been in a court room, or otherwise at a court hearing, I am a no-sir, yes-sir your honor type of guy, and I only break that decorum because you are ordering me to.

        I find your order that I personally write a memo to you, as to why I should not personally be given sanctions for my DLA and Tauler Smith attorneys filling discovery related motions on my behalf, as very unusual and your forces me to voluntarily give up my attorney client privileges in many respects. I am forced to reveal privileged communications in order to disprove the baseless assumptions and stories you spun about me and my relationship with my former DLA Piper attorneys in your ruling. It also forces a party in a litigation to write a memo directly to a judge regarding the party's perception of the on-going litigation and that doesn't sit right with me. In my strong opinion, a party to a litigation should never write any letters or memos to a judge presiding in their case, nor should parties in a litigation speak freely to judges. I understand your order that I do so to be extremely rare, almost unheard of, in the US court system. Several attorneys I spoke to about this strange memo request have agreed with me whole-heartedly. Some have strongly advised me not to write the memo no matter the consequences. One close friend who is a well respected senior litigator has begged me not to write any memos to you.

        I tried to avoid writing this memo and we objected to this part of your ruling to the District Court, but were denied today January 5, the same date my memo is due, so I will duly spend a day at my desk today writing directly to the magistrate judge in my litigation. I am putting about 10 hours into this exercise and I hope you respect that I am forgoing my business and family responsibilities during this time.

        The main reason I tried to avoid writing this memo is because I did not want to be forced to give my personal opinion as a party on your conduct as a magistrate judge in my

case. Honestly, I find your conduct to be alarming and I am very concerned about it, although I don't think your actions can prevent me from wining this litigation in a motion to dismiss on summary judgment. I do consider your recent ruling one of negligence on your part and where you are seeking media attention at my and any of my attorneys expense, as always.

Here I will write about my opinions and thoughts as a party to this litigation and not as a litigator or someone who has prepared any briefs or even read all the briefs in this litigation. I am writing in a free-style manner over one day, based on my memory of the advice giving to me by my DLA Piper and Tauler Smith attorneys and my other recollections about the litigation in general. I can say sincerely that I have never drafted a brief or even instructed or advised any of my attorneys on what motions they should file. I have followed the advice of all my attorneys, who I have the utmost respect for when they are giving me their expert legal advice. Any of my former DLA attorney our current Tauler Smith attorneys would tell you that I have taken a "hands off" approach and allowed them to do their work while I trust their expertise. I am too busy taking care of my family and leading a business through the COVID-19 crisis for me to spend much time on a litigation that is so frivolous and brought in bad faith that the outcome, my defense of all of Kinney's claims, has never been in doubt.

I did quickly glance through your recent ruling one time and I also noticed all of the sensational and derogatory language you provided against me in various legal industry magazines, and various friends, family and colleagues pointed me to your insults splashed in the legal media. It was too painful for me to take a second read of your ruling, to be honest, and since then I had to focus on my business and spending time traveling with family during the Christmas and New Year holidays we always enjoy.

I also have had to recently spend time during the holidays consoling and lifting the spirits of several former Kinney employees who have been substantially financially harmed by him, and abused in other ways, including credible allegations of sexual harassment by Robert Kinney. One of Kinney's former employees told me they were considering suicide just last week.

These former colleagues look to me for advice often, as I am a leader for them in many ways, and in the past few days I have been turned to for such counseling.

Thus, I haven't had many thoughts about your ruling during the holidays and did not work on the memo, other than to ask attorneys for advice on this rare type of assignment from a judge. I don't know if your ruling just before the holidays and memo assignment was designed to ruin my family holidays, but if so that effort fell flat.

For all the reasons given below, I strongly believe I should not be punished with sanctions, due to my former attorneys at DLA Piper and my current attorneys at Tauler Smith filing discovery related motions on my behalf.

II.     TAULER AND I WERE NOT AT YOUR MAY 1, 2020 HEARING, EVEN THOUGH YOUR ASSUMPTION OF OUR PRESENCE SERVES AS THE FOUNDATION OF YOUR RULING; NEITHER TAULER NOR ME WERE PROVIDED A TRANSCRIPT OR AUDO; AND WE BOTH AT THE TIME QUESTIONED MY DLA ATTORNEYS' EFFORTS TO QUASH THE SUBPOENAS AT ISSUE

Rob Tauler and I were not at your telephonic hearing in May []. Further, neither of us were ever provided transcripts or an audio recording, even though I asked my DLA attorneys for a transcript. See Exhibit 1. Here is part of my May 15 email to my DLA attorneys asking for a transcript:

*Last week I noticed the Texas Lawyer article below. Kinney continues to push a false narrative to my clients that I have not been cooperating in discovery and thus he has no choice but to seek docs from them, causing my clients to think I am creating problems for them through my "inaction" or "game playing" in discovery (as alleged by Kinney). The media play that happened with Judge Austin's rulings and hearing helped Kinney in this effort.*

*https://www.law.com/texaslawyer/2020/05/04/exasperated-texas-judge-warns-lawyers-in-recruiter-case-against-game-playing/*

*Do we have a transcript of the hearing?*

My DLA attorneys responded: "*Unfortunately, since the hearing to which you refer was before a magistrate judge, there wasn't a court reporter or transcript created.*" See Exhibit 2.

I wasn't invited to the May hearing and I wasn't aware at the time that I had a right to attend such hearings as a party to a litigation.This is my first ever litigation as a party, notwithstanding Kinney's including me as a plaintiff, without my knowledge, in Kinney's lawsuit against his first ever recruiter employee, Morgan Warren [Exhibit 3]. Further I have never been a litigator and haven't practiced law of any kind in many years.

I was in Singapore at the time of the May hearing, stuck in that country and city state's strict two month "Circuit Breaker" lockdown for Covid 19, but I would have surely attended by phone if I knew I had the right to do so.

You may be surprised, based on your ruling and baseless story telling about my relations with my former DLA attorneys, to find out that Tauler and I pleaded with my DLA attorneys before your May hearing to reconsider their strategy and plans to try and quash Kinney's subpoenas to Legis Ventures (HK) Company Limited. You assumed so strongly, with sensational language, in your ruling that I fired DLA Piper because they would not go along with my "scorch the Earth" methods of litigation that you assumed I was always planning and intending.

Tauler and I both felt strongly that this effort was wasteful of my limited resources and could back fire badly and potentially misconstrue my intentions in following through on discovery obligations. In fact, back then I was asking my DLA attorneys to please simply provide all the invoices my new company had sent any clients for all of my attorney placements since 2017. I was in Singapore, and dealing with a global pandemic and it's brutal affect on my recruiting company and colleagues, so I was counting on my attorneys to do whatever they felt necessary in my case, but Tauler and I were confused about the effort to quash Kinney's subpoenas to Legis Ventures (HK) Company Limited.

On April 10, my DLA attorneys wrote to me trying to explain why they should quash Kinney's subpoenas on Legis Ventures:

"Hi Evan, As you know, the case has seen some activity this week. One item that has come up is Kinney's ongoing and lazy attempt to serve a subpoena on Legis Ventures. You will recall that a few months ago he tried to serve that subpoena in New York, and we were able to swat it away. Now he has moved with the Court for alternative service of the subpoena via email, which is not permissible under the relevant rules. We have filed the attached response vigorously opposing that request. In response, Kinney has sought to have the subpoena served by the clerk via FedEx on Legis in Hong Kong. The subpoena is still objectionable for a number of reasons, not least of which a U.S. subpoena can't require someone in Hong Kong to show up in Austin, Texas."

