# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | |
|---|---|
| MWK RECRUITING, INC. | |
|       Plaintiff, | |
| v. | |
| EVAN P. JOWERS, | Civil Action No. 1:18-cv-00444 |
|       Defendant. | |
| EVAN P. JOWERS | |
|       Counterclaimant, | |
| v. | |
| MWK RECRUITING, INC., ROBERT E. KINNEY, RECRUITING PARTNERS GP, INC., KINNEY RECRUITING LLC, COUNSEL UNLIMITED LLC, and KINNEY RECRUITING LIMITED | |
|       Counter-defendants. | |

## PLAINTIFF/COUNTERDEFENDANTS' RESPONSE TO EVAN P. JOWERS'S RENEWED MOTION TO DISQUALIFY ROBERT E. KINNEY AS COUNSEL FOR PLAINTIFF AND COUNTER-DEFENDANTS

The Kinney Entities respectfully respond to Jowers's renewed motion to disqualify Robert E. Kinney ("**Kinney**"). Jowers seeks, again, to immediately disqualify Kinney from appearing as counsel for any of the Kinney Entities (presumably including even on behalf of himself), and to forbid Kinney's participation even in pretrial matters. Disqualification remains inappropriate. Especially considering Judge Austin's December 18 order requiring Jowers to redesignate documents he had over-designated

under the protective order, with which Jowers has not yet complied, the request appears to be tactical. Dkt. 236, at 8. As the Court previously determined, whether Kinney should be entitled to act as trial counsel is matter that should be considered again at the final pretrial conference. Dkt. 110, at 5.

## ARGUMENT

Nothing Jowers puts forward now changes the analysis the Court used in October 2019 to deny his first request. The Court held that it "cannot declare with absolute certainty…that Kinney possesses exclusive knowledge of the various matters at issue." Dkt. 110, at 5. This is still true. Jowers makes only two points regarding necessity of Kinney's testimony (neither of which indicates that Kinney is the exclusive source for that testimony). First, he says that Kinney has said he is the only person who drafted the contracts at issue in this case and, second, he says that Kinney has said he will serve as the 30(b)(6) witness for each of the Kinney entities. Beyond these two points, neither of which show that Kinney is the exclusive witness to any disputed fact, Jowers simply argues, without authority, that Kinney has "blurred the lines" between counsel and client sufficiently to justify his disqualification. This part of Jowers's argument does not even address the relevant test and should therefore be ignored.

**A. Contract interpretation is a matter for the Court and Jowers was a second witness to the signing and negotiation of the contracts to which he is a party.**

Jowers first argues that "Kinney's exclusive knowledge of the drafting" of the agreements at issue in this lawsuit is enough to show Kinney is a necessary witness. Dkt. 254, at 4. But the drafting and negotiation of the contracts is not an issue before the Court as factfinder, and it likely never will be. Interpretation of unambiguous contracts is a matter of law for the Court, not a matter of factual dispute. *Texas, v.*

*American Tobacco Co.*, 463 F.3d 399, 406 (5th Cir. 2006) (applying Texas law). Both sides acknowledge the contracts exist and were signed by both parties. Assuming, *arguendo*, that "the drafting" of the agreements remains an issue at trial, Jowers also was present when the agreements were negotiated, making him a second witness for any disputed fact about those events.[1] Thus, Kinney is not a witness with "exclusive knowledge" of a matter likely to be before the Court and therefore should not be disqualified on this basis.

### B. Serving as a company's 30(b)(6) witness does not make Kinney a necessary witness at trial with exclusive knowledge of anything.

Jowers next points to the fact that Kinney has said that he intends to serve as the 30(b)(6) witness for the Kinney entities. In his first attempt at disqualifying Kinney, Jowers took the opposite approach. There, Jowers said that he faced prejudice if the Court did not disqualify Kinney because the Kinney Entities might try to "prevent Kinney from testifying as their Rule 30(b)(6) deponent on account of his role as counsel." Dkt. 100, at 10. Now that the Kinney Entities have said they will present Kinney as their 30(b)(6) witness, Jowers says that the choice somehow makes Kinney "necessary" at the trial of the case. Dkt. 254, at 8. It is difficult to understand why Jowers would try this argument both ways, because neither approach is apposite. Jowers does not attempt to show what specific testimony from the Kinney Entities' 30(b)(6) witness will be "exclusive testimony" of Kinney for which there is no second witness. And Jowers cites no authority for the concept that the choice of 30(b)(6)

---

[1] To the extent that Jowers seeks to argue that he had no role in negotiating the agreements to which he was a party, the Court has already found that they were negotiated by him, or that he had the opportunity to do so. Dkt. 196, at 6 ("the fact that Jowers 'was not an active attorney at the time,' does not mean that he did not have the benefit of his prior legal training and experience.").

witness makes a difference either way. Indeed, in the rare instance where litigants have made the argument Jowers makes now, it appears that the argument has failed. *See, e.g., Natural Resources Defense Council v. Co. of Dickson*, No. 3:08-0229, at *6-7 (M.D. Tenn. Dec. 20, 2010) ("Defendants in their filing have failed to identify any specific fact or opinion with respect to which Ms. Kyle [the 30(b)(6) witness and counsel] is likely to be a necessary witness at trial. On this record, the undersigned Magistrate Judge finds that defendants have failed to demonstrate any basis for disqualifying Ms. Kyle as counsel for NRDC at trial."). The result should be no different here, especially before the Kinney Entities' 30(b)(6) witness has even been presented for deposition.

