## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | |
|---|---|
| **MWK RECRUITING, INC.**<br>    **Plaintiff,**<br>v.<br>**EVAN P. JOWERS, YULIYA**<br>**VINOKUROVA, ALEJANDRO VARGAS,**<br>**and LEGIS VENTURES (HK) COMPANY**<br>**LIMITED (aka Jowers / Vargas),**<br>    **Defendants.** | **Civil Action No. 1:18-cv-00444** |
| **EVAN P. JOWERS**<br><br>    **Counterclaimant,**<br><br>v.<br><br>**MWK RECRUITING, INC., ROBERT E.**<br>**KINNEY, MICHELLE W. KINNEY,**<br>**RECRUITING PARTNERS GP, INC.,**<br>**KINNEY RECRUITING LLC, COUNSEL**<br>**UNLIMITED LLC, and KINNEY**<br>**RECRUITING LIMITED**<br><br>    **Counter-defendants.** | |

### EVAN P. JOWERS'S OPPOSITION TO PLAINTIFF AND COUNTER-DEFENDANTS MOTION FOR PARTIAL SUMMARY JUDGMENT

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................ii

I.    INTRODUCTION ....................................................................................................1

II.   RESPONSE TO STATEMENT OF UNDISPUTED MATERIAL FACTS ...................3

III.  LEGAL STANDARD .............................................................................................5

IV.  ARGUMENT .........................................................................................................5

      A.   None of the Claims are Time-Barred ..................................................................5

           1.   The Kinney Entities Do Not Meet their Burden of Demonstrating Conclusively when Jowers's Counterclaims Accrued ...........................................5

           2.   All of Jowers Counterclaims Relate Back to the Original Complaint............6

           3.   Jowers's Counterclaims Accrued in 2016....................................................7

      B.   A Genuine Dispute of Fact Exists as to Jowers's Breach of Contract Claims .......8

           1.   Jowers's Unpaid Office Expenses ................................................................8

           2.   Jowers's Unpaid Bonuses ............................................................................9

           3.   Retroactive Reduction of Jowers's Commissions .........................................9

      C.   Jowers's Equitable Claims................................................................................11

           1.   A Genuine Dispute of Material Fact Exists as to Jowers's Claim for Usury ....................................................................................................................11

           2.   A Genuine Dispute of Material Fact Exists as to Jowers's Promissory Estoppel Claim ...................................................................................................11

           3.   A Genuine Dispute of Material Fact Exists as to Jowers's Unjust Enrichment Claim ...............................................................................................13

V.    CONCLUSION ....................................................................................................14

DECLARATION OF ROBERT TAULER.............................................................................15

CERTIFICATE OF SERVICE ..............................................................................................19

## <u>**TABLE OF AUTHORITIES**</u>

<u>Cases</u>

*2 BB Energy LP v. Devon Energy Production Company LP*, No. 3:07-CV-0723-O, 2008
WL 2164583 (N.D. Tex. May 23, 2008)................................................................................1

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986) ..................................................................5

*Ashe v. Corley,* 992 F.2d 540 (5th Cir. 1993)................................................................................2

*Cardner v. Home Depot U.S.A., Inc.,* 561 F. Supp. 2d 640 (E.D. Tex. 2006) ...............................1

*Castenada v. Flores,* No. 5:05-CV-0129, 2007 WL 1671742 (S.D. Tex. June 8, 2007)...............1

*Goldberg v. Craig (In re Hydro Action, Inc.),* 341 B.R. 186 (Bankr. E.D. Tex. 2006).................2

*KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746 (Tex. 1999).........5

*Mazzola v. Lowe's Home* Ctr., No. 1:19-CV-00469-TH, 2020 WL 6553964 (E.D. Tex. Oct.
20, 2020).............................................................................................................................2

*Royal Surplus Lines Insurance Company v. Brownsville Independent School District,* 404 F.
Supp. 2d 942 (S.D. Tex. 2005) ...........................................................................................1

*Seureau v. ExxonMobil Corp.*, 274 S.W.3d 206 (Tex. App.—Houston [14th Dist.] 2008) ...........5

*Songcharoen v. Plastic & Hand Surgery Assocs., P.L.L.C.,* 561 Fed. App'x 327
(5th Cir. 2014) ....................................................................................................................6

*St. Paul Mercury Insurance Co. v. Williamson*, 224 F.3d 425 (5th Cir. 2000).............................2

