# EXHIBIT P

CHAPTER 4-12. - REGISTRATION OF CREDIT SERVICES ORGANIZATIONS AND CREDIT ACCESS BUSINESSES.

ARTICLE 1. - GENERAL PROVISIONS.

§ 4-12-1 - DEFINITIONS.

In this chapter:

(A) CERTIFICATE OF REGISTRATION means a certificate of registration issued by the director under this chapter to the owner or operator of a credit services organization or a credit access business.

(B) CONSUMER means an individual who is solicited to purchase or who purchases the services of a credit services organization or a credit access business.

(C) CREDIT ACCESS BUSINESS means a credit services organization that obtains for a consumer or assists a consumer in obtaining an extension of consumer credit in the form of a deferred presentment transaction or a motor vehicle title loan.

(D) CREDIT ACCESS BUSINESS FEES mean the fees charged by a credit access business pursuant to Section 393.602, Texas Finance Code.

(E) CREDIT SERVICES ORGANIZATION means a person who obtains an extension of consumer credit for a consumer as described in Section 393.001(3)(B), Texas Finance Code, or a person who provides advice or assistance to a consumer with regard to obtaining an extension of consumer credit.

(F) DEFERRED PRESENTMENT TRANSACTION has the same meaning as defined in Section 393.601 of the Texas Finance Code.

(G) DIRECTOR means, for purposes of this chapter, the director of the department designated by the City Manager to enforce and administer this chapter.

(H) EXTENSION OF CONSUMER CREDIT has the same meaning as defined in Section 393.001 of the Texas Finance Code.

(I) EXTENSION OF CONSUMER CREDIT TRANSACTION means the entirety of the agreements made by a consumer to obtain an extension of consumer credit, and includes any loan agreement between the lender and the consumer, and any fee agreement between the credit services organization or credit access business and the consumer.

(J) MOTOR VEHICLE TITLE LOAN has the same meaning as defined in Section 393.601 of the Texas Finance Code.

(K) OWNER means, for the purposes of this chapter, any person who directly or indirectly owns a credit services organization or a credit business. For publicly traded companies, the term means any person who directly or indirectly owns or controls 10% or more of the outstanding shares of stock in the credit services organization or credit access business.

(L) PERSON means, for purposes of this chapter, any individual, corporation, organization, partnership, association, financial institution, or any other legal entity, but does not include the City.

(M) STATE LICENSE means a license to operate a credit access business issued by the Texas Consumer Credit Commissioner under Chapter 393 of the Texas Finance Code.

(N) VALUABLE CONSIDERATION means the consideration described in Section 393.001(3), Texas Finance Code. Valuable consideration includes an immediate payment and any future payments in exchange for an extension of consumer credit as described in Section 393.001(3)(B), Texas Finance Code, or advice or assistance with regard to an extension of consumer credit as described in Section 393.001(3)(B), Texas Finance Code.

*Source: Ord. 20110818-075;Ord. No. 20200521-028, Pts. 2, 3, 6-1-20;Ord. No. 20200730-004, Pts. 2, 3, 8-10-20.*

§ 4-12-2 - PURPOSE.

The purpose of this chapter is to protect the welfare of the citizens of the City by monitoring and regulating credit services organizations and credit access businesses to reduce the harm caused by abusive and predatory lending practices.

*Source: Ord. 20110818-075;Ord. No. 20200521-028, Pts. 2, 4, 6-1-20;Ord. No. 20200730-004, Pt. 4, 8-10-20.*

§§ 4-12-3 through 4-12-9 - (RESERVED).

ARTICLE 2. - REGISTRATION OF CREDIT ACCESS BUSINESSES.

§ 4-12-10 - REGISTRATION REQUIRED.

(A) A person may not operate or conduct business as a credit services organization or as a credit access business without a valid certificate of registration.

(B) A certificate of registration is required for each credit services organization or each credit access business at each location where the credit services organization or credit access business operates or conducts business.

Source: Ord. 20110818-075; Ord. No. 20200521-028, Pt. 4, 6-1-20; Ord. No. 20200730-004, Pt. 4, 8-10-20.

§ 4-12-11 - REGISTRATION APPLICATION.

