# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

**MWK RECRUITING, INC,**

   Plaintiff

   v.

**EVAN P. JOWERS,**

   Defendants

---

**EVAN P. JOWERS,**

   Counterclaimant

   v.

**MWK RECRUITING, INC.,
ROBERT E. KINNEY,
MICHELLE W. KINNEY,
RECRUITING PARTNERS GP, INC.,
KINNEY RECRUITING LLC,
COUNSEL UNLIMITED LLC, and
KINNEY RECRUITING LIMITED,**

   Counterdefendants

**Case No. 1:18-cv-00444-RP**

## PLAINTIFF/COUNTER-DEFENDANTS' RESPONSE TO JOWERS'S MOTION
## FOR SUMMARY JUDGMENT AND
## CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

## **Table of Contents**

TABLE OF AUTHORITIES ...........................................................................III

I.   INTRODUCTION ...................................................................................... 1

II.   THE 2012 REVOLVING LOAN AGREEMENT....................................... 2

A.   The 2012 Revolving Loan Agreement was a valid contract.................... 2

B.   Revolving Loan Promissory Note was a valid promissory note............. 3

C.   Statements by Renee Sommers regarding balances did not control. ................... 3

D.   Statements by Robert Kinney regarding loan balances were accurate; an accounting was provided to Jowers................................................................ 4

III.   THE 2006 EMPLOYMENT AGREEMENT ........................................ 4

A.   The 2006 Jowers Agreement was a valid and enforceable contract from the outset.................................................................................................... 5

B.   The 2006 Jowers Agreement did not become illusory simply because Jowers's commission structures were changed prospectively, in accordance with the contract. 5

C.   MWK is Entitled to Liquidated Damages ............................................. 7
   1.   Jowers waived any argument that the liquidated damages clause was an unenforceable penalty by failing to plead this affirmative defense. ...................... 7
   2.   Plaintiff's cross-motion for summary judgment regarding liquidated damages. 9
   3.   The liquidated damages clause is valid under Florida law............................. 9

IV.   MWK'S TRADE SECRET CLAIMS ARE AMPLY SUPPORTED BY ADMISSIBLE EVIDENCE ..................................................................... 11

A.   MWK has ample admissible evidence to identify its trade secrets. ................... 12

B.   Jowers's knew he obtained the information under circumstances giving rise to a duty to maintain its secrecy – and that is enough to show misappropriation. ......... 13

C.   Jowers caused damage to his employer through his trade secret misappropriation. ........................................................................................... 13

V.

SUFFICIENT SUMMARY JUDGMENT EVIDENCE SUPPORTS MWK'S CLAIM UNDER THE 2012 FORGIVABLE LOAN .................................................. 15

A.   The 2012 Forgivable Loan Agreement was a valid and enforceable agreement between Jowers and Recruiting Partners GP, Inc. ..................................................... 15

B.   The 2012 Forgivable Loan Promissory Note was a valid and enforceable promissory note ....................................................................................................... 15

C.   Jowers received the $50,000 loan; Jowers had notice of the debt, its payment terms, and its acceleration from the terms of the loan. ............................................. 16

VI.   CONCLUSION ............................................................................................... 18

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Aero Kool Corp. v. Oosthuizen*, 736 So.2d 25 (Fla.3d DCA 1999) ................................ 6

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ................................... 1

*Blankenship v. Robins*, 899 S.W.2d 236 (Tex.App.-Houston [14th Dist.] 1994, no writ)

................................................................................................. 3

*Bohnsack v. Varco, L.P.,* 668 F.3d 262 (5th Cir. 2012)................................................. 14

*Coastal Unilube, Inc. v. Smith*, 598 So. 2d 200 (Fla. Dist. Ct. App. 1992)................. 6

*Eskra v. Provident Life and Acc. Ins. Co.*, 125 F.3d 1406 (11th Cir. 1997) ................ 6

*Feldkamp v. Long Bay Partners, LLC*, 773 F. Supp. 2d 1273 (M.D. Fla. 2011).......... 7

*Glass Containers Corp. v. Miller Brewing Co.*, 643 F.2d 308 (5th Cir. 1981) ............. 8

*HIS Co. v. Stover*, 202 F. Supp. 3d 685 (S.D. Tex. 2016) ........................................... 13

*Home Ins. Co. v. Matthews,* 998 F.2d 305 (5th Cir. 1993)............................................. 8

*Hubbard v. Shankle*, 138 S.W.3d 474 (Tex. App.- Ft. Worth 2004, pet. denied) ........ 2

*Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*,

379 F.3d 293 (5th Cir. 2004) ..................................................................... 1

*Kahn v. Imperial Airport*, 308 S.W.3d 432 (Tex. App. 2010) ..................................... 17

*Knapp Shoes, Inc. v. Sylvania Shoe Mfg.,* 15 F.3d 1222 (1st Cir. 1994)...................... 8

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).................................... 1

*Management v. Miller,* 762 P.2d 763 (Colo. App. 1988) ............................................... 9

*Mandel v. Thrasher (In re Mandel)*, 578 F. App'x 376 (5th Cir. 2014) ...................... 14

*McLernon v. Dynegy, Inc.*, 347 S.W.3d 315 (Tex. App. 2011)...................................... 3

