IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| MWK RECRUITING, INC.<br>    Plaintiff,<br>v.<br>EVAN P. JOWERS, YULIYA VINOKUROVA, ALEJANDRO VARGAS, and LEGIS VENTURES (HK) COMPANY LIMITED (aka Jowers / Vargas),<br>    Defendants.  | Civil Action No. 1:18-cv-00444 |
| EVAN P. JOWERS<br><br>    Counterclaimant,<br><br>v.<br><br>MWK RECRUITING, INC., ROBERT E. KINNEY, MICHELLE W. KINNEY, RECRUITING PARTNERS GP, INC., KINNEY RECRUITING LLC, COUNSEL UNLIMITED LLC, and KINNEY RECRUITING LIMITED<br><br>    Counter-defendants. | |

**EVAN P. JOWERS'S REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

    I.    INTRODUCTION ........................................................................................... 1

    II.    ARGUMENT ................................................................................................... 3

        A.    THE COUNSEL UNLIMITED "LINE OF CREDIT." ............................... 3

        B.    BREACH OF THE 2006 EMPLOYMENT AGREEMENT. ...................... 5

            1.    The Employment Agreement is Unenforceable and Illusory Because Plaintiff Changed its Terms Unilaterally, but Defendant Could Not .................................. 5

            2.    The Liquidated Damages Clause in the Employment Agreement is Unenforceable ...................................................................................... 6

        C.    THE TRADE SECRET CLAIMS. ............................................................ 9

        D.    THE "FORGIVABLE LOAN." ................................................................ 10

    III.    CONCLUSION ............................................................................................. 10

CERTIFICATE OF SERVICE ........................................................................................... 12


# TABLE OF AUTHORITIES

Cases

*Albertson v. T.J. Stevenson & Co.*, 749 F.2d 223 (5th Cir. 1984) ................................................. 3

*Burzee v. Park Avenue Ins. Agency, Inc.* 946 So.2d 1200 (Fla. Dist. Ct. App. 2006) .................... 8

*Coleman v. B.R. Chamberlain & Sons, Inc.*, 766 So. 2d 427 (Fla. Dist. Ct. App. 2000) ............... 8

*Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380 (5th Cir. 2000) ................................... 4

*Eason v. Thaler,* 73 F.3d 1322 (5th Cir. 1996) ............................................................................... 9

*Goodwin v. Johnson*, 132 F.3d 162 (5th Cir.1997) ...................................................................... 10

*In re McLain*, 2006 WL 8437666 (N.D. Tex., July 11, 2006, No. 3:05-CV-2447-M) ................. 10

*Johnson Enter. of Jacksonville, Inc. v. FPL Group, Inc.*, 162 F.3d 1290 (11th Cir. 1998) ............ 6

*Keller v. Coastal Bend College*, 629 F. App'x 596 (5th Cir. 2015) .............................................. 3

*King v. Dogan*, 31 F.3d 344 (5th Cir.1994) ................................................................................. 10

*McLernon v. Dynegy, Inc.*, 347 S.W.3d 315 (Tex. App. Houston 14th Dist. July 26, 2011) ......... 4

*Miner, Ltd. v. Anguiano*, 383 F. Supp. 3d 682 (W.D. Tex. 2019) ............................................... 10

*Office Pavilion S. Fla., Inc. v. ASAL Prods., Inc.,* 849 So. 2d 367 (Fla. Dist. Ct. App. 2003) ....... 5

*S.W.S. Erectors, Inc. v. Infax, Inc*., 72 F.3d 489 (5th Cir. 1996) .................................................... 4

*Technip Offshore Contractors v. Williams Field Services* (S.D. Tex., Mar. 7, 2006, No. CIV. A.H 04 0096) 2006 WL 581273 ................................................................................................ 7

*Trilogy Software, Inc. v. Callidus Software, Inc.*, 143 S.W.3d 452 (Tex. App.—Austin 2004) ... 10

*Universal Plant Services, Inc. v. Dresser-Rand Group, Inc.*, 571 S.W.3d 346 (Tex. App. 2018) ........................................................................................................................................ 10

Statutes

18 U.S.C. § 1836(b)(3)(B)(1) ......................................................................................................... 9

Rules

Tex. Civ. Prac. & Rem. Code § 134A.004(a) ................................................................................. 9

Defendant Evan Jowers ("Jowers") hereby submits his reply to Plaintiff's Response (Dkt. 273) to Jowers's Motion for Summary Judgment, or in the Alternative, Motion for Partial Summary Judgment ("MSJ")(Dkt. 266).

