**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| **MWK RECRUITING, INC.**<br>          **Plaintiff,**<br>     v.<br>**EVAN P. JOWERS, YULIYA VINOKUROVA, ALEJANDRO VARGAS, and LEGIS VENTURES (HK) COMPANY LIMITED (aka Jowers / Vargas),**<br>          **Defendants.** | **Civil Action No. 1:18-cv-00444** |
| **EVAN P. JOWERS**<br><br>          **Counterclaimant,**<br><br>     v.<br><br>**MWK RECRUITING, INC., ROBERT E. KINNEY, MICHELLE W. KINNEY, RECRUITING PARTNERS GP, INC., KINNEY RECRUITING LLC, COUNSEL UNLIMITED LLC, and KINNEY RECRUITING LIMITED**<br><br>          **Counter-defendants.** | |

**<u>EVAN P. JOWERS'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C.
SECTION 1404(A)</u>**

I. **INTRODUCTION**

Defendant/Counterclaimant Evan P. Jowers ("Jowers") moves to transfer venue under 28 U.S.C. § 1404(a) on the grounds that justice so requires. In sum, Robert Emmett Kinney, who is a party and (self-represented) counsel for a slew of corporate parties in this case, has tainted further proceedings in this District by setting off a chain of events intended solely to undermine the fair administration of justice in this case, as follows:

(1) Mr. Kinney covertly communicated with the Western District of Texas Admissions Committee (the "Committee") *ex parte* in an effort to leave Defendant Evan Jowers without his only counsel in September of 2020 by way of secret letter where Mr. Kinney does not even mention he is an interested party in this case (the "Kinney Letter") (Declaration of Robert Tauler, ¶ 2, Ex. A);

(2) The Committee, in turn, abided by Mr. Kinney's wishes to keep his *ex parte* communications secret, refusing to provide them to Mr. Jowers' counsel on the grounds of an unarticulated "privilege" allowing a litigant in this case, Mr. Kinney, to have unfettered *ex parte* communications with the Committee;[1]

(3) When counsel for Mr. Jowers objected to the existence of *ex parte* communications between Mr. Kinney and the Committee as a violation of due process and civil rights, the Committee, and in particular its presiding member Gary Zausmer, retaliated by sending counsel's communications directly, via email, to <u>every district court judge in this district</u>, including the presiding judge in this case (Declaration of Robert Tauler, ¶ 3, Ex. B);

(4) The Kinney Letter, which was only recently disclosed to Mr. Jowers and his counsel, is so inflammatory, fraudulent, and unlawful, that it has already tainted these proceedings; and

---

[1] The Committee considers itself an "arm" of the Western District of Texas, and is therefore (at minimum) a quasi-governmental entity.

(5) As a result of the conduct of Messrs. Kinney and Zausmer (and as yet named parties) Mr. Jowers and his counsel intend to file a lawsuit against Messrs. Kinney and Gary Zausmer (among other influential individuals in the Western District of Texas) in order to protect their civil rights and in particular their constitutional guarantee of due process of law.

Given the pending civil rights proceedings from Mr. Jowers and his counsel against an "arm" of this District, the same judicial district should not preside over a bench trial involving the same parties, since it would compromise the appearance of a fair trial. *Willner v. Committee on Character and Fitness* (1963) 373 U.S. 96, 103 (noting that no evidence of impropriety is needed when *ex parte* communications are made; rather, it is enough that a Court "may have been motivated in its conclusion" by the communications and their fallout."

At bottom, fundamental fairness demands that Mr. Jowers have his case decided in a district that has not been even *potentially* influenced by any *ex parte* communications made by his litigation opponent.

Accordingly, this case should be transferred to the Southern District of Florida, which, incidentally, is the state in which the parties originally agreed to litigate.[2] Indeed, no local interest is served by diverting the Court's attention and resources away from the needs of a growing and dynamic local economy, particularly since the federal bench has not been supplemented to meet the increased demand on judicial resources in this District. Viewed through this lens, the current case cannot be said to meet any local interest whatsoever. Finally, since Florida law also governs this dispute (raising conflict of laws issues), and a majority of Defendant's stateside witnesses reside in Florida, there is no reason why this case should not be transferred to a district that does not, as an entity, have a vested interest in the outcome.

