# EXHIBIT 8

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **MWK RECRUITING, INC.**<br>        **Plaintiff,**<br>v.<br>**EVAN P. JOWERS, YULIYA VINOKUROVA, ALEJANDRO VARGAS, and LEGIS VENTURES (HK) COMPANY LIMITED (aka Jowers / Vargas),**<br>        **Defendants.** | Civil Action No. 1:18-cv-00444 |
| **EVAN P. JOWERS**<br><br>        **Counterclaimant,**<br><br>v.<br><br>**MWK RECRUITING, INC., ROBERT E. KINNEY, MICHELLE W. KINNEY, RECRUITING PARTNERS GP, INC., KINNEY RECRUITING LLC, COUNSEL UNLIMITED LLC, and KINNEY RECRUITING LIMITED**<br><br>        **Counter-defendants.** | |

**EVAN P. JOWERS'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF <u>LAW</u>**

**[PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Defendant Evan Jowers herewith supplies defendant's proposed Findings of Fact and Conclusions of Law as required under Local Rule CV-16(e):

**FINDINGS OF FACT**

1. Jowers began working at Kinney Recruiting in April 2006. Jowers signed an Associate Recruiter Employment Agreement with Kinney Recruiting, L.P. dated May 1, 2006. This agreement was executed in December of 2006 (the "Florida Employment Agreement"). On December 16, 2016, Jowers resigned from Kinney Recruiting LLC, a different entity.

2. Jowers original employer was Kinney Recruiting L.P. SAC ¶ 158. "Kinney Recruiting L.P. ('KR-LP') was a Texas limited partnership that has ceased operation." SAC ¶ 11. Under the Florida Employment Agreement with Kinney Recruiting, L.P., dated May 1, 2006, Jowers promised not to use or disclose any of the "Company's" proprietary information:

> 7.2  At all times during and after Employee's employment, the Employee shall not use or disclose to any person the Company's Proprietary Information, except as such disclosure or use may be required in connection with the Employee's employment, or unless the [*sic*] Robert Kinney expressly authorizes such in writing.

Dkt. 80-1 at pages 4-5 of 11. The "Company" under the agreement is Kinney Recruiting, L.P. *Id.* at page 1 of 11.

3. The Florida Employment Agreement provided for a salary of $3,000 per pay period, less applicable withholdings and deductions, paid monthly.

4. The Florida Employment Agreement provided for the following compensation structure, based on "NET CASH IN," defined as "the Employee's portion of all placement fees

received and retained by the Company which result from the placement of candidates with clients of the Company."

        a. 45% of the first $75,000.

        b. 50% of the next $75,000.

        c. 55% of the next $75,000.

        d. 60% of the next $75,000.

        e. 65% of the excess over $300,000.

5. There was no evidence presented that the above amounts were ever paid by Plaintiff or any other assignee of the Florida Employment Agreement.

6. Jowers' compensation changed over the course of his employment. On March 8, 2008, Plaintiff unilaterally amended the terms of the Florida Employment Agreement by way of email. Under the new terms, Jowers, an employee, was now obligated to pay the majority of Kinney Recruiting's advertising expenses. *Id.* When Mr. Jowers complained that this was unfair, Mr. Kinney responded by stating flatly "I make the decisions and you follow orders. If you don't want that job let me know."

7. In January 2009, Plaintiff or its predecessor changed the agreement unilaterally again, by way of an email dated January 28, 2009 titled "New Asia Plan for 2009." Among the changes where that "[Jowers] commissions go to 45% across the board for 2009" but that Jowers' "draws" (i.e. advances) would increase to $8,200 per month, and Jowers would "make no contribution for expenses." Notably, Kinney also stated that the "noncompete will be amended to apply to Hong Kong/China and be fully enforceable."  When Mr. Jowers complained about the change in commissions from 65% to 45%, Kinney threatened to withhold

Jowers' wages: "I'm not ponying up another $20K this month until I know you are aboard…" If Mr. Jowers did not agree to commission changes, Mr. Jowers would be fired.

