# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | |
|---|---|
| MWK RECRUITING, INC.<br><br>　　　　Plaintiff,<br><br>v.<br><br>EVAN P. JOWERS,<br><br>　　　　Defendant/Judgment<br>　　　　Debtor. | Civil Action No. 1:18-cv-00444-RP |

## PLAINTIFF/JUDGMENT CREDITOR'S OPPOSED EXPEDITED MOTION FOR INJUNCTION

# **TABLE OF CONTENTS**

I.  Introduction ......................................................................................... 1

   A.  The Original Injunction and the appellate court decision. ...................... 2

   B.  Development of the HK Action since January 2021. .............................. 2

II.  Legal Standard ...................................................................................... 3

   A.  Foreign antisuit injunction standards. .................................................. 3

   B.  Standards for prospectively enjoining harassing domestic litigation. ...... 4

   C.  Standards for enjoining dissipation and transfer of assets. ................... 5

III.  Argument and Authorities ................................................................... 6

   A.  The Court should enjoin the HK Action. ............................................. 6

     1.  The HK Action frustrates important policies of this forum. ........... 7

     2.  The HK Action is vexatious and oppressive. ................................. 8

       a.  The HK Action poses an inequitable hardship. ...................... 8

       b.  The HK Action's sole purpose is to frustrate execution
         of the Final Judgment. .......................................................... 9

       c.  The HK Action duplicative, both factually and legally .......... 10

     3.  The HK Action is causing prejudice and offending other
       equitable principles ........................................................................ 11

     4.  There is no longer any concern regarding international comity .... 11

   B.  The Court should prospectively enjoin Jowers from pursuing other
     harassing litigation. ......................................................................... 12

   C.  The Court should enjoin Jowers's dissipation or transfer of assets. ...... 15

IV.  Conclusion .......................................................................................... 17

# TABLE OF AUTHORITIES

## CASES

*Applied Medical Distribution Corp. v. Surgical Co. BV,*

   587 F.3d 909 (9th Cir. 2009) ................................................................ 7

*Baum v. Blue Moon Ventures*, 513 F.3d 181 (5th Cir. 2008) ....................... 4, 5, 12, 14

*Bremen v. Zapata Off-shore Co.*, 407 U.S. 1 (1972) .................................... 7

*Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585 (1991) .......................... 7

*Commercializadora Portimex, S.A. de CV v. Zen-Noh Grain Corp.,*

   373 F. Supp. 2d 645 (E.D. La. 2005) ............................................ 8, 12

*Ellis v. Amex Life Ins.*, 211 F.3d 935 (5th Cir. 2000) ................................ 12

*Farguson v. Mbank Houston, N.A.*, 808 F.2d 358 (5th Cir. 1986) .............................. 4

*Jackson v. Bellsouth Telecomms.*, 372 F.3d 1250 (11th Cir. 2004) ........................... 13

*Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624 (5th Cir. 1996) .................................. 11, 12

*Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara,*

   335 F.3d 357 (5th Cir. 2003) ............................................................ 12

*Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. U.S. Fire Ins.*

   *Co.*, 639 So. 2d 606 (Fla. 1994) ...................................................... 13

*MacPhail v. Oceaneering Intern., Inc.*, 302 F.3d 274 (5th Cir. 2002) ........................ 7

*MWK Recruiting Inc. v. Jowers*, 833 Fed.Appx. 560 (5th Cir. 2020) .................. 2, 3, 4

*Russell v. SunAmerica Secs., Inc.*, 962 F.2d 1169 (5th Cir. 1992) ............................ 12

*Thomas v. Hughes*, 27 F.4th 363 (5th Cir. 2022) ........................................... 5

**STATUTES**

Fla. Stat. § 95.11 ................................................................................................ 11

Tex. Civ. Prac. & Rem. Code § 16.002 ................................................................. 11

**TABLE OF EXHIBITS**

| <u>Exhibit No.</u> | <u>Description</u> |
|---|---|
| 1 | Declaration of Robert E. Kinney |

