**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| **MWK RECRUITING, INC. and COUNSEL HOLDINGS, Inc.**<br><br>    **Plaintiff,**<br><br>    v.<br><br>**EVAN P. JOWERS,**<br><br>    **Defendant/Judgment Debtor.** | Civil Action No. 1:18-cv-00444-RP |

### PLAINTIFF'S MOTION TO COMPEL DISCOVERY RESPONSES

Plaintiff MWK Recruiting, Inc. (now known as Counsel Holdings, Inc.) ("Plaintiff") hereby moves to compel discovery responses from defendant Evan P. Jowers ("Jowers") to post-judgment discovery. Because Jowers appears intent on fleeing the United States and evading lawful discovery and collection activity, and he is attempting to do so before ever needing to answer discovery requests, Plaintiff requests that the Court compel Jowers to respond forthwith to the pending discovery requests.

**I.    Background**

Plaintiff served twenty-five requests for production and eighteen interrogatories on Jowers September 25 and September 26, 2022, respectively. (REK Decl., at ¶¶6-7). Since then, Jowers has announced that he is moving to Hong Kong, and that he has substantial assets there, but he has not responded to almost any of the discovery

requests except with objections. Jowers first responded on or about October 25, 2022, with a single objection to each request for production and each interrogatory: "Objection. This request violates the automatic stay on enforcement provided for in FRCP 62(a), which expired on October 19, 2022. As such, we will treat this request as being served on that date and will respond to this request 30 days after that date, on November 18, 2022." (REK Decl, at ¶¶4-5). Jowers thus acknowledged that responses were due by November 18, 2022 but did not state any other objections.

On November 18, Jowers sent supplemental objections and responses to both the interrogatories and the requests for production. (REK Decl., at ¶¶2-3). The interrogatory responses contained boilerplate objections, but no responsive information whatsoever. (REK Decl., at ¶3). The responses to the requests for production also contained boilerplate objections and responded to four of the requests for production by saying, "No such documents exist." (REK Decl., at ¶2).

Jowers's boilerplate objections fall into several categories:

1) Jowers should not need to provide information related Legis Ventures (HK) Company Limited, Jowers/Vargas, or Jowers Langer LLC, because Plaintiff has not shown that those entities are alter egos of Jowers.

2) Jowers should not need to respond to questions seeking his knowledge about assets owned by or transactions involving his spouse, Yuliya Vinokurova (Jowers's ex-wife and business partner), or his first-degree family members, because those persons are not parties to the case.

3) He should not need to respond at all because Robert Kinney ("Kinney") "has made numerous threats to Mr. Jowers and his family."

    4) The requests are too vague because Jowers is unable to understand the meaning of the terms "first degree family member," "real estate interests,"[1] and "encumbrance."

    5) The requests are overbroad as to time regarding the RFPs. [2]

    6) The requests seek information that is "not relevant."

Counsel for Plaintiff contacted Robert Tauler ("Tauler") on November 21 regarding Jowers's deficient responses and objections. Tauler refused to provide any other specifics, did not provide any proposals to narrow the requests, and refused to state what protections Jowers is seeking due to the alleged "threats." Instead, Tauler insisted on a telephonic "meet and confer," but said that he could not even discuss the matter until the week following Thanksgiving, and he refused to put any proposal in writing to avoid this motion to compel. (REK Decl., at ¶8). Because it is patently evident that Tauler is following the same pattern he has followed all along, attempting to kill time so that Jowers can complete his move overseas and his distribution of assets, Plaintiff elected to move to compel Jowers to respond.[3]

---

[1] Jowers objected to the term "real estate interest" as vague in his response to RFP No. 4, adding, "Subject to the foregoing objections…no such documents exist," but Jowers did not object or otherwise respond to the same terms in Interrogatory No. 6.

[2] Notably, although he objected to the RFPs as overbroad, Jowers did not object regarding temporal overbreadth to interrogatories seeking information beginning from the same date, July 1, 2016.

