**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

**FILED**

February 14, 2024

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____ pg

DEPUTY

MWK RECRUITING, INC.,

Plaintiff

v.

EVAN P. JOWERS,

Defendants.

**Civil Action No. 1:18-CV-444-RP**

### DEFENDANTS EVAN P. JOWERS'S
### MOTION TO STAY ENFORCEMENT OF JUDGMENT

Defendant Evan P. Jowers ("**Jowers**") moves to stay enforcement of the judgment in this case on the grounds that: (1) the Federal Trade Commission's imminent rulemaking will ban non-compete agreements in the United States and otherwise moot the judgment at issue in this case, and (2) that the United States Court of Appeals for the Circuit Court has ordered oral argument as to whether the final order of this Court should be reversed. In support of this motion, Jowers states:

### PRELIMINARY STATEMENT AND FACTUAL BACKGROUND

As the United States Supreme Court noted, "[i]t takes time to decide a case on appeal. Sometimes a little; sometimes a lot. 'No court can make time stand still' while it considers an appeal, *Scripps–Howard Radio, Inc. v. FCC*, 316 U.S. 4, 9, 62 S.Ct. 875, 86 L.Ed. 1229 (1942), and if a court takes the time it needs, the court's decision may in some cases come too late for the party seeking review. That is why it 'has always been held, ... that as part of its traditional equipment for the administration of justice, a federal court can stay the enforcement of a judgment pending the outcome of an appeal.' *Id.*, at 9–10, 62 S.Ct. 875 (footnote omitted). A stay does not make time stand still, but does hold a ruling in abeyance to allow an appellate court

the time necessary to review it." *Nken v. Holder*, 556 U.S. 418, 421, 129 S. Ct. 1749, 1753, 173 L. Ed. 2d 550 (2009).

This case is not only on appeal but is also set for oral argument before the Fifth Circuit Court of Appeal. *See* Ex. A. Furthermore, setting that development aside for a moment, the FTC is set to ban the noncompete agreement that underlies the judgment. And Congress is *also* set to ban them too. *See* Ex. B – C. When the FTC and Congress takes that action it will moot the underlying judgment because "[w]hen a court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open *on direct review* and as to all events, regardless of whether such events predate or postdate [the] announcement of the rule." *Iturbe-Covarrubias v. Gonzales*, 183 F. App'x 425, 428–29 (5th Cir. 2006) "[U]nquestionably the judiciary must generally apply changes in the law to cases pending on appeal[.]" *Hernandez-Rodriguez v. Pasquarell*, 118 F.3d 1034, 1042 (5th Cir. 1997); *quoting Robertson v. Seattle Audubon Soc'y*, 503 U.S. 429, 439–41, 112 S.Ct. 1407, 1414, 118 L.Ed.2d 73 (1992).

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55, 57 S. Ct. 163, 166, 81 L. Ed. 153 (1936). And district courts *regularly* stay proceedings based on forthcoming administrative, legislative or executive action that could render claims moot or provide significant guidance and to preserve the status quo. *See, e.g.*, *Stinnie v. Holcomb*, 396 F. Supp. 3d 653, 660 (W.D. Va. 2019) (staying case until legislature took action or elected not to do so); *Crowell v. North Carolina*, 1:17CV515, 2018 WL 6031190,

at *4 (M.D.N.C. Nov. 16, 2018) (staying case until future legislative action); *Levy v. Sterling Holding Co., LLC*, CIV.A. 00-994(GMS), 2004 WL 2251268, at *1 (D. Del. Sept. 27, 2004) (granting stay pending proposed clarifying amendments); *Jones v. Fiorella Ins. Agency*, 20-CV-14105, 2020 WL 3637377, at *2 (S.D. Fla. July 1, 2020) (staying case pending authoritative guidance from Supreme Court) (citing *Caraboolad v. Sun Tan City, LLC*, Case No. 9:20-cv-80109-RLR, DE 44 (S.D. Fla.) (entered May 5, 2020); *Doyle v. Florida Health Sol. Corp.*, Case No. 1:19-cv- 24013-DPG, DE 26 (S.D. Fla.) (entered April 30, 2020)); *Devivo v. The Kolter Group, LLC*, CACE-19-021842 (Fla. 17th Jud. Cir. July 30, 2020) (staying case pending *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163 (2021)).[1]

The Court has ordered the appointment of a receiver, relying on Plaintiff's unsupported argument that Defendant has violated the Court's orders, filed duplicative motions, and moved to Hong Kong. *Conta* Decl. of Evan P. Jowers. But review of the docket shows that neither the