I am not an expert in litigation and have never been a litigator or party to a litigation so why would I not trust my attorneys at DLA? Rob Tauler and I though did have some concerns and we expressed them, mostly over the phone to my DLA attorneys, but also by emails. Here below are just some examples of many.

For example, On April 10 2020, Tauler wrote my DLA attorneys with me cc'd:

"...I don't think this subpoena is worth a discovery fight.  Kinney is only asking for documents from Legis and is only doing this to make things expensive for Jowers.  I would suggest not getting involved at all as you don't represent Legis at this time. This will be much much cheaper, and if we don't fight, we will be in a stronger position when we get around to subpoenaing Kinney's many entities, former employees, and current employees.

I feel like time and energy should be laser focused on getting what we need from Kinney affiliates to win on MSJ, rather that obstructing his discovery efforts."

For example, on April 29, 2020 I emailed to my DLA attorneys "I also don't understand why we resisted providing basic information like placements I made since I left Kinney. The magistrate judge wasn't happy with that and I ended up looking bad and shady, as if I was trying to hide this information by claiming only Legis has it and I am not owner of Legis."

On April 30, 2020 I emailed to my DLA attorneys "I wonder why we did not much earlier provide to Kinney docs such as invoices for placements? I never asked to withhold this basic info. No one asked me for these docs until today. I worry that by delaying we gave Kinney ammunition to motion to compel to both K&E and us, and it was an expensive process for me. I also was made to look bad in the ruling, as well as Bloomberg and Law360 articles. It seems as though I was intending to withhold or delay this basic info by scheming to hide behind Legis and claiming Legis had all the docs. This isn't true of course, but it looks that way to the judge and the public (thankfully probably few clients read the articles)."

III.     THE SENSATIONAL LANGUAGE IN YOUR RULING WAS VERY INAPPROPRIATE, AS WERE YOUR BASELESS AND WILD ASSUMPTIONS AND MADE UP STORIES ABOUT ME AND MY INTENTIONS, AS WELL AS MY ATTORNEY ROB TAULER, AND THESE ERRONEOUS ASSUMPTIONS ABOUT ME THROWN OUT IN THE MEDIA HAVE ALREADY CAUSED ME HARM, MORE SO THAN ANY SANCTIONS YOU CAN PROVIDE, AND CAUSED ME TO NO HAVE NO FAITH IN YOUR COURT.

Judge Austin, your ruling compares the four years of amazing efforts of my family, colleagues and attorneys, in this litigation defense of a frivolous lawsuit brought in bad faith, to the year 2020 and the scourge of the COVID 19 crisis. I find this part of your ruling to be sickening and uncalled for, quite frankly. Your attempt at humor with Yogi Bera quotes did not soften the blow and shows your complete lack of care in the damage you can wield with your sensational language from the power of your bench.

When my colleagues and I were sued in March 2017, my family and I were flat broke after only three months prior escaping from the corporate bondage of the Kinney entities [1], where Robert Kinney improperly withheld around $2 million of my earned commissions over 10 years, forced me to work in Hong Kong illegally without a work visa, and threatened to sue me, and not pay legal fees while I would have enormous legal fees, and steal all my commissions

---

[1]Robert Kinney opens and closes companies so frequently, and has so many shell companies, sometimes created for the sole purpose of each of many litigations Kinney initiates, so I will just refer to any and all of them as the "Kinney entities."

coming in the pipeline (to prevent me from being able to pay legal fees), if I were to ever leave his corporate bondage. Yuliya Vinokurova and I left Kinney's employ anyways in December 2016 and our families, colleagues and attorneys have been fighting the good fight since then. I am incredibly proud of our efforts and yet your ruling's sensational language makes a mockery of our efforts. I am incredibly proud of our being able to on a month-to-month basis raise from scratch well over $1 million for legal fees. I am incredibly proud of our continued ability to defend this frivolous lawsuit bought in bad faith even through the past 10 moths of the Covid 19 crisis, which devastated our recruiting company and the attorney recruiting industry in general, with very little revenue for several months as most law firm clients were understandably on a strict hiring freeze.

Judge Austin you declared in your ruling that *"The conduct by Mr. Jowers and Mr. Tauler evidenced in the ten motions addressed here is deplorable. It is the essence of what makes the public have low regard for lawyers."*

*I think you have parties mixed up. Robert Kinney is the party who is counsel of record and should be held to the high standards as an officer of the court, while I am the party who hired the third largest law firm in the world DLA Piper to represent me in both Texas and Hong Kong, and later switched in Texas to my good friend and fantastic attorney Rob Tauler, for various reasons (all different from your speculation and story telling in your ruling).*

*Also, Robert Kinney is the party who is perhaps the most litigious person in Austin, Texas and has sued just about all of his successful former colleagues, including Kinney's mentor who brought him into recruiting, Kinney's first ever recruiter employee, Kinney's founding head of his New York office, Kinney's founding head of his Russia recruiting practice, Kinney's only ever rainmaking recruiter who built from scratch his Asia practice and global brand and was his leading revenue generator 10 years in a row (that being me of course), among many other colleagues Kinney has sued or threatened to sue. Further, Kinney has sued law firm clients and threatened to sue many more. He has sued recruiters from other recruiting firms over recruiting*

*fees those recruiters alleged Kinney stole from them. I imagine Kinney has probably sued many others outside of the legal industry. His lawsuits in recent years all have the same primary strategy: Kinney sues in his local Texas courts (where he has claimed to me in the past he gets favorable treatment from various connections and fishing camps, no kidding) and he pays no legal fees, while the defendants (victims) have enormous legal fees as Kinney is able to cause delays and unnecessary motion practice to such an extent, that his victims run out of money before depositions can begin.*

*There is of course much more sensational and unwarranted language than aforementioned above in your recent ruling, all designed to get your discovery magistrate court ruling the media attention you apparently crave. After all, you surely knew that your "benchslap" (as various media outlets put it) of Kirkland & Ellis attorneys in April of this year gained a lot of notoriety in the press, as you used sensational language and said they were the reason the public has low regard for lawyers. You became the most famous magistrate judge in the United States, due to your sensational rulings  in my case. But instead of being concerned and toning it down, you doubled down in your May hearing with your berating of my former DLA attorneys. Then you tripled down in your recent ruling after being out of pocket and off the grid in our case for 7 months that numerous pending motions were referred to you, while completely contradicting your precedent set in your rulings against the K&E and my DLA attorneys. Most of the legal industry now knows who you are as you plan your sudden and hasty retirement for next month and I imagine you have received some "slaps on the back" admiration for really taking it to all these deplorable and terrible people, such as myself and my attorneys. In my opinion, in my case you have been grossly negligent in your duties as a magistrate judge.*

All the inappropriate sensational negative language towards me and my attorney's efforts on my behalf in your ruling (where I am told you granted me relief in 4 of the 8 motions we filed) are based on your numerous key miscomprehension's of of basic and well established

facts in this case, and also your numerous key erroneous factual assumptions. In your ruling you have numerous baseless assumptions, wild guesses and made up stories about the intention and efforts of and by me, my family and my current Tauler Smith and former DLA Piper attorneys, and your inappropriate sensational language brought inevitable media attention and badly damaged the reputations of Rob Tauler and me. I can only assume this was the "consequences" you had in mind when you excitedly proclaimed in your ruling that we were facing your "consequences." You were not only simply denying our discovery related motions but instead pushing a narrative in the media that Tauler and I are "deplorable" and causing us great embarrassment and harm to our reputations. I am guessing these were the "consequences."