## C. Jowers cites no authority for accelerating this determination instead of deciding at the final pretrial conference.

Jowers seeks an immediate disqualification of Kinney despite having no answer to the Court's observation in its prior order on disqualification that *Boettcher v. N. Tr., N.A.*, is controverted by "contrary and compelling authority from the *Boettcher* court's jurisdiction…that allows necessary-witness attorneys to perform 'behind the scenes' roles and testify at bench trials." Dkt. 110, at 6 (citing *Landmark Graphics Corp., a subsidiary of Halliburton Co. v. Seismic Micro Tech., Inc.*, No. CIVA H-06-1790, 2007 WL 735007, at *7 (S.D. Tex. Jan. 31, 2007)). *Boettcher* dealt with a conflict situation in which a very specific set of fact questions were before the Court related to oral conversations between a decedent's estate planning attorney and a trust company shortly before the client's death. Not once in his renewed motion does Jowers even attempt to distinguish *Landmark* to establish that Kinney should be disqualified from serving as trial counsel as well as from performing "behind the scenes" work. Dkt. 110, at 7. As the Court previously signaled, even if Kinney's status as "necessary" were

established, determining whether Kinney can serve as trial counsel would be the next stage of the analysis. Dkt. 110, at 7. Since Jowers last attempted to have Kinney disqualified, the Court has ruled that trial will be before the Court. Dkt. 196. With a bench trial, disqualification of Kinney as trial counsel, let alone for pretrial purposes, would not be necessary even if Kinney were a necessary witness.

### D. "Intimate involvement" with the witnesses in this case, even if present, is not enough to warrant disqualification of counsel.

Jowers next seeks to make the point, again resting on (mis-) interpretation of *Boettcher*, that Kinney's "intimate involvement" with witnesses and facts (even ones that are wholly irrelevant to this case, for which there would be multiple witnesses) warrants his immediate disqualification. In doing so, Jowers appears to base his argument loosely on the "public suspicion" rationale detailed in *Boettcher*, and he turns away completely from the factors in the test enunciated by the Fifth Circuit. Dkt. 254, at 9-12. As the Court has already observed, "the Fifth Circuit previously discounted the importance of the public suspicion rationale generally, noting that it can cut both ways: 'preservation of a popular faith in the judicial system is a primary consideration,' but '[w]hen, for purely strategic purposes, opposing counsel raises the question of disqualification, and subsequently prevails, public confidence in the integrity of the legal system is proportionately diminished.'" Dkt. 110, at 6 (citing *F.D.I.C. v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1316 (5th Cir. 1995)). Even assuming, *arguendo*, that there were "abuses" during depositions resulting from counsel's dual role, Jowers would have other remedies aside from disqualifying opposing counsel. For example, to the extent that the questioning of a witness is overly burdensome or harassing, the witness can terminate the deposition and seek a protective order. There is no authority for the concept that

the remedy would be disqualification of opposing counsel. Therefore, the points made in Jowers's brief on pages 9-12 are largely irrelevant; nevertheless, Jowers raises questions about Kinney's behavior in the depositions of Peter Gutensohn, Renee Sommers, and Alexis Lamb, so the Kinney Entities will address those questions briefly.

In his deposition of Peter Gutensohn, which occurred December 9, 2020, Jowers's counsel spent significant time developing testimony from Mr. Gutensohn about how Kinney had been an unfair and dishonest employer toward Mr. Gutensohn in the ten-plus years Mr. Gutensohn worked for the Kinney Entities. REK Decl., at ¶3. On cross examination, in addition to establishing that Mr. Gutensohn had prior felony convictions and was currently on Jowers's payroll, Kinney simply asked questions to obtain Mr. Gutensohn's admission that he had never been pursued for past draw balances. *Id.* at ¶4. Jowers now asserts that these questions amounted to a threat by Mr. Kinney to sue Mr. Gutensohn for those draw balances. To the contrary, the cross examination established that Mr. Gutensohn did not recall any threats to seek recovery of the past draws. Dkt. 254, at 10 ("You told me flat out you considered it uncons— uncollectible and we're [sic] not going to pursue it."). No threats were made at the deposition, nor have any threats to sue Mr. Gutensohn for back draws ever been made by the Kinney Entities against Mr. Gutensohn. REK Decl., at ¶5. Even if Mr. Gutensohn were under threat of suit, which he is not, this would not be a basis for disqualification of counsel.