*Taylor v. Dolgencorp of Tex., Inc.,* No. 6:18-CV-00179-ADA, 2020 WL 1902540 (W.D.
Tex. Jan. 7, 2020)...........................................................................................................1, 2

*Tolan v. Cotton*, 572 U.S. 650 (2014)...........................................................................................5

*Trautmann v. Cogema Mining, Inc.,* No. 5:04-CV-117, 2007 WL 1577652 (S.D. Tex. May
30, 2007).............................................................................................................................1

*W. Power, Inc. v. Transamerican Power Prods.*, 316 F. Supp. 3d 979 (S.D. Tex. 2018) .............5


<u>Statutes</u>

Fla. Stat. § 95.051(1)(f)................................................................................................................13

Fla. Stat. § 95.11 ......................................................................................................................13

Fla. Stat. § 95.11(2)(b) ...............................................................................................................6

Rules

Fed. R. Civ. P. 13(a) ...................................................................................................................13

Fed. R. Civ. P. 56(a) .....................................................................................................................5

Fed. R. Civ. P. 56(c)(1) ................................................................................................................2

Tex. R. Civ. P. 166a(i) ...................................................................................................................1

Evan P. Jowers ("Jowers" or "Defendant") opposes Plaintiff and Counter-defendants MWK Recruiting, Inc., Robert E. Kinney, Recruiting Partners GP, Inc., Kinney Recruiting LLC, Counsel Unlimited LLC, and Kinney Recruiting Limited ("Plaintiffs" or "Kinney Entities") motion for partial summary judgment (the "Motion")(Dkt. 251.)

## I.   INTRODUCTION

As a threshold matter, Jowers notes that the Motion is in substance a state-court "no evidence" motion for summary judgment, since no supporting facts are provided.   A "no-evidence motion for summary judgment . . . is a pleading that may be filed in state court, but not federal court." *See* TEX. R. CIV. P. 166a(i); *2 BB Energy LP v. Devon Energy Production Company LP*, No. 3:07-CV-0723-O, 2008 WL 2164583, at *12 (N.D. Tex. May 23, 2008)(citing *Casteneda v. Flores,* No. 5:05-CV-0129, 2007 WL 1671742, at *2-3 (S.D. Tex. June 8, 2007)) (a no evidence motion for summary judgment is only available in the Texas state courts); *Royal Surplus Lines Insurance Company v. Brownsville Independent School District,* 404 F. Supp. 2d 942, 948 (S.D. Tex. 2005)("the concept of a 'no evidence' summary judgment neither accurately describes federal law nor has any particular import in . . . federal summary judgment procedure."); *Trautmann v. Cogema Mining, Inc.,* No. 5:04-CV-117, 2007 WL 1577652, at *3 (S.D. Tex. May 30, 2007)("[I]t is an inescapable deduction of controlling case law that strict adherence to the federal [summary judgment] standard, and only the federal standard, is the correct approach."); *Taylor v. Dolgencorp of Tex., Inc.,* No. 6:18-CV-00179-ADA, 2020 WL 1902540 at *2 (W.D. Tex. Jan. 7, 2020) The Court held that "[b]ecause there is no federal analog to Texas's no-evidence summary judgment motion, the Court's decision is not based on those grounds."; *Cardner v. Home Depot U.S.A., Inc.,* 561 F. Supp. 2d 640, 643 (E.D. Tex. 2006)("A no evidence motion for summary judgment is only available in the Texas state courts.").

The Motion should be considered under FRCP 56, since "[s]ummary judgment in federal court is governed by federal procedural rules." *Taylor v. Dolgencorp of Tex., Inc.*, No. 6:18-CV-00179-ADA, 2020 WL 1902540 at *2 (W.D. Tex. Jan. 7, 2020). Under FRCP 56, the motion should be denied on its face since it does not meet the substantive requirement of citing materials supporting the facts asserted.  Specifically, FRCP 56(c)(1) provides:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) ***showing that the materials cited*** do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact. (emphasis added).

Put another way, a motion for summary judgment should be denied when the moving brief, as here, consists of only conclusory statements that the record lacks evidence as to the elements of a claim. See *St. Paul Mercury Insurance Co. v. Williamson*, 224 F.3d 425, 440 (5th Cir. 2000); *Ashe v. Corley,* 992 F.2d 540, 543 (5th Cir. 1993); *Goldberg v. Craig (In re Hydro Action, Inc.),* 341 B.R. 186, 194 (Bankr. E.D. Tex. 2006)("While federal law clearly contemplates summary judgment in circumstances where there is truly no evidence of an essential element . . . the party moving for summary judgment must make some showing that evidence on an essential point is wholly lacking . . . .").