(A) To obtain a certificate of registration for a credit services organization or a credit access business, a person must submit an application on a form provided for that purpose to the director. The application must contain the following:

(1) the business or trade name, street address, mailing address, facsimile number, and telephone number of the credit services organization or credit access business;

(2) the names, street addresses, mailing addresses, and telephone numbers of all owners of the credit services organization or the credit access business and other persons with a financial interest in the credit services organization or credit access business, and the nature and extent of each person's interest in the credit services organization or credit access business;

(3) a copy of a current, valid state license held by the credit access business pursuant to Section 393.603, Texas Finance Code;

(4) a copy of an unexpired, valid state registration statement submitted by the credit services organization pursuant to Section 393.101, Texas Finance Code, including any updates filed as required by Section 393.102, Texas Finance Code;

(5) a copy of a current, valid certificate of occupancy showing that the credit services organization or the credit access business complies with City Code Title 25 (*Land Development Code*);

(6) a non-refundable application fee that is set by separate ordinance; and

(7) if a publicly traded company, the name of the registered agent for service of process in Texas.

(B) A credit services organization or credit access business shall notify the director in writing at least 10 days before making any material change in its business operations. A material change includes changes to the information contained in the application for a certificate of registration, any change of address, business ownership or equity interest, store location, type of loan products offered, operating status, bankruptcy filings, closure of a store, and any change in the status of the state license held or the state registration statement submitted by the credit services organization or credit access business that has applied for or that currently holds a certificate of registration.

Source: Ord. 20110818-075; Ord. No. 20151217-073, Pt. 1, 12-28-15; Ord. No. 20200521-028, Pts. 2, 4, 6-1-20; Ord. No. 20200730-004, Pts. 2, 4, 8-10-20.

## § 4-12-12 - ISSUANCE AND DISPLAY OF CERTIFICATE OF REGISTRATION; PRESENTMENT UPON REQUEST.

(A) The director shall issue to a credit services organization or a credit access business a certificate of registration for each location upon receiving a completed application under Section 4-12-11 (*Registration Application*).

(B) A certificate of registration issued under this section must be conspicuously displayed to the public in the credit services organization or the credit access business. The certificate of registration must be presented upon request to the director or the director's designee for examination.

*Source: Ord. 20110818-075;Ord. No. 20200521-028, Pts. 2, 4, 6-1-20;Ord. No. 20200730-004, Pts. 2, 4, 8-10-20.*

## § 4-12-13 - EXPIRATION AND RENEWAL OF CERTIFICATE OF REGISTRATION.

(A) A certificate of registration expires on the earlier of:

(1) one year after the date of issuance; or

(2) if the certificate of registration is held by a credit access business, on the date of expiration, revocation, or termination of the credit access business's state license.

(B) A certificate of registration may be renewed by making application in accordance with Section 4-12-11 (*Registration Application*). A credit services organization or credit access business shall apply for renewal at least 30 days before the registration expires.

*Source: Ord. 20110818-075;Ord. No. 20200521-028, Pt. 4, 6-1-20;Ord. No. 20200730-004, Pt. 4, 8-10-20.*

## § 4-12-14 - NONTRANSFERABLE.

A certificate of registration for a credit services organization or a credit access business is not transferable.

*Source: Ord. 20110818-075;Ord. No. 20200521-028, Pt. 4, 6-1-20;Ord. No. 20200730-004, Pt. 4, 8-10-20.*

## § 4-12-15 - REVOCATION OF CERTIFICATE OF REGISTRATION.

(A) The director may revoke a certificate of registration if the director determines that a person:

(1) made a false statement, in writing or orally, related to an application for a certificate of registration;

(2) used a device, subterfuge, or pretense to evade the requirements of this chapter; or

(3) engaged in serious or repeated violations of this chapter.

(B) The director must give notice of the revocation to the credit services organization or the credit access business by regular mail and by certified mail, return receipt requested, at the address on the application for a certificate of registration. If the certified letter is returned as undeliverable, the director must post the notice of revocation on the front door of the location of the credit services organization or the credit access business that is the subject of the revocation.

(C) Not later than the 10th day after the credit services organization or the credit access business receives notice of the revocation by the director, the credit services organization or the credit access business may file a notice of appeal with the director. The notice of appeal must be in writing, describe the decision being appealed, and state the reason why the revocation should be reversed. Failure to timely file the notice of appeal results in the revocation becoming final.

(D) If a credit services organization or a credit access business timely files a notice of appeal under this section, the revocation is stayed.

(E) The city manager or the city manager's designee shall act as a hearing officer and hear the appeal. The Texas Rules of Evidence do not apply at a hearing under this section.