*Mid-Continent Cas. v. Global Enercom Mgmt*, 323 S.W.3d 151 (Tex. 2010)......... 2, 15

*Open Magn. Imag. v. Nieves-Garcia*, 826 So. 2d 415 (Fla. Dist. Ct. App. 2002) ......... 6

*Pace Commc'ns, Inc. v. Moonlight Design, Inc.,*31 F.3d 587 (7th Cir. 1994).............. 8

*Perkins v. Bank of Am.*, 602 F. App'x 178 (5th Cir. 2015)............................................ 2

*Pezold Air Charters v. Phoenix Corp.*, 192 F.R.D. 721 (M.D. Fla. 2000) ................... 5

*Princeton Homes, Inc. v. Virone,* 612 F.3d 1324 (11th Cir. 2010) ............................... 7

*Proudfoot Consulting v. Gordon*, 576 F.3d 1223 (11th Cir. 2009) .............................. 9

*Shumway v. Horizon Credit Corp.*, 801 S.W.2d 890 (Tex. 1991) ............................... 17

*Tasty Box Lunch Co. v. Kennedy,* 121 So.2d 52 (Fla.App. 1960)................................. 7

*Technip Offshore Contractors v. Williams Field Services*,

    Civil Action No. H-04-0096, 2006 WL 581273 (S.D. Tex. Mar. 7, 2006) ................. 8

*Univ. Computing Co. v. Lykes-Youngstown Corp.*, 504 F.2d 518 (5th Cir. 1974) ..... 14

*Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867 (5th Cir. 2013) .............................. 14

*Wright Seaton, Inc. v. Prescott*, 420 So. 2d 623 (Fla. Dist. Ct. App. 1982) ................ 7

**Statutes**

18 U.S.C. § 1839(3) ................................................................................................ 11, 12

18 U.S.C. § 1839(5) ..................................................................................................... 11

18 U.S.C. § 1839(6)(A) ................................................................................................ 11

Tex. Civ. Prac. & Rem. Code § 134A.002(2)............................................................... 11

Tex. Civ. Prac. & Rem. Code § 134A.002(6)......................................................... 11, 12

Tex. Civ. Prac. & Rem. Code § 134A.004(a)............................................................... 14

## I.    __INTRODUCTION__

Jowers does not assert that MWK[1] is unable to articulate (with competent admissible evidence) a genuine issue of material fact as to each element of its claims. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *see, Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004). Instead, he invites the Court to weigh up the facts of this case, the credibility of the witnesses, and the equities, and then pick a winner before trial. This is not a proper use for summary judgment. For each relevant factual assertion in Jowers's Motion for Summary Judgment (the "**Motion**"), MWK demonstrates with this response that it possesses admissible summary judgment evidence demonstrating that a genuine dispute exists. MWK further possesses and presents with this response admissible evidence as to each element of its claims. The Supreme Court has not authorized "trial on affidavits. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions…The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). With these principles in mind, and considering the summary judgment evidence presented, Jowers's limited attack on various elements of MWK's case must necessarily fail. Additionally, because Jowers has moved for summary judgment that a liquidated damages clause constitutes an unenforceable penalty when he failed to plead that defense, MWK cross-moves for summary judgment on the basis that the clause should be enforced as a matter of law.

---

[1] MWK Recruiting LLC, the original plaintiff in this case, has been converted into a corporation and merged with Counsel Holdings, Inc., effective January 1, 2019. (REK Decl., at ¶¶12-15). This brief refers to the Plaintiff as "MWK" for convenience.

II.    **THE 2012 REVOLVING LOAN AGREEMENT**

A.    **The 2012 Revolving Loan Agreement was a valid contract.**

The loans are governed by Texas law. (Order on Mot. Dismiss, Dkt. 87, at n. 15). A valid contract governed by Texas law requires an offer, an acceptance, a meeting of the minds, each of the parties' consent to the terms, and execution and delivery of the contract with the intent that it be mutual and binding. *Hubbard v. Shankle*, 138 S.W.3d 474, 481 (Tex. App.- Ft. Worth 2004, pet. denied). To establish breach of a contract under Texas law, a plaintiff must show "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained as a result of the breach." *Perkins v. Bank of Am.*, 602 F. App'x 178, 180 (5th Cir. 2015). Jowers does not contest that he signed the 2012 Revolving Loan Agreement as well as the 2012 Revolving Loan Agreement Promissory Note and the associated Security Agreement. (Jowers Decl., Dkt. 138-1, at ¶19). Jowers's signature evidences his consent to the terms of the agreement. *See*, *Mid-Continent Cas. v. Global Enercom Mgmt*, 323 S.W.3d 151, 157 (Tex. 2010) ("The execution of a contract includes the performance of all acts necessary to render it complete as an instrument."). On behalf of CU-LLC, Robert Kinney signed. (REK Decl., at ¶35). Jowers also does not contest that the contract was delivered, nor that he accepted advances under the 2012 Revolving Loan Agreement. These acts constitute mutual consideration, and the 2012 Revolving Loan Agreement is thus a binding contract. MWK is the assignee of the agreement and the note. (REK Decl., at ¶36). MWK alleges that Jowers breached the contract, resulting in damages in the form of unpaid indebtedness of $47,433.94 as of the date of his resignation. (REK Decl., at ¶51). Jowers has failed to repay the outstanding balance under the 2012 Revolving Loan Agreement. (REK Decl., at ¶51). Counsel Holdings, Inc., is the assignee of the 2012 Revolving Loan Agreement, and therefore the proper plaintiff in this case. (REK Decl., at ¶¶38, 9).