## I. INTRODUCTION

Plaintiff does not dispute any of the relevant material facts asserted in the MSJ that are dispositive to his claims. In some cases, Plaintiff emphatically agrees with facts that are fatal to his claims, including (1) Plaintiff's various unexplained changes to loan balances allegedly due and owing that diverge from the numbers contained in verified pleadings; (2) Plaintiff's numerous unilateral changes to the terms of Jowers's employment that are inconsistent with the terms of the 2006 Employment Agreement Plaintiff now seeks to enforce; and (3) that the "trade secrets" at issue in this case were never possessed, owned, or even known by Plaintiff at any time before the lawsuit was filed.

In other cases, Plaintiff does not respond at all to the those facts presumably deemed most damaging to its claims, including (1) that Plaintiff's 30(b)(6) witness, Robert Kinney, testified he had "no personal knowledge" of where the loan calculations "came from;" (2) that the economic relationship between the parties was governed by a hierarchy where employees were expected to "follow orders" and not by any set of mutual obligations contained in a contract; and (3) that Plaintiff himself characterized the trade secrets at issue as "extremely ephemeral" and "fleeting" – the precise terms used by courts and treatises to describe information undeserving of trade secret protection.

When the Response does try to rehabilitate the record, these efforts only serve to make Plaintiff's claims hollow. For example, in the section titled "Statements by Renee Sommers regarding balances did not control," Plaintiff argues that Ms. Sommers – the only other person who could have input numbers into the various spreadsheets which form the only basis for the

loan claims – "has never had the power to bind" Plaintiff, rendering all of Plaintiff's loan claims unsubstantiated by any competent evidence.

Similarly, although Jowers never argues in the MSJ that consideration was lacking when the contract was executed in 2006,[1] the Response nonetheless argues that the contract was supported by "ample" consideration when it was signed because Jowers received his employer's "peace of mind" in exchange for restrictive covenants that stretch into eternity. Such a backwards reading on employer-employee relations not only turns the centuries-old labor movement on its head, it serves here to further emphasize the nature of the parties' economic relationship – a one-way street inconsistent with mutual obligation necessary in every contract.

Finally, the Response argues that Jowers use of his own "private yahoo.com email address" evidences misappropriation of Plaintiff's trade secrets. However, third-parties' emails to Jowers's private email account cannot form the basis for a trade secret, particularly considering that none of the information contained in those communications was ever in the possession of the company. (Had the parties owed a fiduciary duty to each other, a different analysis might apply, but no such claim is asserted). In the same way, the company cannot say it was in any way "damaged" by placements that never happened because of an elastic "liquidated damages" clause that bears no conceptual similarity with either liquidated damages, or compensatory damages, to wit. Rather, the convoluted formulae for liquidated damages Plaintiff asserts – which "depend[s] entirely how much work Jowers would choose to do in violation of the restriction" – as well as Plaintiff's subjective calculations of Jowers's "personal brand" is nothing short of nonsense. The liquidated damages clause is void and unenforceable under Florida law. For these reasons, and those detailed below, summary judgment should be entered for Jowers.

---

[1] Jowers intends to raise this at trial if this case continues.

## II. ARGUMENT

### A. THE COUNSEL UNLIMITED "LINE OF CREDIT."

Plaintiff's claim for breach of the "Line of Credit" is unsupported by any evidence. Despite four years of litigation, Plaintiff is still uncertain as to how much Jowers allegedly owes, or how any accurate number would be calculated. Mr. Kinney was the only witness designated as having knowledge as to this 30(b)(6) topic, and Mr. Kinney is the only individual who purported to possess knowledge of the loan balances. (Dkt. 254, Exhibit C [30 of 91], responding "I will be the only 30(b)(6) witness for any and all of the Kinney entities, as I have told you several times" as to Counsel Unlimited 30(b)(6)); *see also* Dkt. 254 Exhibits A-B).