---

[2] The employment agreement at issue states "Employee irrevocably agrees that the exclusive forum for any suit, action, or other proceeding arising out of or in any way related to this Agreement shall be in the state or federal courts in Florida…"

## II.     LEGAL STANDARD

28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  The following private and public interest factors are relevant in deciding a motion under 28 U.S.C. § 1404(a):

> (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; . . . (4) all other practical problems that make trial of a case easy, expeditious and inexpensive[;] . . . (5) the administrative difficulties flowing from court congestion; (6) the local interest in having localized interests decided at home; (7) the familiarity of the forum with the law that will govern the case; and (8) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law.

The Fifth Circuit has instructed courts to be cautious when denying transfers where only the plaintiff's choice weighs in favor of denying the transfer.  *Greene v. W&W Energy Servs.*, Case No. 2:19-CV-249, 2-3 (S.D. Tex. Nov. 4, 2019), citing *In re Radmax*, 720 F.3d at 290.

Section 1404(a) permits courts to evaluate motions to transfer venue with a "flexible and individualized analysis." *Research Automation v. Schrader-Bridgeport Intern.* (2010) 626 F.3d at 978 (noting that such a motion may be granted for the convenience of the parties and witnesses ***and/or*** in the interest of justice."). (emphasis added).  Indeed, the interest of justice factors may be determinative, even where the convenience factors point in the opposite direction. *Research Automation v. Schrader-Bridgeport Intern.* (2010) 626 F.3d at 978.

### III.   FACTS

**A.   Relevant Timeline.**

Jowers' current counsel first applied for *pro hac vice* admission to the Court on April 24, 2020 (Dkt. 166), which was granted on May 8, 2020 (Dkt. 174).  The Court's June 4, 2020 Order allowing co-counsel to be relieved stated that "Robert Tauler shall remain as counsel of record for Jowers."

1. September 2020.

On September 3, 2020, three months after the above, Mr. Kinney threatened to file a motion to disqualify Jowers' only remaining counsel if he did not hire "co-counsel admitted to practice" in the Western District.  In part because no local counsel could be found willing to take such this case, Jowers' counsel unwittingly sought admission to the Western District of Texas, not aware that the above email was a set-up for the Kinney Letter.

2. The September 30th Kinney Letter.

The Kinney Letter states facts indicating that he was privy to internal communications with decision-makers in this district.  The Kinney letter indicates, for example, that Mr. Kinney was aware of exactly when Jowers' counsel's application was filed and that it wasn't supplemented in the two weeks leading up to the Kinney Letter. Specifically, the Kinney Letter states: "since the application was [] filed September 16 and [Tauler] was sanctioned on September 22, [Tauler] should have updated that form."  (Kinney lied about the sanction).

The Kinney Letter also urged the Committee to deny Jowers' counsel's application (leaving Jowers without a lawyer to defend himself) because certain answers provided in the application form were allegedly inaccurate.  The only way Mr. Kinney would be able to make this argument is if someone at the Committee provided Mr. Kinney with the application, which is unfair (if not unlawful) and a violation of due process.

Later in the proceedings, Mr. Kinney (not knowing that the Kinney Letter would ever come to light, perjured himself at his deposition (under oath) stating that he has "never sent

anything to the Western District Committee." Mr. Kinney also provided the following response to a similar query:

```
1      A    I did not submit anything to an admissions
2      committee.  I do not know who is on the admissions
3      committee, and I did not address anything to an
4      admissions committee.
```

Despite submitting the Kinney Letter and then committing perjury when questioned under oath about his communications, no adverse action has been taken against Mr. Kinney whatsoever.

Instead, on December 18, 2020, Magistrate Judge Austin issued an Order denying various discovery motions in the case made by Mr. Jowers and went so far as to make personal attacks on the character of Mr. Jowers and his counsel, adopting the narrative of the Kinney Letter (including name-calling) without any reference to the points and authorities in various garden-variety discovery motions at issue.

Mr. Jowers deserves fair, just proceedings, without the influence imbued by way of Mr. Kinney's *ex parte* communications to the Committee. The Kinney Letter a proverbial "genie that is out of the bottle" that will inescapably taint further proceedings in this case, should the case be tried in this District.