8. Mr. Jowers' compensation was changed again in 2011 by Plaintiff, who stated that at this point Mr. Jowers commissions would now be 50%.

9. In or about June 2015, Jowers moved to Hong Kong, where he lived and worked. At the time his employer presented an employment contract to government authorties in Hong Kong, which is a requirement for foreigners doing business in Hong Kong (the "Hong Kong Employment Agreement."). There was never a dispute throughout 2015 or 2016 as to whether the Hong Kong Employment Agreement was operative.

10. On November 1, 2012, Evan P. Jowers and Counsel Unlimited LLC entered into the Loan Agreement and Promissory Note (the "Line of Credit Agreement") at the rate of 17% per annum.

11. Plaintiff has not met its burden to demonstrate that Jowers owed any sum certain regarding the Line of Credit. Jowers was told via email unequivocally by the Kinney Entities accountant, Renee Sommers ("Ms. Sommers") the same day he resigned on December 16, 2016 that the Counsel Unlimited Line of Credit had been paid back. (Tauler Dec., Ex. 6)("Yes, I think the remaining regular bonus and Hui Xu commission will just cover the remaining balance, might be a few hundred short.").

12. Plaintiff also changed its own accounting of the amounts due on the Line of Credit no less than four times during the pendency of this lawsuit. No competent evidence was ever introduced to explain how the amounts were calculated or why they were not paid back, as stated by Ms. Sommers.

13. Even if there were some small amount due and owing, the amount would have been completely covered by funds owed to Mr. Jowers for the placement of Hui Zhu, which Plaintiff retained completely for himself.

14. Moreover, the evidence demonstrating the Plaintiff did not comply with federal truth-in-lending act and local ordinances with respect to payday loans was persuasive. The Truth in Lending Act requires that lenders who make over 25 loans in the year provide detailed disclosures to a debtor.  These were never done

15. Plaintiff also failed to register as a payday lender in the State of Texas or the City of Austin.

16. On February 1, 2012, Evan P. Jowers and Recruiting Partners GP, Inc. entered into the Forgivable Loan Agreement and Promissory Note (the "2012 Forgivable Loan").

17. No competent evidence was provided at trial demonstrating an amount due and owing.  Plaintiff has not produced admissible evidence that the $50,000 was ever paid to Jowers, or how the balance came to be $24,603.47, only the same spreadsheets that constantly changed, and whose entries were attorney/client privileged.

18. Six attorneys placed by Jowers are alleged to be trade secrets of the Kinney Entities, but Kinney has not demonstrated use of any information related to these individuals caused Plaintiff damage.

19. The trade secrets that are in dispute in this case "are extremely [ephemeral] trade secrets" owned by Plaintiff only for "some fleeting moment of time.

20. No steps are taken to safeguard information provided by candidates. Plaintiff does not require candidates to sign non-disclosure agreements. Candidates often work with (and therefore provide the same information to) other recruiting firms.

21.     No Kinney Entity possessed or owned any information regarding these six candidates at the time of Mr. Jowers' departure on December 16, 2016.  No information about these candidates was ever kept in any database belonging to Plaintiff or its predeccessors.  Plaintiff used Salesforce, a software application, as the only "database" that kept information.  Plaintiff's former employee testified that he searched for any evidence of misconduct and found none.  There were no other databases owned by Plaintiff accessed by Jowers.

22.     Plaintiff failed to provide any evidence of any actual damages for its misappropriation of trade secrets claims against Mr. Jowers  Jowers only placed three candidates of the six, and these were several months or sometimes years.  No evidence was presented of "lost profits."

23.     Plaintiff did not present any facts demonstrating that any of Jowers' conduct caused him harm or damages.  Plaintiff presented no evidence of actual damages.