**<u>Exhibits to Kinney Decl.</u>**

| | |
|---|---|
| A | Amended Statement of Claim dated May 31, 2022, from the High Court of the Hong Kong Special Administrative Region Court of First Instance |
| B | Collected email messages referenced in Statement of Claim. |
| C | Affidavit of Evan Jowers dated October 28, 2022. |
| D | Recent application by Evan Jowers for Hong Kong visa |
| E | Complaint filed by Jowers September 26, 2022, in state court in Florida, Evan Jowers v. Robert E. Kinney and MWK Recruiting, Inc., No. 02-2022-CA-3042, Alachua County, Florida |
| F | Complaint filed by Jowers August 20, 2022, in state court in Florida, Evan Jowers v. Mark Poe, No. 22-CA-000462, Monroe County, Florida. |
| G | Writ of Mandate dated November 14, 2022, seeking appearance of Kinney and subpoena responses in Evan Jowers v. Mark Poe. |
| H | Facebook posting by Evan Jowers regarding car purchase. |
| I | Email correspondence between Kinney and Tauler dated October 10, 2022 – "3.62% of zero is zero." |

## I.      Introduction

Plaintiff/Judgment Creditor MWK Recruiting, Inc. (now known as Counsel Holdings, Inc.) ("**Plaintiff**")[1] respectfully submits this Motion for Expedited Issuance of a Permanent Injunction against Evan Jowers ("**Jowers**"), his employees and agents, enjoining them from 1) maintaining suit against Plaintiff, Kinney Recruiting Limited, Robert Kinney ("**Kinney**"), and any party in privity with them regarding the subject matter of this action in a separate forum (the "**New Antisuit Injunction**"); and 2) dissipation or transfer of assets, including transfers overseas (the "**Dissipation Injunction**"). The New Antisuit Injunction is necessary because Jowers is continuing to pursue defamation claims in Hong Kong simply to relitigate factual and legal determinations made by the Court and harass his opponents (the "**HK Action**"). He is also pursuing (but has not yet served summons for) additional (frivolous) lawsuits to harass Plaintiff and to interfere with collection of the Court's award in the final judgment issued September 19, 2022 (the "**Final Judgment**"). The Dissipation Injunction is necessary because Jowers has paid nothing on the Final Judgment, has posted no security, and is taking active steps to dissipate and transfer his assets and leave the United States for a move to Hong Kong. In view of Jowers's imminent move to Hong Kong and, because the HK Action will soon be entering the discovery phase, with increasing costs and the risk of

---

[1] The term "Plaintiff" is used throughout this Motion to refer to Plaintiff and the parties in privity with Plaintiff, including Kinney, Michelle W Kinney, Kinney Recruiting LLC, Kinney Recruiting Limited, Counsel Unlimited LLC, and Kinney Overseas LLC.

conflicting rulings, Plaintiff requests that the Court expedite consideration of this motion.

### A.    The Original Injunction and the appellate court decision.

With its Order dated November 12, 2019, the Court granted Plaintiff's Opposed Expedited Motion for Issuance of a Preliminary and a Permanent Injunction (the "**Original Injunction**"). (Mot., Dkt. 102; Order, Dkt. 119). Jowers appealed the Original Injunction on November 19, 2019. (Dkt. 121). On November 6, 2020, the Fifth Circuit Court of Appeals vacated the Original Injunction and remanded it for further consideration and assessment in accordance with the appellate court's judgment. (Dkt. 222, at 9) (unpublished decision reported at *MWK Recruiting Inc. v. Jowers*, 833 Fed.Appx. 560 (5th Cir. 2020)). The Court mooted the Original Injunction on January 21, 2021. (Dkt. 256). Until after trial of this case, Jowers did nothing.

### B.    Development of the HK Action since January 2021.

Prior to the Original Injunction, Jowers had filed only vague descriptions of the claims he intended to bring in Hong Kong using an "endorsement of claim." (*See* Mot., Dkt. 102, at 7-8). To continue the case, Jowers was required to file a full "statement of claim" describing the particulars of his allegations. Jowers did not file a statement of claim until December 24, 2021, following trial in this case. (REK Decl., at ¶2). The claims in the HK Action are claims for defamation based largely on email messages sent by Kinney to clients and candidates of Kinney Recruiting following Jowers's departure. (REK Decl., at ¶3). As the Court surmised when issuing the Original Injunction, each of the claims in the HK Action does indeed "*exclusively*

involve claims about Jowers's conduct during his employment—the precise subject of the domestic case." (Dkt. 119, at 10). Recently, Jowers has filed affidavits claiming that he is in fact a Hong Kong resident and will be moving there imminently. (REK Decl., at ¶4-5). At the same time, his Florida cases claim Florida residency. (REK Decl., at ¶8-9).