[3] This is the second motion to compel discovery responses filed by Plaintiff during this entire litigation. The first was granted April 27, 2020. (Dkt. 168). Plaintiff avoided filing further motions to compel Jowers to respond only by obtaining the necessary evidence necessary from third party witnesses. Jowers never provided adequate

## II. Legal Standards for Post-Judgment Discovery

"A judgment creditor may choose whether to use federal or state discovery procedures. Once the judgment creditor makes a clear election to use either the federal or the state discovery methods, only that body of law (federal or state) and not the other, will apply." 13 James Wm. Moore *et al.*, MOORE'S FEDERAL PRACTICE — CIVIL § 69.04 (2008); *see also British Int'l Ins. Co. v. Seguros La Republica, S.A.*, 200 F.R.D. 586, 594 (W.D. Tex. 2000) (stating that Texas procedure rules were "irrelevant" when the plaintiff "ha[d] indicated its clear intent to pursue post-judgment discovery under the Federal Rules of Civil Procedure").

Plaintiff elects to use federal procedural rules for postjudgment discovery. The Federal Rules of Civil Procedure governing discovery apply. Postjudgment discovery is permitted under Federal Rule of Civil Procedure 69(a)(2), which provides that "[i]n aid of the judgment or execution, the judgment creditor . . . may obtain discovery from any person — including the judgment debtor — as provided in these rules or by the procedure of the state where the court is located." Rule 69(a)(2) imposes a liberal standard:

> The purpose of discovery under Rule 69(a)(2) is to allow the judgment creditor to identify assets from which the judgment may be satisfied and consequently, the judgment creditor should be permitted to conduct a broad inquiry to uncover any hidden or concealed assets of the judgment debtor. The discovery must be relevant to that purpose, however, and may not be used in order to harass the judgment debtor or any third parties.

---

responses to any of the prior discovery sent to him and should not be expected to do so now absent intervention by the Court. (*See*, Dkt. 347-1, at ¶13).

13 James Wm. Moore *et al.*, MOORE'S FEDERAL PRACTICE — CIVIL § 69.04 (2008); *see also* 12 Charles A. Wright Arthur R. Miller, FEDERAL PRACTICE PROCEDURE § 3014 (1997) ("The judgment creditor is allowed discovery to find out about assets on which execution can issue or about assets that have been fraudulently transferred or are otherwise beyond the reach of execution. . . . The scope of examination is very broad, as it must be if the procedure is to be of any value."); *F.D.I.C. v. LeGrand*, 43 F.3d 163, 172 (5th Cir. 1995) ("The scope of postjudgment discovery is very broad. . . .").

### III.   Argument

The tactics employed by Jowers and his counsel are familiar to everyone involved with this case. The fact that Jowers waited two months following receipt of discovery requests to produce no information at all, while at the same time he is attempting to flee the United States, demonstrates his bad faith. Any judgment debtor who wished to show a good faith intention to comply with his obligations would have responded promptly with any concerns he or she had about the scope of the discovery requests. Jowers did not do so. His non-responses and weak objections are just the latest example of the multiplication of these proceedings that are the subject of Plaintiff's Motion for Sanctions. (*See*, Dkt. 347; Dkt. 360).

### A.   Responses regarding Legis, Jowers Vargas LLC, Jowers Langer LLC, and other entities are required.

Jowers previously argued that he should not have to respond on behalf of Legis even though he founded and controlled it because he was a mere employee. Judge Austin dispensed with these arguments, citing the significant evidence that Jowers

was much more than a mere employee. (Order, Dkt. 168). Since then, Jowers has argued that he did not intend to try to hide behind those entities, saying that he intended to produce the information. (Jowers Brief, Dkt. 341-4, at 993-994). Now, Jowers is making similar arguments again, even though he now acknowledges owning 82% of the shares in Legis and controlling all these entities. He should be compelled to produce all material over which he has possession, custody, or control, which at a minimum includes the material in the possession of the entities he owns and which bear his name. By refusing with to provide information related to the entities he owns and controls – Legis, Jowers Vargas LLC, and Jowers Langer LLC, Jowers is arguably in contempt of court. Judge Austin previously determined that Jowers must respond to discovery requests related to Legis. (*See*, Dkt. 168).

> **B.    Jowers should not be excused from answering questions about his knowledge of the assets and transactions of his close family and business relations merely because they are not judgment debtors.**

The discovery requests all seek information that may assist in determining where Jowers has hidden or otherwise transferred assets that may be available for execution. Some of the interrogatories and requests for production ask for information about assets owned by and transactions involving Jowers's close family relations, including his spouse, his ex-wife and business partner, and his first-degree family members. If, for example, brokerage accounts (Interrogatory 2), safety deposit boxes (Interrogatory 3), or corporate entity shares (Interrogatory 4) are owned by these persons, Jowers should be required to respond with everything he knows about those assets and transactions. Especially in light of the Court's prior order requiring Jowers

to produce information about Legis, Jowers and his counsel should know that "possession, custody, or control" is the standard for determining what is discoverable. There is no need to show that Jowers is the alter ego of these other persons before requiring him to disclose information he knows about.