---

[1] Moreover, district courts across the country have previously issued orders staying to conserve judicial and the parties' resources. *See Van Elzen v. Glob. Strategy Grp., LLC*, No. 20-CV-3541 (JPO), 2021 WL 185328 (S.D.N.Y. Jan. 19, 2021) (granting stay pending *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163 (2021)); *Berrow v. Navient Sols. LLC*, No. CV-20-01342-PHX-SMB, 2020 WL 8267706 (D. Ariz. Dec. 17, 2020) (same); *Ulery v. AT&T Mobility Servs., LLC*, No. 20-CV-02354- PAB-KMT, 2020 WL 7333835 (D. Colo. Dec. 12, 2020) (granting stay pending *Facebook, Inc.* because decision would likely simplify issues, promoting judicial economy); *Lacey v. Comcast Cable Commc'ns, LLC*, Case No. 3:19-cv-05007RBL, 2020 WL 2041755, at *2 (W.D. Wash. Apr. 28, 2020) (staying TCPA case and summarizing other cases); *Nakai v. Charter Commc'ns, Inc.*, No. CV 19-8035-GW-SSX, 2020 WL 1908949, at *6 (C.D. Cal. Apr. 15, 2020) ("a brief stay here [ ] will promote judicial economy."); *Loftus v. Signpost Inc.*, No. 19-CV-7984 (JGK), 2020 WL 2848231, at *2 (S.D.N.Y. June 2, 2020) ("[e]ven a decision from the Supreme Court that would not be dispositive of issues in this case could contain guidance that would allow this litigation to proceed on a reasonable and efficient basis."); *Boger v. Citrix Sys., Inc.*, No. 8:19-CV-01234-PX, 2020 WL 1939702, at *2 (D. Md. Apr. 22, 2020) (issuing a stay in effort to preserve judicial resources and limit client expenditures on a potentially invalidated cause of action); *Seefeldt v. Entm't Consulting Int'l, LLC.*, No. 4:19-CV-00188, 2020 WL 905844, at *3 (E.D. Mo. Feb. 25, 2020) ("Whatever the case, having studied the matter carefully, it seems the best approach is to wait for much-needed clarity").

District Judge nor Magistrate Judge in this case have found that Defendant violated *any* order of the Court. Let alone an order that justified the appointment of a receiver. Further, the *only* motion to Jowers filed related to protecting his mother from Plaintiff's harassment. Furthermore, Jowers has *not* moved to Hong Kong—and there is no evidence that he did. In fact, he is a citizen of the State of Florida and has not even been to Hong Kong since January of 2023. *See* Decl. of Evan P. Jowers. To the extent that the Court wants to find otherwise, it should have ordered an evidentiary hearing on the matter.

Given that this case is set for oral argument and that the FTC *and* Congress are banning non-competes, this is the *exact* situation where the Court should issue a stay of enforcement of the judgment. *See* Non-Compete Clause Rule, 88 Fed. Reg. 3482 (proposed Jan. 19, 2023) (to be codified at 16 C.F.R. pt. 86); Ex. A – C. A brief stay of enforcement of the judgment until after the April meeting of the FTC where it is anticipated to vote on its proposed order banning non-compete agreements and otherwise moots/provides significant guidance to the status of non-compete agreements will protect the status quo, promote judicial economy, and otherwise prevent the unnecessary multiplicity of proceedings in the District Court while the FTC and Fifth Circuit provide dispositive guidance.

## ARGUMENT AND AUTHORITIES

## A. THE COURT SHOULD ENTER A TEMPORARY STAY PENDING THE FTC'S RULES BANNING NON-COMPETE AGREEMENTS.

### a. Legal Standard.

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. N. Am. Co.*, 299 U.S.

248, 254-55 (1936) (citation omitted).  A "stay sometimes is authorized simply as a means of controlling the district court's docket and of managing cases before the district court." *Trujillo v. Conover & Co. Commc'ns, Inc.*, 221 F.3d 1262, 1264 (11th Cir. 2000).  "[T]he decision to grant a stay … is 'generally left to the sound discretion of district courts.'" *Ryan v. Gonzales*, 568 U.S. 57, 74 (2013) (citation omitted).