Here below are just some of the recent articles I found in a quick google search using the terms "Judge Austin" and "Jowers":

https://www.law360.com/articles/1339422/judge-blasts-scorched-earth-tactics-in-legal-recruiter-fight

https://www.law.com/texaslawyer/2020/12/18/petty-and-unprofessional-judge-threatens-sanctions-in-legal-recruiter-trade-secrets-case/

https://abovethelaw.com/2020/12/judge-writes-to-say-that-this-case-is-trouble-is-like-saying-2020-has-been-difficult/

https://bestimmigrationlawattorney.com/the-judge-wrote-to-say-that-this-case-is-very-troublesome-is-like-saying-that-2020-is-very-difficult/

https://arizona-dui-defender.com/the-judge-writes-to-say-that-this-case-is-difficult-is-like-2020-was-difficult/

https://estatedispatch.com/the-judge-writes-to-say-this-problem-is-like-saying-2020-has-been-tough/

https://thelawsnews.com/the-choose-writes-to-say-this-case-is-an-issue-is-like-saying-that-2020-was-tough/

https://vblsa.org/judge-writes-to-say-that-this-case-is-trouble-is-like-saying-2020-has-been-difficult/

https://sapadiam.blogspot.com/2020/12/judge-writes-to-say-that-this-case-is.html

For example, on Christmas Eve I had to explain to my 12 year old cousin why Joe Patrice of Above The Law proclaimed that I need to "get off of the dick enlarging pills" in his article about your discovery ruling. Joe is also an attorney recruiter and also is Robert Kinney's known henchman in the media, as Joe tends to write hit pieces against defendants to Kinney's lawsuits over the years, with the most glaring example being Kinney's lawsuit against his former mentor, Harrison Barnes. I have been told that Robert Kinney's wife Michelle proclaimed in an Instagram post last year that Joe allowed Kinney to draft up himself Joe's previous hit piece on me after your ruling against Kirkland & Ellis attorneys in their effort for a protective order against Kinney for harassment.

Another quote from Patrice's hit piece on your recent ruling, where he made no attempt to reach out to Rob Tauler or me for any input:

*we've got "petty and unprofessional" and "with no hint of shame." Are there any others in this 19-page order? Well, we have "absurdity," "abusive, and unwarranted," "failed to provide any colorable argument," "wholesale lack of any evidence," "goes too far, "pure speculation and con-spiracy-theorizing," and "a prime example of how far beyond the pale Mr. Tauler has gone in his abuse of discovery in this case."*

You base much if not all of your ruling on a hearing that took place in May 2020 where you assume erroneously that Rob Tauler and I attended, including your reasons why I should write this memo directly to a judge presiding over my case, and discuss conversations falling under my attorney client privilege. In your ruling you state:

*"In May, Jowers and Tauler were warned that there would be consequences for con-tinuing the conduct the Court was already seeing at that point. Rather than correct-ing things, they both doubled down and increased their abusive approach to this case. Accordingly, no later than **January 5, 2021**, both Jowers and Tauler shall file a written brief showing cause why they should not both be sanctioned for the costs they have caused the Plaintiff and Counter-Defendants to incur to respond to the baseless motions disposed of here."*

Neither of us attended nor were we invited. Further, my DLA attorneys informed me there was no court reporter at your discovery hearing, so there was no transcript ever provided to Tauler or me. Ironically, but not surprisingly, the media reporters (if not the court reporters)

were at your May 2002 and you entertained them with sensational and negative language against my DLA attorneys that was able to get you the media headlines you apparently seek in your discovery rulings in my case. The only information I ever was given regarding your May 2020 hearing was provided to me by your quotes in the Texas Lawyer magazine.

The fight of my life (in my first ever litigation) is not a game to me, even if it is apparently a game to you in your efforts to undermine me at every turn, by your simply following blindly, through gross negligence or corruption, the narrative of the Plaintiff, who is using your negligence and lack of care to your duties in his primary litigation effort - to attempt to bankrupt me with legal fees while he pays no legal fees.

My financial life is on the line, as it is for my extended family, in 3 different countries, that I am the primary bread winner for. The ongoing ability of my two successful start up recruiting companies, in two different countries, is also on the line, and this effects severely all of my colleagues and many clients whom I am close with and who have relied on me for many years.

Judges like you are the reason most Americans who are frivolously sued and without the financial means to endure over $1 million in legal fees don't trust the court system to defend themselves even if they can raise the funds. This is an ironic truth, considering you claim that most Americans don't trust attorneys because of the way my myself (a non-practicing attorney party), my DLA Piper and Tauler Smith attorneys, along with Kirkland & Ellis attorneys, have had the audacity to file reasonable motions in my case that were referred to your court during 2020. Are all of us "deplorable" as you so put it? Myself along with three sets of attorneys from three different firms - all attorneys who have exemplary records and have had very successful careers up to now - and we are all deplorable and the reason the there are trust problems by Americans with the legal system? I suggest to take a long hard look in the mirror.

IV.     I AM BEING SANCTIONED FOR MY ATTORNEYS TRYING TO FIND OUT WHAT THE
TRADE SECRETS ARE THAT I AM BEING ACCUSED OF MISAPPROPRIATING, AFTER MORE
THAN A YEAR OF A DISCOVERY PROCESS THAT ENDS NEXT MONTH?

I was frivolously sued almost four years ago, for allegedly misappropriating trade se-
crets that are allegedly owned by the Kinney entities. I have never been a party to a litigation
before and I was really naive I guess to think that I should expect to know what these alleged
trade secrets are during a discovery process that has gone on for more than a year and will be
ending next month. I understand from your ruling that I will never receive any information from
Kinney regarding the trade secrets I allegedly misappropriated during the entire discovery
process, other than some vague categories of potential trade secrets that include bizarre things
such as types of cars clients drive and what schools their kids go to. Thanks for the clarifica-
tion, but I don't think I should be sanctioned for my attorneys efforts to try and get the actual
trade secret information from the person who sued me and has caused me over $1 million in
legal fees.

I understand that Kinney refuses to provide any information on the alleged misappropri-
ated trade secrets during discovery and that he plans to do so only after discovery is complet-
ed (but not before my attorneys will file a motion to dismiss on summary judgement) and only if
some third party provides him any information on these trade secrets. I also understand that
Kinney has admitted that he has no information on the alleged trade secrets and he also claims
that I am the only person who knows of these trade secrets that he allegedly owns and I al-
legedly stole from him. Tellingly, Kinney has so far refused to depose me, the alleged master of
his trade secrets, even though I have made myself available at any time with two weeks notice.
Shouldn't he be trying to get this alleged trade secret information from me?

Robert Kinney has not complied with many of our discovery requests. I understand that
we filed motions to compel on 70 or so reasonable requests. In your order you say that we
have not demonstrated any problems with Kinney's response to these 70 or so discovery re-

quests, while you insist on no more than 10 page briefs even for motions to compel dozens of discovery requests for production.