Along the same vein, Jowers next asserts that Kinney's role representing the Kinney Entities' accountant, Renee Sommers, in her Rule 45 deposition, constituted abuse of his position as counsel. Dkt. 254, at 11. Jowers seems to assert that Kinney

should not have been permitted to instruct Ms. Sommers to assert her privilege not to reveal attorney-client communications. In the example Jowers cites, Mr. Tauler asks Ms. Sommers about what she had been told by her attorney, Kinney, who then objects based on privilege. "Generally, 'disclosure of any significant portion of a confidential communication waives the privilege as to the whole.'" *Grigson v. Farmers Grp., Inc.*, 1:17-CV-00088-LY, at *4 (W.D. Tex. Aug. 12, 2019) (citing *Nguyen v. Excel Corp.*, 197 F.3d 200, 208 (5th Cir. 1999). Considering the danger of waiver of privilege had Kinney permitted Ms. Sommers to answer questions about what her attorney had told her, any other attorney for Ms. Sommers would presumably also have also instructed Ms. Sommers not to answer a question like the one Jowers cites. Moreover, as Kinney told Mr. Tauler at the deposition, if Jowers believes that the assertions of attorney-client privilege by Ms. Sommers at her deposition was improper, then the remedy for that would be a motion to compel the testimony in question. Dkt. 254, at 60, lines 24-25. Two months after that deposition, Jowers has not filed such a motion. [2]

Finally, Jowers asserts that Kinney should be disqualified because questions asked of Alexis Lamb, who was deposed December 16, "were designed to leverage [Kinney's] unique position," and because those questions and any other efforts made on behalf of the Kinney Entities by Kinney have been "designed…to cause discomfort." Motion, Dkt. 254, at 12. Again, even if this were true, it would not be sufficient to warrant disqualification of Kinney as counsel. As to the substance of the allegations,

---

[2] The Court has already ruled that the efforts Jowers made to compel Ms. Sommers to produce the same documents he had already obtained from MWK were "abusive, and unwarranted." Dkt. 236, at 14. Since the questions Mr. Tauler was asking at the time Kinney objected were related to identifying and obtaining production from Ms. Sommers of those same documents, any such motion to compel would presumably have been denied.

Ms. Lamb testified that she is a partner of Legis Ventures (HK) Company Limited, and that her monthly salary is paid by Jowers. REK Decl., at ¶6. As to her specific "discomfort," Jowers alleges the deposition was too long at six hours and certain questions of Ms. Lamb were humiliating to her. Regarding the deposition length, this was largely because Jowers's counsel made the first 4 hours of the deposition period difficult, necessitating a hearing before the Court to stop his improper objections. Dkt. 235. Regarding any humiliation Ms. Lamb allegedly felt about being cross-examined, Ms. Lamb was making allegations that she had felt harassed or objectified by Kinney's comments to her approximately a decade prior while working for Kinney Recruiting Limited. REK Decl., at ¶6. On cross examination, it was clear that Ms. Lamb had never told anyone about these allegations at the time the events allegedly occurred, not even her own mother. *Id*. This was normal cross examination of a witness about her allegations. If Ms. Lamb or her counsel had disagreed, they could have sought a protective order. This is not a basis to seek disqualification of opposing counsel.

## CONCLUSION

Jowers has made clear that he does not like the fact that Kinney is able to provide the Kinney Entities with some of the legal services needed to prosecute this case, even before trial, while Jowers must exclusively leave the legal work to outside counsel. Dkt. 246, at 23 ("…[Kinney] would represent himself and not pay legal fees, and I would be bankrupted by legal fees…"). The renewed motion lacks anything new that would show that Kinney is a necessary witness with exclusive knowledge of matters in dispute. The Court should deny the renewed motion again, holding that Kinney may appear for pretrial matters and that a determination regarding

appearance at trial will be made at the pretrial conference. To the extent that the Court should disagree and is inclined to grant Jowers the relief he seeks, in whole or part, the Kinney Entities request that the Court explicitly designate Kinney as a Qualified Person under the protective order to see AEO-designated material so that Jowers will not be able to obstruct review of documents he is presently redesignating by Kinney.

Dated: January 18, 2021

Respectfully Submitted

/s/ Robert E. Kinney
Robert E. Kinney
Texas State Bar No. 00796888
Robert@KinneyRecruiting.com

**Robert E. Kinney**
824 West 10th Street, Suite 200
Austin, Texas 78701
Tel: (512) 636-1395

Raymond W. Mort, III
Texas State Bar No. 00791308
raymort@austinlaw.com

THE MORT LAW FIRM, PLLC
100 Congress Ave, Suite 2000
Austin, Texas 78701
Tel/Fax: (512) 865-7950

ATTORNEYS FOR PLAINTIFF AND
COUNTER-DEFENDANTS