In *Mazzola v. Lowe's Home* Ctr., the Court found defendants failed to meet its burden on a similar "no evidence" summary judgment motion brought in federal court, holding, "[i]t is not enough for [defendant] to say that [plaintiff] has no evidence" where defendants do not point to any depositions, affidavits, or the like to demonstrate an absence of evidence. *Mazzola v. Lowe's Home* Ctr., No. 1:19-CV-00469-TH, 2020 WL 6553964 at *3 (E.D. Tex. Oct. 20, 2020). Here, the motion does not include, let alone cite to any evidence in the record, and should be denied on

that basis. However, in an abundance of caution, Jowers will provide evidence to support denial of the motion pursuant to FRCP 56.

## II.    RESPONSE TO STATEMENT OF UNDISPUTED MATERIAL FACTS

UNDISPUTED MATERIAL FACT NO. 1: Recruiting Partners GP, Inc., Kinney Recruiting LLC, Kinney Recruiting HK, and MWK did not contract with or promise Jowers that they would pay him a bonus for 2015 or 2016.

RESPONSE: Disputed.  (Declaration of Robert Tauler ["Tauler Dec."] ¶ 11, Ex. J.)

UNDISPUTED MATERIAL FACT NO. 2: There is no writing evidencing a contract or promise to pay Jowers a bonus for 2015 or 2016 by Recruiting Partners GP, Inc., Kinney Recruiting LLC, Kinney Recruiting HK, and MWK.

RESPONSE: Disputed. (Tauler Dec. ¶ 11, Ex J.)

UNDISPUTED MATERIAL FACT NO. 3: The Jowers Agreement allowed Jowers's employer the unilateral ability to prospectively change his commission rates.

RESPONSE: Objection:  Unintelligible.  To the extent Kinney contends that Kinney has the right to change how much it pays for sales commission after the work has been done to earn the commission, this is disputed, since it would render the contract illusory since it would not obligate Kinney to pay anything in exchange for the work of its employees.

UNDISPUTED MATERIAL FACT NO. 4: From 2011 onward, Jowers's commission schedule was never changed by Kinney, Kinney Recruiting LLC, Kinney Recruiting HK, or MWK.

RESPONSE: Disputed.  Kinney changed commissions arbitrarily.  (Declaration of Evan P. Jowers ["Jowers Dec."], ¶ 2-3.)  Kinney also changed the commission on the Hui Zhu commission from 70%, to 100%, to 0%, while this case was pending.  (Compare Tauler Dec., Exhs. I, Q, & R.)

UNDISPUTED MATERIAL FACT NO. 5: The Jowers Agreement permitted his employer to unilaterally determine, prior to a placement having been made, Jowers's percentage credit for any placement.

RESPONSE: Objection: Unintelligible. Disputed that it is lawful for an employer to pay an employee arbitrarily (or not at all) "unilaterally" despite the parties having a contract dictating the terms of payment.

UNDISPUTED MATERIAL FACT NO. 6: At no time did Kinney, Recruiting Partners GP, Inc., Kinney Recruiting LLC, Kinney Recruiting HK, and MWK change Jowers's percentage credit for a placement after the placement had been made.

RESPONSE: Disputed. Kinney has changed the commission Jowers is entitled to on the Hui Zhu placement three times *while this case has been pending*. (Compare Tauler Dec., Exhs. I, Q, & R.)

UNDISPUTED MATERIAL FACT NO. 7: Kinney, Kinney Recruiting LLC, Kinney Recruiting HK, or MWK paid all authorized business expenses submitted by Jowers.

RESPONSE: Disputed. Kinney's CPA testified that living expenses paid by the company were actually a "rent loan" that converted to a 17% loan after Jowers resigned (Tauler Dec. ¶ 8, Ex. G, Deposition of Renee Sommers at 163:8-17, 165:6-15.)

UNDISPUTED MATERIAL FACT NO. 8: At no time did MWK, Kinney, or Counsel Unlimited ever charge interest on any loan in excess of the maximum amount allowed under Texas law.

RESPONSE: Disputed.

UNDISPUTED MATERIAL FACT NO. 9: Kinney, Recruiting Partners GP, Inc., Kinney Recruiting LLC, Kinney Recruiting HK, and MWK never made a promise to Jowers in which his reliance was foreseeable, reasonable, and was to his detriment.