(F) The hearing officer shall hold the hearing not later than the 10th day after the date the notice of the appeal is filed and shall render a written decision not later than 30 days after the hearing.

(G) The hearing officer shall make a decision based on the preponderance of the evidence submitted and may affirm, reverse, or modify the action of the director.

(H) The decision of the hearing officer is final.

Source: Ord. No. 20151217-073, Pt. 2, 12-28-15 ; Ord. No. 20200521-028, Pts. 2, 4, 6-1-20; Ord. No. 20200730-004, Pts. 2, 4, 8-10-20.

§§ 4-12-16 through 4-12-19 - (RESERVED).

ARTICLE 3. - MISCELLANEOUS REQUIREMENTS FOR CREDIT SERVICES ORGANIZATIONS AND CREDIT ACCESS BUSINESSES.

Footnotes:
--- (1) ---
**Editor's note—** Ord. No. 20200521-028 , Pt. 5, effective June 1, 2020, repealed the former Art. 3, §§ 4-12-20—4-12-25, and enacted a new Art. 3 as set out herein. The former Art. 3 pertained to miscellaneous requirements for credit access businesses and derived from Ord. 20110818-075; Ord. No. 20151217-073, Pts. 3—6, 12-28-15 ; Ord. No. 20200521-028 , Pt. 2, 6-1-20.

§ 4-12-20 - MAINTENANCE OF RECORDS.

(A) A credit services organization and a credit access business shall maintain a complete set of records of all extensions of consumer credit transactions:

(1) that the credit services organization or credit access business arranged or obtained for a consumer; and

(2) on which the credit services organization or credit access business provided advice or assistance to a consumer.

(B) A complete set of records must include the following information:

(1) the name and address of the consumer;

(2) the principal amount of cash actually advanced;

(3) the fees charged to arrange or obtain an extension of consumer credit;

(4) the fees charged to advise or assist a consumer in obtaining an extension of consumer credit;

(5) the documentation used to establish a consumer's income under Section 4-12-22 (*Restrictions on Extensions of Consumer Credit Transactions*);

(6) a copy of each written agreement, between the credit services organization or credit access business and a consumer, evidencing an extension of consumer credit including, but not limited to, any refinancing or renewal agreement with the consumer;

(7) whether any part of the extension of consumer credit transaction has been refinanced or renewed and, if any part of the extension of consumer credit transaction has been refinanced or renewed, the number of refinances or renewals made; and

(8) a copy of each written agreement between the lender and consumer.

(C) A credit access business shall also maintain, and file with the director, copies, in a format prescribed by the director, of all annual reports, quarterly reports, and all revisions and updates to those reports filed with the Texas Consumer Credit Commissioner as required by Chapter 393, Texas Finance Code. The reports, revisions, and updates must be submitted to the City within five business days of being submitted to the Texas Consumer Credit Commissioner.

(D) The records required to be maintained under this section:

(1) must be retained for at least three years; and

(2) to the extent not filed with the director, made available for inspection and copying by the City upon request during usual and customary business hours.

Source: Ord. No. 20200521-028 , Pt. 5, 6-1-20; Ord. No. 20200730-004 , Pt. 5, 8-10-20.

§ 4-12-21 - CONSUMER RIGHT TO COPY OF AGREEMENT.

(A) A credit services organization and a credit access business shall give to the consumer, upon request, a printed copy of a signed contract, and any other document the credit services organization or credit access business requires a consumer to sign or acknowledge reading.

(B) All contracts and other documents that a credit services organization or credit access business requires the consumer to sign or acknowledge reading shall be in the language in which the contract was negotiated and explained to the consumer.

Source: Ord. No. 20200521-028, Pt. 5, 6-1-20; Ord. No. 20200730-004, Pt. 5, 8-10-20.

§ 4-12-22 - RESTRICTIONS ON EXTENSIONS OF CONSUMER CREDIT TRANSACTIONS.

(A) A credit services organization or credit access business shall not obtain for a consumer, or advise or assist a consumer in obtaining, a cash advance, under an extension of consumer credit transaction, that exceeds more than 20 percent of the consumer's gross monthly income.

(B) A credit services organization or credit access business shall not obtain for a consumer, or advise or assist a consumer in obtaining, a cash advance in the form of a motor vehicle title loan that exceeds the lesser of:

(1) three percent of the consumer's gross annual income; or

(2) 70 percent of the retail value of the motor vehicle.