**B.      The 2012 Revolving Loan Promissory Note was a valid promissory note.**

Under Texas law, a plaintiff suing for recovery on a promissory note does not have to prove all essential elements of a breach of contract claim, but rather need only establish: "(1) there is a note, (2) the plaintiff is legal owner and holder, (3) the defendant is the maker, and (4) a certain balance is 'due and owing.'" *McLernon v. Dynegy, Inc.*, 347 S.W.3d 315, 324 (Tex. App. 2011) (citing *Blankenship v. Robins*, 899 S.W.2d 236, 238 (Tex.App.-Houston [14th Dist.] 1994, no writ). Jowers does not contest that the 2012 Revolving Loan Promissory Note exists, nor that he signed it, but even if he had contested these things, summary judgment evidence to the contrary exists. (REK Decl., at ¶39. Jowers also does not contest that Counsel Holdings, Inc., is the owner of the note. (REK Decl., at ¶¶38, 9. As is the case regarding the 2012 Revolving Loan Agreement, Jowers simply contests whether the balance sought by the plaintiff under the promissory note is correct. Jowers manages, at best, to demonstrate that a material question of fact remains as to the balance owed.

**C.      Statements by Renee Sommers regarding balances did not control.**

Jowers appears to assert that the balance owed is incalculable as a matter of law. Considering that the claim is based on a well-documented loan of money and that summary judgment evidence exists as to its balance, Jowers's argument lacks any merit. Renee Sommers, the MWK Entities' bookkeeper, admittedly did give Jowers an incorrect statement about the amount he owed when Jowers ambushed her on the morning he was to resign with a question about the balances remaining. (Sommers Decl., at ¶4). Ms. Sommers's off-the-cuff response – that the commissions Jowers expected would "just cover the remaining balance, might be a few hundred short" – was incorrect. (Sommers Decl., at ¶4). Her informal calculations on December 16, 2016, failed to consider $30,000 of principal that was owed on a separate, "zero-interest" loan. *Id.* The balance on that loan was an amount Jowers had confirmed in both September and October 2016.

(REK Decl., at 40). Ms. Sommers was clear that she was not including the "zero-interest" loan balance of $30,000 when she gave her response to Jowers on December 16, 2021, and that she had miscalculated regarding the 2012 Revolving Loan balance. (Sommers Decl., at ¶4). Ms. Sommers does not have and has never had the power to bind any of the MWK Entities. (Sommers Decl., at ¶2).

> **D.    Statements by Robert Kinney regarding loan balances were accurate; an accounting was provided to Jowers.**

Similarly, Jowers argues that, because MWK provided two possible versions of an accounting for the balance on the revolving loan during discovery, the Court should rule that neither is correct and Jowers is entitled to judgment as a matter of law that the balance owed is zero. Motion, at 4-6. This argument makes no sense. In fact, both versions of the accounting are correct. (REK Decl., at ¶50). Kinney explained at his deposition the basis for the difference in the two accountings: one version gives Jowers credit for a certain commission payment he would have otherwise been paid at his next payday, on December 31, 2016, had he not resigned. (REK Decl., at ¶44). The other does not give him that credit. *Id*. As Mr. Kinney stated, MWK's "intention is to give Mr. Jowers credit for that placement…The question is when he gets that credit." (Motion, at 6). Even if the Court determines that Jowers is entitled to the commission credit on the date it would have been paid had Jowers not been in breach of the 2006 Jowers Agreement, December 31, 2016, there will still be a balance owed under the 2012 Revolving Loan Agreement and the 2012 Revolving Loan Promissory Note. (REK Decl., at ¶51).

## III.    THE 2006 EMPLOYMENT AGREEMENT

Jowers argues for various reasons that the employment agreement he operated under for ten years was illusory and, indeed, did not constitute a contract at all. These assertions lack legal merit and are incapable of supporting summary judgment in Jowers's favor. MWK also disputes the facts alleged by Jowers.

**A.    The 2006 Jowers Agreement was a valid and enforceable contract from the outset.**

The 2006 Jowers Agreement is governed by Florida law. Dkt. 87, at n.12. "A contract is made under Florida law when the three elements of contract formation are present: offer, acceptance, and consideration." *Pezold Air Charters v. Phoenix Corp.*, 192 F.R.D. 721, 725 (M.D. Fla. 2000). Jowers admits that he signed the 2006 Jowers Agreement, accepting its terms. (Jowers Decl., Dkt. 266-2, at ¶12). He admits that he was employed until December 16, 2016. (Jowers Decl., Dkt. 266-2, at ¶14). On behalf of Recruiting Partners, L.P., d/b/a Kinney Recruiting LP, Robert Kinney also signed the contract. (REK Decl., at ¶2, 28). The contract has been validly assigned by the original employer to the plaintiff in this case. (REK Decl., at ¶¶13-15; 28-31). The contract was an employment relationship requiring payments of $3,000 per month (initially) to Jowers, plus commissions for placed candidates, as well as access to confidential information and other consideration, in exchange for Jowers's work as an associate recruiter exclusively for Kinney Recruiting, his agreement to keep certain information confidential, and certain restrictive covenants. (REK Decl., at ¶28, Exh. P2). Jowers specifically requested that the restrictive covenants be part of the agreement, in order to induce investment in him and to give his employer "peace of mind." (REK Decl., at ¶54). Thus, there was valid consideration for the contract.