Plaintiff does not dispute, or attempt to explain, the prior sworn testimony of Mr. Kinney, stating that the calculation of Mr. Jowers's loan balances were protected from disclosure by the attorney-client privilege, and that Mr. Kinney did not "have any personal knowledge of exactly where those numbers came from…" (Dkt. 266 at 10). Plaintiff does not attempt to clarify the discrepancy between the foregoing and the calculations presented anew the Response. However, no issue of fact can be manufactured by Plaintiff inconsistent with prior sworn testimony. *Keller v. Coastal Bend College*, 629 F. App'x 596, 601 n.4 (5th Cir. 2015) ("This court does not allow a party to manufacture an issue of fact in an affidavit that conflicts with prior deposition testimony without a satisfactory explanation."); *Albertson v. T.J. Stevenson & Co.*, 749 F.2d 223, 233 n.9 (5th Cir. 1984) ("The nonmoving party cannot defeat a summary judgment motion by attempting to create a disputed material fact through the introduction of an affidavit that directly conflicts with his prior deposition testimony.") Jowers should prevail for this reason alone.

Plaintiff also does not dispute that he had made various changes to the amounts due, from $48,535.98 down to $13,189.66 six months ago, and then to $82,246.90 two months ago. Instead, Plaintiff implies that the correct number is up to the Court's determination as to whether

REPLY ISO MOTION FOR SUMMARY JUDGMENT 3

over $40,000 in commissions due to Mr. Jowers for work completed over four years ago should be included as part of Jowers' "Line of Credit," which bears 17% interest per annum. (Response at 9 of 24: arguing that the correct calculation depends on whether "the Court determines that Jowers is entitled to the commission credit" for Hui Zhu). The "two possible versions" Kinney now presents are nowhere set forth in the pleadings, which contain a dramatically different number than those presented in November 2020 and January 2021. Again, Plaintiff's arbitrary changes to the purported loan balance do not create a "disputed issue" as Plaintiff suggests. *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996)("It is well settled that this court does not allow a party to defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony.").

Similarly, Plaintiff's alterations to the evidence after this motion was filed should not be considered at all by the court, since "a nonmoving party may not manufacture a dispute of fact merely to defeat a motion for summary judgment ." *Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 386 (5th Cir. 2000). The Response's citation to *McLernon v. Dynegy, Inc.*, 347 S.W.3d 315 (Tex. App. 2011) to support his position that inconsistent sworn statements by the same individual are perfectly acceptable when collecting a debt is wrong. In *McLernon*, "there was no conflict between the [Plaintiff's] affidavits. Rather, the two affidavits are reconcilable because they show that the amount referenced in [one] affidavit was subsumed within the amount referenced in [the second] affidavit." *Id*. at 324-325. Here, Plaintiff's subsequent "alternative" calculations are all inconsistent with amount originally pled under oath.

Meanwhile, Jowers's position has not changed since it was pled in his original Answer over a year and a half ago: "Defendant is not liable for breach of the Revolving Loan Agreement because Defendant repaid the loan in full before he tendered his resignation letter to Kinney, which fact was confirmed in writing by Kinney's accountant." (Dkt. 96 at 39 of 73; Dkt. 237 at

36 of 59). Plaintiff and its accountant both stated that Mr. Jowers had no balance the day he resigned from Plaintiff's employ. There is no competent evidence to the contrary. Summary judgment should therefore be granted as to Count V.