### IV.   ARGUMENT.

**A.   The Kinney Letter has Tainted These Proceedings Such that the Case Should be Transferred In the Interests of Justice.**

The Supreme Court of the United States has found that *ex parte* communications like the Kinney Letter indicate, *ipso facto*, that a Court may eventually "be motivated in its conclusion by charges made against the petitioner by certain informants," *Willner v. Committee on Character*

*and Fitness* (1963) 373 U.S. 96, 103, 108 (concurring opinion of Justices Brennan, Stewart and Goldberg)(emphasis added).  The Kinney Letter was provided to Mr. Zausmer, who in turn shared it with the Court.  This is unfair to Defendant, who, after four years of litigation, deserves a trial without any appearance of impropriety.  Similarly, neither Mr. Jowers nor his counsel should be punished for choosing to advance claims for civil rights abuses against members of this District like Mr. Zausmer.  The simultaneous adjudication of the claims against the Committee for their misconduct on behalf of Mr. Kinney would cast doubts on the propriety of the adjudication of the present dispute.  The two disputes should be decided in different districts.

**B.      The 1404(a) Factors.**

All of the 1404(a) factors favor transfer.  No less than four defense witnesses are located in Florida: Peter Gutensohn, Joshua Carr, Alexis Lamb, & Evan Jowers.  In contrast, the only person with relevant information about this case in Texas is Robert Emmett Kinney.  Given the circumstances, it would be unfair for Mr. Jowers to deal with the additional burden of stretching the subpoena power to a foreign state given Mr. Kinney's misconduct in this District.

Even if the above witnesses were willing to appear voluntarily in this District, it would be overly burdensome to require Florida-based witnesses involved in Plaintiff's various entities to travel hundreds of miles to this District, as compared to travel in an area with which they are already familiar and in relative proximity.

Moreover, the administrative difficulties in having the Western District juggle these proceedings alongside the lawsuits brought by Mr. Jowers and his counsel against Messrs. Zausmer and Kinney (and others) would be unwieldy to say the least.

In regards to court congestion, the Court knows better than anyone the congestion caused by population growth in this District (Declaration of Robert Tauler, ¶ 4), alongside its complicated intellectual property cases associated with the nascent economies of migratory

businesses. The Court's resources are best devoted to these issues that will frame the community for years to come, as opposed to the present dispute, which can only serve as a distraction.

As such, no local interest is served by adjudicating a dispute between residents of different states, in a business that is in no way important to the local economy. Any deference as to venue selection Mr. Kinney would ordinarily be provided is completely nullified due to his *ex parte* communications intended to unlawfully influence the fairness of these proceedings. Mr. Kinney would surely not be so bold in a legal community he is not a part of.

Trial in Florida would also facilitate streamlined adjudication since it would allow a Florida based jurist to interpret Florida law, which the Court has consistently stated should apply. A transfer to the Southern District of Florida would also avoid conflict of law issues that would necessarily need to be addressed should the matter stay in this district, given the divergent approaches in Texas and Florida regarding non-compete agreements, and the public policy limits on Texas jurists interpreting Florida law regarding non-competes. See, *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 681 (Tex. 1990)("the law governing enforcement of noncompetition agreements is fundamental policy in Texas, and that to apply the law of another state to determine the enforceability of such an agreement in the circumstances of a case like this would be contrary to that policy. We therefore hold that the enforceability of the agreement in this case must be judged by Texas law, not Florida law."). Transferring the case to the Southern District of Florida for trial would avoid these complex issues of conflicts of law and public policy.

In sum, there is really no reason *not* to transfer the case to the Southern District of Florida for trial. There should be no doubt the further proceedings in this District will be unwieldy and tumultuous at a time when the needs of the District command the Court's attention to the law's interplay with this District's flowering economy.

V. **CONCLUSION.**

For the foregoing reasons, the case should be transferred to the Southern District of Florida for trial.

DATED: August 31, 2021            Respectfully submitted,

                                                 By:   */s/ Robert Tauler*
                                                                  Robert Tauler, Esq.
                                                                  Texas State Bar No. 24122095
                                                                  rtauler@taulersmith.com
                                                                  Tauler Smith LLP
                                                                  100 Congress Ave., Suite 2000
                                                                  Austin, TX 78701
                                                                  Telephone: (512) 456-8760

                                                 **COUNSEL FOR DEFENDANT**
                                                 **AND COUNTERCLAIMANT**
                                                 **EVAN P. JOWERS**

## **CERTIFICATE OF SERVICE**

I hereby certify that, on August 31, 2021, a true and accurate copy of the foregoing document was served on all counsel of record via the Court's CM/ECF system.

 */s/ Robert Tauler*
Robert Tauler