24.     Plaintiff has not demonstrated that Kinney Recruiting, L.P. assigned the Florida Employment Agreement to Plaintiff.  There is no assignment of the Florida Employment Agreement from Kinney Recruiting L.P. to any other entity.  The only assignments inure to a firm called Recruiting Partners GP, Inc. (*see* Exhibit 3 to the SAC, Dkt. 80-3); next, Kinney Recruiting LLC (*see* Exhibit 5 to the SAC, Dkt. 80-5); and eventually MWK Recruiting LLC (*see* Exhibit 7 to the SAC, Dkt. 80-7), which (in turn) allegedly converted itself into MWK Recruiting Inc. (the Plaintiff in this action) on March 12, 2018 (*see* SAC ¶ 42), and is now Counsel Holdings, Inc.  However, the "Company" itself – Kinney Recruiting, L.P. – was never a party to any of those assignments or transactions.  Thus, there simply are no alleged transactions by which MWK Recruiting Inc. (or Counsel Holdings, Inc.) could plausibly have become an assignee and/or a successor of Kinney Recruiting, L.P. or its contract with Jowers.

25.     Furthermore, the assignment to MWK Recruiting LLC (dated January 31, 2017) did not make MWK Recruiting LLC the owner of any trade secrets previously owned *either* by Kinney Recruiting, L.P. (the actual "Company" mentioned in ¶ 7.2 of the Florida Employment Agreement of May 1, 2006) *or* by Kinney Recruiting LLC (the alleged assignor). *See* Exhibit 7 to the SAC (Dkt. 80-7). This assignment document only purported to assign the Florida Employment Agreement "between Jowers and Recruiting Partners, L.P. [*sic*]" together with any "claims or causes of action" that Kinney Recruiting LLC might have against Jowers. *Id.*, ¶ 1.b & 1.d. Again, there *was* no agreement "between Jowers and Recruiting Partners, L.P." that could have been assigned to MWK Recruiting LLC. Plainly, this is because Jowers had only agreed to be employed by Kinney Recruiting, L.P., *i.e.*, the "Company" that is also mentioned in ¶ 7.2 of the Florida Employment Agreement. *See* Dkt. 80-1; *see also* SAC ¶ 158 (conceding that "Jower's original employer" was "Kinney Recruiting L.P."). For that reason too, there were never any claims or causes of action for trade secret misappropriation that Kinney Recruiting LLC could have assigned on January 31, 2017 to MWK Recruiting LLC arising from the Florida Employment Agreement because Kinney Recruiting LLC too was never the assignee or successor of the "Company" under the Florida Employment Agreement that contains the ¶ 7.2 confidentiality clause.

26.     Jowers did not know of, consent to, or ratify Plaintiff's purported assignment of the Florida Employment Agreement to any other entity.

27.     Plaintiff has also waived his right to recover based on the doctrine of waiver. Plaintiff never informed Jowers of claims against him for any unpaid loans until the time of the filing of his original lawsuit, several months after Jowers' resignation from Plaintiff's employ. Jowers was informed by Plaintiffs accountant that no money was due and owing on his loans.

[PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW                                              6

As such, Plaintiff has waived enforcement of the loan obligations his legal representatives stated were satisfied in 2016.

28.   Additionally, Plaintiff has waives the right to assert any amounts due and owing on the loans since he stated at his deposition that he lacked any personal knowledge of how any of the numbers were calculated and/or that the contents of the loan calculation were privileged.

29.   The evidence demonstrates that Plaintiff never provided compensation at the rate set forth in the Florida Employment Agreement, which sets forth a payment schedule whereby Jowers would received 65% of the fee received by his employer.

30.   Similarly, the evidence that the Hong Kong contract applies is persuasive. Jowers moved to Hong Kong in June 2015. Kinney initiated the paperwork for Mr. Jowers's visa on June 13, 2016, which included the Hong Komg contract.

31.   Mr. Kinney also made false representations that his signature was forthcoming, including on August 21, 2015 ("Ok. Next week.") (Tauler Dec. ¶ 12, Ex. K at 7); September 7, 2015 ("Is an electronic signature on the employment documents sufficient?") *Id.* at 5. In October, Mr. Jowers sent Kinney no less than four emails asking for a status update and demonstrating increasing concern regarding his continued work without a contract compliant with Hong Kong law.