## II.    Legal Standard

### A.    Foreign antisuit injunction standards.

In its opinion vacating and remanding of the Original Injunction, the Fifth Circuit confirmed the general principles regarding injunctions and the considerations specific to foreign antisuit injunctions utilized by the Court in determining that the HK Action should be enjoined. (Dkt. 222, at 3-5). Describing the considerations related specifically to foreign antisuit injunctions, the appellate court said:

> The Fifth Circuit has adopted a test that weighs the need to prevent vexatious or oppressive litigation and to protect the court's jurisdiction against the need to defer to principles of international comity. An injunction against the prosecution of a foreign lawsuit may be appropriate when the foreign litigation would: (1) frustrate a policy of the forum issuing the injunction; (2) be vexatious or oppressive; (3) threaten the issuing court's in rem or quasi in rem jurisdiction; or (4) cause prejudice or offend other equitable principles.

(Dkt. 222, at 4) (cleaned up). The appellate court also confirmed that, "[i]n applying the test, this court has rejected the approach taken by some other circuits, which elevates principles of international comity to the virtual exclusion of essentially all other considerations." (*Id.*, at 4-5) (cleaned up). The appellate court also confirmed the test for whether proceedings in another forum constitute "vexatious or oppressive" litigation that threatens the court's jurisdiction:

> To determine whether proceedings in another forum constitute "vexatious or oppressive" litigation that threatens the court's jurisdiction, the domestic court considers whether the following interrelated factors are present: (1) inequitable hardship resulting from the foreign suit; (2) the foreign suit's ability to frustrate and delay the speedy and efficient determination of the cause; and (3) the extent to which the foreign suit is duplicative of the litigation in the United States.

(*Id.*, at 5). Explaining its decision to vacate and remand, the appellate court said, the "duplicative factor is about legal not factual, similarity," meaning that the Fifth Circuit finds suits to be duplicative when they involve "the same or similar legal bases or identical claims." (Dkt. 222, at 8). The appellate court specifically noted that this Court had relied only on the factual duplication issue in ruling on the Original Injunction, had not considered legal similarity, and had not found that litigating in Hong Kong would pose an inequitable hardship. (*Id.*). The appellate court's concern centered on the risk that a focus only on "operative facts" to assess the duplicative factor would "increase the frequency of antisuit injunctions," noting that "an antisuit injunction, like all *preliminary* injunctions, is an extraordinary remedy. (Dkt. 222, at 8) (cleaned up) (emphasis added).

### B.  Standards for prospectively enjoining harassing domestic litigation.

"A district court has jurisdiction to impose a pre-filing injunction to deter vexatious, abusive, and harassing litigation." *Baum v. Blue Moon Ventures*, 513 F.3d 181, 187 (5th Cir. 2008) (citation omitted). "The court's power to enter such orders flows not only from various statutes and rules relating to sanctions, but the inherent power of the court to protect its jurisdiction and judgments and to control its docket" *Farguson v. Mbank Houston, N.A.*, 808 F.2d 358, 360 (5th Cir. 1986). A

prefiling injunction may be issued or modified by a district court *sua sponte* with notice and a hearing. *Baum,* 513 F.3d. at 189. In determining whether to impose such an injunction, a court must "weigh all of the relevant circumstances, including the following four factors: (1) the party's history of litigation, in particular  whether she has filed vexatious, harassing, or duplicative lawsuits; (2) whether the party had a good faith basis for pursuing the litigation, or simply intended to harass; (3) the extent of the burden on the courts and other parties resulting from the party's filings; and (4) the adequacy of alternative sanctions." *Id*. at 189. Federal courts can consider a litigant's conduct in state court to determine whether that litigant's conduct in federal court was undertaken in bad faith or for an improper motive. *Baum*, 513 F.3d at 191. Although it has not been addressed in a decision, it stands to reason that federal courts can also consider a litigant's conduct in foreign courts. A pre-filing injunction must be "tailored to protect the courts and innocent parties, while preserving the legitimate rights of litigants." *Id*. at 190.