### C. Jowers is not excused from answering because of anything Kinney has said about Plaintiff's collection intentions.

No illegal or immoral threats of any sort have emanated from Plaintiff's counsel during these proceedings at any time. Still, Jowers charges in response to almost all of discovery requests that Kinney "has made numerous personal threats to Mr. Jowers and his family regarding debt collection that are well documented." Kinney has not done so, so there can be no such documentation. (REK Decl., at ¶9). Jowers is simply attempting to squeeze value from the material included in his Motion for Protective Order. (*See*, Dkt. 350). Jowers also says he will not respond to the discovery requests absent "a protective order prohibiting Mr. Kinney from directly engaging in collection efforts." Jowers's real purpose with these false accusations is the same as his purpose was previously in seeking to disqualify Kinney from representing Plaintiff: to attempt to further multiply the proceedings, making it too costly to pursue Jowers. The Court should ignore this.

### D. Jowers's willful refusal to apply common meanings to common terms like "first degree family member," "real estate," and "encumbrance" does not excuse him from responding.

The Court should see Jowers's refusal to understand common terms used in the discovery requests for what they are: another way to multiply these proceedings. Interestingly, the meaning of "real estate" and "interest" did not draw a vagueness

objection in the interrogatories. Instead, Jowers only objected to those terms as vague in the RFPs. This again shows the insincerity of this objection.

### E.   Jowers is unable to show overbreadth as to time.

Evidence adduced at trial showed that Jowers's misappropriation of trade secrets began in the summer of 2016, and that Jowers was working with Alejandro Vargas. (FF&CL, Dkt. 344, at 24-26). For this reason, with most of the interrogatories and RFPs, Plaintiff requests records dating from July 1, 2016. Because Jowers's efforts to hide or divert assets very well might have started from the time he has been shown to have begun misappropriating assets, this is a reasonable starting point for efforts to discover what he has done with his assets. None of the requests seek information prior to this date, and several seek information for a shorter period.

### F.   Jowers's relevance objections are laughable.

Jowers says that tax returns prepared on his behalf are not relevant (RFP 15). There is little that could be more relevant than a judgment debtor's tax returns. Jowers also objects to identifying trusts of which he or affiliated persons are trustees or beneficiaries (Interrogatory 13). One likely method Jowers might have used to hide assets would have been to transfer the assets to his spouse, ex-spouse, or a first-degree family member, who then uses those assets to settle a trust. If Jowers is aware of any such trusts, he should be required to respond with that information. The remainder of Jowers's relevance objections are equally weak.

### IV.   Conclusion

The eighteen interrogatories and twenty-five RFPs at issue here are reasonable requests in a post-judgment context. Jowers should be compelled to respond fully to

them with all information that is in his possession, custody, or control. With regard to the entities Jowers owns and controls, since Jowers is clear that he does not intend to provide information related to them even though he was previously ordered to do so

Dated: November 25, 2022                             Respectfully Submitted,

/s/ Robert E. Kinney
Robert E. Kinney
Texas State Bar No. 00796888
Robert@KinneyPC.com

**Robert E. Kinney**
824 West 10th Street, Suite 200
Austin, Texas 78701
Tel: (512) 636-1395

Raymond W. Mort, III
Texas State Bar No. 00791308
raymort@austinlaw.com

**THE MORT LAW FIRM, PLLC**
100 Congress Ave, Suite 2000
Austin, Texas 78701
Tel/Fax: (512) 865-7950

**ATTORNEYS FOR JUDGMENT CREDITOR COUNSEL HOLDINGS, INC.**

**Statement Regarding Conference**

On November 21, 2022, I emailed with Tauler and Cole to request that they immediately respond with substantive answers to the interrogatories and requests for production, or at least provide an email with a proposal for resolution of the issues. Tauler refused to do so, first referring to me as a "psycho," and then insisting that I get on a telephonic conference with him next week. Since he refused to respond substantively or raise any objections until almost two months after the discovery requests were served, it is evident that Tauler simply wishes to waste time, as usual. Regrettably, assistance of the Court is necessary.

/s/ Robert E. Kinney
Robert E. Kinney