The factors considered by courts in deciding whether to exercise their inherent authority to stay an action include: "(1) whether the litigation is at an early stage; (2) whether a stay will unduly prejudice or tactically disadvantage the non-moving party; (3) whether a stay will simplify the issues in question and streamline the trials; and (4) whether a stay will reduce the burden of litigation on the parties and on the court." *Rubinstein v. Keshet Inter Vivos Trust*, No. 17-61019-CivWilliams/Torres, 2018 WL 3730868, at *2 (S.D. Fla. Apr. 7, 2018); *see also Coatney v. Synchrony Bank*, No. 6:16-cv-389-Orl-22TBS, 2016 WL 4506315, at *1 (M.D. Fla. Aug. 2, 2015) (applying only the last three factors to weigh whether a stay is appropriate).

### b.  The factors considered by courts weigh heavily in favor of a temporary stay here.

The factors outlined in *Rubinstein* and *Coatney* weigh heavily in favor of a temporary stay here.  First, enforcement of the judgment is at its early stages, the Court just appointed a receiver, and Plaintiff is still in the early phases of enforcing the judgment, and forthcoming administrative and Congressional action would not result in significant impact on the receiver's duties. *See Jones*, 2020 WL 3637377, at *2 (staying action pending authoritative guidance from Supreme Court). Indeed, it bears noting *just how clear* it is that the FTC is banning these non-compete agreements in April. It is literally all over the news. *See* Ex.-B; Federal Trade Commission, *FTC Proposes Rule to Ban Noncompete Clauses, Which Hurt Workers and Harm Competition*,   https://www.ftc.gov/news-events/news/press-releases/2023/01/ftc-proposes-rule-

ban-noncompete-clauses-which-hurt-workers-harm-competition (Jan. 5, 2023); The National Law Review, *Update on the Status of Non-Competes and What to Expect in 2024*, https://www.natlawreview.com/article/update-status-non-competes-and-what-expect-2024 (Jan. 30, 2024); Money Report, *One of Wall Street's favorite ways to control workers is under attack*, https://www.nbclosangeles.com/news/business/money-report/one-of-wall-streets-favorite-ways-to-control-workers-is-under-attack/3334044/ (Feb. 8, 2024) ("The Federal Trade Commission is aiming to ban non-competes, claiming they create an unfair method of competition and thereby violate the Federal Trade Commission Act. It's unclear what the final rule — expected in April — would look like, but based on a broad-based proposal floated last year, it would upend a major way Wall Street does business."); Office of United States Senator Chris Murphy, *Murphy: Non-Competes Are Used To Control Workers, Keep Wages Down, and Stifle Economic Growth*, https://www.murphy.senate.gov/newsroom/press-releases/murphy-non-competes-are-used-to-control-workers-keep-wages-down-and-stifle-economic-growth (Feb. 1, 2023); Office of United States Senator Todd Young, *Young, Murphy Reintroduce Bill to Protect American Workers, Limit Non-Compete Agreements*, https://www.young.senate.gov/newsroom/press-releases/young-murphy-reintroduce-bill-to-protect-american-workers-limit-non-compete-agreements (Feb. 1, 2023). As artfully explained by a large law firm, the rule will "broadly ban companies from entering into noncompete agreements with their workers, rescind substantially all existing noncompete agreements, and require notifying all current and former employees of such rescission. The FTC claims authority for the Proposed Rule under Section 5 of the Federal Trade Commission Act, which allows the agency to police unfair methods of competition. The Proposed Rule would preempt all state laws that permit noncompete provisions." Ed Dartley and Jacqueline Duval, *Emerging And Mid-Sized Managers: Preparing For The Ftc's Proposal To Eliminate Non-*

*Competes*, K&L Gates https://www.klgates.com/Emerging-and-Mid-Sized-Managers-Preparing-for-the-FTCs-Proposal-to-Eliminate-Non-Competes (May, 11, 2023). Simply put, this ban will apply retroactively to *all* employees and the judgment underlying this case is going to be mooted by *both* the FTC and Congressional action.

Second, Plaintiff will not be unduly prejudiced or at a tactical disadvantage by waiting until the FTC banns non-compete agreements—nor could it—if the judgment is rendered moot by the FTC, Jowers will be entitled to recover whatever sum that was seized because the underlying judgment would be otherwise altered/mooted because this matter is on appeal. There is no prejudice in a short delay in the resolution of the matter. *See Lacy*, 2020 WL 2041755, at *2 (no harm to plaintiff where he "has not shown that he or the class he seeks to represent are in a position needing immediate relief"); *Graywire LLC v. Ciena Corp.*, 2009 WL 8590870, at *4 (N.D. Ga. July 17, 2009) ("The general prejudice of having to wait for resolution is not a persuasive reason to deny the motion for stay.") (internal citation omitted); *Jones*, 2020 WL 3637377, at *2 (noting lack of prejudice where stay of discovery would last "several months").