I have never before been a party to a litigation and am confused how a Plaintiff not answering a discovery request or declaring that he never will consider a particular discovery request is not a problem for the defendant. We have many instances of this with Kinney's refusal to comply with dozens of our discovery requests. I see this as problematic. I understand that you think it's harassment to for my attorneys to try and compel such discovery and we never will have such compliance by the Plaintiff. Again, thanks for the clarification, but I don't think I should be given sanctions for seeking compliance from the Plaintiff (who is causing me over $1 million in legal fees) with reasonable discovery requests given as far back as December 2019. Waiting over a year for my discovery request to be answered properly, to no avail, and then the discovery process formally ends next month, and we will be sanctioned and called "deplorable" in the media if we dare bring another motion to compel discovery, all while Robert Kinney and his co-counsels refuse any meet and confer efforts or even to get on the phone. Again, thanks for the clarification.

V.      THE THREE DEPOSITIONS THUS FAR HAVE ALL BEEN DEVASTATING FOR THE PLAINTIFF KINNEY AND ALSO CONTRADICT SOME KEY ASSUMPTIONS THAT ARE THE BASIS OF PARTS OF YOUR RULING AND YOUR ALLEGATIONS THAT I AM A DEPLORABLE PERSON

While my attorneys' efforts to get answers to discovery requests and conduct depositions of the Plaintiff and his shell companies that accuse me of wrong doing (so that I have to pay over $1 million in legal fees to defend frivolous claims), have run into a road block by your magistrate court, we have had a lot of success recently with the few depositions that have finally taken place, notwithstanding Robert Kinney's blatant coaching of Renee Sommers and his threatening and intimidated Alexis Lamb and Peter Gutensohn (as he was directly deposing Alexis and Peter, which apparently is all good in the Western District of Texas).

Robert Kinney doesn't want depositions to continue in this litigation, not of him or any other witness. He has tried to delay them for many months. For example, at one point he lied that Renee Sommers, his accountant, was not available for a deposition on every day in September and October 2020. Why should I be sanctioned for my attorneys' efforts to depose witnesses in my defense of Kinney's frivolous claims against me? I ask this question especially considering that all of the depositions have and will be very favorable to my defense of Kinney's frivolous claims.

Here are some, among many others, of the highlights of the three depositions taken thus far:

- Renee Sommers admitted that she did in fact have access to an enormous amount of documents relating to my employment at the Kinney entities, in a "drop box", exactly what my attorneys had subpoenaed her for, but what the Plaintiff Kinney and this magistrate court deemed was harassment that we dare ask Kinney's accountant for documents she allegedly did not have access to. I understand Tauler was forced to subpoena the "drop box" for these records, but this magistrate court ruled that was deplorable of him to do so.

- Comically, Renee also admitted that she did not draft up or sign the declaration she allegedly made regarding her claim of lack of access to the documents my attorneys were reasonably seeking.

- Renee also admitted that most of the funds that I allegedly owe Kinney from the "revolving loan" were actually the taxes Kinney believed I may have owed to the IRS on my final placement at the Kinney entities, but that Kinney and Renee never contemplated paying such taxes on my behalf, and yes Kinney was actually suing me for these tax amounts (that I paid the IRS in 2017) and he wants 17% annual interest on these tax withholding amounts on my final placement commission that Kinney is upset he never got to withhold (I know it's a mouthful and hard to even understand the concept).

- Renee went on to discuss the "slush fund" that she proposed (and Robert Kinney agreed) that they put my earned commissioned payments whenever I forgot about any amounts that were owed to me that they never intended on paying me, and apparently this occurred at least one time for a significant amount in late 2015 or early 2016.

- Alexis Lamb's (a former Kinney employee) credible allegations of multiple occasions of sexual harassment by Robert Kinney against her, including advising her to date or have inti- mate relations with law firm client partners in order to drum up business for Kinney;

- Alexis argued to Robert Kinney (while he was deposing her as counsel of record) during the deposition that she felt like she was being "pimped out" by him to clients to drum up busi- ness.

- When Alexis detailed to Robert Kinney (while he was directly deposing her) a specific instance when Kinney told her a senior Simpson Thacher partner thought she was "hot" just as they finished a meeting with that client, Kinney with seemingly clenched teeth and an angry scowl (it was on video) asked her "did you email your momma?" It was a tense moment in- deed.

- Alexis also revealed during her deposition that Robert Kinney mislead her into believing she would be provided the legally required Hong Kong work visa, when he hired her to work for him in Hong Kong, when Alexis already was living in Hong Kong and in the process of leaving Linklaters' Hong Kong offices, and that Kinney forced her to work illegally for over one year in Hong Kong.

- Peter Gutensohn (another former Kinney employee) explained that Robert Kinney in- structed him several times to get Peter's 18 year old (at the time) son to steal my wife's car in Miami while my wife and I were both out of country.

- Peter Gutensohn that Robert Kinney would sometimes replace his earned commission funds owed to him with high interest loans that would also require liens on Peter's family cars;

- Peter explained (again to Robert Kinney directly, who was deposing him directly as counsel of record) that Robert Kinney bragged to him on numerous occasions that his only

reason for the litigation brought against me is to bankrupt me with legal fees, while Kinney has no legal fees at all.

-       During Renee's deposition, Kinney asserted attorney client privilege numerous times and instructed Renee to not answer questions. He also was caught whispering to her several times in an effort to coach Renee's testimony. Kinney moved around the room Renee was in and was hiding from the camera, as he coached Renee and made various attorney client privilege objections, which seemed a bit odd and improper to me.

-       Peter and Alexis revealed that they were uneasy with Robert Kinney directly deposing them and prying into their recruiting businesses and practices and asking questions about placements and other confidential client information, due to Robert Kinney being known to use such information to harm recruiters, client law firms, and individual attorneys who put their career plans and job searches in our hands.

All of this and many more substantial revelations, all bad news for Kinney, is well documented in the transcripts and video of these depositions.


VI.     YOUR DECISION TO FORCE ME TO HIRE A NEW ATTORNEY WITH LESST HAN TWO MONTHS REMAINING IN DISCOVERY, AND DURING THE COVID 19 CRISIS FOR MY BUSINESS, COULD END MY ABILTY TO HAVE ANY LEGAL REPRESENTATION

        Your decision to force me to hire an Austin based Texas attorney with less than two months remaining in discovery is in my opinion a game changing decision that would end my litigation defense efforts completely, just as I am about to win within a few months on a motion for summary judgement (the claims are frivolous). After 2020 and the COVID 19 crisis devastated my attorney recruiting industry and my companies, I don't have the funds or the time to properly hire and ramp up another top tier litigator in my case, a complex one with over [250] docket entries. Further, your sensational negative language and baseless story telling about Rob Tauler and me and our intentions in your ruling has greatly tainted my ability to search for a high quality litigator in Austin, who may be willing to work with Tauler and me.