RESPONSE: Disputed. (Tauler Dec. ¶ 3, Ex. B;. ¶ 12, Ex. K; ¶ 4, Ex. C; ¶ 13, Ex. L); (Jowers

Dec. ¶ 2-5.)

## III.    LEGAL STANDARD

A party may move for summary judgment, identifying each claim or defense - or the part

of each claim or defense—on which summary judgment is sought. The court shall grant

summary judgment if the movant shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law. FRCP 56(a).

A material fact is in "genuine dispute" when the record contains evidence sufficient to

support the non-moving party's view of a material fact such that a judge or jury is required to

resolve the parties' different versions as to that disputed fact. *Anderson v. Liberty Lobby, Inc.,*

477 U.S. 242, 249–50 (1986).  To determine if a dispute about a material fact is genuine, the trial

court must not weigh the evidence and instead must draw all reasonable inferences in the non-

moving party's favor. *Tolan v. Cotton*, 572 U.S. 650, 655–59 (2014) (per curiam).

## IV.    ARGUMENT

### A.    <u>None of the Claims are Time-Barred.</u>

### 1. The Kinney Entities Do Not Meet Their Burden of Demonstrating Conclusively When Jowers's Counterclaims Accrued.

"A defendant who seeks summary judgment on the basis of limitations must conclusively

prove when the plaintiff's cause of action accrued." *Seureau v. ExxonMobil Corp.*, 274 S.W.3d

206, 226 (Tex. App.—Houston [14th Dist.] 2008) (citing *KPMG Peat Marwick v. Harrison*

*County Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999)); *W. Power, Inc. v. Transamerican*

*Power Prods.*, 316 F. Supp. 3d 979, 987 (S.D. Tex. 2018). The Motion makes no such effort,

seemingly arbitrarily choosing the date Jowers' counterclaims were pled – the latest conceivable

date.  Kinney does not seek dismissal as much as he asks the Court to set a date that the statute of limitations should apply, such that some facts within Plaintiffs chosen date would be considered by the Court at trial, and others would not. (Dkt. 251 at 6-7.)  However, Kinney has done nothing to demonstrate why his chosen date, August 19, <u>2019,</u> should govern.

Kinney's chosen date comes over two years after the Kinney Entities filed their original verified complaint dated March of 2017, and over a year after Jowers made his first appearance in this case, removing his verified complaint to this Court on May 25, 2018. There is no basis in reason or law for Kinney's contention that the statute of limitations should be based on the date of his choosing, and none is set forth in the moving papers.

**2.      All of Jowers's Counterclaims Relate Back to the Original Complaint.**

Since Jowers's contract claims related to the same subject matter as Kinney's contract claims, they all relate back to the filing of Plaintiffs' complaint. *Songcharoen v. Plastic & Hand Surgery Assocs.*, *P.L.L.C.,* 561 Fed. App'x 327, 340 (5th Cir. 2014) (recognizing compulsory counterclaims relate back to filing of the complaint). At minimum, the counterclaims should relate back to Jowers removal of the action to this court and motions to dismiss in 2018.  Any rule to the contrary would discourage early dismissals since a defendant who did not want litigation would nonetheless be forced to put their counterclaims forward right away.

Leaving this aside, Kinney improperly uses the Texas statute of limitations for the contract claims, but the Court has stated repeatedly that Florida law applies to the contract claims. (Dkt. 229 at 19; Dkt. 87, at 10 n.7.) The Florida statute of limitations for breach of contract is five years. (Fla. Stat. § 95.11(2)(b)).

### 3.      Jowers's Counterclaims Accrued in 2016.

None of the above analysis makes an impact on Plaintiffs statute of limitations defense, since Jowers's claims all arose in December 2016, when he was told unequivocally by the Kinney Entities Accountant, Renee Sommers ("Ms. Sommers") *before he resigned* that there was all of his loans had been paid back. (Tauler Dec. ¶ 2, Ex. A) ["Yes, I think the remaining regular bonus and Hui Xu commission will just cover the remaining balance, might be a few hundred short."]). As detailed further herein, Jowers only learned that Kinney Entities would try to enforce the 2006 Employment Agreement, *after he resigned*. (Jowers Dec. ¶ 4.)