(C) A credit services organization or credit access business shall use a paycheck, bank statement, IRS Form W-2 from the previous tax year, the previous year's tax return, a signed letter from an employer, or other similar documentation establishing income to determine a consumer's income.

(D) A credit services organization or credit access business that obtains for a consumer or advises or assists a consumer in obtaining an extension of consumer credit shall by the terms of the extension of consumer credit transaction:

(1) require payment of the total amount of the extension of consumer credit transaction, including any principal, interest, fees, valuable consideration, credit access business fees, and any other charges or costs, in four or fewer payments; and

(2) reduce by at least 25 percent per payment the total amount of the extension of consumer credit transaction, including any principal, interest, fees, valuable consideration, credit access business fees, and any other charges or costs.

(E) A credit services organization or credit access business shall not refinance or renew any part of an extension of consumer credit transaction, unless the total amount of the extension of consumer credit transaction, including any principal, interest, fees, valuable

(F) A credit services organization or credit access business that refinances or renews an extension of consumer credit transaction under Subsection (E):

(1) may not refinance or renew the extension of consumer credit transaction more than three times; and

(2) the minimum payment amount due to refinance or renew such extension of consumer credit transaction must reduce by at least 25 percent the total amount of the extension of consumer credit transaction, including any principal, interest, fees, valuable consideration, credit access business fees, and any other charges or costs, such that the total amount owed by the consumer is paid in full after a maximum of three refinances or renewals.

(G) For purposes of this section, an extension of consumer credit transaction that is made to a consumer within seven business days after a previous extension of consumer credit transaction has been paid by the consumer constitutes a refinancing or renewal.

Source: Ord. No. 20200521-028, Pt. 5, 6-1-20; Ord. No. 20200730-004, Pt. 5, 8-10-20.

§ 4-12-23 - REFERRAL TO CONSUMER CREDIT COUNSELING.

(A) A credit services organization and a credit access business shall provide a list of non-profit agencies that provide financial education, training programs, or cash assistance programs to each consumer who seeks to obtain or seeks advice or assistance on obtaining an extension of consumer credit. The list must be on a form approved by the director and contain information regarding extensions of consumer credit.

(B) A credit services organization and a credit access business must conspicuously display a poster, or other similar document, that contains information regarding extensions of consumer credit, as prescribed by the director. The organization or business must display the poster or similar document so that it is clearly visible to each consumer who enters the facility.

Source: Ord. No. 20200521-028, Pt. 5, 6-1-20; Ord. No. 20200730-004, Pt. 5, 8-10-20.

§ 4-12-24 - RESTRICTIONS ON NON-DEFERRED PRESENTMENT OR MOTOR VEHICLE TITLE LOAN EXTENSIONS OF CONSUMER CREDIT.

(A) This section applies to an extension of consumer credit transaction that a credit services organization obtains or arranges for a consumer or provides advice or assistance to obtain and that is not a deferred presentment transaction or a motor vehicle title loan.

(B) The sum of all valuable consideration, fees, or other charges owed by the consumer to the credit services organization may not exceed 0.1 percent per day of the outstanding balance of the extension of consumer credit.

## § 4-12-25 - COMPLIANCE REQUIRED.

A person may not knowingly use a device, subterfuge, or pretense to evade the application of this chapter.

Source: Ord. No. 20200521-028, Pt. 5, 6-1-20; Ord. No. 20200730-004, Pt. 5, 8-10-20.

## 4-12-26 - OFFENSE AND PENALTY.

(A) A person who violates any section of this chapter commits a Class C misdemeanor punishable by a fine not to exceed $500.

(B) Except as provided in Subsection (C), each day that a violation occurs is a separate offense.

(C) Each extension of consumer credit transaction is a separate offense if the extension of consumer credit transaction violates:

   (1) Section 4-12-22 (*Restrictions on Extensions of Consumer Credit Transactions*); or

   (2) Section 4-12-24 (*Restrictions on Non-Deferred Presentment or Motor Vehicle Title Loan Extensions of Consumer Credit*).

(D) The penalties provided for in Subsection (A) are in addition to any other remedies available under City ordinance or state law.

(E) Except for an offense under Section 4-12-25 (*Compliance Required*), a culpable mental state is not required for a violation of this chapter and need not be proved.

Source: Ord. No. 20200521-028, Pt. 5, 6-1-20; Ord. No. 20200730-004, Pt. 5, 8-10-20.