**B.    The 2006 Jowers Agreement did not become illusory simply because Jowers's commission structures were changed prospectively, in accordance with the contract.**

Jowers does not contest whether he was paid as initially agreed in 2006 and 2007, or that he remained employed under the contract during that period. He simply asserts that the contract was "illusory" because Jowers's employer made "unilateral changes" to Jowers's sales compensation structure in 2008, 2009, and 2011. The 2006 Jowers Agreement permitted Jowers's employer to make changes to his compensation structure, prospectively, in its sole discretion.

(REK Decl., at ¶Exh. P2, ¶¶11.1; 5.1). As an initial matter, although entitled to change the compensation in its "sole discretion," if the change was not retroactive, MWK disputes whether the changes to Jowers's compensation structures he complains of were ever made without first obtaining agreement from Jowers. To the contrary, even though not required, in each case where there was a change, it was the result of discussion and agreement with Jowers, and there was a new benefit that accrued to Jowers as additional consideration. (REK Decl., at ¶¶56-63).

Even if the changes had been made unilaterally, and against Jowers's will, Jowers had the option to resign. He does not contest that his employer could also have terminated his employment at any time, subject to liability for payment for services rendered to the date of termination. Any argument that this undermines the consideration for the contract is meritless. "Where employment was a continuing contract terminable at the will of either employer or employee, the Florida Courts have held continued employment constitutes adequate consideration to support a contract." *Coastal Unilube, Inc. v. Smith*, 598 So. 2d 200, 201 (Fla. Dist. Ct. App. 1992); *see also*, *Open Magn. Imag. v. Nieves-Garcia*, 826 So. 2d 415, 417 (Fla. Dist. Ct. App. 2002) (citing *Aero Kool Corp. v. Oosthuizen*, 736 So.2d 25 (Fla.3d DCA 1999) (reversing denial of temporary injunction and enforcing non-compete agreement executed four years after employee's commencement of employment where court found legitimate business interest)); *Eskra v. Provident Life and Acc. Ins. Co.*, 125 F.3d 1406, 1413 (11th Cir. 1997). While Jowers's commission structures were changed occasionally, the changes were always prospective. (REK Decl., at ¶55). The last change was effective in 2011. (REK Decl., at ¶62). Jowers remained employed for more than five more years under that compensation structure. Thus, adequate consideration for the 2006 Jowers Agreement was present throughout the period of Jowers's employment.

Jowers's arguments regarding illusoriness make little sense for other reasons as well. "A contract is illusory under Florida law when 'one of the promises appears on its face to be so

insubstantial as to impose no obligation at all on the promisor-who says, in effect, 'I will if I want to.'" *Princeton Homes, Inc. v. Virone,* 612 F.3d 1324, 1331 (11th Cir. 2010). Jowers does not present evidence that he was not paid according to the 2006 Jowers Agreement for work he performed, but only that the amount he was to be paid for future placement activity changed from time to time. The changes to Jowers's compensation were always prospective, never retroactive. (REK Decl, at ¶55). This does not make the contract illusory. "If a contract provides for modification and the parties modify the contract in accord with the contract, no new and independent consideration [is] required to support the modification." *Feldkamp v. Long Bay Partners, LLC*, 773 F. Supp. 2d 1273, 1284 n.3 (M.D. Fla. 2011) (cleaned up). Florida courts hold that even in cases where mutuality of obligation is lacking at the outset of an employment relationship, such that a covenant not to compete might not be enforceable at the outset, once the employer has "completely performed its obligations" and the employee has been employed for a period, the lack of mutuality is cured. *See, Wright Seaton, Inc. v. Prescott*, 420 So. 2d 623, 627 (Fla. Dist. Ct. App. 1982). Particularly where employment was a continuing contract terminable at the will of either the employer or employee, the Florida Courts have held continued employment constitutes adequate consideration to support a contract. *Tasty Box Lunch Co. v. Kennedy,* 121 So.2d 52, 54 (Fla.App. 1960).

### C.     MWK is Entitled to Liquidated Damages

#### 1.     Jowers waived any argument that the liquidated damages clause was an unenforceable penalty by failing to plead this affirmative defense.

Jowers asserts, for the first time, that the liquidated damages provision in the Jowers Agreement constitutes an unenforceable penalty. Jowers did not assert this defense in any of his three amended answers and has waived the argument. Dkt. 90, 135, 237. Rather than plead this along with his other (eighteen) affirmative defenses, Jowers waited until after discovery had closed to raise the issue in the Motion. Now is too late.