B.  **BREACH OF THE 2006 EMPLOYMENT AGREEMENT.**

   1.  **The Employment Agreement is Unenforceable and Illusory Because Plaintiff Changed Its Terms Unilaterally, but Defendant Could Not.**

Plaintiff agrees that the Employment Agreement "entitled [Plaintiff] to change [Jowers] compensation in its sole discretion." (Opp. At 11 of 24). In other words, Plaintiff could pay Jowers nothing for his services. Under such a regime, there is no "continued employment," as Plaintiff characterizes it, since there is no obligation on the part of Plaintiff to pay Jowers for the work he performs. (Opp. at 11 of 24). This is best evidenced by Plaintiff's retention of over $40,000 in compensation due to Jowers set forth above. Plaintiff even testified "there's no way" Jowers would have kept his job if he didn't agree to changes to his compensation. (Moving Dec., Ex. A at 277:5-10). This alone makes the Jowers Employment Agreement unenforceable. *Office Pavilion S. Fla., Inc. v. ASAL Prods., Inc.,* 849 So. 2d 367, 370 (Fla. Dist. Ct. App. 2003).

Additionally, the Response does not address in any way the other changes made to Jowers's employment that should have been governed by the contract, including the changes made in 2008 requiring Jowers, a W2 employee, to pay 62.5% of the Company's advertising expenses. (Exhibit 22), Plaintiff's failure to provide a work visa to Mr. Jowers when he moved to Hong Kong in 2015 (Exhibit A at 202-17), Plaintiff's conversion of part of Jowers's 2011 compensation into an eight-year loan (Dkt. 273 at 21)(referring to Plaintiff's "decision to provide a bonus in the form of a forgivable loan"), and Plaintiff's conversion of Jowers's businesses expenses into a newly articulated "interest free loan" (Dkt. 273 at ¶ 40), which, despite the name, now bears an interest rate of 17% per year according to Plaintiff. None of this is consistent with

the Jowers Employment Agreement, which delineates the terms by which the employer may compensate and reimburse employee expenses. *Johnson Enter. of Jacksonville, Inc. v. FPL Group, Inc.*, 162 F.3d 1290, 1311 (11th Cir. 1998)(An illusory promise does not constitute consideration for the other promise, and thus the contract is unenforceable against either party.)

### 2. The Liquidated Damages Clause in the Employment Agreement is Unenforceable.

Plaintiff argues that Jowers may not challenge Plaintiff's pursuit of liquidated damages because of Jowers's "failure to plead [the] liquidated damages clause constitutes an unenforceable penalty" as an affirmative defense, however, Plaintiff never sought liquidated damages as a remedy until he served supplemental responses to discovery requests on February 14, 2021. (*See* Dkt. 266-11).

Plaintiff had only previously sought compensatory damages for breach of the employment agreement in the prayer for relief contained in the complaint (Dkt. 1-2 at 38 of 41 (seeking "compensatory damages"), *see also*, Dkt. 13 (seeking judgment awarding "reasonable damages suffered for suffered as a result of Defendants' Violation of the Texas Uniform Trade Secrets Act" and "awarding MWK its damages suffered as a result of Jowers breach of the employment with MWK"); *see also*, Dkt. 80 at 46 of 47 (same).

Nonetheless, Jowers was diligent in seeking information supporting all of Plaintiff's theories of relief, requesting specifically on June 19, 2020 that Plaintiff: "Provide a complete computation of" "claimed damages or other monies allegedly owed" by Jowers in this action and to "State All Facts that Support or Concern the computation." (Dkt. 207) Plaintiff responded with objections, including that such a calculation was "premature," and with the promise of a future spreadsheet. (Dkt. 207-5 at 6). Jowers moved to compel a further response (Dkt. 207).

Only after this did Plaintiff finally present his theory of recovery in response to Special Interrogatory 23 (close to eight months after it was specifically requested) on February 14, 2021. (Ex. 12). Plaintiff's response was five days before the discovery cut-off, and after the pleadings were definitively closed on December 8, 2020. (See Dkt. 229, "the Court ORDERS Jowers to file an amended answer that omits the dismissed claims on or before December 21, 2020; no other substantive changes are allowed."). Thus, Jowers could not have amended his answer given the late stage of the proceedings Plaintiff presented his "liquidated damages" theory of relief – the only form of damages now sought. (Ex. 12, pg. 47). As such, Plaintiff cannot in any manner be considered "a victim of unfair surprise" as now claimed. (Dkt. 273 at 13).[2]