32.   Jowers reasonably believed that the Hong Kong Contract was operative. However, after Jowers resigned, Mr. Kinney asserted that there was no Hong Kong Contract, and that, in reality, the 2006 contract signed by Kinney Recruiting L.P. (dating back over a decade and spanning various different entities, governed their relationship.

33.   The Florida Employment Agreement defines Company Proprietary Information as including "information concerning the identity of clients and their personnel," however the

identify of Plaintiff's clients (all AmLaw 200 law firms) and their personnel must be used in order for Jowers to continue his career as a legal recruiter.

34. Company Proprietary Information also includes "all information developed by its employees, whether or not during working hours, that is related to Company's business" including information "reproduced from the memory of the employees." This is impermissibly overbroad.

35. The restrictive covenants have no time limitation and are not limited in time and as such are overlong.

36. The Employment Agreement's liquidated damages clause provides in relevant part as follows:

> 9.1 The actual damages resulting from violation of Sections 7 and/or 8 of this Agreement by the Employee will be difficult or impossible to ascertain. In the event of such a violation, the Employees shall pay to the Company, upon demand, as liquidated damages, and not as a penalty, the following:
>
> 9.1.l Any fee paid for services rendered in violation of Sections 7 and/or 8, whether paid to the Employee or to any other person, firm, or entity; plus
>
> 9.1.2 All costs and expenses, including reasonable attorney's fees, incurred by the Company in the enforcement of its rights relating to such violation
>
> 9.4 The one-year time periods referred to in Section 8 shall be extended to include any period of time during which the Employee engages in activities constituting a. violation of that Section.

37. The Employment Agreement's liquidated damages clause is also overlong, overbroad, and not reasonably necessary since it automatically renews the contract's one-year limitation automatically without any time limit. Jowers could not know what acts his former employer deemed a violation, or what conduct is a violation, since Jowers no longer would have access to the Company's Proprietary Information as defined.

38.     Plaintiff has not demonstrated that the restrictive covenants are needed to protect a legitimate business interest.  No evidence was presented at trial to negate the premise that the restrictive covenants impose a greater restraint than is necessary.

39.     Kinney's multiple false declarations and perjurious statements under oath to this Court demonstrate unclean hands.

**B.     CONCLUSIONS OF LAW**

1. Although Plaintiff asserts both breach-of-contract and tort actions for misappropriation of trade secrets, the tort actions are related to the employment agreement and that the tort claims are based on the same operative facts.

2. Jowers is not liable for Federal Trade Secret Misappropriation, the Texas Uniform Trade Secrets Act and/or the Florida Uniform Trade Secrets Act. To state a claim under FDTSA, a plaintiff must prove (1) the existence of a trade secret; (2) misappropriation of the trade secret by another; and(3) the trade secret's relation to a good or service used or intended for use in interstate or foreign commerce. 18 U.S.C. § 1836(b)(1); Blue Star Press, LLC v. Blasko, No. SA-17-CA-111-OLGHJB, 2018 WL 1904835, at *2 (W.D. Tex. Mar. 6, 2018).5 A cause of action under TUTSA similarly requires the existence of a trade secret and its acquisition or disclosure through improper means. Tex. Civ. Prac. & Rem. Code §§ 134A.002(1), (3), (6). If seeking compensation (as opposed to injunctive relief), a plaintiff must establish proof of damages. 18 U.S.C. § 1836(b)(3)(B)(1); Tex. Civ. Prac. & Rem. Code § 134A.004(a).

3. The federal Defend Trade Secrets Act provides a cause of action to "[a]n owner of a trade secret that is misappropriated ... if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). *Universal Plant Services, Inc. v. Dresser-Rand Group, Inc.* (Tex. App. 2018) 571 S.W.3d 346, 360. Owner" means, with respect to a trade secret, the person or entity in whom or in which rightful, legal, or equitable title to, or the right to enforce rights in, the trade secret is reposed. TX CIV PRAC & REM § 134A.002

4. A trade secret must (1) derive independent economic value from not being generally known to, and not being readily ascertainable by proper means by, other persons, and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Texas § 134A.002(6); Fla. Stat. § 688.002(4). Plaintiff testified that "the trade secrets that are in dispute in this case, like I said before, are extremely [ephemeral] trade secrets" owned by Plaintiff only for "some fleeting moment of time." As such, Plaintiff failed to demonstrate the existence of a protectable trade secret.