### C.   Standards for enjoining dissipation and transfer of assets.

"Texas law provides that, in the post-judgment context, a trial court may enjoin the judgment debtor from dissipating or transferring assets to avoid satisfaction of the judgment. The applicable standard is a factual matter requiring the trial court to determine whether the judgment debtor is likely to dissipate or transfer its assets to avoid satisfaction of the judgment. A trial court abuses its discretion in granting such relief *if the only reasonable decision that could be drawn from the evidence is that the judgment debtor would not dissipate or transfer its assets.*" *Thomas v. Hughes*, 27

F.4th 363, 368-69 (5th Cir. 2022) (cleaned up) (emphasis added).  This is a very low standard, requiring only that there be some justification for the injunction.

## III.   Argument and Authorities

### A.   The Court should enjoin the HK Action.

This is no longer a question of whether to grant the "extraordinary remedy" of a preliminary injunction to stop the HK Action. Plaintiff has achieved actual success on the merits. The remedy Plaintiff seeks is a permanent injunction recognizing the claim preclusive effect of the Final Judgment, which is not extraordinary. Further, three of the four tests applicable to whether to issue a foreign antisuit injunction also clearly apply here. First, Jowers's effort to pursue the HK Action frustrates important policies of this forum in that he is attempting to ignore a choice of forum clause he previously has acknowledged is applicable to suits related to his employment, which does not call for any litigation in Hong Kong. (Order, Dkt. 87, at 11) ("Jowers says that the forum selection clause unambiguously specifies Florida as the intended forum for all litigation."). Second, the HK Action is vexatious and oppressive, because it represents an inequitable hardship, has the potential to frustrate and delay the efficient execution of the Final Judgment, and is duplicative – involving  similar legal bases as the claims that have already been determined by this Court. Third, the HK Action has the potential to cause prejudice to Plaintiff. Jowers brought his defamation claims in Hong Kong to try to take advantage of the six-year statute of limitation there for such claims. Had he brought the claims as counterclaims in this lawsuit, they would have been time barred or they would have been undermined by the Court's

other determinations already and dismissed. Now they are barred by the doctrine of res judicata.

### 1.    The HK Action frustrates important policies of this forum.

Jowers argued vehemently at the motion to dismiss stage and thereafter that the forum selection clause in the parties' contract was valid and enforceable and "unambiguously specifies Florida as the intended forum." (Dkt. 87, at 11). None of the parties has ever urged that the clause called for litigation in Hong Kong. Forum selection clauses are generally enforceable and presumed to be valid. *Bremen v. Zapata Off-shore Co.*, 407 U.S. 1, 9 (1972). Antisuit injunctions must often be used to effectuate them. "There is a strong policy favoring robust forum selection clauses. . . Anti-suit injunctions may be the only viable way to effectuate valid forum selection clauses." *Applied Medical Distribution Corp. v. Surgical Co. BV*, 587 F.3d 909 (9th Cir. 2009); *see generally Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593-94 (1991) ("[A] clause establishing *ex ante* the forum for dispute resolution has the salutary effect of dispelling any confusion about where suits arising from the contract must be brought and defended..."). The Fifth Circuit has held that "federal courts must presumptively uphold forum selection clauses in international transactions." *MacPhail v. Oceaneering Intern., Inc.*, 302 F.3d 274, 278 (5th Cir. 2002) (reversing district court's antisuit injunction where forum selection clause called for overseas forum). Also, by seeking to relitigate issues the Court has already determined, Jowers is seeking to frustrate another important policy of this forum: finality of judgments. This factor overlaps with the duplication factor relevant to the assessment of whether the HK Action is oppressive and vexatiousness. If Jowers does

not like what the Court determined in the Final Judgment, his sole remedy should be appeal to the Fifth Circuit.