Moreover, the Court's conclusion that Defendant was violating Court orders and that he moved to Hong Kong is unsupported by either facts or the record. A review of, what is admittedly an extensive record, reveals that neither the District Judge nor Magistrate Judge found that Defendant violated any orders—let alone any ones that would merit such a draconian measure like a receiver. Furthermore, the Court erred by finding, without an evidentiary hearing or any competent evidence that Defendant moved to Hong Kong. Again, there was no evidence before the Court to support such a finding, and nor could there be because he has been a citizen and resident of Florida. *See* Decl. of Evan P. Jowers. He has not even been to Hong Kong in over a year. *See id.*

Third, for the same reasons, the proposed ban at issue in this case will have a dispositive or mooting effect on Plaintiff's claim. As discussed above, "[w]hen a court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open *on direct review* and as to all events, regardless of whether such events predate or postdate [the] announcement of the rule." *Iturbe-Covarrubias v. Gonzales*, 183 F. App'x 425, 428–29 (5th Cir. 2006) "[U]nquestionably the judiciary must generally apply changes in the law to cases pending on appeal[.]" *Hernandez-Rodriguez v. Pasquarell*, 118 F.3d 1034, 1042 (5th Cir. 1997); *quoting Robertson v. Seattle Audubon Soc'y*, 503 U.S. 429, 439–41, 112 S.Ct. 1407, 1414, 118 L.Ed.2d 73 (1992).

Furthermore, such a result will likely result in Mr. Jowers receiving attorney's fees under section 57.105(7), Florida Statutes, which states that: "If a contract contains a provision allowing attorney's fees to a party when he or she is required to take any action to enforce the contract, the court may also allow reasonable attorney's fees to the other party when that party prevails in any action, whether as plaintiff or defendant, with respect to the contract," and, as a result, reduce offset, or eliminate, the remaining judgment as to Jowers. The Court only appointed a receiver on January 29, 2024, Defendants' appeal remains pending, and the judgment enforcement is in its early stages. There is no reason or need for the parties and the receiver to waste additional resources and time in post-judgment proceedings (which might be entirely unnecessary) or fundamentally altered if and when the FTC or Congress bans non-compete agreements.

Federal courts regularly find this factor *weighs heavily* in favor of a stay where legislative or administrative action is forthcoming that could render issues moot or otherwise resolve them. *See, e.g.*, *Stinnie*, 396 F. Supp. 3d at 660 (judicial economy weighed in favor of a stay until

legislature took action where the issues "could be resolved by the Virginia legislature" or court's resolution could be "rendered moot"); *Crowell*, 2018 WL 6031190, at *4 (stay of four months appropriate where there was a "high likelihood of future legislative action"); *Levy*, 2004 WL 2251268, at *1 (granting stay where "proposed clarifying amendments . . . may control the outcome of the litigation" and would "simplify the issues in this case and focus the litigation" whereas "[n]ot staying the proceedings . . . runs the risk of inconsistent adjudications").

These factors weigh heavily in favor of a temporary stay here pending the FTC's anticipated rulemaking—which will have retroactive application—congressional action, along with the appeal (which is set for oral arguments in April). In fact, these developments could dramatically alter judgment as to the employment agreements at issues and an entitlement to attorneys fees under section 57.105(7), Florida Statutes. Accordingly, a temporary stay is warranted here.

## CONCLUSION

For the reasons set forth above, the Court should dismiss all of Counsel's claims against Mr. Jowers. Mr. Jowers also request all further relief to which he may be entitled.


Dated: February 14, 2024.                    Respectfully submitted,

                                             By: */s/Evan Jowers*

**EXHIBIT-A**

Case: 22-50936    Document: 106    Page: 11    Date Filed: 01/29/2024

# *United States Court of Appeals*

**FIFTH CIRCUIT**
**OFFICE OF THE CLERK**

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE,**
**Suite 115**
**NEW ORLEANS, LA 70130**

January 29, 2024

**IMPORTANT NOTICE**

TO ALL COUNSEL LISTED BELOW

   No. 22-50936    Cnsl Hold v. Jowers

   Projected Week of Hearing **04/01/2024**
   -------------------------------------------------------

Dear Counsel:

We have tentatively scheduled this case for oral argument during the week shown.