Fortunately, Rob Tauler became admitted in Texas on December 31 and has opened an office in Austin today January 5. I am constantly amazed by my attorney Rob Tauler's tireless efforts to represent me in this case. We were planning for your ruling and figured you may blindly go along with the Kinney narrative without reading our briefs, so Tauler amazingly spent much of his free time over a few months getting admitted in Texas, just for me, including all the courses and exams necessary. I fully expect you will not allow Tauler to continue as my counsel, even though he now has an office in Austin and has become admitted in Texas, as you may come up with other reasons to deny me my attorney of choice. However, that's a Constitutional fight I am willing to take to the Fifth Circuit (where I am undefeated in this case and expect that run will continue) if I am not bankrupt from legal fees of course.

VII:     THIS MAGISTRATE COURT IS PERMANENTLY DENYING ME MUCH OF WHAT I ARE MY RIGHTS IN THE DISCOVERY PROCESS, AS I UNDERSTAND IT, AND TO ADD SANC-TIONS WOULD BE EVEN MORE UNFAIR

I can say without any doubt that I do not trust you as a judge in my case for any fair and just rulings. I realize I will have to win this case without the rights a litigant party normally has for reasonable discovery requests to be complied with. I do strongly believe I will defend all of Kinney's claims on summary judgement even without the discovery and depositions I am being denied by your magistrate court.

I realize now that if my attorneys exercise my First Amendment right and file any further motions that are discovery related, my attorneys and me will be trashed in the media, as you make some vague threats of "consequences" and we will be provided sanctions. Gosh, I wouldn't surprise if you tried to have me arrested, that is how little respect I have for your judgement.

I realize there is no possibility of you considering any request for discovery relief, even though discovery ends in less than a month and Kinney has not adequately responded to around 70 reasonable and relevant discovery requests and he has not yet been deposed.

I also realize that opposing counsel will likely never agree to get on the phone with my attorney Rob Tauler and opposing counsel will never agree with our many future attempts to "meet and confer," as they haven't for over many months now. Notwithstanding this reality, I understand that my attorneys cannot seek help from your court in such discovery matters.

I also understand that during depositions, Robert Kinney can directly depose me and his other former employees, even though we all claim that we are victims of Kinney's abuse, financially and in other ways. Further, Kinney can threaten such witnesses with lawsuits and challenge them on their disagreements with him as their former boss and abuser.

I also realize that I may have to depose Robert Kinney myself, if the court were to disallow my attorney Rob Tauler from doing so. That would be very damaging to my litigation defense.

Thus, adding sanctions on top of your shutting down my discovery efforts would be even more over the top punishment in my opinion.


VIII:    IT'S A MISSTATEMENT OF ESTABLISHED FACTS TO ARGUE THAT ROB TAULER RE-FUSED REASONABLE EFFORTS TO MEET AND CONFER WITH KINNEY AND HIS CO-COUNSEL

I understand that Rob Tauler on many occasions since the summer of 2020 attempted to "meet and confer" with Robert Kinney and his co-counsel. Further, Tauler tried many times to get opposing counsel on the phone over the past six or so months but to no avail. One time Tauler did catch Ray Mort by calling him unannounced. Mort hung up the phone on Tauler after a few moments of only polite conversation by Tauler and said something to the effect that he "did not have time for this." It's my understanding that Mort never spoke to Tauler again after that first an only brief phone call. It's also my understanding that Mort in writing in an email to Tauler declared that both Robert Kinney and him would never speak to Kinney again on the phone and that all of their communications would for the future be by email only.

It's my understanding that Mort and Kinney then tried (successfully it seems) to create a false narrative with the court that Rob Tauler is a bad person who is abusive on the phone, even though they gave no evidence to support this.

All of this is well documented in the record, and supported by numerous emails and official meet and confer letters sent by Tauler (but not responded to at all by Kinney). There is also the complete lack of meet and confer efforts by Kinney before filing recent motions.


IX:     YOU DON'T FOLLOW YOUR OWN PRECEDENT AND RULES GIVEN IN MY CASE IN 2020 IN YOUR RULINGS AND HEARINGS, AND I SHOULD NOT BE SANCTIONED FOR MY ATTORNEYS NOT BEING ABLE TO FOLLOW YOUR VERY CONTRADICTORY STYLE

It's seems impossible to follow your stated rules in your rulings because you don't follow them yourself. The only thing that is consistent is that you rule against me each time, with sensational langue that gets in the media right away.

For example, you were so angry in April 2020 with Kirkland & Ellis attorneys for filing documents only after a motion to compel discovery from Robert Kinney, and yet Kinney did the same on several occasions since then after my motions to compel discovery, including but not limited to a long delayed and long awaited privilege log that was comically given to us completely blank with no entries.

You were so upset with Kirkland & Ellis attorneys for in your opinion not getting on the phone when Robert Kinney requested them to several times to meet and confer, and yet Robert Kinney and his co-counsel has refused to speak with my attorneys on any phone call, despite numerous requests by my attorneys to get on the phone and "meet and confer",  for several months now. You call my attorney Rob Tauler and me "deplorable" for allegedly not engaging in any meet and confer efforts, and yet the record shows the complete opposite - that Rob Tauler has on numerous times made attempts to formally meet and confer with Robert Kinney and his co counsels, but has been completely rebuffed since the summer of 2020. In fact, Kinney's co-counsel Ray Mort indicated they would not get on the phone with Rob Tauler

ever again on many months ago. Meanwhile, Kinney files motions without even bothering to meet and confer beforehand and you have no problem with that.

Also, in your May hearing, where you bashed my DLA attorneys with media reporters present, for apparently forgetting to certify their "meet and confer" efforts before fling a motion, it's my understanding from my attorneys that Kinney has done the exact same thing, forgetting to certify, before filing motions on at least two occasions in the past few months.


X:       THROUGH THE RECENT DISCOVERY RELATED MOTIONS WE WERE ABLE TO FI-NALLY SECURE ROBERT KINNEY'S ADMISSION THAT HE IS INDEED A NECESSARY WIT-NESS IN THIS CASE, AS REQUIRED BY THE JUDGE PITMAN IN A PREVIOUS RULING

On October 21, 2019, the Court denied my DLA attorneys' motion to disqualify Robert Kinney as counsel of record in this litigation. The Court was swayed by Robert Kinney's argument, in a brief signed by him as counsel of record, that it was "too early to tell" whether Kinney was a necessary witness because Kinney did not have "exclusive knowledge or understanding of the disputed evidence."

The Court ruled that "unless and until Jowers can establish with a higher degree of certainty that Kinney is a necessary witness with exclusive knowledge of matters likely to be the subjects of testimony, the scope of the representation he may undertake is not a question for today."

However, thanks to my attorneys' recent efforts in discovery, including our still futile attempts to get Robert Kinney to finally have his deposition taken, Kinney has recently stated, under oath, in seeking a protective order for the Kinney Entities in November 2020 that he "was ***the only person*** who had any role in drafting each agreement at issue in the present lawsuit."

The aforementioned October 2019 ruling in my opinion was the key watershed moment of this litigation and without it I believe strongly that Kinney's bad faith and malicious lawsuit efforts against me would have ended abruptly. Kinney would not have continued his litigation efforts against me if he lost his leverage of paying no attorneys fees verses my paying substantial amounts of legal fees. Kinney threatened me for many years that he would use this key

leverage in a lawsuit the moment I ever dared leave his employ. Further, Kinney has used the same strategy in all his other recent litigations against his former employees, colleagues and other recruiters.