There was no reason for Jowers to believe that the 2006 Employment Agreement ("2006 Agreement"), over a decade old, governed the parties' conduct, because Jowers and Kinney Entities entered into a new contract when Jowers moved to Hong Kong in June of 2015 ("Hong Kong Contract."). (Tauler Dec. ¶ 3,Ex. B) The Hong Kong Contract was between Jowers and the Hong Kong Entity, called "Kinney Recruiting Limited."  (Tauler Dec. ¶ 4, Ex. C.) The Hong Kong Contract provided for a new commission split of 45% of the first $75,000 "net cash in" and 50% of the excess over $75,000. *Id.* Jowers was paid under this new commission structure set forth in the Hong Kong Contract in 2015 and 2016. (Tauler Dec. ¶ 5, Ex. D.) The Hong Kong Contract's commission structure departed from the structure in the 2006 Agreement, which provided for incremental 5% increase in percentage every $75,000 up to $300,0000 of "net cash in" where Jowers was entitled to 65% commission for every placement. (Tauler Dec. ¶ 6, Ex. E at 2.) In exchange for the decrease in Jowers's commission, Kinney Entities agreed to pay for Jowers's lodging and other work related expenses.  Kinney Entities did in fact pay for Jowers's lodging after Jowers moved to Hong Kong. (Tauler Dec. ¶ 7, Ex. F.) However, Jowers subsequently came to learn that the amount paid by Kinney for his lodging was in reality a "hotel

loan," that was accruing 17% interest. (Jowers Dec. ¶ 3.) The amounts paid for business expenses were only booked as a loan on December 31, 2016, two weeks after Jowers resigned. (Tauler Dec. ¶ 8, Ex. G, Deposition of Renee Sommers at 164:1-165:15 [Kinney "only did that when he quit."])

**B.  A Genuine Dispute of Fact Exists as to Jowers's Breach of Contract Claims.**

**1.      Jowers's Unpaid Office Expenses.**

Although Jowers's first claim is styled as a claim for "office expenses," it is more properly considered a claim for unpaid expenses, since it seeks reimbursement for "all of his work-related expenses in Hong Kong," including housing costs. (Dkt. 135 at ¶ 58.)  Jowers asserts that work related expenses should have been paid per the terms of the Hong Kong Contract, however, instead, after he left the employ of the Kinney Entities, he discovered that there was a "hotel loan" that was added to the 17% revolving loan:

> Q. So you had advanced some housing costs for him?
> A. Correct.
> Q. And the amount of those -- is this staying at the Four Seasons?
> A. Yes.
> Q. In Hong Kong?
> A. Yes.
> Q. And that was $30,000 exactly?
> A. No. That was the amount we made interest free. I don't know what it was exactly.
> ***
> Q. Okay.
> Q. So this $30,000 you said is from a totally different loan, right?
> A. It's part of his -- I don't know what you mean.
> Q. Well, you said it was part of an interest free loan, correct?
> A. Yes.
> Q. So why is it appearing on this loan, which is a 17 percent loan?
> A. He only did that when he quit.

(Tauler Dec. ¶ 8, Ex. G, Deposition of Renee Sommers at 163:8-17, 165:6-15.)

Plainly, Ms. Sommers admission that Jowers's work related travel expenses all became 17% "loans" the moment Mr. Jowers quit means that the claim for travel expenses did not arise

until on or around December 16, 2016.  For his part, Mr. Jowers contends that he was never

made aware that work-related travel expenses would convert into a loan when he quit. (Jowers

Dec. ¶ 3.)  Mr. Jowers was never informed that work related travel expenses would be treated in

this manner by his former employer at any time. (Jowers Dec. ¶ 3.)  In fact, Mr. Jowers was told

that he did not owe any money before he quit. (Jowers Dec. ¶ 3)(Tauler Dec. ¶ 2, Ex. A.)

> **2.    Jowers's Unpaid Bonuses.**

The Kinney Entities contend that no evidence exists to support Jowers's claim for unpaid

bonuses. This is not so. Internal communications between Robert Kinney and Ms. Sommers

show that Jowers was never paid his commissions for 2015 ($13,777) or 2016 ($18,677).

(Tauler Dec. ¶ 9, Ex H.) The communications are dated December 13, 2016 – three days before

Jowers resigned. *Id.*  Further, Plaintiffs produced spreadsheets in this action showing that they

were also never credited to any loans due. (Tauler Dec. ¶ 10, Ex I.)  As such, a genuine dispute

as to a material fact exists as to Jowers's unpaid bonuses from 2015 and 2016.