Federal procedural law governs whether a particular defense is an affirmative defense that must be specifically pled, and the rules are strict. *See Glass Containers Corp. v. Miller Brewing Co*., 643 F.2d 308, 313 (5th Cir. 1981) (federal procedural law also applies in diversity actions) ("Since the requirement to plead an affirmative defense is a procedural rule, it is governed . . . by the Federal Rules."). Fed. R. Civ. P. 8(c) requires a party to plead all matters constituting an avoidance or affirmative defense. In a 2006 order, Judge Lee Rosenthal examined the authority in the Fifth Circuit regarding failure to plead that a liquidated damages clause constitutes an unenforceable penalty, holding unequivocally that the defendant "waived the defense that the liquidated-damages provision is unenforceable as an illegal penalty" where the defense was not in any of the defendant's responsive pleadings. *Technip Offshore Contractors v. Williams Field Services*, Civil Action No. H-04-0096, 2006 WL 581273, at *29 (S.D. Tex. Mar. 7, 2006) (also denying leave to file an amended answer after close of discovery because of potential for unfair surprise and prejudice). Other courts have come out the same. *Id.* at 27 (citing *Pace Commc'ns, Inc. v. Moonlight Design, Inc.,* 31 F.3d 587, 594 (7th Cir. 1994) (party asserting penalty clause defense bears burden of pleading and proving); *Knapp Shoes, Inc. v. Sylvania Shoe Mfg.,* 15 F.3d 1222, 1227 (1st Cir. 1994) (statutory provision limiting damages is an affirmative defense for purposes of FED. R. CIV. P. 8(c)). The fair notice pleading requirement is met only if the defendant "sufficiently articulated the defense so that the plaintiff was not a victim of unfair surprise." *Id.* (citing *Home Ins. Co. v. Matthews,* 998 F.2d 305, 309 (5th Cir. 1993). Despite pleading numerous other defenses based on the various agreements attached to the Second Amended Complaint, as well as an unconscionability defense as to the scope and duration of the restrictive covenants, not once did Jowers mention avoidance of the liquidated damages clause in his pleadings. This is not fair notice.

2. **Plaintiff's cross-motion for summary judgment regarding liquidated damages.**

Having failed to plead the affirmative defense he now asserts regarding the liquidated damages provision in the parties' 2006 Jowers Agreement, Jowers has failed to provide fair notice of his intention to assert that the provision is unenforceable as a penalty. The Court should grant summary judgment in MWK's favor and rule that the liquidated damages provision is enforceable as written.

3. **The liquidated damages clause is valid under Florida law.**

Even if the Court were to decide to consider Jowers's affirmative defense despite his failure to plead it, the liquidated damages clause in the 2006 Jowers Agreement is not an unenforceable penalty. *See, Management v. Miller,* 762 P.2d 763, 766 (Colo. App. 1988) (in a recruiting-firm case, construing the same measure of damages in a liquidated damages provision as that found in the 2006 Jowers Agreement, and rejecting an attack on it as an unenforceable penalty[2].").

Ascertaining damages in advance is always difficult in the employment context. *See, Proudfoot Consulting v. Gordon*, 576 F.3d 1223, 1243 n.23 (11th Cir. 2009) (noting, in a non-compete case with no liquidated damages clause in the contract, "[e]ven though plaintiffs have some leeway in estimating the amount of damages, calculating damages may still be difficult, which no doubt explains why many restrictive covenants have liquidated damages clauses."). The potential damages to be suffered by a recruiting company from breach of a restrictive covenant by a recruiter like Jowers included lost profits from candidates and clients whose business he might take, but also included other categories of damages. For example, there was the potential for loss of goodwill of clients and candidates who might not be placed by Jowers but whose longer-term interest in working with Jowers and sending referrals depended on Jowers's willingness to serve

---

[2] The *Management v. Miller* court also held that information regarding candidates was the employer's trade secret information. 762 P.2d at 765.

them in violation of his agreement. (REK Decl., at ¶¶75-76). Another cause for difficulty estimating costs of a breach in advance was the cost of long-term advertising contracts, which in some cases were devoted to promoting Jowers but could not be turned off quickly. (REK Decl., at ¶95). Further, company infrastructure built around a certain level of placement activity might not be able to be quickly reduced. (REK Decl., at ¶96). Finally, it was not clear how much the business might grow. (REK Decl., at ¶97).

The second part of the test is also easily passed. The flexible clause that the parties agreed to was not grossly disproportionate to the damages reasonably expected to follow from the breaches. The clause calls for payment "to the Company, upon demand, as liquidated damages and not as a penalty…any fee paid for services rendered in violation of" the restrictive covenants. (REK Decl., at ¶98). Some potential breaches would be accounted for by this formula and others would not. Further, the clause adjusts so that if magnitude of the breach is greater, the damages awarded will be greater. The damages that could potentially flow from breach of this covenant, as discussed above, were myriad and variable. (REK Decl., at ¶95-98). Some breaches might result in no payment to Jowers or an entity he assisted, and thus no potential for inclusion in a damages award, but those breaches could still be damaging. (REK Decl., at ¶99). Still, the clause was a compromise. (REK Decl., at ¶98). If Jowers chose not to breach the covenants, Robert Kinney expected he could be able to earn the bulk of any placement fees for candidates who were in process without paying commissions. (REK Decl., at ¶100). Appropriately, the quantum of damages calculated by the liquidated damages clause depended entirely on how much work Jowers would choose to do in violation of the restrictions. Jowers could have done a small amount of work in violation of his restrictions, or he could have left early, before his personal brand had grown, and this would have caused less damage to his employer. (REK Decl., at ¶101). Instead, he chose to cause the maximum harm he could cause, never honoring the restrictive covenants.