Even if Plaintiff's theory of relief was timely disclosed, Jowers's operative answer also raises affirmative defenses on the grounds that "the restrictive covenants in the Jowers Agreement are illegal and unenforceable" (tenth defense) and that they "restrain Defendant's ability to earn a living worldwide for an indefinite period of time" (fifteenth defense). Jowers's operative answer denies all of Plaintiff's claims of damages (Dkt. 237 ¶¶ 154, 165), and its prayer for relief.[3] Given the breadth and specificity of the pleadings as to the unenforceability of the Employment Agreement, Plaintiff cannot be said to have lacked notice of the unenforceability of a contract he himself drafted.

Finally, challenges to the legality and enforceability of a contract may be raised at any time under Florida law. This policy is best set forth in *Coleman v. B.R. Chamberlain & Sons*,

---

[2] Plaintiff's reliance on *Technip Offshore Contractors v. Williams Field Services* (S.D. Tex., Mar. 7, 2006, No. CIV.A.H 04 0096) 2006 WL 581273, at *14 is misplaced anyways because in *Technip* the affirmative defense was raised by a party *opposing* summary judgment who at the eleventh hour scrambled for arguments and thereby sought leave to amend the pleadings *after* Defendant had already filed a motion for summary judgment.

[3] "Defendant opposes and denies the requests for judgment and damages contained in subparagraphs 1–16 beneath the heading "Prayer for Relief" on pages 45 and 46 of the Second Amended Complaint".

*Inc.*, 766 So. 2d 427 (Fla. Dist. Ct. App. 2000), where, as here, a CPA employed by the employer testified that the former employee was obligated to pay its former employer "200% of one year's gross revenue for each client [] who switched to [Defendant's] new company." *Id.* at 429. The trial court approved the formula for calculation but refused to award damages because the CPA did not determine or corroborate the figures used. The Plaintiff appealed, and the Florida Court of Appeal affirmed that no damages were warranted, but on different grounds. Holding that "a proper ruling would have been for the trial judge to hold that the method and measure of damages suggested by [Plaintiff] was a penalty and unenforceable" since "[e]nforcement of the penalty unfairly deprives [Defendant] of the right to pursue his profession and deprives his clients of their right to retain the financial advisor of their choice." *Id.*

Similarly, in *Burzee v. Park Avenue Ins. Agency, Inc.* 946 So.2d 1200 (Fla. Dist. Ct. App. 2006) the employer had a liquidated damages clause based on restrictive covenants computed by "totalling [sic] all of the commissions earned by [by the employer] during the two years prior to her termination" *Id.* at 1200-1201. On appeal, the Court found this unlawful because there was "virtually no relationship between the gravity of the loss [] that would result from a violation of the non-compete agreement and the amount specified as damages." *Id.* at 1200-1201. The liquidated damages in *Burzee*, as here, was calculated "regardless of the extent of that servicing, and undiminished by her share of the commissions or by any other expenses that [the Company] might have incurred in connection with those commissions." *Id.* at 1202. The trial court's ruling was reversed on these grounds as unenforceable.

Here, if the Court were to allow Plaintiff to apply the liquidated damages provision as he saw fit, it would only serve to deprive a former employee the right to pursue his profession for an unknown amount of time and for an unknown sum. The liquidated damages clause is unlawful under any standard.

C. **THE TRADE SECRET CLAIMS.**

The Response ignores facts fatal to Plaintiff's claims for misappropriation of trade secrets, and instead argues points unrelated to those advanced in the moving papers.

For example, Plaintiff is now silent regarding his previous insistence that "the trade secrets that are in dispute in this case, like I said before, are extremely [ephemeral] trade secrets" owned by Plaintiff only for "some fleeting moment of time." (Dkt. 266-34 at 132:17; 151:3-17; 256:9-23). Likewise, Plaintiff does not respond to the fact that his own internal investigation confirmed that no proprietary information was ever used by Jowers. (Dkt. 266-34 at 55:10-22).