5. Jowers is not liable for breach of the restrictive covenants contained in the Florida Employment Agreement. Under Florida law, restrictive covenants are enforceable if: (i) they are reasonable in time, area, and line of business, and (ii) the person seeking enforcement both pleads and proves that a legitimate business interest justifies the restrictive covenant. Fla. Stat. Ann. § 542.335(1), (1)(b). "Any restrictive covenant not supported by a legitimate business interest is unlawful and is void and unenforceable." Id. § 542.335(1)(b). "General skills and knowledge developed through the course of employment are not the type of interest which justifies protection under a restrictive covenant." *Evan's World Travel, Inc. v. Adams*, 978 S.W.2d 225, 231 (Tex. App.—Texarkana 1998, no pet.) (citations omitted). Thus, "a former employee may use the general knowledge, skills, and experience acquired during employment to compete with a former employer." *Trilogy Software, Inc.*, 143 S.W.3d at 467 (citations omitted).

6. There was no discernible way for Jowers to know when the non-compete period had expired. *Central States Logistics, Inc. v. BOC Trucking, LLC* (App. 1 Dist. 2018) 573 S.W.3d 269. Likewise, Jowers is not liable for Breach of the Florida Employment Agreement because it was assigned without his knowledge or consent. An executory contract for personal services, as the one here is, cannot be assigned by the employer without his employee's consent,

since everyone has a right to determine with whom he will contract. Spengler v. Pitluk, 261 S.W.2d 470, 471 (Tex.Civ.App.—San Antonio 1953, writ dism'd); Oak Cliff Ice Delivery Co. v. Peterson, 300 S.W. 107, 109 (Tex.Civ.App.—Dallas 1927, no writ). Noncompete agreements between former employer and former employees were not capable of assignment to buyer of former employer's assets; there was no evidence that former employees consented to assignment of agreements. Sun Group Enterprises, Inc. v. DeWitte, App. 5 Dist., 890 So.2d 410 (2004); American Biomedical Corp. v. Anderson (Tex. Civ. App. 1977) 546 S.W.2d 112, 116.

7. Under Florida Law, liquidated damages clause may not be "grossly disproportionate to the damages that might reasonably be expected to flow from the breach." *Lefemine v. Baron,* 573 So.2d 326 (Fla. 1991)." Rather, when the amount of liquidated damages is so "unreasonably large when compared to the damage that could have been anticipated from breach of the contract, and therefore punishes the breach, [it] is a penalty, as is a sum which is designed to or has the effect of coercing performance of the contract by making a breach so expensive that it forces adherence to the contract." 24 Williston on Contracts § 65:3 (4th ed. 2014); *Whispering Pines of Royal Palm Beach Homeowners Ass'n v. Comcast Cable Communs., LLC*, No. 13-80142-CIV, 2014 U.S. Dist. LEXIS 84283, at *10 n.1 (S.D. Fla. June 19, 2014)

8. Jowers is not liable for Breach of the Line of Credit/Revolving Loan because the loan was repaid in full. Moreover, Plaintiff's multiple false declarations about how the amount due on the revolving loan, and Plaintiff's violation of the Truth in Lending Act, its failure to register as a payday lender, and Plaintiff's false testimony under oath all independently warrant application of the unclean hands doctrine.

9. Jowers is not liable Breach of the 2012 "Forgivable Loan" because of the dearth of evidence provided to support this claim, as well as the aforementioned application of the doctrines of waiver, estoppel, and unclean hands.

10. Plaintiff is to take nothing by way of its Complaint.

11. Jowers is the prevailing party and is entitled to his attorney's fees.

**IT IS FURTHER ORDERED:**

Judgment shall be entered based on the foregoing Findings of Fact and Conclusions of Law.

**IT IS SO ORDERED.**

DATED: _____          _____
                                          Hon. Robert L. Pitman
                                          United States District Judge