### 2.   The HK Action is vexatious and oppressive.

#### a.   The HK Action poses an inequitable hardship.

The HK Action now poses an inequitable hardship for several reasons. First, the situation has changed since the Original Injunction. With the Final Judgment, Plaintiff has prevailed, and Jowers is now seeking to force Plaintiff to defend itself against similar claims in another country. The HK Action is cloaked in the garb of a defamation action but, as in any common law jurisdiction, truth is a defense to claims of defamation in Hong Kong. (REK Decl., at ¶6). The Court has determined already that Jowers did what he now claims, as a defamation plaintiff, he did not do. Analyzing the inequitable hardship factor in connection with the Original Injunction, the Court recognized that, following a final judgment, there might be a "situation in which a party that has already prevailed is subsequently forced to 'defend itself against the same claims' in another country, which would support an injunction." (Order, Dkt. 119, at 7) (citing *Commercializadora Portimex, S.A. de CV v. Zen-Noh Grain Corp.*, 373 F.Supp.2d 645, 649-650 (E.D. La. 2005) (additional citations omitted). This circumstance has now come to pass. Second, the 2006 Jowers employment agreement (the "**Jowers Agreement**") specifically permitted Plaintiff to notify "any new employer or entity for whom the Employee provides services about the Employee's rights and obligations under this agreement following the termination of the Employee's employment…". (Jowers Agmt., Dkt. 341-1, at 6, ¶4.8). Jowers's claims in the HK Action amount to charges that Plaintiff did just that, but

that doing so constituted defamation. Since the Court has already determined that the Jowers Agreement was enforceable, it is an inequitable hardship to force Plaintiff to relitigate this issue as well. Third, in line with his tactic of multiplying these proceedings unreasonably and vexatiously throughout, Jowers is pursuing the HK Action to add to costs, another inequitable hardship. (*See*, Motion for Sanctions, Dkt. 360). The Court previously found that forcing Plaintiff to pursue Jowers in Hong Kong was not an inequitable hardship solely based on cost, but here too the situation has changed. The cost and burden of the HK Action present Plaintiff with real risk to its business in Asia. (REK Decl., at ¶7).

### b. The HK Action's sole purpose is to frustrate execution of the Final Judgment.

Whether the HK Action has the potential to frustrate and delay the speedy and efficient determination of the issues before the Court is the second factor relevant to determining whether the foreign action is vexatious and oppressive. Although the Final Judgment has been issued, it has not been paid and Jowers has not posted any security. The Court continues to have jurisdiction over the Final Judgment until such time as the Final Judgment is satisfied. Jowers seeks with the HK Action to frustrate and delay execution of the Final Judgment, an analogous situation to frustrating and delaying speedy and efficient determination of issues prior to judgment. Diverting resources away from the effort to pursue him for collection of the award is an effective means of frustrating work to collect on the award while it continues to occupy resources of the Plaintiff. (REK Decl., at ¶7). Thus, this second factor is also satisfied.

### c.   The HK Action duplicative, both factually and legally.

Jowers's defamation claim involves not only similar facts as those determined by the Court already, but also the same and similar legal issues. Specifically, the Court already determined that Jowers and his agent, Alejandro Vargas, misappropriated Plaintiff's trade secrets and used them to create Legis Ventures (HK) Company Limited ("**Legis**"). (FF&CL, Dkt. 344, at 24-27). These were violations of the Federal Defend Trade Secret Act ("FDTSA"), and the Texas Uniform Trade Secret Acts ("TUTSA"). The Court also determined that Jowers breached the Jowers Agreement. (FF&CL, Dkt. 344, at 29-38). Also, the Court determined that Jowers breached two loan agreements. (FF&CL, Dkt. 344, at 38-42). In the HK Action, Jowers is exclusively charging that statements made about him related to his employment and his departure from the employment of Plaintiff were untrue. (REK Decl., at ¶3). Regarding each such statement, the Court has already determined, either directly or indirectly, that the statements were true. For example, Jowers claims that a statement Kinney made to James Chang that Jowers was "essentially committing theft, ignoring our rights," was defamatory because it would be understood to mean that "Jowers has acted in clear breach of the law as well as in breach of his contractual obligations." (Am. Stmt. of Claim, REK Decl., at ¶2, Exh. A, at 9). Specifically, about Chang, this is exactly the legal determination that the Court already made, *i.e.*, that Jowers violated the DTSA and TUTSA and breached the Jowers Agreement. Since these are the very legal determinations that the Court has already made, it is well within the discretion of the Court to find that the HK Action

involves the same claims and the same or similar legal issues as the case that was before the Court.