If you have a serious, irresolvable conflict, contact us **IMMEDIATELY** via e-mail (clerk_calendaring@ca5.uscourts.gov), stating your conflict or request.  Do not ask to reschedule argument unless you can find no other solution.  **GENERALLY, ENGAGEMENT OF COUNSEL IN ANOTHER COURT IS NOT AN "IRRESOLVABLE CONFLICT."**

**So we can provide all pertinent information to the court before argument, and barring an emergency, we must receive all additional filings by noon on the workday immediately preceding argument.**

If you are arguing before the Fifth Circuit for the first time, please visit our Internet site at "http://www.ca5.uscourts.gov/docs/default-source/forms-and-documents---clerks-office/oral-argument-notices/handout.pdf" for "Preparing for Oral Argument in the Fifth Circuit" and at "http://www.ca5.uscourts.gov/documents/ltsig-e.pdf" for "Notice to Counsel Attending Oral Argument".  If you do not have Internet access, please call and we will send you the information.

Counsel are advised it is almost invariably more helpful, in lieu of large exhibits, to furnish the courtroom deputy four smaller sized (not larger than about 8 X 14 inches) copies of charts, diagrams, etc., for the judges' use.  If counsel believe it necessary to use large exhibits, please also furnish the small copies.

                 CALENDARING DEPARTMENT
                 clerk_calendaring@ca5.uscourts.gov

Mr. Richard N. Asfar
Mr. Robert E. Kinney
Mr. Aaron Gavin McLeod
Mr. Martin Jonathan Siegel

**EXHIBIT-B**

 **FEDERAL TRADE COMMISSION**
PROTECTING AMERICA'S CONSUMERS

For Release

# FTC Proposes Rule to Ban Noncompete Clauses, Which Hurt Workers and Harm Competition

**Agency estimates new rule could increase workers' earnings by nearly $300 billion per year**

January 5, 2023  

**Tags:** Competition  |  Office of Policy Planning  |  Bureau of Competition  |
Unfair Methods of Competition

The Federal Trade Commission proposed a new rule that would ban employers from imposing noncompetes on their workers, a widespread and often exploitative practice that suppresses wages, hampers innovation, and blocks entrepreneurs from starting new businesses. By stopping this practice, the agency estimates that the new proposed rule could increase wages by nearly $300 billion per year and expand career opportunities for about 30 million Americans.

The FTC is seeking public comment on the proposed rule, which is based on a preliminary finding that noncompetes constitute an unfair method of competition and therefore violate Section 5 of the Federal Trade Commission Act.

"The freedom to change jobs is core to economic liberty and to a competitive, thriving economy," said Chair Lina M. Khan. "Noncompetes block workers from freely switching jobs, depriving them of higher wages and better working conditions, and depriving businesses of a talent pool that they need to build and expand. By ending this practice, the FTC's proposed rule would promote greater dynamism, innovation, and healthy competition."

Companies use noncompetes for workers across industries and job levels, from hairstylists and warehouse workers to doctors and business executives. In many cases, employers use their outsized bargaining power to coerce workers into signing these contracts. Noncompetes harm competition in U.S. labor markets by blocking workers from pursuing better opportunities and by preventing employers from hiring the best available talent.



"Research shows that employers' use of noncompetes to restrict workers' mobility significantly suppresses workers' wages—even for those not subject to noncompetes, or subject to noncompetes that are unenforceable under state law," said Elizabeth Wilkins, Director of the Office of Policy Planning. "The proposed rule would ensure that employers can't exploit their outsized bargaining power to limit workers' opportunities and stifle competition."

The evidence shows that noncompete clauses also hinder innovation and business dynamism in multiple ways—from preventing would-be entrepreneurs from forming competing businesses, to inhibiting workers from bringing innovative ideas to new companies. This ultimately harms consum in markets with fewer new entrants and greater concentration, consumers can face higher prices—as seen in the health care sector.

To address these problems, the FTC's proposed rule would generally prohibit employers from using noncompete clauses. Specifically, the FTC's new rule would make it illegal for an employer to:

- enter into or attempt to enter into a noncompete with a worker;

- maintain a noncompete with a worker; or

- represent to a worker, under certain circumstances, that the worker is subject to a noncompete.

The proposed rule would apply to independent contractors and anyone who works for an employer, whether paid or unpaid. It would also require employers to rescind existing noncompetes and actively inform workers that they are no longer in effect.