I understand that Kinney has stated to his current and former employees that his main goal in this litigation against me is to simply bankrupt me with legal fees, rather than to try and win his frivolous claims. Peter Gutensohn, a former employee of Kinney, signed a sworn affidavit saying exactly this, and he also mentioned this numerous times also in his deposition. My attorneys have provided Peter's affidavit in numerous occasions to this court, attached to various briefs when relevant to do so, but Peter's testimony has been completely ignored. It's either you didn't read it, think Peter is lying, or you approve of Kinney's methods to sue only for the ability to bankrupt the defendant with legal fees.

Also, Kinney uses his ability to directly depose witnesses in a way that is intimidating and threatening to witnesses, especially his former employees who consider themselves to be victims of Kinney's abusive behavior against them. In one of the three depositions thus far, the witness Peter Gutensohn was threatened by Robert Kinney with a potential lawsuit from Kinney, while Robert Kinney was directly deposing him as counsel of record. In another deposition, Kinney asked his former employee Alexis Lamb in a stern and intimidating manner if she "emailed her momma" when Alexis confronted him with credible allegations of sexual harassment on numerous occasions by Robert Kinney against her.

At this point in the litigation, we can see to what great lengths Robert Kinney will go to continue his litigation harassment against me, where his main goal has always been to follow through on this threat for years - that if I dared leave his company, he would sue me in Texas, where he would represent himself and not pay legal fees, and I would be bankrupted by legal fees as Kinney expertly manipulates the court system through delay after delay and his lack of cooperation. Kinney was more than willing to commit perjury and intentionally mislead a US Federal Court into reversing a prior ruling to disqualify Kinney as counsel of record.

Just a sampling, among many more, of Robert Kinney's delay and cost raising tactics in this case:

- Kinney opposed any deadline extensions at the height of the Covid 19 crisis and panic in April 2020, and after losing that effort almost immediately filed several motions to compel discovery.

- Then only a few months later Kinney begged the court for an additional 120 day extension for Covid 19, just as depositions were finally about to start, and in his brief writing then he was caught lying several times, including as to his whereabouts (the Hamptons) and whether he had legal staff (he doesn't) normally in his office (he usually works from home in Austin) who were suddenly forced out of the office and working on many matters.

- Kinney lied to my key law firm clients in Hong Kong back in December 2019 when asking for their help and declaring to them that I had not been willing to comply with any of Kinney's discovery requests, when in fact the discovery period for our litigation had not even begun yet.

- Kinney successfully motioned the District Court to place an injunction on me and Alejandro Vargas, disallowing us to continue our very promising defamation claims against Robert Kinney in Hong Kong. However, after we won an interlocutory appeal to the United States Fifth Circuit Court of Appeal and the injunction was vacated, Kinney explained to the District Court in a hearing that he was not concerned about the Hong Kong defamation claims after all (after substantial legal fees were spent by me to successfully appeal to the Fifth Circuit).

- Kinney insisted on a jury trial for the first few years of this litigation, before suddenly changing his mind and causing a lot of motion practice and legal fees for me as we tried unsuccessfully to maintain my right to a jury trial (Kinney is well aware that it would be impossible for him to win a jury trial).

- Kinney improperly amended his original lawsuit 3 times against 4 different defendants and he timed the lawsuit filings in a way that caused 12 different responses and motions to dismiss on technicalities by my DLA attorneys. Yuliya Vinokurova had to file responses and mo-

tions to dismiss 3 times, Alejandro Vargas and Legis Ventures (HK) Company Limited had to do so 3 times, and responses and motions to dismiss on my behalf had to be filed 3 times.

- Further, my DLA attorneys were forced to file an additional motion to quash Kinney's second amended lawsuit and were successful, but Kinney had a scheme where defendant Alejandro Vargas was left out of that lawsuit and Kinney threatened to sue Vargas again separately in a different court if we did not agree to a 3rd amended lawsuit by Kinney with Vargas included as a defendant, as we were so confident that Vargas would be dismissed (as he was) as a defendant and we were threatened with much more legal costs if a new frivolous litigation started from scratch against him.

- The frivolous claims filed against Vinokruova, Vargas, Legis Ventures were thrown out quickly, but still cost a lot of legal fees to make that happen. 12 responses to to a complex and ever changing set of frivolous claims brought in bad faith.

- Kinney filed a motion for special discovery to try and show Vargas was somehow running a fraudulent operation in Hong Kong, which was ridiculous, but we had to respond to that, and the legal fees continued.

- Kinney has refused to be available for his deposition from late August until mid November, lying numerous times that his schedule was packed solid for more than 2 months straight.

- Kinney proclaimed that he is the only possible witness for 5 different entities to be deposed, but also declared that he would only be deposed 12 hours total (including his own depo) and unless and until my attorneys agreed to exactly that, he would not show up for depositions that were scheduled according to his stated availability in November and December.

- Kinney and his co-counsel refuse to speak by phone to my attorneys at Tauler Smith, which has made it impossible to "meet and confer" and caused unnecessary motions to compel discovery, causing me over $100,000 in additional legal fees, along with potential sanctions for my attorneys efforts to try to compel discovery and the adherence to subpoenas for depositions and for documents.

- Kinney claims that he is counsel for all of his employees and his accountant, in order to frustrate our efforts to depose them or get documents from them, but when we requested a privilege log for many months, Kinney only provided a blank version with no entries, and only after we were forced to file a motion to compel discovery.

- Kinney did not provide any evidence of any assignments of my 2006 Florida non-compete agreement to any of his many companies relevant in this case until after the Court demanded that he do so, but after my DLA attorneys spent much time and effort, that cost me a small fortune, to argue over many briefs filed with the Court that I had no relation to MWK Recruiting, the original Plaintiff, and there was no evidence of assignments.

- Kinney eventually provided only PDF docs showing assignments, but these were unable to be analyzed for meta data and Kinney claimed that he somehow lost any evidence of the assignment docs having ever existed in any of his computers or on his cloud database.

- Kinney sued my colleagues and me in March 2017, but waited more than a year to attempt to serve any of us, while he served his sensational allegations of fraud and other bad acts to most of my key clients for that same year.

- I could go on with dozens of other examples….


XI: THE CURRENT ACTUAL GOINGS ON IN THIS LITIGATION, OUTSIDE OF DISCOVERY MOTIONS BEING DENIED, IS THE EXACT OPPOSITE OF THE ASSUMPTION BASED NARRATIVE YOUR RULING PROVIDES

Robert Kinney has fed you with a narrative that you have bought into, apparently without fully  reading my DLA Piper and Tauler Smith attorneys' briefs and exhibits, very unfortunately. The reason Kinney has desperately sought delays in this litigation and delays in the start of the depositions of him and his companies, is because he has no chance of actually winning his frivolous claims, as there are no trade secrets he can articulate and he has already admitted I don't owe anything on any  "revolving loan" (those are the entirety of the claims).

The three depositions that have taken place so far have gone very bad for Kinney and included, among many other things: devastating (to Kinney) admissions by Kinney's accountant Renee Sommers that caused Kinney to quickly "amend" the accounting record to show I don't have a "revolving loan" balance after all; allegations of multiple instances of sexual harassment by Robert Kinney against his former employee; allegations that Kinney attempted to convince an 18 year old son of one employee to steal another employee's car; allegations that Kinney forced a second employee to work illegally in Hong Kong without a work visa for more than a year; and allegations that Robert Kinney improperly and permanently withheld significant amounts of earned commissions of his employees; among many other alarming revelations.