> **3.    Retroactive Reduction of Jowers's Commissions**

Like the bonuses, Kinney simply changed his mind as to what was due to Jowers after he

resigned. Most egregiously, Jowers was owed $47,806 for the placement of a candidate named

Hui Zhu when he left the firm, according to Robert Kinney himself.  (Tauler Dec. ¶ 11, Ex. J.)

Kinney's accountant, Renee Sommers, informed Jowers that the Hui Zhu commission would

cover the remaining balance of Jowers' then outstanding loans, again, two days before he

resigned. (Tauler Dec. ¶ 2, Ex. A.)  However, after Jowers resigned, Jowers was only credited

with 70% of the placement fee.  (Tauler Dec. ¶ 10, Ex I.)

When questioned, about the discrepancy, Ms. Sommers' provided the following

remarkable explanation:

Q.· · So why did you only pay him 70 percent for the Hui Zhu placement?
A.· · Because that should be income to him in 41,000, taxes would be withheld,
what would remain is the 70 percent that you can apply to --
Q.· · Well, what happened to the remaining 30 percent?
A.· · It would technically go to taxes.
Q.· · Well, did you ever pay him that money?
A.· · No.
Q.· · Why not?· How's he supposed to pay taxes with it if you don't give it to
him?
A.· · I don't know.
(Tauler Dec. ¶ 8, Ex. G, Deposition of Renee Sommers at 161:3-161:14.)

This alone is sufficient to a genuine dispute as to a material fact exists as to how much in

commission Mr. Jowers should have been paid in commission for at least one candidate.

The truth is that none of Mr. Jowers's commissions were consistent with the original

terms of Jowers's employment.  The below chart identifies in the second column the amount of

commissions Mr. Jowers would have been owed under the commission split contained in the

2006 Agreement, Kinney seeks to enforce.  The second column is the commission payments

actually received by Mr. Jowers. (Tauler Dec. ¶ 16, Ex. O.) The last column shows the difference

between the two. *Id*.

| Year | Commission Earned Under 2006 Agreement | Commission Actually Received | Difference |
|------|----------------------------------------|------------------------------|------------|
| 2014 | $914,020 | $396,767 | $(517,253) |
| 2015 | $1,057,617 | $657,449 | $(400,168) |
| 2016 | $872,477 | $519,785 | $(352,692) |
| **Total** | **$6,169,236** | **$3,678,593** | **$(1,270,113)** |

Thus, if the Court were to find that the 2006 Agreement was enforceable, Jowers should

get the benefit of what he was owed under that agreement.

Based on the foregoing, summary judgment should be denied on these counterclaims.

**C.   Jowers's Equitable Claims.**

**1.     A Genuine Dispute of Material Fact Exists as to Jowers's Claim for Usury.**

Plaintiff claims that Jowers has no or insufficient evidence to support that any loan

agreement is usurious. (Dkt. 251 at 10.) Plaintiffs, however, fail to cite the applicable usury law.

Further, Plaintiffs fail to identify what interest was actually charged on every loan to Jowers.

Since Plaintiffs do not identify the necessary facts (interest actually charged on Jowers's loans),

and fail to cite to the applicable usury law (the maximum amount of interest allowed by law),

this argument fails.

Based on the foregoing, Plaintiffs argument fails, and summary judgment should be

denied on this counterclaim.

**2.     A Genuine Dispute of Material Fact Exists as to Jowers's Promissory Estoppel Claim.**

Jowers's promissory estoppel claim is based on promises made by Kinney to obtain a

work visa for Jowers in 2015.  Jowers moved to Hong Kong in June 2015.  (Tauler Dec. ¶ 3, Ex.

B.)  Kinney initiated the paperwork for Mr. Jowers's visa on June 13, 2016.  (Tauler Dec. ¶ 12,

Ex. K at 15.)  While Mr. Jowers was in Hong Kong awaiting his visa to be processed, Mr.

Kinney repeatedly indicated that a visa was forthcoming, by providing the Hong Kong

authorities with the necessary paperwork, including the Hong Kong Contract. (Tauler Dec. ¶ 12,

Ex. K at 13)  ("Do you need an original signature from me or can you sign and use our company

chop?")  Importantly, Hong Kong Contract had a non-solicitation clause limited to six months,

and provided sole jurisdiction to the courts of Hong Kong, including the Labour Tribunal.

(Tauler Dec. ¶ 4, Ex. C.)

Mr. Kinney also made false representations that his signature on the visa forms (the only

remaining item needed) was forthcoming, including on August 21, 2015 ("Ok. Next week.")