IV.   **MWK'S TRADE SECRET CLAIMS ARE AMPLY SUPPORTED BY ADMISSIBLE EVIDENCE**

Jowers has moved for summary judgment on the Plaintiff's trade secret claims, which are based on violations of the Federal Defend Trade Secrets Act and the Texas Uniform Trade Secrets Act. (2d Am. Compl., Dkt. 80, ¶¶ 136–54). Under both the DTSA and TUTSA, a trade secret is defined as information the owner has taken reasonable measures to keep secret and which derives independent economic value from not being generally known or readily ascertainable through proper means. Tex. Civ. Prac. & Rem. Code § 134A.002(6); 18 U.S.C. § 1839(3). Misappropriation under both statutes includes (1) "disclosure or use of a trade secret of another without express or implied consent by a person who . . . used improper means to acquire knowledge of the trade secret" and (2) "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means." Tex. Civ. Prac. & Rem. Code § 134A.002(3); 18 U.S.C. § 1839(5). "Improper means" include the "breach or inducement of a breach of a duty to maintain secrecy." Tex. Civ. Prac. & Rem. Code § 134A.002(2); 18 U.S.C. § 1839(6)(A).

Jowers does not contest the fact that he signed the 2006 Jowers Agreement, which contained confidentiality provisions the Court has already examined. (Order on Motion to Dismiss, Dkt. 87, at 22-23). Through discovery, MWK confirmed the allegations in the Second Amendment Complaint that Jowers disclosed confidential information regarding candidates to third parties. Specifically, Jowers sent, while still employed by Kinney Recruiting LLC, information about six candidates to Alejandro Vargas, a direct competitor. (REK Decl., at ¶65). Vargas then obliged Jowers by forwarding that information to law firms on behalf of the newly formed company. (REK Decl., at ¶65). The information sent by Vargas contained valuable information regarding the candidates which belonged to Kinney Recruiting. (REK Decl., at ¶¶69-74). In addition, MWK has

evidence that Jowers obtained confidential information about two other candidates and used that information to obtain interviews and job offers for both candidates while still employed. (REK Decl., at ¶66-68). Jowers communicated with clients and candidates using a private "yahoo.com" email address he controlled and explained to the client by email that he was "likely to launch [his] new company next week," so he was just "emailing temporarily from [his] personal yahoo account (while still at Kinney)." (REK Decl., at ¶66). These facts establish that Jowers knew that he was trading on valuable trade secrets of MWK when he improperly disclosed the information he had obtained during his employment to third parties.

### A.  MWK has ample admissible evidence to identify its trade secrets.

Under both the DTSA and TUTSA, a trade secret is defined as information the owner has taken reasonable measures to keep secret and which derives independent economic value from not being generally known or readily ascertainable through proper means. Tex. Civ. Prac. & Rem. Code § 134A.002(6); 18 U.S.C. § 1839(3). Consistent with the provisions in the 2006 Jowers Agreement, the MWK Entities have always maintained the confidentiality of their proprietary information. (REK Decl., at ¶81). Consistent with MWK's allegations at the pleading stage of this case, the MWK Entities have obtained admissible evidence of the misappropriated trade secrets. (REK Decl., at ¶¶65-74). Information regarding MWK's candidates who were actively seeking to change employer or were specifically planning to seek a change of employment while Jowers was working for Kinney Recruiting LLC was information that was not generally known or readily ascertainable by proper means. (REK Decl., at ¶76). Jowers's only argument to the contrary is the assertion (without authority) that confidential information he obtained while working for his employer, in the course and scope of his duties, was not "possessed or owned" by his employer, because he never put it in the Salesforce database. (Motion, at 17). As an employee of Kinney Recruiting, subject to an employment agreement and confidentiality clause and a contractual duty

to work as a recruiter only for Kinney Recruiting, Kinney Recruiting possessed all trade secrets Jowers possessed.

  **B.**  **Jowers's knew he obtained the information under circumstances giving rise to a duty to maintain its secrecy – and that is enough to show misappropriation.**

   Jowers argues, illogically, that a trade secret misappropriation plaintiff has the burden to show not only that the **disclosure** of the trade secret information was improper, but also that the original **acquisition** of that information by the defendant was also improper. (Motion, at 17-18). This argument is based on an improper reading of TUTSA, one which Judge Melinda Harmon analyzed and rejected in a recent, well-reasoned opinion. *HIS Co. v. Stover*, 202 F. Supp. 3d 685, 696 (S.D. Tex. 2016) (holding that a trade secret misappropriation plaintiff "need only allege facts that show [defendant] disclosed or used a trade secret which he knew was disclosed to him under circumstances giving rise to a duty to maintain its secrecy or limit its use."). This Court has already recognized that improper disclosure suffices. (Order on Mot. Dism., Dkt. 87, at 23). Jowers clearly knew that disclosure of the trade secret information he sent to Vargas and to his employer's clients from a private email address was improper, which is probably why he sent the messages from his private email address and, upon departing his employer's employment, was untruthful about the candidates whose information he had sent out. (REK Decl., at ¶82).