Plaintiff also misinterprets the legal requirement of "ownership or possession" as it relates to trade secrets. Mr. Kinney concedes that the information he considers trade secrets are freely shared among his competitors. (Dkt. 266-34 at 152:13-18 ("we don't seek to stop candidates from sharing their information with whomever they want."); *Id.* at 133:13-20 ("Q So you have no way of knowing if Richard Han shared the information you set forth here with another recruiting firm; correct? A I have -- I have no way of knowing."); *Id.* at 133:5-12 ("It's not uncommon that a candidate would work with more than one recruiting firm."). Plaintiff does not address this at all, instead reciting the elements of his claim and asserting in conclusory fashion that the elements have been met. However, "conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment." *Eason v. Thaler,* 73 F.3d 1322, 1325 (5th Cir. 1996).

Finally, Plaintiff relies only on the same "liquidated damages" clause in the 2006 Employment Agreement as the sole support for his damages claim under FDTSA and TUTSA. No evidence is presented as to any actual damages suffered by the Plaintiff by way of any alleged misappropriation, as required by law. 18 U.S.C. § 1836(b)(3)(B)(1); Tex. Civ. Prac. & Rem. Code § 134A.004(a); *Universal Plant Services, Inc. v. Dresser-Rand Group, Inc.*, 571

S.W.3d 346, 360 (Tex. App. 2018). Plaintiff only calculates how much revenue Jowers could have earned from this information, and then doubles that amount. This theory is doomed because it is punitive, speculative, and unsupported by any evidence. *Miner, Ltd. v. Anguiano*, 383 F. Supp. 3d 682, 702 (W.D. Tex. 2019) (citing *Trilogy Software, Inc. v. Callidus Software, Inc.*, 143 S.W.3d 452, 463 (Tex. App.—Austin 2004)). Without any factual support for its damages claims, Plaintiff's claims for misappropriation of trade secrets should be dismissed.

### D.   THE "FORGIVABLE LOAN."

The only evidence presented to support the so-called "forgivable loan" is Plaintiff's own self-serving statements and the same unauthenticated spreadsheets that have changed three times *during the last six months*. Plaintiff does not state who created any given spreadsheet, or who inputs the lines of data in the spreadsheets, or anything or the sort. None of the evidence is in any way authenticated. The Court should not rely on any of Plaintiff's calculations. *King v. Dogan*, 31 F.3d 344, 346 (5th Cir.1994) (unauthenticated documents do not constitute proper summary judgment evidence); *In re McLain*, 2006 WL 8437666, at *5 (N.D. Tex., July 11, 2006, No. 3:05-CV-2447-M)(unauthenticated spreadsheets inadmissible in defense of summary judgment motion); *Goodwin v. Johnson*, 132 F.3d 162, 186 (5th Cir.1997) (finding that the hearsay statements in an affidavit submitted to defeat summary judgment were "incompetent summary judgment evidence").

Plaintiff never even took Jowers's deposition to try to authenticate – let alone obtain – any evidence to defeat summary judgment. Having been given all of the privileges of complete discovery, Plaintiff has no excuse for its failure to support its claims four years on. The Court should put grant Jowers's motion in full.

### III.   CONCLUSION

For the foregoing reasons, summary judgment should be entered for Jowers.

REPLY ISO MOTION FOR SUMMARY JUDGMENT                                                                                                       10

DATED: April 9, 2021                              Respectfully submitted,

                                                By:     */s/ Robert Tauler*
                                                      Robert Tauler, Esq.
                                                      Texas State Bar No. 24122095
                                                      rtauler@taulersmith.com
                                                      Tauler Smith LLP
                                                      100 Congress Ave., Suite 2000
                                                      Austin, TX 78701
                                                      Telephone: (512) 456-8760

                                                **COUNSEL FOR DEFENDANT**
                                                **AND COUNTERCLAIMANT**
                                                **EVAN P. JOWERS**

## CERTIFICATE OF SERVICE

I hereby certify that, on April 9, 2021, a true and accurate copy of the foregoing document was served on all counsel of record via the Court's CM/ECF system.

>	*/s/ Robert Tauler*
>	Robert Tauler