### 3.    The HK Action is causing prejudice and offending other equitable principles.

As was the case in *Kaepa*, Jowers's choice to attempt to continue to litigate his claims in Hong Kong after losing them before this Court "smacks of cynicism, harassment, and delay." *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996). Jowers's suit in Hong Kong has the potential to cause prejudice to Plaintiff in numerous ways. First, because it has a six-year statute of limitations period, the court in Hong Kong might permit Jowers to pursue a claim for defamation which would be time-barred in the United States. (REK Decl., at ¶6). Texas has a one-year statute of limitations for defamation actions. (Tex. Civ. Prac. & Rem. Code § 16.002). Florida's statute of limitations for libel and slander is two years. (Fla. Stat. § 95.11). Second, forcing Plaintiff to litigate on two continents, where the rules are completely different, brings significant additional costs for no purpose. Plaintiff is suffering irreparable injury by being forced to go to the expense of litigating the same facts, in a different jurisdiction, with the burden of proof to show that determinations already made by this Court were correct.

### 4.    There is no longer any concern regarding international comity.

Finally, the concept of international comity should not prevent the issuance of an antisuit injunction. Even prior to a final judgment, the Fifth Circuit does not elevate "principles of international comity to the virtual exclusion of essentially all other considerations." *Kaepa, Inc.*, 76 F.3d at 627. The Fifth Circuit has noted that

"notions of comity do not wholly dominate [the] analysis to the exclusion of these other concerns." *Karaha Bodas Co.* v. *Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 366 (5th Cir. 2003). Moreover, it is well established that "international comity concerns about issuing an antisuit injunction against foreign litigation are lessened when a case has already ***proceeded to final judgment*** on the merits in the domestic court." *Commercializadora* Portimex, 373 F.Supp.2d at 652 (citing cases). This case has proceeded to final judgment. Other than the pending motions before the Court, collection activities, and Jowers's appeal, it should be over.

**B.    The Court should prospectively enjoin Jowers from pursuing other harassing litigation.**

There is ample evidence in the record that Jowers is a vexatious litigant as that standard is applied by the Fifth Circuit. First, the doctrine of res judicata clearly bars litigation of Jowers's defamation claims in the HK Action. "Federal law determines the res judicata effect of a prior federal court judgment." *Russell v. SunAmerica Secs., Inc.*, 962 F.2d 1169, 1172 (5th Cir. 1992). In the Fifth Circuit, res judicata bars litigation of any issue connected with a cause of action or defense that, in the use of due diligence, a party might have tried in an earlier suit. *Ellis v. Amex Life Ins.*, 211 F.3d 935, 938 n.1 (5th Cir. 2000). Jowers's defamation claims, since they challenge the truth of statements the Court has already determined are true, clearly are barred by res judicata and as described above, are otherwise duplicative. This is a vexatious, duplicative, and harassing lawsuit, satisfying the first factor in the *Baum* test. *Baum,* 513 F.3d. at 189. Jowers had no good faith basis to pursue that litigation. He also had no good faith basis to bring the counterclaims he brought in

the case tried to the Court. As described in Plaintiff's Motion for Sanctions, the counterclaims were purely meant to harass. (*See*, Dkt. 360).