The proposed rule would generally not apply to other types of employment restrictions, like non-disclosure agreements. However, other types of employment restrictions could be subject to the rule if they are so broad in scope that they function as noncompetes.

This NPRM aligns with the FTC's recent statement to reinvigorate Section 5 of the FTC Act, which bans unfair methods of competition. The FTC recently used its Section 5 authority to ban companies from imposing onerous noncompetes on their workers. In one complaint, the FTC took action against a Michigan-based security guard company and its key executives for using coercive noncompetes on low-wage employees. The Commission also ordered two of the largest U.S. glass container manufacturers to stop imposing noncompetes on their workers because they obstruct competition and impede new companies from hiring the talent needed to enter the market. This NPRM and recent enforcement actions make progress on the agency's broader initiative to use all of its tools and authorities to promote fair competition in labor markets.

The Commission voted 3-1 to publish the Notice of Proposed Rulemaking, which is the first step in the FTC's rulemaking process. Chair Khan, Commissioner Rebecca Kelly Slaughter and Commissioner Alvaro Bedoya issued a statement. Commissioner Slaughter, joined by Commissioner Bedoya, issued an additional statement. Commissioner Christine S. Wilson voted no and also issued a statement.

The NPRM invites the public to submit comments on the proposed rule. The FTC will review the comments and may make changes, in a final rule, based on the comments and on the FTC's further analysis of this issue. The comment period is open through April 19, 2023.

The Federal Trade Commission works to promote competition, and protect and educate consumers. You can learn more about how competition benefits consumers or file an antitrust complaint. For the latest news and resources, follow the FTC on social media, subscribe to press releases and read our blog.

Press Release Reference

FTC Extends Public Comment Period on Its Proposed Rule to Ban Noncompete Clauses Until April 19

FTC Releases Final Agenda for Feb. 16 Public Forum on Its Proposed Rule to Ban Noncompete Restrictions

FTC to Host Public Forum Examining Proposed Rule to Ban Noncompete Clauses

# Contact Information

## Media Contact

Peter Kaplan
**Office of Public Affairs**
202-326-2180

## Staff Contact

**Shannon Lane**
**Office of Public Policy**
(202) 876-5651

Give Feedback

**EXHIBIT-C**

# Congress of the United States

## Washington, DC 20515

April 19, 2023

The Honorable Lina Khan
Chair
Federal Trade Commission
600 Pennsylvania Avenue, NW
Washington, DC 20580

Dear Chair Khan,

We write today in support of the Federal Trade Commission's (FTC) proposed rule banning the use of noncompete agreements and to urge the agency to move forward with this rule without further delay to protect workers, small businesses, and the entire economy. The noncompete rule would impact approximately 30 million Americans, giving them increased freedom to change jobs and create new businesses, and it would increase wages by nearly $300 billion each year.[1]

The pervasive use of noncompete agreements has had a stifling impact on the economy and the job market. Noncompetes are used throughout the economy, with one expert calling their overuse "silly, pernicious, and harmful to competition."[2] The Federal Reserve Bank of Minneapolis found that "more than one in seven workers … have non-compete contracts with their current or most recent employer," including 12 percent of workers earning $20 an hour or less.[3] Noncompete clauses restrict the freedom of workers across the economy – from warehouse workers, fast-food workers,[4] and even interns[5] to highly-trained and highly-paid professionals like physicians[6] and veterinarians[7] – to find new and better jobs.

---

[1] Federal Trade Commission, "FTC Proposes Rule to Ban Noncompete Clauses, Which Hurt Workers and Harm Competition," press release, January 5, 2023, https://www.ftc.gov/news-events/news/press-releases/2023/01/ftc-proposes-rule-ban-noncompete-clauses-which-hurt-workers-harm-competition.

[2] Philadelphia Inquirer, "More workers in Pa. could change jobs for better pay under the FTC's proposed noncompete ban," Lizzy McLellan Ravitch, January 7, 2023, https://www.inquirer.com/jobs/labor/ftc-proposed-rule-noncompete-pennsylvania-20230107.html.

[3] Federal Reserve Bank of Minneapolis, "Non-compete contracts sideline low-wage workers," Tyler Boesch, Katherine Lim, and Ryan Nunn, October 15, 2021, https://www.minneapolisfed.org/article/2021/non-compete-contracts-sideline-low-wage-workers.