You make wild guesses and assumptions regarding my intentions and instructions to my DLA attorneys before and after the May 2020 hearing. You simply declare that I fired my DLA attorneys after that hearing because as you say, they would not go along with my "scorch the Earth" methods of litigation (even though I am not a litigator nor have been a party to a litigation before this one), and yet the Plaintiff Robert Kinney has filed may lawsuits, including against many of his former colleagues in recruiting, and threatened many more. Could you have asked your staff to look into whether I actually am a litigious person, whether I have ever filed a lawsuit before, in any court in the United States? The answer would be no. I guess you were looking for a different narrative.

You then infer that Rob Tauler is some bad actor rolling into town from California who was willing to take on my case and follow my alleged bad methods of "scorch the Earth litigation." However, the truth is that both Rob Tauler and me were concerned about DLA's strategy to quash the subpoenas at issue to the Hong Kong company. We were both against this strategy and there is plenty of written record to prove that, which I will show below in this memo.

Rob Tauler is a very well respected attorney and litigator and person in every regard. Your ruling had language in it that was reckless and improper and could badly damage Tauler's reputation, as well as affect his ongoing matters re clients' concerns and could taint juries. You

made a mockery of the 15 years Tauler has tirelessly put in to build his now very successful litigation practice. It's a level of hard work, dedication and hours that you will never know, and yet you trash his career and reputation on a whim, while making wild guesses and assumptions, using sensational language, in what should have been a mundane yes or no discovery ruling.

XII.    MY DLA Piper AND TAULER SMITH ATTORNEYS REASONABLY ADVISED ME ON THE "ATTORNEYS EYES ONLY" MOTIONS THEY WERE ALL EXCITED ABOUT

I have to admit I was not super interested in these motions and was worried it would be a waste of time, mainly because I had and continue to have no faith in you as a judge in fairly considering these issues.

I understood from my attorneys that Robert Kinney as a direct competitor of mine should not have access to confidential information about my law firm and individual attorney clients. I agreed with this strongly, because Robert Kinney has in the past threatened and followed through on threats to harm attorneys and law firms he has represented by using their confidential information against them. He can't monetize such information, but he can surely harm good people. Especially my senior partner clients, who have confided in me the detailed secrets and ins and outs of their practices and how they built up their books of business and client relations, don't want such information to fall into Robert Kinney's hands.

I also strongly believe Kinney has already and will continue seek to harm me as a recruiter and a person, and my recruiting company and colleagues, and he will use any of our confidential information to do so.

Did you even realize that my colleagues and me were forced to sue Robert Kinney for defamation in Hong Kong and the court there has already declared that we have a prima facie case even before we file a formal statement of claim and start the discovery process. We have now dozens of written and verbal statements from Robert Kinney to my key clients in Hong Kong, Beijing, Shanghai and Singapore where he clearly defames me and claims that I commit-

ted theft and fraud against him to the tune of at least US$2 million and likely much more. He has claimed that I am a criminal and a dishonest man, among many other defamatory statements to my key clients.

Why should I be sanctioned for my DLA Piper and Tauler Smith attorneys' belief that Robert Kinney may use confidential information about my business and my clients in a way to harm me and my clients?

XIII.    THE BACKGROUND OF THIS LITIGATION AND HOW I HAVE BEEN TREATED OVER 14 YEARS BY THE PLAINTIFF SHOULD SUBSTANTIALLY MITIGATE AGAINST MY BEING CHARGED SANCTIONS FOR BEING AN INVOLUNTARY PARTY TO THIS LAWSUIT FILED AGAINST ME

My colleagues Alejandro Vargas, Yuliya Vinokurova and I were sued by Robert Kinney for alleged misappropriation of trade secrets and I was also sued for alleged funds owed on a revolving loan balance. The misappropriation of trade secrets? After just under 4 years of litigation, and more than a year of discovery, Robert Kinney still can't and refuses to articulate one trade secret that I allegedly stole from him (you don't see any problem with that, according to your ruling regarding my motions to compel discovery). Large amounts of moneys allegedly owed on a revolving loan? Kinney admitted with a recent "amendment" of his accounting records (hastily done after his accountant's deposition was devastating for his claims) that I in fact don't owe these funds, which I have never been invoiced for. Yes, there never was a chance Kinney could win his frivolous claims brought in bad faith unless he had a default judgement after I either didn't show up to defend his lawsuit, or after I bowed out after being bankrupt after likely more than $2 million in legal fees Robert Kinney reasonably assumed back in March 2017 that I could never afford (although his assumption turned out to be wrong, through the great efforts of my family and colleagues).

From 2007 through 2016 I was each and every year easily the top recruiter at the Kinney entities. I know for a fact I brought in more revenue each year than any other recruiter and I

understand that in some years had more revenue than the rest of my colleague recruiters com-bined. In each and every year I know for a fact that I had more placements than any other re-cruiter at the Kinney entities and it's my understanding that in some years I had more place-ments than the rest of my colleague recruiters combined.

Even more impressively, I created from scratch the "Asia practice" at the Kinney enti-ties, notwithstanding Robert Kinney trying to discourage me from doing so during the 7 months in 2006 I built my Asia practice without any placements to show for it (it's a long game ap-proach and takes up to a year to build such a pipeline). The Kinney entities to my knowledge only had made 2 total placements in Asia before I came on board. During my time at Kinney hundreds of placements in Asia were made by the Kinney entities, the vast majority of these placements being made by me directly, and all of these hundreds of placements being the re-sult of my efforts to build up the Asia practice for the first time at Kinney. Since I have left the Kinney entities, the drop off on their production in Asia has been very steep, as fully expected by anyone at the Kinney entities at the time that I escaped my corporate bondage there, even though I built up the Kinney brand name in Asia so well. We don't know the exact dollar amount of the deep drop off in revenue because Kinney has refused in discovery to give us the data.

During my almost 11 years at the Kinney entities, I believe I sent more emails (not counting mass emails) than the rest of my colleagues combined. I also believe I worked double the hours of any of my colleagues. I easily spent more time traveling for work than the rest of my colleagues' combined for each of those 10 years. I was working both Asia and US hours - it was a herculean effort that Kinney took advantage of on an increasing basis.

In April 2006, through no-strings attached agreement, where either of us could part ways for any reason if things did not work out, Robert Kinney pro-actively recruited me to join his fledgling recruiting company. He pitched that he needed me to impress his staff and be more of a legitimate operation. I already had launched a recruiting company of my own in 2005 called Elite Laterals Group LLC, formed in the state of Florida. Robert Kinney and I were col-

leagues at BCG Attorney Search previously and when he started his first version of Kinney Recruiting, Robert Kinney inquired as to whether I would like to be a partner with him in the new venture, but I was too busy on other projects to do so.

I would never have even considered signing a non-compete or non-solicit agreement in order to join the Kinney entities in 2006. At the time, Robert Kinney had been using my database for months and getting other recruiting advice from me, and we both had similar backgrounds and experience in attorney recruiting. Further, I was not even all that interested in joining Kinney's entities. I did so more as a "hey why not, there is no harm in it" thought process. Robert Kinney pitched me hard to join his company and I figured there was nothing to lose in doing so, and I was looking forward to the camaraderie of having some colleagues to work with.