(Tauler Dec. ¶ 12, Ex. K at 7); September 7, 2015 ("Is an electronic signature on the employment documents sufficient?") *Id.* at 5. In October, Mr. Jowers sent Kinney no less than four emails asking for a status update and demonstrating increasing concern regarding his continued work without a visa. ("Without a work visa I shouldn't really be here in HK this long. I am without health insurance also since I left US.") *Id.* at 2. In November 2015, Kinney continued to say that a Visa was forthcoming, but that he was "looking into lots of stuff", and that it would take time. *Id.* at 1.

Mr. Jowers continued to believe that a work visa was forthcoming well in 2016, when he sent Mr. Kinney an email with the subject line "Can we move forward with work visa next week?" to which Mr. Kinney responded, "Yeah let's get that taken care of." (Tauler Dec. ¶ 13, Ex. L.) Jowers reasonably believed that Kinney would follow through on his repeated promises, and that the Hong Kong Contract was operative. However, after Jowers resigned, Mr. Kinney asserted that there was no Hong Kong Contract, and that, in reality, the 2006 contract signed by Kinney Recruiting L.P. governed their relationship.

The Motion omits all of these facts, and asks the Court to start the statute of limitations from the date of Jowers's counterclaim, instead of the date of Kinney's initial lawsuit regarding the same facts, where Kinney stated, under oath: "By the end of 2015, Jowers began agitating for Kinney to transfer him to the employment of MWK Recruiting's Hong Kong subsidiary, Kinney Recruiting Limited, and to sponsor his residency permit in Hong Kong, but he still had not been able to save any money, while the cost of maintaining his lifestyle had continued to spiral upward.") (Dkt. 1-2 at ¶ 30.) Jowers's promissory estoppel claim is therefore compulsory counterclaim, contrary to Plaintiffs assertions otherwise, because it arises out of the same

transaction or occurrence that is the subject matter of the opposing party's claim. Fed. R. Civ. P. 13(a). Moreover, it is clear that disputed facts exist that should be resolved by a finder of fact.

As such, the Motion should be denied as to the promissory estoppel claim.

### 3. A Genuine Dispute of Material Fact Exists as to Jowers's Unjust Enrichment Claim.

Jowers's unjust enrichment claim is similarly a compulsory counterclaim, contrary to Plaintiffs assertions otherwise, because it arises out of the same transaction or occurrence that is the subject matter of the opposing party's claim. Fed. R. Civ. P. 13(a). Specifically, Jowers's unjust enrichment claim arises out of the Kinney Entities unjust lending practices that were arbitrarily applied without reference to any contract, including:

- Placing some of Jowers's income into a "slush fund" in 2015 (Tauler Dec. ¶ 8, Ex. G, Deposition of Renee Sommers at 37:14-40:5.)

- Keeping 30% of the Hui Zhu placement for itself without telling Jowers about it. (Tauler Dec. ¶ 8, Ex. G, Deposition of Renee Sommers at 160:19-161:14.)

- Failing to abide by the Truth in Lending Act, which requires that lenders who make over 25 loans in the year provide detailed disclosures (https://www.fdic.gov/regulations/laws/rules/6500-3200.html#fdic65001026.1).

- Failing to register as a lender in Texas or the City of Austin (Tauler Dec. ¶ 17, Ex. P.)

Also, since the claims are related to the parties' contracts, the unjust enrichment claim would be subject to a four year statute of limitations under Florida law. Fla. Stat. § 95.11. Florida law also provides, as to the loan claims, that the running of the time under any statute of limitations is tolled from the payment of any part of the principal or interest of any obligation or liability founded on a written instrument. Fla. Stat. § 95.051(1)(f).

As such, the Motion should be denied as to Jowers's unjust enrichment claim.

## V.   CONCLUSION

For these reasons, the Court should deny the motion for partial summary judgment.

DATED: January 27, 2021                 Respectfully submitted,

By:   */s/ Robert Tauler*
          Robert Tauler, Esq.
          Texas State Bar No. 24122095
          rtauler@taulersmith.com
          Tauler Smith LLP
          100 Congress Ave., Suite 2000,
          Austin, TX 78701
          Telephone: (512) 456-8760

          **COUNSEL FOR DEFENDANT
          AND COUNTERCLAIMANT
          EVAN P. JOWERS**

## DECLARATION OF ROBERT TAULER

I, Robert Tauler, hereby declare as follows:

1.      I am counsel of record for Evan P. Jowers in this action.  I have personal knowledge of the facts stated in this declaration, and if called as a witness, could and would testify competently to the truth of the facts as stated herein.