  **C.**  **Jowers caused damage to his employer through his trade secret misappropriation.**

   Jowers earned $555,499.23 in fees for the candidates whose confidential information he sent out from Kinney Recruiting, without permission, prior to his resignation. (REK Decl., at ¶82). Jowers admits that his new firm placed and received payment for "three of the six" candidates that he originally admitted sending to Alejandro Vargas prior to his resignation. (Motion, at 19). MWK has summary judgment evidence that two additional candidates Jowers sent out prior to his departure but did not originally identify were also placed. (REK Decl., at ¶¶66-68). Still, Jowers

argues that the burden MWK faces is to prove that MWK would have "actually" placed these candidates. Jowers cites no authority for this assertion, and it finds no support in the law. "Damages in misappropriation cases can take several forms: the value of plaintiff's lost profits; the defendant's actual profits from the use of the secret[;] the value that a reasonably prudent investor would have paid for the trade secret; the development costs the defendant avoided incurring through misappropriation; and a 'reasonable royalty.'" *Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 879 (5th Cir. 2013) (quoting *Bohnsack v. Varco, L.P.,* 668 F.3d 262, 280 (5th Cir. 2012)). "Damages need not be proved with great specificity. A flexible approach is applied to the calculation of damages in a misappropriation of trade secrets case. Where the damages are uncertain . . . we do not feel that the uncertainty should preclude recovery; the plaintiff should be afforded every opportunity to prove damages once the misappropriation is shown.'" *Mandel v. Thrasher (In re Mandel)*, 578 F. App'x 376, 21 (5th Cir. 2014) (quoting *Univ. Computing Co. v. Lykes-Youngstown Corp*., 504 F.2d 518, 539 (5th Cir. 1974)). Among other types of damages, MWK is entitled to actual damages for loss of goodwill, and lost profits. Unjust enrichment is also available. Tex. Civ. Prac. & Rem. Code § 134A.004(a) ("Damages can include both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not considered in computing actual loss."). Jowers received fees of $555,499.23 paid for the candidates placed, because of Jowers's misappropriate. The candidates sent out by Jowers during his employment to third parties, had they been sent out as Jowers was required to do under his contract, would have been placed by his employer. (REK Decl., at ¶83). MWK has summary judgment evidence indicating what Jowers was actually paid for the placements. (REK Decl., at ¶¶67, 82). Accordingly, MWK has sufficient evidence of its damages.

## V.   SUFFICIENT SUMMARY JUDGMENT EVIDENCE SUPPORTS MWK'S CLAIM UNDER THE 2012 FORGIVABLE LOAN

### A.   The 2012 Forgivable Loan Agreement was a valid and enforceable agreement between Jowers and Recruiting Partners GP, Inc.

Jowers does not contest that he signed both the 2012 Forgivable Loan Agreement and the 2012 Forgivable Loan Promissory Note. (Jowers Decl., Dkt. 138-1, at ¶13; Jowers Decl., Dkt. 266-2, at ¶13). Jowers's signature evidences his consent to the terms of the agreement. *See*, *Mid-Continent Cas.*, 323 S.W.3d at 157. Jowers also does not contest that the contract was delivered. The Motion now asserts that the MWK has not "produced admissible evidence that the $50,000 was ever paid to Jowers," calling into question whether performance was tendered. (Motion, at 20). But Jowers's declaration dated January 28, 2020, admits receipt of the money: "On the day that Kinney was to pay me my bonus in January 2012, Kinney pulled another bait-and-switch by reducing the amount to $50,000 and converting the 'bonus' into a 'Forgivable Loan'" (Jowers Decl., Dkt. 138-1, at ¶13). In any case, MWK has summary judgment evidence that Jowers did receive the money and it was a loan. (REK Decl., at ¶90). These acts constitute mutual consideration, and the 2012 Revolving Loan Agreement is thus a binding contract. Further, MWK has presented evidence that Jowers has not repaid the loan. (REK Decl., at ¶92). MWK has thus presented adequate summary judgment evidence of the contract. alleged that Jowers breached the contract, resulting in damages in the form of unpaid indebtedness.

### B.   The 2012 Forgivable Loan Promissory Note was a valid and enforceable promissory note.

Under Texas law, a plaintiff suing for recovery on a promissory note does not have to prove all essential elements of a breach of contract claim, but rather need only establish: "(1) there is a note, (2) the plaintiff is legal owner and holder, (3) the defendant is the maker, and (4) a certain balance is 'due and owing.'" *McLernon,* 347 S.W.3d at 324. Jowers does not contest that the 2012

Forgivable Loan Promissory Note exists, nor that he signed it, but even if he had contested these things, summary judgment evidence to the contrary exists. (REK Decl., at ¶86). Jowers also does not contest that Counsel Holdings, Inc., is the owner of the note. (REK Decl., at ¶¶10-11, 32-34). As is the case regarding the 2012 Forgivable Loan Agreement, Jowers simply contests whether the balance sought by the Plaintiff under the promissory note is correct and asserts that the loan arrangement was not fair because he should have received a "bonus" with no repayment terms. Jowers manages, at best, to demonstrate that a material question of fact remains as to the balance owed.