Jowers is already pursuing other harassing litigation meant to duplicate and interfere with the Final Judgment and he promises he is just getting started. In Florida, Jowers has filed (but not served) a lawsuit against Kinney, seeking an injunction there to prevent Plaintiff's efforts to collect on the Final Judgment, and seeking a declaration that he owes nothing to Plaintiff (the "**Florida Case v. Kinney**"). (REK Decl., at ¶8). Jowers's theory is that, by telling Jowers's attorney in California during settlement negotiations that Kinney intends to seize the vehicle Jowers had just purchased for his mother if the case does not settle, Kinney was acting as a debt collector in Florida and illegally threatening Jowers. The allegations appear frivolous, not least because the Florida Supreme Court has held that "absolute immunity must be afforded to any act occurring during the course of a judicial proceeding, regardless of whether the act involves a defamatory statement or other tortious behavior ..., so long as the act has some relation to the proceeding." *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. U.S. Fire Ins. Co.*, 639 So. 2d 606, 608 (Fla. 1994). This rule has been consistently applied to cases in which the alleged tortious conduct arose in settlement negotiations. *See, e.g.*, *Jackson v. Bellsouth Telecomms.*, 372 F.3d 1250, 1275 (11th Cir. 2004) (acts "taken in the course of settlement negotiations, are inextricably linked to the process of guiding ongoing litigation to a close"). Undeterred, Jowers promises in the Florida Case v. Kinney that

Plaintiff's efforts to collect the Final Judgment award "will result in a multiplicity of suits." (REK Decl., at ¶8, Exh. E, at 5).

In another (equally frivolous) state court lawsuit in Florida, Jowers has also sued Mark Poe ("**Poe**"), an attorney from Hawaii (the "**Florida Case v. Poe**"). Jowers's theory there is that Poe tortiously interfered with Jowers's agreement for legal services with Tauler by informing Kinney in August 2020 that Tauler had been sanctioned and warned by certain courts in California. (REK Decl., at ¶9, Exhibit G). On its face, this case is also barred by the Florida litigation privilege, but Jowers (likely guided by Tauler) as usual does not care about the merits. Jowers has obtained a "writ of mandate" that purports to force Kinney to travel to Florida for a hearing on Poe's motion to dismiss, as well as to produce documents directly related to issues already determined by this Court. (REK Decl., at ¶10).

These actions and the promise to continue with more of the same easily satisfy the first and second prongs of the *Baum* test. *Baum,* 513 F.3d. at 189. As to the third factor, regarding the burden on courts and parties, the Court is aware of the burden that this case has been for the Court and for the Plaintiff. These additional cases are just more of the same – an extensive burden for other courts and other parties. As to the fourth factor, whether other sanctions would be adequate, Jowers has been very clear that he does not care about costs. It would be folly to simply apply a monetary sanction against Jowers for his filings when he has this attitude. He must be enjoined.

The Court should issue a prefiling injunction to stop Jowers from filing or serving additional litigation in any way related to the issues that have been before

the Court pursuant to the present case without prior authorization from the Court. Since Jowers has not yet served summons in the Florida Case v. Kinney and he has not served the "writ of mandate" in the Florida Case v. Poe on Kinney, he should be specifically barred from doing so.

### C. The Court should enjoin Jowers's dissipation or transfer of assets.

Jowers has taken many actions so far indicating his intention to dissipate or transfer assets. First, Jowers has repeatedly made conflicting statements regarding ownership of the various entities through which he does business. His statements are so much in conflict that he simply should not be trusted. For example, Jowers claimed in several declarations that Alejandro Vargas was "the sole owner and officer" of Legis. (Dkt. 1-12, at ¶¶2, 7; Dkt. 11-1, at ¶¶2,10; Dkt. 19-1, at ¶¶2,11). Jowers even declared: "I am not a shareholder or owner of any interest in Legis Ventures. I am certainly not a President or Vice President…*I am not a director or other governing person of Legis Ventures*." (Dkt. 11-1, at ¶10; Dkt. 19-1, at ¶11) (emphasis added). Jowers relied on those statements to obtain dismissal of Legis from the case. (Dkt. 87). Later, evidence obtained from third parties revealed that Jowers had been signing contracts on behalf of Legis as its "Founder" since at least March 28, 2017. (Dkt. No. 143-1 at 55; Dkt. 168, at 5). Jowers admitted at trial he was in fact a director of Legis after all. (Tr. II, at 118) ("I'm a director of Legis Ventures…"). Since trial, Jowers has revealed more. According to an affidavit he recently filed in Hong Kong, trying to prove that he should not need to produce security for the costs that he is

causing there, Jowers says that, in addition to being director of Legis, he owns 82% of the shares of Legis. (REK Decl., at ¶4). Jowers cannot be trusted.