[4] The Verge, "Exclusive: Amazon Makes Even Temporary Warehouse Workers Sign 18-Month Non-Competes," Spencer Woodman, March 26, 2015, https://www.theverge.com/2015/3/26/8280309/amazon-warehouse-jobs-exclusive-noncompete-contracts.

[5] The Wall Street Journal, "Interns' Job Prospects Constrained by Noncompete Agreements," Harriet Torry, June 29, 2019, https://www.wsj.com/articles/interns-job-prospects-constrained-by-noncompete-agreements-11561800600.

[6] Kurt Lavetti, Carol Simon, & William D. White, *The Impacts of Restricting Mobility of Skilled Service Workers Evidence from Physicians*, 55 J. Hum. Res. 1025 (2020); Naomi Hausman & Kurt Lavetti, *Physician Practice Organization and Negotiated Prices: Evidence from State Law Changes*, 13 Am. Econ. J. Applied Econ. 258 (2021).

[7] American Veterinary Medical Association, "The shifting landscape of noncompete agreements," Katie Burns, January 21, 2022, https://www.avma.org/news/shifting-landscape-noncompete-agreements.

Studies have repeatedly shown that following bans on noncompete agreements, wages went up – not just for workers under these agreements, but across the board.[8] As President Biden said in his recent State of the Union address, banning noncompete agreements will mean "companies have to compete for workers and pay them what they're worth."[9]

All Americans stand to benefit from a more dynamic and freer labor market that would accompany the promulgation of this rule. The Federal Reserve Bank of Minneapolis found that "non-compete contracts limit our economy's potential" by making it more difficult for employers and entrepreneurs to recruit new workers or start new businesses.[10] A survey conducted by Small Business Majority found that the majority of small business owners support the FTC's proposed rule, due to the negative impacts noncompete agreements have on small businesses and entrepreneurs, especially in under-resourced communities.[11] The lack of competition in the labor market has widespread consequences, causing wider income inequality[12] and "slower productivity growth."[13]

In proposing the rule, the FTC has compiled and considered an overwhelming amount of evidence to demonstrate that noncompete agreements constitute an unfair method of competition within its authority to combat.[14] In reviewing this evidence, we have no doubt that a broad federal rule serves as the best avenue to combat the harms from noncompetes. As the Commission identified, state-level solutions and case-by-case adjudication will not solve the problem.[15] Moreover, we oppose any notion that the FTC is acting outside its authority in either identifying noncompetes as an unfair method of competition or promulgating a rule to address them as such. Doing so is squarely within the Commission's congressional mandate. The text and structure of the FTC Act—as well as judicial precedent interpreting it—support the agency's authority to do so.[16]

---

[8] Management Science, "Low-Wage Workers and the Enforceability of Non-Compete Agreements," Michael Lipsitz and Evan Starr, October 19, 2020,  https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3452240; Wall Street Journal, "FTC Plan to Ban Noncompete Clauses Shifts Companies' Focus," Lauren Weber, January 17, 2023, https://www.wsj.com/articles/ftc-plan-to-ban-noncompete-clauses-shifts-focus-to-deferred-pay-nondisclosure-agreements-11673904728.

[9] The White House, "Remarks of President Joe Biden – State of the Union Address as Prepared for Delivery," February 7, 2023, https://www.whitehouse.gov/briefing-room/speeches-remarks/2023/02/07/remarks-of-president-joe-biden-state-of-the-union-address-as-prepared-for-delivery/.

[10] Federal Reserve Bank of Minneapolis, "Non-compete contracts sideline low-wage workers," Tyler Boesch, Katherine Lim, and Ryan Nunn, October 15, 2021, https://www.minneapolisfed.org/article/2021/non-compete-contracts-sideline-low-wage-workers.

[11] Small Business Majority, "Opinion Poll: Small Business Owners Support Banning Non-Compete Agreements," April 13, 2023, https://smallbusinessmajority.org/our-research/fair-competition/opinion-poll-small-business-owners-support-banning-non-compete-agreements.

[12] Organisation for Economic Co-operation and Development, "Inequality: A Hidden Cost of Market Power," Sean Ennis, Pedro Gonzaga, and Chris Pike, March 29, 2017, https://www.oecd.org/daf/competition/Inequality-hidden-cost-market-power-2017.pdf.

[13] Organisation for Economic Co-operation and Development, "Testimony to Hearing on 'Market Concentration,'" Jason Furman, June 7, 2018, https://one.oecd.org/document/DAF/COMP/WD(2018)67/en/pdf.