After 8 months of my own my own building up Kinney's Asia practice (and while Robert Kinney strongly advised me it was a waste of time and could not be done), I finally started to make attorney placements in Asia. It was at this time in December 2006, much to my surprise and frustration, Robert Kinney forced me to sign a non-compete / non-solicit agreement that he back dated to April 2006 (the "2006 Florida Agreement"). Kinney warned me that if I did not sign, he would keep all of the commissions I had coming in the pipeline. For the previous 8 months I had only $10,000 in commissions, but for the following 12 months, I had more than $400,000 in commissions in the pipeline. If I did not sign the non-compete, Kinney warned he would bankrupt me by firing me, keeping all my commissions, and by suing me if I tried to remain in attorney recruiting.

Kinney's top recruiter at the time, Morgan Warren, refused to sign under duress a similar agreement at that time and she was sued promptly by Robert Kinney and, astonishingly, I have only recently discovered that I was also a plaintiff in that lawsuit. Robert Kinney is extremely litigious and has brought lawsuits against the majority of successful recruiters who have worked with him and escaped his corporate bondage. He even sued his original mentor who convinced him to try recruiting, Harrison Barnes. I was Robert Kinney's second mentor for

10 years, as I taught him how to build to scale a recruiting company, how to successfully market in general, how to build his brand, and how to succeed in Asia.

Over the next 10 years after the Florida 2006 Agreement, Kinney lowered my commission rate arbitrarily, never paid me the 65% commission rate I was entitled to by the agreement, and withheld my commissions in additional ways. Kinney also forced me to pay for the majority of the company's marketing and adverting expenses in 2008 and in both 2007 and 2008, I was forced to pay the vast majority of the salary of my key lieutenant and colleague Yuliya Vinokurova.

Kinney had promised me upon joining that I would get paid my commissions in advance upon my candidates accepting offers. Not only did he not follow through on this promise, but Kinney charged me 17% interest, plus loan origination fees, as part of a "revolving loan" pay day loan scheme that was crippling financially to my family, as well as on the family of my colleagues at the Kinney entities, who also were being charged 17% interest pay day loans. Robert Kinney insisted on liens on our cars for these commission advances, that he considered to be "loans." These "loans" were secured by our already earned commissions so there was never any chance of default, and yet Kinney at one point tried to unsuccessfully to illegally repo my wife's new car without any warning.

In addition, after transferring me to Hong Kong in 2015, Kinney cancelled my Hong Kong work visa application without my knowledge and demanded that I work illegally in Hong Kong or be fired (and of course sued while having all my pending commission payments withheld permanently). He also demanded that I take the drug adderall (or something similar that was available in Hong Kong) while in Hong Kong to increase my stamina and focus, but I refused, even after Kinney eventually tied one of my pay days to going to a psychologist appointment where he wanted me to pretend I was depressed in order to get the drug (I sat in the waiting room for a few minutes but left before the doctor was to see me, after the receptionist asked me when is the last time I thought of suicide).

I was also forced to pay for the majority of the expenses in opening and maintaining a Hong Kong office and my practice there, even though I more than doubled Asia revenue and my personal revenue in my first 12 months based in Hong Kong. In October 2016, Robert Kinney warned that I would from that point forward have to share all my Asia candidates and thus all my commissions with him 50/50, even though he was already getting around 50% of every placement fee already as the owner of the Kinney entities.

Further, Robert Kinney so frustrated some of my key client law firms, with threats of lawsuits and in other ways, that some of them refused to ever work with Robert Kinney or any of his employees ever again, and even me even though I was the best recruiter those firms ever had in Asia. For example, I had made around 17 placements at one top tier US firm in Hong Kong and Shanghai over 9 years, including a key partner. However, this firm's  head of Asia informed me in 2015 that I would have to leave the Kinney entities in order to work with the firm again, due to the disgust his partners and Human Resource leaders felt towards Robert Kinney. I was told the that they had never before "fired" a recruiting firm, but they were forced to do so with the Kinney entities, due to Robert Kinney's terrible and abusive behavior towards them.

I was having success in making placements in Hong Kong and elsewhere in Asia despite Robert Kinney's reputation and questionable actions getting in the way and hurting my reputation, and despite Kinney's forcing me to take all the financial risk on my own for the Asia practice.

There were also sad instances of sexual harassment by Kinney against my key lieutenants in my Asia practice, Yuliya Vinokurova and Alexis Lamb. Robert Kinney made very  inappropriate statements to both, including his on many occasions insisting that Alexis use her attractive personal appearance to date or otherwise have intimate relations with partners at law firm clients, in order to bring more business to the Kinney entities.

I left this toxic 10 year long corporate bondage situation on December 16, 2016, when I gave notice to Robert Kinney that I was leaving the Kinney entities and braced myself for the frivolous lawsuit that was surely coming.

In March, 2017, my colleagues Alejandro Vargas, Yuliya Vinokurova and I were sued by Robert Kinney for only three purposes - all relating to punishment for Yuliya and I escaping Kinney's corporate bondage and Alejandro daring to work with us:

1) an attempt to weaponize the US court system to bankrupt me with legal fees, just I escaped over a decade of corporate bondage where around $2 million in earned commissions were withheld (as in stolen) from me. Kinney is representing himself and paying no legal fees and was unwilling to even consider any settlement from the get go [ see exhibit letter from DLA partner…];

2) To defame me to all my key clients in Hong Kong (he "served" his frivolous claims against me on my clients for over a year, including fraud claims that have been dismissed long ago, before he bothered to attempt to serve me with the actual lawsuit); and

3) To harass my colleagues, most of whom were also able to escape Kinney's corporate bondage in recent years, as we strive to build a new recruiting business from the ground up, notwithstanding the damage Kinney has done to our reputations and finances over a number of years (14 years for me, in fact).

It's a small miracle, due to the incredible efforts of my family, my colleges and my attorneys, that I have been able to maintain my defense of Kinney's claims for four years, considering that I was broke when he brought his frivolous claims in bad faith back in March 2017, just as most are when escaping Kinney's corporate bondage. I have on a month-to-month basis come up with well over US$1 million in legal fees needed to maintain my defense of clearly frivolous claims brought in bad faith.

I am so incredibly proud of our efforts to defend these frivolous claims brought in bad faith, designed only to bankrupt me with legal fees. However, your sensational ruling, and your attempts to get your sensational language in the media, makes a mockery of the efforts of my family, colleagues and attorneys. Your ruling's inappropriate language hurt the reputations of good people who have worked long and hard to build successful careers.

XIV.     CONCLUCSION

For the foregoing reasons I do not think sanctions against me will be appropriate. I would be happy to provide documentation on any of the statements I provided above. I simply did not have the time over 10 hours to add attachments and exhibits and cite to emails, depositions, rulings, briefs and other docs when writing this memo today. Putting any more of 10 hours of my time into this project I think would be an unreasonable expectation of me, considering my responsibilities to my family and colleagues, especially while we are still as a society in the middle of a pandemic, and my industry is still in a global crisis.

Sincerely,

Evan P. Jowers

## CERTIFICATE OF SERVICE

I hereby certify that, on January 5, 2021, a true and accurate copy of the foregoing document was served on all counsel of record via the Court's CM/ECF system.

 */s/ Robert Tauler*
Robert Tauler