2.      Attached hereto as Exhibit A is a true and correct copy of emails between Evan P. Jowers and Renee Sommers, dated December 16, 2016.

3.      Attached hereto as Exhibit B is a true and correct copy of a press release entitled, "Kinney's Evan Jowers Now Permanently Based In Hong Kong," published by Above The Law on June 17, 2015.

4.      Attached hereto as Exhibit C is a true and correct copy of a contract prepared by Kinney Recruiting Limited (the "Hong Kong Contract").

5.      Attached hereto as Exhibit D is a true and correct copy of Evan Jowers's Commission Spreadsheets for the years 2015 and 2016.

6.      Attached hereto as Exhibit E is a true and correct copy of an Associate Recruiter Employment Agreement entered into by Kinney Recruiting, L.P. and Evan P. Jowers, dated May 1, 2006.

7.      Attached hereto as Exhibit F is a true and correct copy of an email from Robert Kinney to Renee Sommers, dated September 22, 2015.

8.      Attached hereto as Exhibit G is a true and correct copy of excerpts from the Deposition of Renee Sommers, taken on November 9, 2020.

9.      Attached hereto as Exhibit H is a true and correct copy of emails between Robert Kinney and Renee Sommers, dated December 13, 2016.

10.     Attached hereto as Exhibit I is a true and correct copy of spreadsheets produced by Plaintiff in the present action, which include the change of commission credited for Hui Zhu.

11.     Attached hereto as Exhibit J is a true and correct copy of emails between Robert Kinney and Renee Sommers, dated December 13, 2016 through December 14, 2016.

12.     Attached hereto as Exhibit K is a true and correct copy of emails between Evan P. Jowers and Robert Kinney, dated October 12, 2015 through November 5, 2015.

13.     Attached hereto as Exhibit L is a true and correct copy of emails between Robert Kinney and Evan P. Jowers dated March 24, 2016.

14.     Attached hereto as Exhibit M is a true and correct copy of an email from Robert Kinney to Renee Sommers, dated March 23, 2015.

15.     Attached hereto as Exhibit N is a true and correct copy of an email from Robert Kinney to Renee Sommers, dated March 31, 2015.

16.     Attached hereto as Exhibit O is a chart showing the commission earned by Evan P. Jowers in the years 2014, 2015, and 2016 under the 2006 Agreement, the commission actually earned by Jowers in those three years, and the difference between those amounts.  My staff prepared this chart by the following steps:

**Commission Earned**

- For each year, the commission worksheet that Jowers received at the end of the year was used to create a new spreadsheet with just the placement fee and candidate name. Each year was listed on a separate tab.

- Once the list of candidates and placement fees were compiled, the cumulative commission fee percentage was calculated in accordance with the tiered commission structure set in Jowers's original agreement.

- After calculating the cumulative commission fee as each placement was made, the commission percentage for that placement was calculated based on Evan's original agreement.

- The earned commission for each placement was calculated by multiplying the placement fee and commission percentage.

- All earned commissions for a single year were summed up.

**Commission Received**

- These figures all came from Jowers's W2s.

**Difference**

- The Commission Received was subtracted from the from Commission Earned. Figures in parentheses are negative amounts, meaning Jowers was owed those balances.

17.     Attached hereto as Exhibit P is a true and correct copy of Chapter 4-12 (Registration of Credit Services Organizations and Credit Access Businesses) of the Austin, Texas City Code.

18.     Attached hereto as Exhibit Q is a true and correct copy of a table titled "Accounting for Loans to Evan Jowers from September 30, 2016-Present," produced by Plaintiff on January 26, 2021.

19.     Attached hereto as Exhibit R is a true and correct copy of a table titled "Accounting for Loans to Evan Jowers from September 30, 2016-Present," produced by Plaintiff as an exhibit to its Third Revised Initial Disclosures on January 12, 2021.


I declare under penalty of perjury under the laws of the United States that the foregoing is

true and correct.  Executed at Los Angeles, California on January 27, 2021.

_/s/ Robert Tauler_____
Robert Tauler

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that, on January 27, 2021, a true and accurate copy of the foregoing document was served on all counsel of record via the Court's CM/ECF system.


         *<u>/s/ Robert Tauler    </u>*
         Robert Tauler