**C.**     **Jowers received the $50,000 loan; Jowers had notice of the debt, its payment terms, and its acceleration from the terms of the loan.**

The 2012 Forgivable Loan was a loan, not a bonus. (REK Decl., at ¶89). Despite his signature on the documents, Jowers claims he was "never informed that he owed money." (Motion, at 20). In fact, at the time of the forgivable loan arrangement was made, Jowers and Kinney discussed the terms of the loan in writing, including the fact that Jowers would have to repay part of the loan if he were to leave within nine years. (REK Decl., ¶89). Jowers's reaction to the decision to provide a bonus in the form of a forgivable loan was to say, "I agree with that strategy. Sure, it is great for me to get a nice, deserved bonus, but not worth it for you if someone in my shoes takes a big bonus after a great year and then split. But you know that I am not going any place. *[B]onuses should be incentive for future, not just payment for past*." *Id.*(emphasis added).

Next, Jowers asserts that the 2012 Forgivable Loan Agreement and the 2012 Forgivable Loan Promissory Note are invalid because the entity loaning the money under the loan agreement, Recruiting Partners GP, Inc., was doing business under an assumed name, Kinney Recruiting, Inc. Jowers does not bother to assert that Recruiting Partners GP, Inc., did not exist as an entity, because of course it did. (REK Decl., at ¶18). Neither does he assert that Kinney Recruiting, Inc. was not a registered assumed name for Recruiting Partners GP, Inc., because it was registered. (REK Decl.,

at ¶19). Instead, Jowers cites inapposite authority holding that a non-existent entity cannot enter into a contract. (Motion, at 19 (citing *Kahn v. Imperial Airport*, 308 S.W.3d 432 (Tex. App. 2010)). There was no nonexistent entity in the present case. The 2012 Forgivable Loan Agreement clearly states that it "is entered into by and between Recruiting Partners GP, Inc. d/b/a Kinney Recruiting, Inc." Regarding the 2012 Forgivable Loan Promissory Note, Jowers's argument makes even less sense. For a promissory note to be valid, only the debtor need sign, and Jowers admits he signed the promissory note. (Jowers Decl., Dkt. 138-1, at ¶13; Jowers Decl., Dkt. 266-2, at ¶13).

Next, Jowers complains that no Kinney Entity ever presented him with a demand for payment (also known as presentment) of the outstanding indebtedness under the 2012 Forgivable Loan Promissory Note prior to filing suit. But presentment is only "required before the note holder can exercise an ***optional*** right to accelerate the time for any payment due on the note." *Shumway v. Horizon Credit Corp.*, 801 S.W.2d 890, 892 (Tex. 1991) (emphasis added). The acceleration clause contained in the 2012 Forgivable Loan Agreement was **not** optional. It stated clearly and unequivocally that, upon termination of Jowers's employment with the Company for any reason, "any outstanding Principal Amount will be immediately due and payable." (REK Decl., ¶86, at Exh. P5, ¶6(a)). This was an automatic acceleration clause, requiring no decision to accelerate, no intent, and thus no notice of any intention. *Shumway* at 893. Additionally, the 2012 Forgivable Loan Promissory Note contained a waiver of notice of acceleration: Jowers stated, "I hereby waive presentment for payment, demand, protest, notice of protest, notice of dishonor and notice of non-payment of this Note, and all other notices in connection with the delivery, acceptance, performance, default or enforcement of the payment of this Note." (REK Decl., ¶86, at Exhibit P5, Exhibit A (Promissory Note)). Such "clear and unequivocal" language regarding waivers "is sufficient to waive notice of acceleration because the waiver relates to the right of acceleration in the note" *Shumway* at 894 n.7.

Finally, Jowers asserts that the means of calculating the remaining balance is not clear. Jowers received the $50,000 on February 1, 2012. (REK Decl., at ¶90). From that date forward, every two weeks, a portion of principal balance of the loan and the accrued interest was forgiven in accordance with Section 7(a) of the 2012 Forgivable Loan Agreement. (REK Decl., ¶86, at Exhibit P5, Sect. 7(a)). The remaining balance as well as prior balances were recorded on Jowers's "commission spreadsheet," which was sent to Jowers every two weeks. (REK Decl., at ¶93). Jowers never questioned the calculations. (REK Decl., at ¶94). As of the date of his resignation, December 16, 2016, the remaining balance on the forgivable loan recorded on the company books was $24,552.17. (REK Decl., at ¶92).

## VI.   <u>CONCLUSION</u>

Jowers's motion for summary judgment should be denied in its entirety. Each of MWK's claims is adequately supported by summary judgment evidence. In light of Jowers's motion related the liquidated damages clause in the 2006 Jowers Agreement, MWK cross-moves for summary judgment that the liquidated damages clause is enforceable as written.

Dated:  April 5, 2021

Respectfully Submitted

/s/ Robert E. Kinney
Robert E. Kinney
Texas State Bar No. 00796888
Robert@KinneyPC.com

**Robert E. Kinney**
824 West 10th Street, Suite 200
Austin, Texas 78701
Tel: (512) 636-1395

Raymond W. Mort, III
Texas State Bar No. 00791308
raymort@austinlaw.com

**THE MORT LAW FIRM, PLLC**
100 Congress Ave., Suite 2000

Austin, Texas 78701
Tel/Fax: (512) 865-7950

**ATTORNEYS FOR PLAINTIFF AND
COUNTER-DEFENDANTS**