Second, Jowers has recently been seen on social media postings about large monetary purchases, such as a new car purchased for his mother in Louisiana shortly after the Final Judgment. (REK Decl, at ¶11). Third, Tauler recently said that Jowers intends to pay "zero" toward the Final Judgment. (REK Decl., at ¶12). Fourth, Jowers has refused to post an appeal bond or even a relatively small amount of money to avoid collection activity in response to offers by Plaintiff. (REK Decl., at ¶13). Fifth, Jowers has announced his plans to move overseas to Hong Kong as soon as possible. (REK Decl., at ¶4). Sixth, while filing his lawsuits in Florida and Hong Kong, Jowers has been duplicitous about his current residency status, simultaneously saying he is a resident of both places. (*cf.*, REK Decl., at ¶¶4-5 vs. ¶¶8-9). Finally, Jowers has delayed responding to any discovery requests until 30 days after the automatic stay of Rule 62 has expired. At the same time, he is clearly attempting to move overseas before those discovery responses are due or responses can be compelled. In view of all these things and Jowers's lack of credibility so far throughout these proceedings, Plaintiff requests an injunction specifying that Jowers must obtain leave of this Court before a) transferring any property to any third party, including but not limited to cash, any ownership interests in Legis, Jowers Vargas LLC, Jowers Langer LLC, or any other entity, and any other property; b) transferring any property of Legis to any third party except for transactions in the ordinary course of business; or c) transferring any other person's interest in any entity to any third party.

## IV.   Conclusion

For the foregoing reasons, Plaintiff asks the Court to set an expedited briefing schedule, hold a hearing, and issue an order: 1) requiring Jowers to dismiss his suit in Hong Kong against Kinney Recruiting Limited and Kinney 2) enjoining Jowers, his officers, agents, servants, employees, attorneys, and any other persons who are in active concert or participation with them, from maintaining the Hong Kong Litigation and/or instituting or continuing any other actions against Plaintiff or parties in privity with Plaintiff in Hong Kong or any other forum that would undermine or attack this Court's jurisdiction in this matter; and 3) requiring Jowers to obtain leave of this Court before a) transferring any property to any third party, including but not limited to cash (in excess of an amount that the Court determines is reasonable and necessary for daily living expenses), any ownership interests in Legis, Jowers Vargas LLC, Jowers Langer LLC, or any other entity, and any other movable property; b) transferring any property of Legis to any third party except for transactions in the ordinary course of business; or c) transferring any other person's interest in any entity to any third party.

Dated: November 17, 2022

Respectfully Submitted

/s/ Robert E. Kinney
Robert E. Kinney
Texas State Bar No. 00796888
Robert@KinneyPC.com

**Robert E. Kinney**
824 West 10th Street, Suite 200
Austin, Texas 78701
Tel: (512) 636-1395

Raymond W. Mort, III
Texas State Bar No. 00791308
raymort@austinlaw.com

**THE MORT LAW FIRM, PLLC**
100 Congress Ave, Suite 2000
Austin, Texas 78701
Tel/Fax: (512) 865-7950

**ATTORNEYS FOR
PLAINTIFF/JUDGMENT CREDITOR**

## **CERTIFICATE OF CONFERENCE**

Counsel for Plaintiff emailed Kevin Cole and Robert Tauler on November 16, 2022, to request that he consent to the relief requested in this Motion. Tauler responded to ask for a call. I responded to confirm that he would at least be willing to agree to the relief that the Court previously granted with its injunction contained in the Order at Dkt. 119. Tauler did not consent, but he did follow up, first by telling me he did not know what injunction I was talking about, then with two other messages, one asking why I was too "chicken" to talk to him, and the other calling me a "sicko." I did not respond to those messages, but it is clear that Tauler is opposed to the relief contained in this Motion.

/s/ Robert E. Kinney
Robert E. Kinney