[14] Non-Compete Clause Rule, 88 Fed. Reg. 3482 (to be codified at 16 C.F.R. pt. 910).

[15] Id. at 3485.

[16] Id. In November 2022, the FTC issued a policy statement clarifying that under Section 5 of the *Federal Trade Commission Act,* the agency could "proceed against a broader range of anticompetitive conduct than can be reached under the Clayton and Sherman Acts," including unfair methods of competition that are "coercive, exploitative,

We urge the agency to resist calls for additional postponement and act quickly to protect as many workers under this rule as possible. We also urge the Commission to remain skeptical of calls for expansive exemptions that may undermine the benefits of a strong rule. This rule is an important step toward ending abusive practices in the labor market, and we support the FTC's efforts to give workers the voice, dignity, and power they deserve.

Sincerely,

Elizabeth Warren
United States Senator

Richard Blumenthal
United States Senator

Pramila Jayapal
Member of Congress

Ann McLane Kuster
Member of Congress

Ilhan Omar
Member of Congress

Donald S. Beyer Jr.
Member of Congress

Sherrod Brown
United States Senator

Chris Van Hollen
United States Senator

---

collusive, abusive, deceptive, predatory, or involve the use of economic power of a similar nature." Federal Trade Commission, "Policy Statement Regarding the Scope of Unfair Methods of Competition Under Section 5 of the Federal Trade Commission Act Commission File No. P221202," November 10, 2022, https://www.ftc.gov/system/files/ftc_gov/pdf/P221202Section5PolicyStatement.pdf; National Petroleum Refiners Ass'n v. F.T.C., 482 F.2d 672, 693 (D.C. Cir. 1973).

Bernard Sanders
United States Senator

Peter Welch
United States Senator

Edward J. Markey
United States Senator

Jeffrey A. Merkley
United States Senator

Sheldon Whitehouse
United States Senator

Mazie K. Hirono
United States Senator

Ron Wyden
United States Senator

Tammy Duckworth
United States Senator

Donald Norcross
Member of Congress

Jamaal Bowman, Ed.D.
Member of Congress

Chris Deluzio
Member of Congress

Jesús G. "Chuy" García
Member of Congress

Rashida Tlaib
Member of Congress

Summer Lee
Member of Congress

Mark DeSaulnier
Member of Congress

Debbie Dingell
Member of Congress

Mark Pocan
Member of Congress

Bonnie Watson Coleman
Member of Congress

Nanette Diaz Barragán
Member of Congress

Alexandria Ocasio-Cortez
Member of Congress

Katie Porter
Member of Congress

Jill Tokuda
Member of Congress

Seth Magaziner
Member of Congress

Jared Huffman
Member of Congress

Greg Casar
Member of Congress

Jerrold Nadler
Member of Congress

Jamie Raskin
Member of Congress

Adam B. Schiff
Member of Congress

Henry C. "Hank" Johnson, Jr.
Member of Congress

Marie Gluesenkamp Perez
Member of Congress

Eleanor Holmes Norton
Member of Congress

Robert Garcia
Member of Congress

Yvette D. Clarke
Member of Congress

Valerie P. Foushee
Member of Congress

Becca Balint
Member of Congress

Lori Trahan
Member of Congress

Robert J. Menendez
Member of Congress

Danny K. Davis
Member of Congress

Adam Smith
Member of Congress

Alma S. Adams, Ph.D.
Member of Congress

David N. Cicilline
Member of Congress

Val Hoyle
Member of Congress

Raúl M. Grijalva
Member of Congress

Dwight Evans
Member of Congress

Nydia M. Velázquez
Member of Congress

Cori Bush
Member of Congress

Madeleine Dean
Member of Congress

Ro Khanna
Member of Congress

Dan Goldman
Member of Congress

Jan Schakowsky
Member of Congress

Troy Carter
Member of Congress

Lizzie Fletcher
Member of Congress

Mary Gay Scanlon
Member of Congress

Andrea Salinas
Member of Congress

Barbara Lee
Member of Congress

Glenn Ivey
Member of Congress

**CERTIFICATE OF COMPLIANCE**

To the extent that artificial intelligence has been used to help draft this motion, but all citations and legal analysis, have been reviewed by a human. *See* Notice of Proposed Amendment to 5th Cir. R. 32.3.

**CERTIFICATE OF SERVICE**

I hereby certify that, on February 14, 2024, a true and accurate copy of the foregoing document was served via the Court's drop box, return receipt requested to all counsel of record.

*/s/Evan Jowers*
Evan Jowers